ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
andrew@packardlawoffices.com
wncarlon@packardlawoffices.com

Attorneys for Plaintiff
CALIFORNIA OPEN LANDS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA OPEN LANDS, a non-profit land trust organization,<br><br>          Plaintiff,<br><br>     v.<br><br>BUTTE COUNTY DEPARTMENT OF PUBLIC WORKS, a political subdivision of the State of California, DENNIS SCHMIDT, an individual, and ERIC MILLER, an individual,<br><br>          Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1387)** |

CALIFORNIA OPEN LANDS ("COL"), by and through its counsel, hereby alleges:

## I.     JURISDICTION AND VENUE

1.     This is a civil suit brought under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251–1387 (the "Clean Water Act", the "CWA" or "the Act") against Butte County Department of Public Works, Dennis Schmidt, and Eric Miller ("Defendants").  This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1) of the Act, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331 (an action arising under the laws of the United States).  Specifically, this action arises under Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A) (citizen suit to enforce effluent standard or limitation).  The relief requested is authorized pursuant to 33 U.S.C. §1365(a) (injunctive relief), 1319(d) (civil penalties), and

28 U.S.C. §§ 2201–2202 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration).

2.    On November 15, 2019, Plaintiff provided written notice to Defendants, via certified mail, of Defendants' violations of the Act ("Notice Letter"), and of its intention to file suit against Defendants, as required by the Act.  *See* 33 U.S.C. § 1365(b)(1)(A); 40 C.F.R. § 135.2(a)(1).  Plaintiff mailed a copy of the Notice Letter to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the Executive Director of the State Water Resources Control Board ("State Board"); and the Executive Officer of the Regional Water Quality Control Board, Central Valley Region ("Regional Board"), pursuant to 40 C.F.R. § 135.2(a)(1).  A true and correct copy the Notice Letter is attached hereto as **Exhibit A**, and is incorporated by reference.

3.    More than sixty days have passed since Plaintiff served the Notice Letter on Defendants and the agencies.  Plaintiff is informed and believes, and thereupon alleges, that neither the EPA nor the State of California has commenced nor is diligently prosecuting a court action to redress the violations alleged in this Complaint.  This action's claims for civil penalties are not barred by any prior administrative penalty under Section 309(g) of the Act, 33 U.S.C. § 1319(g).

4.    Venue is proper in the Eastern District of California pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the sources of the violations are located within this District. Venue is also proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.  Intra-district venue is proper in Sacramento, California, because the sources of the violations are located within Butte County.

## II.      **INTRODUCTION**

5.    This Complaint seeks relief for Defendants' violations of the CWA at the Neal Road Recycling and Waste Facility, an approximately 229-acre solid waste disposal and management facility located at 1023 Neal Road, in Paradise, California ("the Facility").  Defendants discharge pollutant-contaminated storm water from the Facility into a wetland preserve protected by a conservation easement, which discharges into an unnamed tributary to Hamlin Slough, then into Hamlin Slough, which is a tributary to Butte Creek, which in turn is a tributary to the Sacramento River and the

Sacramento-San Joaquin Delta ("Impacted Waters").  The Impacted Waters are waters of the United States within the meaning of the Clean Water Act.  Defendants are in violation of both the substantive and procedural requirements of the CWA.

6.     Defendants' discharges of polluted storm water from the Facility violate Section 301 of the Act, which prohibits the discharge of storm water associated with industrial activities to waters of the United States except in compliance with the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.  These violations are ongoing and continuous.

7.     Defendants' discharges of polluted storm water from the Facility violate the State of California's General Industrial Permit for storm water discharges, State Water Resources Control Board ("State Board") Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order No. 92-12-DWQ, Water Quality Order No. 97-03-DWQ, and Water Quality Order No. 14-0057-DWQ, NPDES General Permit No. CAS000001 (hereinafter "General Permit" or "Permit").  Defendants' violations of the permitting, filing, monitoring, reporting, discharge and management practice requirements, and other procedural and substantive requirements of the General Permit and the Act are ongoing and continuous.

8.     The failure on the part of industrial facility operators, such as Defendants, to apply for and comply with the General Permit is recognized as a significant cause of the continuing decline in water quality of receiving waters, such as the Sacramento River, and the Sacramento-San Joaquin Delta. The general consensus among regulatory agencies and water quality specialists is that storm water pollution amounts to more than half the total pollution entering the aquatic environment each year.  With every rainfall event, hundreds of thousands of gallons of polluted storm water originating from industrial facilities discharge to the Impacted Waters.

III.   **PARTIES**

9.     Plaintiff is informed and believes, and thereupon alleges, that Defendant Butte County Department of Public Works is a political subdivision organized under the laws of the State of California.

10.    Plaintiff is informed and believes, and thereupon alleges, that Defendant Butte County

Complaint for Declaratory and Injunctive Relief and Civil Penalties

Department of Public Works owns and operates the Facility.

11.     Plaintiff is informed and believes, and thereupon alleges, that Defendant Dennis Schmidt is the Director of Butte County Department of Public Works, and in that capacity is responsible for overseeing and directing the operations of the Facility.

12.     Plaintiff is informed and believes, and thereupon alleges, that Defendant Eric Miller is Manager of the Neal Road Recycling and Waste Facility, and in that capacity is responsible for the day-to-day operations of the Facility, including the operation and maintenance of the Facility's storm water management system.

13.     Accordingly, Plaintiff is informed and believes, and thereupon alleges, that Defendants own and/or operate the Facility.

14.     Plaintiff COL is a non-profit land trust organization corporation organized under the laws of California, with its main office in Chico, California.  COL is dedicated to the preservation and management of open space, the exchange of scientific information, public education, and responsible conservation of the natural resources of the Sacramento River Watershed, including the waters into which Defendants discharge polluted storm water.

15. COL owns a conservation easement recorded in the Butte County's Recorder's Office, Record Number 2007-0051757 ("Conservation Easement"), on a wetland into which Defendants discharge polluted storm water from the Neal Road Facility.

16. COL, pursuant to the Conservation Easement, has an obligation to protect and conserve these waters for their estuarine habitat and the rare, threatened and endangered species it supports, the wildlife habitat, fresh water and marine habitat, and other designated beneficial uses.  Defendants' discharges of polluted storm water into the wetland protected by the Conservation Easement impair the wetland and the Impacted Waters downstream from the wetland, and harms COL's uses of the wetland and Impacted Waters.  Thus, the interests of COL have been, are being, and will continue to be adversely affected by Defendants' failure to comply with the Clean Water Act and the General Permit.

17.     The relief sought herein will redress the harms to Plaintiff caused by Defendants' activities because that relief will significantly reduce pollution discharged from Defendants' Facility into the

1   Impacted Waters.

2       18.    Continuing commission of the acts and omissions alleged above will irreparably harm

3   Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy or adequate

4   remedy at law.

5       19.    Plaintiff is informed and believes, and thereupon alleges, that Defendants' discharges of

6   polluted storm water into the Impacted Waters is ongoing and continuous.

7   **IV.   LEGAL BACKGROUND**

8       **A.   Clean Water Act**

9       20.    Congress enacted the CWA to "restore and maintain the chemical, physical, and

10   biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA establishes an "interim

11   goal of water quality which provides for the protection and propagation of fish, shellfish, and wildlife

12   and provides for recreation in and on the water . . . ." 33 U.S.C. § 1251(a)(2). To these ends, Congress

13   developed both a water quality-based and a technology-based approach to regulating discharges of

14   pollutants from point sources into waters of the United States.

15       21.    Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant

16   from a point source into waters of the United States, unless such discharge is in compliance with various

17   enumerated sections of the Act. Among other things, Section 301(a) prohibits both discharges not in

18   conformance with an NPDES permit, such as discharges without an NPDES permit issued pursuant to

19   Section 402 of the Act (33 U.S.C. §1342) or discharges that violate the terms of an NPDES permit.

20       22.    The term "discharge of pollutants" means "any addition of any pollutant to navigable

21   waters from any point source." 33 U.S.C. § 1362(12). Pollutants are defined to include, among other

22   examples, industrial waste, chemical wastes, biological materials, heat, rock, and sand discharged into

23   water. 33 U.S.C. § 1362(6).

24       23.    A "point source" is defined as "any discernible, confined and discrete conveyance,

25   including but not limited to any pipe, ditch, channel, tunnel, [or] conduit . . . from which pollutants are

26   or may be discharged." 33 U.S.C. § 1362(14).

27       24.    "Navigable waters" means "the waters of the United States." 33 U.S.C. § 1362(7).

28

Waters of the United States includes, among others things, waters that are, were, or are susceptible to use in interstate commerce, and tributaries to such waters.  40 C.F.R. § 230.3 (2015).  Section 402 of the Act, 33 U.S.C. § 1342, establishes the NPDES program, a permitting program that regulates the discharge of pollutants into waters of the United States.  Section 402(p) establishes a framework for regulating municipal and industrial storm water discharges under the NPDES program, 33 U.S.C. § 1342(p), and, specifically, requires an NPDES permit for storm water discharges associated with industrial activity.  33 U.S.C. § 1342(p)(2)(B).  Section 402 authorizes states with approved NPDES permit programs to regulate industrial storm water discharges, through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers.  33 U.S.C. § 1342(b).

25.      Section 505(a)(1) provides for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, 33 U.S.C. § 1362(5), for violations of NPDES permit requirements and for unpermitted discharges of pollutants.  33 U.S.C. §1365(a)(1) (authorizing actions against any person alleged to be in violation of an effluent standard or limitation); 33 U.S.C. § 1365(f) (defining "effluent limitation" broadly to include "a permit or condition thereof issued under [section 402] of this title," and "any unlawful act under subsection (a) of [section 301] of this title").

26.      An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a).  Violators of the Act are also subject to an assessment of civil penalties of up to $37,500 per day for violations occurring after January 12, 2009 and $54,833 per day per violation for all violations that occurred after November 2, 2015, pursuant to Sections 309(d) and 505(a) of the Act.  33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. §§ 19.1–19.4.

**B.      State Regulations**

27.      The Act requires States to promulgate water quality standards.  *See* 33 U.S.C. §§ 1313(a)-(c).  Water quality standards consist of both "designated uses" for a body of water and a set of "criteria" specifying the maximum concentration of pollutants that may be present in the water without impairing its suitability for designated uses.  33 U.S.C. § 1313(c)(2)(A).  The Act requires States to assess whether these water quality standards are being met.

Complaint for Declaratory and Injunctive Relief and Civil Penalties

28.     The Sacramento River is heavily degraded from pollutant loading.  This is officially recognized by the EPA, the State Board, and the Regional Board, which has placed the waterbody on the CWA section 303(d) list of waters that are so polluted that they do not meet applicable water quality standards.  The Regional Board's Water Quality Control Plan for the Central Valley Region (hereafter referred to as the "Basin Plan") is the master policy document setting forth the legal, technical, and programmatic bases of water quality regulation in the region.  Among other things, the Basin Plan includes the water quality objectives needed to protect the designated beneficial water uses.  The Basin Plan sets forth narrative water quality objectives for sediment, settleable and suspended materials, as well as narrative objectives for preventing the impairment of water quality with oil sheens, turbidity, or other nuisance conditions.  The Basin Plan also includes numeric water quality standards for pH, dissolved oxygen and toxic pollutants.

**C.     California Industrial Storm Water General Permit**

29.     Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, the Administrator of EPA has authorized California's State Board to issue NPDES permits in California, including general NPDES permits.

30.     The State Board elected to issue a statewide general permit for industrial discharges.  The State Board issued the General Permit on or about November 19, 1991, modified the General Permit on or about September 17, 1992, and reissued the General Permit on April 17, 1997 and again on April 1, 2014 (effective July 1, 2015), pursuant to Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p).

31.     Facilities discharging, or having the potential to discharge, storm water associated with industrial activity that have not obtained an individual NPDES permit must apply for coverage under the State's General Permit by filing a Notice of Intent ("NOI").  The General Permit requires facilities to file their NOIs before the initiation of industrial operations.

32.     Once regulated by an NPDES permit, facilities must strictly comply with all of the terms and conditions of that permit.  A violation of the General Permit is a violation of the Act.  *See* General Permit, Section XXI.A.

33.     In order to discharge storm water lawfully in California, industrial dischargers must

comply with the terms of the General Permit or have obtained and complied with an individual NPDES permit.

34.     The General Permit contains three primary and interrelated categories of requirements: 1) discharge prohibitions; 2) Storm Water Pollution Prevention Plan ("SWPPP") requirements; and 3) monitoring and reporting requirements, including the requirement to prepare an annual report.

35.     Discharge Prohibition III.B of the General Permit prohibits discharges of liquids or materials other than storm water, either directly or indirectly to waters of the United States unless authorized by another NPDES permit or as authorized in Section IV of the General Permit.

36.     Discharge Prohibition III.C of the General Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination or nuisance as defined in section 13050 of the California Water Code.

37.     Receiving Water Limitation VI.A of the General Permit prohibits storm water discharges that cause or contribute to an exceedance of any applicable water quality standards in any affected receiving water.

38.     Receiving Water Limitation VI.B of the General Permit prohibits storm water discharges to any surface or ground water that adversely impact human health or the environment.

39.     Effluent Limitation V.A of the General Permit requires dischargers to reduce or prevent pollutants in their storm water discharges through implementation of the Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.

40.     EPA has established Benchmark Levels as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT standards.  65 Fed. Reg. 64746, 64767 (Oct. 30, 2000).  The following benchmarks have been established for pollutants discharged by Defendants: Total Suspended Solids ("TSS") – 100 mg/L; Oil & Grease ("O&G") – 15.0 mg/L; Iron ("Fe") – 1.0 mg/L; Aluminum ("Al") – 0.75 mg/L; Lead ("Pb") – 0.262 mg/L; Zinc ("Zn") – 0.26 mg/L; Copper ("Cu") – 0.0332 mg/L; and, Chemical Oxygen Demand ("COD") – 120 mg/L.

41.     The Regional Board has established water quality standards for the Impacted Waters in

1  the Basin Plan.

2      42.   The Basin Plan includes a toxicity standard which states that "[a]ll waters shall be

3  maintained free of toxic substances in concentrations that are toxic to or that produce detrimental

4  physiological responses in, human, plant, animal, or aquatic life."  III-8.01 Basin Plan.

5      43. The Basin Plan provides that "[w]aters designated for use as domestic or municipal supply

6  (MUN) shall not contain concentrations of chemical constituents in excess of the limits specified in [22

7  C.C.R. §§ 64435 and 64444.5]."  III-10.00 Basin Plan.

8      44.   The General Permit requires dischargers to develop and implement a site-specific

9  SWPPP.  General Permit, Section X.A.  The SWPPP must include, among other elements:  (1) the

10  facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description

11  of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7)

12  advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) an annual comprehensive

13  facility compliance evaluation; and (10) the date that the SWPPP was initially prepared and the date of

14  each SWPPP amendment, if applicable.

15      45.   Dischargers subject to the General Permit must revise their SWPPP whenever necessary

16  and certify and submit via the Regional Board's Storm Water Multiple Application and Report Tracking

17  System ("SMARTS") their SWPPP within 30 days whenever the SWPPP contains significant

18  revisions(s); and, certify and submit via SMARTS their SWPPP not more than once every three (3)

19  months in the reporting year for any non-significant revisions.  General Permit, Section X.B.

20      46.   Dischargers must implement the minimum BMPs identified in Section X.H.1. of the

21  General Permit.  In addition to the minimum BMPs identified in Section X.H.1, advanced BMPs must

22  be implemented if necessary to reduce or prevent discharges of pollutants in storm water dischargers in a

23  manner that reflects best industry practice.  General Permit, Section X.H.2.

24      47.   Special Conditions Section XX.B of the General Permit require a discharger to prepare

25  and submit documentation to the Regional Board upon determination that storm water discharges are in

26  violation of Receiving Water Limitations, Section VI.  The documentation must describe changes the

27  discharger will make to its current BMPs in order to prevent or reduce any pollutant in its storm water

28

discharges that is causing or contributing to an exceedance of water quality standards.  General Permit, Section XX.B.

48.     Section XV of the General Permit requires an annual evaluation of storm water controls including the preparation of an evaluation report and implementation of any additional measures in the SWPPP to respond to the monitoring results and other inspection activities within 90 days of the annual evaluation.

49.     The General Permit requires dischargers to eliminate all non-storm water discharges to storm water conveyance systems other than those specifically set forth in Section IV of the General Permit unless authorized by another NPDES permit.  General Permit, Section III. B.

50.     The General Permit requires dischargers to implement a Monitoring Implementation Plan.  General Permit, Section X.I.  As part of their monitoring plan, dischargers must identify all storm water discharge locations.  General Permit, Section X.I.2.  Dischargers must then conduct monthly visual observations of each drainage area, as well as visual observations during discharge sampling events.  General Permit, Section XI.A.1 and 2.  Dischargers must also collect and analyze storm water samples from two (2) storm events within the first half of each reporting year (July 1 to December 31) and two (2) storm events during the second half of each reporting year (January 1 to June 30).  General Permit, Section XI.B.  Section XI.B requires dischargers to sample and analyze during the wet season for basic parameters such as pH, total suspended solids ("TSS") and oil and grease ("O&G"), certain industry-specific parameters, and any other pollutants likely to be in the storm water discharged from the facility based on the pollutant source assessment.  General Permit, Section XI.B.6.

51.     Dischargers must submit all sampling and analytical results via SMARTS within thirty (30) days of obtaining all results for each sampling event.  Section XI.B.11.  Sampling results must be compared to the two types of Numeric Action Level ("NAL") values set forth at Table 2 of the General Permit.  General Permit, Section XII.  An annual NAL exceedance occurs when the average of the results for a parameter for all samples taken within a reporting year exceeds the annual NAL value.  General Permit, Section XII.A.1.  An instantaneous NAL exceedance occurs when two (2) or more results from samples taken for any single parameter within a reporting year exceed the instantaneous

maximum NAL value.  General Permit, Section XII.A.2.  If a discharger has an NAL exceedance during a reporting year, the discharger's status changes to Level 1 status under the General Permit and the discharger must comply with the requirements set forth for Level 1 status operators set forth at Section XII.C.  The discharger's status shall change to Level 2 status if sampling results indicated an NAL exceedance for a parameter while the discharger is in Level 1 status.  If a discharger becomes Level 2 status it must comply with the obligations set forth at Section XII.D of the General Permit.

52.     Dischargers must submit an Annual Report via SMARTS no later than July 15th following each reporting year, certifying compliance with the General Permit and/or an explanation for any non-compliance.  General Permit, Section XVI.

## V.     STATEMENT OF FACTS

53.   The Facility is comprised of approximately 229 acres, of which 190 acres is landfill and 140 acres is industrial use area.  A site map of the Facility is attached as **Exhibit B**.  Defendants' primary industrial activities at the Facility include handling, storing, and landfilling solid waste (including inert construction and demolition materials), green waste, recyclable materials, waste tires, stockpiled cover soil, leachate, diesel, used oil, motor oil and lubricants, hydraulic oil, and cleaners.  In addition, small amounts of hazardous materials are occasionally found within the incoming solid wastes and recyclables.  Most of these industrial activities occur outside in areas that are exposed to storm water and storm flows due to the lack of overhead coverage, functional berms, and other storm water controls.

54.   The primary industrial activities at the Facility fall under Standard Industrial Classification ("SIC") Codes 5093 ("Scrap and Waste Materials") and, 4953 ("Landfills and Land Application Facilities").

55. Defendants collect and discharge storm water associated with industrial activities at the Facility through at least one discharge point into the wetland protected under the Conservation Easement, which flows into an unnamed tributary to Hamlin Slough, then into Hamlin Slough, which is a tributary to Butte Creek, which in turn is a tributary to the Sacramento River and the Sacramento-San Joaquin River Delta.  The Delta and its tributaries are waters of the United States within the meaning of the Clean Water Act.

Complaint for Declaratory and Injunctive Relief and Civil Penalties

56. Defendants obtained General Permit coverage beginning on or about March 6, 1992.  On July 13, 2018, Defendants updated their Notice of Intent to comply with the General Permit.  The Facility's Waste Discharge Identification ("WDID") number is 5R04I000249.

57. On August 10, 2015, Defendants uploaded to the Storm Water Multiple Application & Report Tracking System ("SMARTS") a SWPPP, certified on June 29, 2015.

58. Defendants uploaded an amended SWPPP to SMARTS on or about September 30, 2019. Between August 10, 2015 and September 30, 2019 Defendants did not upload any amended SWPPPs to SMARTS.

59. Plaintiff is informed and believes, and thereupon alleges, that the Facility is divided into operational units referred to as Modules by Defendants.  Each Module is a portion of the Facility that is used to landfill solid waste.

60. On February 14, 2019, Defendants became aware of landfill leachate seeping out of the Module 4 face and into Sediment Basin 4, a storm water basin located downstream of Module 4.  As landfill leachate was flowing out of Module 4 and into Sediment Basin 4, the leachate comingled with industrial storm water in Sediment Basin 4.  The water in the Sediment Basin 4 was being pumped into a storm water conveyance ditch, which discharged into the wetland protected by the Conservation Easement.

61. On February 27, 2019, Defendants again became aware of landfill leachate seeping out of Module 4 and into Sediment Basin 4.  Just as before, the comingled leachate and storm water was pumped from Sediment Basin 4 into a storm water conveyance ditch that discharged into the wetland protected by the Conservation Easement.

62. On March 6, 2019, Defendants became aware that Module 4 was again seeping landfill leachate into Sediment Basin 4.

63. Plaintiff is informed and believes, and thereupon alleges that on October 23, 2019 landfill leachate seeped into the southeast corner of the wetland protected by the Conservation Easement, and the soil saturated by the seep was subsequently excavated and removed by Defendants.

64. Plaintiff is informed and believes that Defendants' storm water controls, to the extent any exist, fail to achieve BAT and BCT standards.

Complaint for Declaratory and Injunctive Relief and Civil Penalties

65. The management practices at the Facility are wholly inadequate to prevent the sources of contamination described above from causing the discharge of pollutants to waters of the United States and fail to meet BAT and BCT standards.

66. Information available to Plaintiff indicates that as a result of these practices, storm water containing pollutants harmful to fish, plant and bird life, and human health are being discharged from the Facility to the Impacted Waters during significant rain events.

67. Information available to Plaintiff indicates that Defendants have not fulfilled the requirements set forth in the General Permit for discharges from the Facility due to the continued discharge of contaminated storm water.

68. Plaintiff is informed and believes, and thereupon alleges, that Defendants have failed to develop and implement an adequate Storm Water Pollution Prevention Plan at the Facility.

69. Plaintiff is informed and believes, and thereupon alleges, that Defendants have failed to develop and implement adequate storm water monitoring, reporting and sampling programs at the Facility.

70. Plaintiff is informed and believes, and thereupon alleges, that Defendants have discharged, and continues to discharge, unauthorized non-storm water from the Facility.

71. Plaintiff is informed and believes, and thereupon alleges, that all of the violations alleged in this Complaint are ongoing and continuing.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Failure to Develop and Implement an Adequate
Storm Water Pollution Prevention Plan For the Facility
(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

72. Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

73. Section X of the General Permit requires dischargers of storm water associated with industrial activity to develop and implement an adequate SWPPP prior to commencement of industrial activities.

Complaint for Declaratory and Injunctive Relief and Civil Penalties

13

74. Defendants have failed to develop and implement an adequate SWPPP for the Facility. Defendants' ongoing failure to develop and implement an adequate SWPPP for the Facility is evidenced by, *inter alia*, Defendants' outdoor storage of industrial materials without appropriate best management practices; the lack of specificity and detail required by the General Permit; the failure to include a compliant site map; the failure to keep the SWPPP updated with a log to mark additions; the continued exposure of significant quantities of industrial materials to storm water flows; the failure to either treat storm water prior to discharge or to implement effective containment practices; and the continued discharge of storm water pollutants from the Facility at levels in excess of EPA benchmark values and other applicable standards.

75. Defendants have further failed to update the Facility's SWPPP in response to the analytical results of the Facility's storm water monitoring as required by the General Permit.  General Permit, Sections X.B.1 and X.C.1.b.

76. Defendants continue to violate the Act each day that they fail to develop and fully implement an adequate SWPPP for the Facility.  These violations are ongoing and continuous.

77. Each day that Defendants have failed to develop and implement an adequate SWPPP for the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).  Defendants are subject to civil penalties for each and every violation of the Act since November 15, 2014.  *See* 33 U.S.C. §§1319 (d), 1365; 40 C.F.R. §19.4.

**SECOND CLAIM FOR RELIEF**
**Failure to Develop and Implement the Best Available**
**And Best Conventional Treatment Technologies at the Facility**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

78. Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

79. The General Permit's SWPPP requirements and Effluent Limitation V.A. require dischargers to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants.

80. Defendants have failed to implement BAT and BCT at the Facility for its discharges of Total Suspended Solids, Oil and Grease, Aluminum, Iron, Zinc, Copper, and Chemical Oxygen Demand in violation of Effluent Limitation V.A. of the General Permit.

81. Defendants' ongoing failure to implement BAT and BCT at the Facility is evidenced by, *inter alia*, Defendants' failure to adequately screen incoming waste streams thus allowing contaminated soil to be accepted into the Facility, the use of contaminated soil from the Camp Fire cleanup efforts as daily cover at the Landfill, and Defendants' failure to prevent storm water run-on from concrete stockpiles offsite.

82. Each day that Defendants have failed to develop and implement BAT and BCT at the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).

83. Defendants continue to be in violation of the BAT and BCT requirements each day that they fail to develop and fully implement BMPs meeting the BAT and BCT standards. These violations are ongoing and continuous.

84. Defendants have been in violation of the BAT and BCT requirements at the Facility every day since at least November 15, 2014.  Defendants are subject to civil penalties for each and every violation of the Act since November 15, 2014.  *See* 33 U.S.C. §§1319 (d), 1365; 40 C.F.R. §19.4.

**THIRD CLAIM FOR RELIEF**
**Failure to Develop and Implement an Adequate**
**Monitoring Implementation Plan for the Facility**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

85. Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

86. Section X.I and Section XI. of the General Permit require dischargers of storm water associated with industrial activity to develop and implement a monitoring implementation plan (including, among other things, sampling and analysis of discharges) prior to commencement of industrial activities.

87. Defendants have failed to develop and implement an adequate monitoring implementation plan for the Facility.  Defendants' ongoing failure to develop and implement adequate monitoring and reporting programs are evidenced by, *inter alia*, Defendants' continuing failure to analyze storm water

samples for pollutants likely to be present in the Facility's storm water discharges in significant quantities and other pollutants as the General Permit requires, Defendants' failure to analyze all required parameters, failure to analyze for total metals for all relevant parameters (instead measuring only dissolved metals), failure to identify in the Monitoring Implementation Plan the Preserve, failure to collect samples from all discharge points during each sampling event; and, failure to collect the required number of samples during each reporting period..  In addition, Defendants have been sampling storm water from the wrong location (i.e., after the water has passed through the Conservation Easement wetland, and not before).

88. Defendants have failed to develop and implement an adequate monitoring and reporting program for the Facility each day since at least November 15, 2019.  These violations are ongoing and continuous.

89.  Each day of violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. §1311(a).  Defendants are subject to civil penalties for each and every violation of the Act since November 15, 2014.  *See* 33 U.S.C. §§1319 (d), 1365; 40 C.F.R. §19.4.

### FOURTH CLAIM FOR RELIEF
**Discharges of Contaminated Storm Water From The Facility
in Violation of the Permit's Water Quality-Based Conditions and the Act
(Violations of 33 U.S.C. §§ 1311(a), 1342)**

90. Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

91. Receiving Water Limitations VI.A and VI.B of the General Permit require that storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards in any affected receiving water.  Discharge Prohibition III.C of the General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance.

92. Plaintiff is informed and believes, and thereupon alleges, that since at least November 15, 2014, Defendants have been discharging polluted storm water from the Facility into the Impacted Waters,

1   in violation of the General Permit's Water Quality-based conditions.

2        93. During every significant rain event, storm water flowing over and through materials at the

3   Facility becomes contaminated with pollutants, flowing untreated from the Facility to the Impacted Waters

4        94. Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated

5   storm water are causing pollution and contamination of waters of the United States in violation of

6   Discharge Prohibition III.C of the General Permit.

7        95. Plaintiff is informed and believes, and thereupon allege, that these discharges of

8   contaminated storm water are adversely affecting human health and the environment in violation of

9   Receiving Water Limitations VI.A and VI.B of the General Permit.

10        96. Plaintiff is informed and believes, and thereupon alleges, that on every day with significant

11   rainfall since November 15, 2014, Defendants have discharged and continues to discharge polluted storm

12   water from the Facility in violation of the General Permit.  These violations are ongoing and continuous.

13        97. Every day Defendants have discharged and continue to discharge polluted storm water from

14   the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the

15   Act, 33 U.S.C. § 1311(a).  Defendants are subject to civil penalties for each and every violation of the

16   Act since November 15, 2014.  *See* 33 U.S.C. §§1319 (d), 1365; 40 C.F.R. §19.4.

17   **VII.    RELIEF REQUESTED**

18        Wherefore, COL respectfully requests that this Court grant the following relief:

19        a.    Declare Defendants to have violated and to be in violation of CWA section 301(a), 33

20   U.S.C. § 1311(a), for discharging pollutants from the Facility not in compliance with a permit issued

21   pursuant to CWA section 402, 33 U.S.C. § 1342, and for failing to comply with all substantive and

22   procedural requirements of the General Permit and the CWA as alleged herein.

23        b.    Enjoin Defendants from discharging pollutants from the Facility and to the surface

24   waters surrounding and downstream from the Facility in violation of the Act and the General Permit;

25        c.    Enjoin Defendants from further violating the substantive and procedural requirements

26   of the General Permit and the Act;

27        d.    Order Defendants to pay civil penalties of $37,500 per day per violation for all

28

Complaint for Declaratory and Injunctive Relief and Civil Penalties

1   violations occurring after March 9, 2013 and $54,833 per day per violation for all violations occurring

2   after November 2, 2015, pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d) and

3   1365(a) and 40 C.F.R. §§ 19.1–19.4;

4         e.   Order Defendants to take appropriate actions to restore the quality of navigable waters

5   impaired by their activities;

6         f.   Award Plaintiff's costs and fees (including reasonable attorney, witness, and

7   consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and,

8         g.   Award any such other and further relief as this Court may deem appropriate.

9   Dated: January 16, 2020      Respectfully Submitted,

10         LAW OFFICES OF ANDREW L. PACKARD

11         By: /s/ William N. Carlon

12         William N. Carlon
           Attorney for Plaintiff

13         CALIFORNIA OPEN LANDS

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Declaratory and Injunctive Relief and Civil Penalties

# EXHIBIT A

Law Offices Of

## ANDREW L. PACKARD

245 Kentucky Street, Suite B3, Petaluma, CA 94952
Phone (707) 782-4060    Fax (707) 782-4062
Info@PackardLawOffices.com

November 15, 2019

<u>**VIA CERTIFIED MAIL**</u>

Dennis Schmidt, Director of Public Works      Todd Storti, Deputy Director Waste Management
Butte County Public Works                     Butte County Public Works
7 County Center Drive                         7 County Center Drive
Oroville, CA 95965                            Oroville, CA 95965

Eric Miller, Manager
Waste Management Division
Neal Road Recycling and Waste Facility
7 County Center Drive
Oroville, CA 95965

**Re:    NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE
        FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT")
        (33 U.S.C. §§ 1251 *et seq*.)**

Dear Dennis Schmidt, Todd Storti and Eric Miller:

    This firm represents California Open Lands ("COL, pursuant to the conservation easement, has an obligation to protect and conserve") in regard to violations of the Clean Water Act ("the Act") occurring at Neal Road Recycling and Waste Facility located at 1023 Neal Road, in Paradise, California (the "Facility"). This letter is being sent to you as the responsible officers, and/or operators of the Facility. Unless otherwise noted, Dennis Schmidt, Todd Storti, Eric Miller, Butte County Department of Public Works, and Neal Road Recycling and Waste Facility shall hereinafter be collectively referred to as "Butte County." The purpose of this letter is to provide Butte County with notice of the violations of the Industrial General Permit occurring at the Facility, including, but not limited to, discharges of polluted storm water associated with industrial activities from the Facility into local surface waters.

    Butte County is in ongoing violation of the substantive and procedural requirements of the Clean Water Act, 33 U.S.C. § 1251 *et seq*., and National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 State Water Resources Control Board Water Quality Order No. 14-57-DWQ ("General Permit" or "Permit").[1] Prior to July 1, 2015,

---

[1] The Facility's Waste Discharge Identification ("WDID") number is 5R04I000249.

Notice of Violation and Intent To File Suit
November 15, 2019
Page 2

Butte County's storm water discharges from the Facility were regulated under Water Quality Order No. 91-13-DWQ, as amended by Water Quality Orders 92-12-DWQ and 97-03-DWQ.

On July 1, 2015, the 2015 General Permit went into effect, superseding the 1997 General Permit that was operative between 1997 and June 30, 2015.  The 2015 General Permit includes many of the same fundamental requirements and implements many of the same statutory objectives and requirements as the 1997 General Permit.  Violations of either of the 1997 and 2015 General Permits are enforceable under the law.  2015 General Permit, Finding A.6.  All references to the "General Permit" herein refer to both the 1997 and 2015 General Permits.

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Act subjects Butte County to a penalty for all violations occurring during the period commencing five years prior to the date of this Notice Letter.  These provisions of law authorize civil penalties of up to $37,500 per day per violation for all Clean Water Act violations occurring after January 12, 2009, and $54,833 per day per violation for all violations that occurred after November 2, 2015.  In addition to civil penalties, COL, pursuant to the conservation easement, has an obligation to protect and conserve will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law.  Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit.  Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur.  *See* 40 C.F.R. § 135.2.  As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility.  40 C.F.R. § 135.3(a).  At the expiration of sixty (60) days from the date of this letter, COL, pursuant to the conservation easement, has an obligation to protect and conserve intends to file suit under Section 505(a) of the Act in federal court against Butte County for violations of the Clean Water Act and the Permit, described further below.

## I.      Background

### A.      California Open Lands

COL, pursuant to the conservation easement, has an obligation to protect and conserve is a non-profit land trust organization based in Chico, California.  COL is dedicated to the preservation and management of open space, the exchange of scientific information, public education, and responsible conservation of the natural resources of the Sacramento River Watershed, including the waters into which Butte County discharges polluted storm water.  COL owns a conservation easement on a wetland to which Butte County discharges polluted storm water from the Neal Road Facility.  COL, pursuant to the conservation easement, has an obligation to protect and conserve holds a conservation easement over the wetlands into which the Facility discharges (the "Preserve").  The Preserve is an important source of groundwater

Notice of Violation and Intent To File Suit
November 15, 2019
Page 3

recharge for the Tuscan Aquifer, and a tributary to Hamlin Slough, Butte Creek and the
Sacramento River. COL, pursuant to the conservation easement, has an obligation to protect and
conserve these waters for their estuarine habitat and the rare, threatened and endangered species
it supports, the wildlife habitat, fresh water and marine habitat, and other designated beneficial
uses. The discharge of pollutants from the Facility impairs each of these uses. Discharges of
polluted storm water from the Facility are ongoing and continuous. Thus, the interests of COL,
pursuant to the conservation easement, has an obligation to protect and conserve has been, is
being, and will continue to be adversely affected by Butte County's failure to comply with the
Clean Water Act and the General Permit.

**B.      The Clean Water Act**

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical,
physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act prohibits
the discharge of pollutants into United States waters except as authorized by the statute. 33
U.S.C. § 1311; *San Francisco Baykeeper, Inc. v. Tosco Corp*., 309 F.3d 1153, 1156 (9th Cir.
2002). The Act is administered largely through the NPDES permit program. 33 U.S.C. § 1342.
In 1987, the Act was amended to establish a framework for regulating storm water discharges
through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69
(1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832,
840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean
Water Act's permitting scheme). The discharge of pollutants without an NPDES permit, or in
violation of a permit, is illegal. *Ecological Rights Found. v. Pacific Lumber Co*., 230 F.3d 1141,
1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been
delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing
California's intent to implement its own NPDES permit program). The CWA authorizes states
with approved NPDES permit programs to regulate industrial storm water discharges through
individual permits issued to dischargers and/or through the issuance of a single, statewide
general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b).
Pursuant to Section 402 of the Act, the Administrator of the USEPA has authorized California's
State Board to issue individual and general NPDES permits in California. 33 U.S.C. § 1342.

**C.      California's General Permit for Storm Water Discharges Associated with
          Industrial Activities**

Between 1997 and June 30, 2015, the General Permit in effect was Order No. 97-03-
DWQ, which COL, pursuant to the conservation easement, has an obligation to protect and
conserve refers to herein as the "1997 General Permit." On April 1, 2014, pursuant to Order No.
2014-0057-DWQ the General Permit was reissued and became effective on July 1, 2015. For
purposes of this notice letter, COL, pursuant to the conservation easement, has an obligation to
protect and conserve refers to the reissued permit as the "2015 General Permit." Accordingly,
Butte County is liable for violations of the 1997 General Permit and ongoing violations of the
2015 General Permit, and civil penalties and injunctive relief are available remedies. *See Illinois*

Notice of Violation and Intent To File Suit
November 15, 2019
Page 4

*v. Outboard Marine, Inc.*, 680 F.2d 473, 480-81 (7th Cir. 1982) (relief granted for violations of an expired permit); *Sierra Club v. Aluminum Co. of Am.*, 585 F. Supp. 842, 853-54 (N.D.N.Y. 1984) (holding that the Clean Water Act's legislative intent and public policy favor allowing penalties for violations of an expired permit); *Pub. Interest Research Group of N.J. v. Carter-Wallace, Inc.*, 684 F. Supp. 115, 121-22 (D.N.J. 1988) ("Limitations of an expired permit, when those limitations have been transferred unchanged to the newly issued permit, may be viewed as currently in effect").

Facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a Notice of Intent to Comply ("NOI"). 1997 General Permit, Provision E.1; 2015 General Permit, Standard Condition XXI.A. Facilities must file their NOIs before the initiation of industrial operations. *Id.* Facilities must strictly comply with all of the terms and conditions of the General Permit; a violation of the General Permit is a violation of the CWA.

The General Permit contains three primary and interrelated categories of requirements: (1) discharge prohibitions, effluent limitations, and receiving water limitations; (2) Storm Water Pollution Prevention Plan ("SWPPP") requirements; and (3) self-monitoring and reporting requirements.

### D.    Butte County's Facility

Information available to COL, pursuant to the conservation easement, has an obligation to protect and conserve indicates that Butte County's industrial activities at the approximately 229-acre Facility include, but are not limited to: active landfill activities, equipment maintenance and fueling, stockpiling and storage of various industrial materials such as green wastes, soil, waste tires, white goods, and other recyclables, and the impoundment and storage of leachate. The industrial activities at the Facility fall under Standard Industrial Classification ("SIC") Codes 5093 and 4953 ("Scrap and Waste Materials" and "Landfills and Land Application Facilities," respectively).

Butte County collects and discharges storm water associated with industrial activities at the Facility through at least one discharge point into the California Open Land's Conservation Easement Preserve (the "Preserve"), from which the water flows into an unnamed tributary to Hamlin Slough, then into Hamlin Slough, which is a tributary to Butte Creek, which in turn is a tributary to the Sacramento River and the Sacramento-San Joaquin River Delta ("the Delta"). The Preserve, Hamlin Slough, Butte Creek, the Sacramento River, the Delta, and all of their tributaries are all waters of the United States within the meaning of the Clean Water Act.

The areas of industrial activity at the Facility are sources of pollutants. The General Permit requires Butte County to analyze storm water samples for TSS, pH, and Oil and Grease. 1997 General Permit, Section B.5.c.i; 2015 General Permit, Section XI.B.6. Facilities under SIC Code 5093 and 4953 must also analyze storm water samples for iron ("Fe"), lead ("Pb"), aluminum ("Al"), zinc ("Zn") and chemical oxygen demand ("COD"). 1997 General Permit, Tables 1-2; 2015 General Permit, Tables 1-2. In addition to these parameters, the General Permit

Notice of Violation and Intent To File Suit
November 15, 2019
Page 5

requires facilities to analyze storm water samples for all parameters likely to be present.  2015 General Permit, Section XI.B.6.c.


## II.      Butte County's Violations of the Act and Permit

Based on its review of available public documents, COL, pursuant to the conservation easement, has an obligation to protect and conserve is informed and believes that Butte County is discharging in violation of both the substantive and procedural requirements of the CWA and the General Permit.  These violations are ongoing and continuous.  Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, Butte County is subject to penalties for all violations of the Act since November 15, 2014.

### A.      Butte County Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations

Butte County's storm water sampling results provide conclusive evidence of Butte County's failure to comply with the General Permit's discharge prohibitions, effluent limitations, and receiving water limitations.  Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation."  *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

#### 1.      Discharge Prohibitions

The General Permit prohibits all discharges of storm water associated with industrial activities to waters of the United States except as specifically authorized by the General Permit or another NPDES permit.  2015 General Permit, Section III.A.  The General Permit further prohibits the discharge of liquids or materials other than storm water to waters of the United States unless authorized by another NPDES permit.  2015 General Permit, Section III.B.

The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance.  1997 General Permit, Discharge Prohibition A.2; 2015 General Permit, Discharge Prohibition III.C. The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Water Board's Basin Plan or statewide water quality control plans and policies.  1997 General Permit, Receiving Water Limitation C.2; 2015 General Permit, Discharge Prohibition III.D.  To the extent that Butte County's discharges include landfill leachate, such discharges constitute unauthorized non-storm water discharges, and violate the General Permit.

#### 2.      Technology Based Effluent Limitations

Dischargers are required to reduce or prevent pollutants in their storm water discharges through the implementation of Best Available Technology Economically Achievable ("BAT")

Case 2:20-cv-00123-DJC-DMC   Document 1   Filed 01/16/20   Page 25 of 34
Notice of Violation and Intent To File Suit
November 15, 2019
Page 6

for toxic and nonconventional pollutants and Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.  1997 General Permit, Effluent Limitation B.3; 2015 General Permit, Effluent Limitation V.A.  Conventional pollutants include Total Suspended Solids, Oil & Grease, pH, Biochemical Oxygen Demand and Fecal Coliform.  40 C.F.R. § 401.16.  All other pollutants are either toxic or nonconventional.  40 C.F.R. §§ 401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA benchmarks") serve as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT.  *Santa Monica Baykeeper v. Kramer Metals,* 619 F. Supp. 2d 914, 920, 923 (C.D. Cal 2009); 1997 General Permit, Effluent Limitations B.5-6; 2015 General Permit, Exceedance Response Action XII.A.

The following EPA benchmarks have been established for pollutants discharged by Butte County: total suspended solids – 100 mg/L; oil & grease – 15.0 mg/L; iron – 1.0 mg/L; aluminum – 0.75 mg/L; zinc – 0.26 mg/L; lead – 0.262 mg/L; chemical oxygen demand – 120 mg/L; and, pH – 6.0-9.0 s.u.

### 3.      Receiving Water Limitations

Storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards in any affected receiving water.  1997 General Permit, Receiving Water Limitations C.1, C.2; 2015 General Permit, Receiving Water Limitations VI.A, VI.B.

Dischargers are required to prepare and submit documentation to the Regional Board upon determination that storm water discharges are in violation of the General Permit's Receiving Water Limitations.  1997 General Permit, p. VII; 2015 General Permit, Special Condition XX.B.  The documentation must describe changes the discharger will make to its current storm water Best Management Practices ("BMPs") in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards.  Id.

The *Water Quality Control Plan for the Central Valley Region* (Revised April 2016) ("Basin Plan") also sets forth water quality standards and prohibitions applicable to Butte County's storm water discharges.  The Basin Plan identifies present and potential beneficial uses for the Sacramento River, which include municipal and domestic water supply, hydropower generation, agricultural supply, industrial service supply, navigation, wildlife habitat, warm freshwater habitat, cold freshwater habitat, warm and cold spawning, and contact and non-contact water recreation.  Basin Plan, II-5.00.

### 4.      Butte County's Discharges of Leachate-Contaminated Storm Water

On a number of occasions, Butte County has allowed storm water contaminated with landfill leachate to discharge in the Preserve, a water of the United States.  COL believes that these discharges are likely to recur given Butte County's management of the Neal Road Facility.

Notice of Violation and Intent To File Suit
November 15, 2019
Page 7

On February 14, 2019, Butte County staff became aware that landfill leachate was seeping out of the face of Module 4 and into Sediment Basin 4.  Landfill staff documented a diesel pump with a six-inch diameter pipe operating at Sediment Basin 4.  The pump was moving the leachate-contaminated storm water into a drainage ditch which transported the water to the Primary Sediment Basin and ultimately the Preserve.

On February 27, 2019, landfill staff became aware of landfill leachate seeping out of the Module 4 face and into Sediment Basin 4.  This leachate-contaminated water was again being pumped out of Sediment Basin 4, into a drainage ditch, and ultimately flowed into the Preserve.

On March 6, 2019, landfill staff documented additional landfill leachate seeps entering the storm water conveyance system.

On October 23, 2019, staff for COL observed landfill leachate seeping, and subsequent excavation of the seep, in the southeast corner of the settlement basin portion of the Preserve.

### a.   Butte County's Non-Storm Water Discharges are Violations of the General Permit

Butte County's non-storm water discharges are violations of the General Permit's discharge prohibitions.  COL, pursuant to the conservation easement, has an obligation to protect and conserve is informed and believes that Butte County has known that its discharges of storm water include prohibited non-storm water since at least November 15, 2014.

COL, pursuant to the conservation easement, has an obligation to protect and conserve alleges that such violations occur each time storm water discharges from the Facility.  Attachment A hereto, sets forth the specific rain dates on which COL, pursuant to the conservation easement, has an obligation to protect and conserve alleges that Butte County has discharged storm water containing impermissible levels of TSS, Fe, Al, COD, Zn, Cu, and O&G, as well as non-storm water discharges, in violation of the General Permit.  1997 General Permit, Discharge Prohibition A.2, Receiving Water Limitations C.1 and C.2; 2015 General Permit, Discharge Prohibitions III.C and III.D, Receiving Water Limitations VI.A, VI.B.  Butte Creek may have had other violations that can only be fully identified and documented once discovery and investigation have been completed.  Hence, to the extent possible, COL includes such violations in this Notice and reserves the right to amend this Notice, if necessary, to include such further violations in future legal proceedings.

### 5.   Butte County Has Failed to Implement BAT and BCT

Dischargers must implement BMPs that fulfill the BAT/BCT requirements of the CWA and the General Permit to reduce or prevent discharges of pollutants in their storm water discharges.  1997 General Permit, Effluent Limitation B.3; 2015 General Permit, Effluent Limitation V.A.  To meet the BAT/BCT standards, dischargers must implement minimum BMPs and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions

Notice of Violation and Intent To File Suit
November 15, 2019
Page 8

where necessary to reduce or prevent pollutants in discharges.  *See* 1997 General Permit, Sections A.8.a-b; 2015 General Permit, Sections X.H.1-2.

Butte County has failed to implement the minimum BMPs required by the General Permit, including: good housekeeping requirements; preventive maintenance requirements; spill and leak prevention and response requirements; material handling and waste management requirements; erosion and sediment controls; employee training and quality assurance; and record keeping.  Permit, Section X.H.1(a-g).  These failures include, but are not limited to, failing to adequately screen incoming waste streams thus allowing contaminated soil to be accepted into the Facility, using contaminated soil from the Camp Fire cleanup efforts as daily cover at the Landfill, and failing to prevent storm water run-on from concrete stockpiles offsite. Butte County has further failed to implement advanced BMPs necessary to reduce or prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards, including: exposure minimization BMPs; containment and discharge reduction BMPs; treatment control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent limitations.  1997 General Permit, Section A.8.b; 2015 General Permit, Sections X.H.2.  Butte County has reassigned a key member of the Storm Water Pollution Prevention Team without adequate replacement, which indicates to COL that the violations described herein are likely to continue.

Each day that Butte County has failed to develop and implement BAT and BCT at the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).  Butte County has been in violation of the BAT and BCT requirements at the Facility every day since at least November 15, 2014.

### 6.     Butte County Has Failed to Implement an Adequate Monitoring Implementation Plan

The General Permit requires dischargers to implement a Monitoring Implementation Plan.  2015 General Permit, Section X.I.  As part of their monitoring plan, dischargers must identify all storm water discharge locations.  2015 General Permit, Section X.I.2.a.  Dischargers must then conduct monthly visual observations of each drainage area, as well as visual observations during discharge sampling events.  2015 General Permit, Section XI.A.1 and 2.

Dischargers must collect and analyze storm water samples from two (2) storm events within the first half of each reporting year (July 1 to December 31) and two (2) storm events during the second half of each reporting year (January 1 to June 3).  2015 General Permit, Section XI.B.  Section XI.B requires dischargers to sample and analyze during the wet season for basic parameters such as pH, total suspended solids ("TSS") and oil and grease ("O&G"), certain industry-specific parameters set forth in Table 2 of the General Permit, and other pollutants likely to be in the storm water discharged from the facility based on the pollutant source assessment. 2015 General Permit, Section XI.B.6.  Dischargers must submit all sampling and analytical results via SMARTS within thirty (30) days of obtaining all results for each sampling event.  2015 General Permit Section XI.B.11.

Notice of Violation and Intent To File Suit
November 15, 2019
Page 9

Butte County has failed to develop and implement an adequate Monitoring Implementation Plan.  These failures include: failing to analyze all required parameters, failing to analyze for total metals for all relevant parameters (instead measuring only dissolved metals), failing to identify in the Monitoring Implementation Plan the Preserve, failing to collect samples from all discharge points during each sampling event; and, failing to collect the required number of samples during each reporting period.  Each day that Butte County has failed to develop and implement an adequate Monitoring Implementation Plan is a separate and distinct violation of the Act and Permit.  Butte County has been in violation of the Monitoring Implementation Plan requirements every day since at least November 15, 2014.

**7.      Butte County Has Failed to Develop and Implement an Adequate Storm Water Pollution Prevention Plan**

The General Permit requires dischargers to develop and implement a site-specific SWPPP.  1997 General Permit, Section A.1; 2015 Permit, Section X.A.  The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) annual comprehensive facility compliance evaluation; and (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable.  *See id.*

Dischargers must revise their SWPPP whenever necessary and certify and submit via the Regional Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify and submit via SMARTS for any non-significant revisions not more than once every three (3) months in the reporting year.  2015 General Permit, Section X.B; see also 1997 General permit, Section A.

COL, pursuant to the conservation easement, has an obligation to protect and conserve's investigation indicates that Butte County has been operating with an inadequately developed or implemented SWPPP in violation of General Permit requirements.  The Facility's SWPPP contains a site map that lacks all required information; the Facility's pollutant source description and assessment fails to capture all potential pollutants at the Facility; the Facility has failed to implement and maintain minimum and advanced BMPs to reduce or prevent pollutants in industrial storm water discharges, and that failure is reflected in the absence of sufficient BMPs in the SWPPP; and, the SWPPP's monitoring and implementation plan is deficient because it fails to accurately report the Facility's industrial storm water.

Butte County has further failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, resulting in the Facility's poor storm water management.  Each day Butte County failed to develop and implement an adequate SWPPP is a violation of the General Permit.  The SWPPP violations described above were at all times in violation of Section A of the 1997 General Permit, and Section X of the 2015 General Permit.  Butte County has been in violation of these requirements at the Facility every day since at least November 15, 2014.

Notice of Violation and Intent To File Suit
November 15, 2019
Page 10

### III.     Persons Responsible for the Violations

COL, pursuant to the conservation easement, has an obligation to protect and conserve puts Butte County on notice that they are the persons and entities responsible for the violations described above.  If additional persons are subsequently identified as also being responsible for the violations set forth above, COL, pursuant to the conservation easement, has an obligation to protect and conserve puts Butte County on formal notice that it intends to include those persons in this action.

### IV.     Name and Address of Noticing Parties

The name, address and telephone number of the noticing party is as follows:

Holly Nielsen, Executive Director
California Open Lands
P.O. Box 4440
Chico, CA 95928
(530) 872-7281

### V.     Counsel

COL, pursuant to the conservation easement, has an obligation to protect and conserve has retained legal counsel to represent it in this matter.  Please direct all communications concerning this letter to:

Andrew L. Packard
William N. Carlon
Law Offices Of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Telephone: (707) 782-4060
Fax: (707) 782-4062
andrew@packardlawoffices.com
wncarlon@packardlawoffices.com

### VI.     Conclusion

COL, pursuant to the conservation easement, has an obligation to protect and conserve believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit. We intend to file a citizen suit under Section 505(a) of the CWA against Butte County and their agents for the above-referenced violations upon the expiration of the 60-day notice period. If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day

Notice of Violation and Intent To File Suit
November 15, 2019
Page 11

notice period.  We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.


Sincerely,



William N. Carlon
Law Offices of Andrew L. Packard
Counsel for CALIFORNIA OPEN LANDS

Notice of Violation and Intent To File Suit
November 15, 2019
Page 12

## <u>SERVICE LIST</u>

### <u>VIA CERTIFIED MAIL</u>

Andrew Wheeler, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Mike Stoker, Regional Administrator
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

William Barr, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Patrick Pulupa, Executive Officer
Central Valley Regional Water Quality Control Board
11020 Sun Center Drive, Suite 200
Rancho Cordova, CA 95670

**ATTACHMENT A**
**Notice of Intent to File Suit, Butte Creek**
**Significant Rain Events,* November 15, 2014 – November 15, 2019**

| | | | |
|---|---|---|---|
| 11/13/2014 | 2/1/2016 | 2/2/2017 | 4/7/2018 |
| 11/20/2014 | 2/18/2016 | 2/3/2017 | 4/17/2018 |
| 11/21/2014 | 2/22/2016 | 2/6/2017 | 5/25/2018 |
| 11/24/2014 | 3/4/2016 | 2/8/2017 | 5/26/2018 |
| 12/1/2014 | 3/7/2016 | 2/16/2017 | 10/4/2018 |
| 12/3/2014 | 3/8/2016 | 2/17/2017 | 11/26/2018 |
| 12/4/2014 | 3/11/2016 | 2/20/2017 | 11/30/2018 |
| 12/5/2014 | 3/12/2016 | 2/21/2017 | 12/6/2018 |
| 12/11/2014 | 3/13/2016 | 3/5/2017 | 12/17/2018 |
| 12/12/2014 | 3/14/2016 | 3/21/2017 | 1/14/2019 |
| 12/15/2014 | 3/21/2016 | 3/22/2017 | 1/16/2019 |
| 12/16/2014 | 3/22/2016 | 3/23/2017 | 1/17/2019 |
| 12/17/2014 | 5/2/2016 | 3/24/2017 | 1/22/2019 |
| 12/18/2014 | 5/6/2016 | 3/25/2017 | 2/4/2019 |
| 12/19/2014 | 5/9/2016 | 4/17/2017 | 2/5/2019 |
| 12/30/2014 | 6/18/2016 | 4/20/2017 | 2/13/2019 |
| 1/16/2015 | 10/3/2016 | 5/31/2017 | 2/14/2019 |
| 2/9/2015 | 10/15/2016 | 6/8/2017 | 2/26/2019 |
| 3/11/2015 | 10/16/2016 | 6/9/2017 | 2/27/2019 |
| 3/23/2015 | 10/25/2016 | 10/20/2017 | 3/4/2019 |
| 4/7/2015 | 10/26/2016 | 11/6/2017 | 3/6/2019 |
| 4/8/2015 | 10/28/2016 | 11/9/2017 | 3/8/2019 |
| 4/24/2015 | 10/29/2016 | 11/13/2017 | 3/11/2019 |
| 9/17/2015 | 10/31/2016 | 11/16/2017 | 3/20/2019 |
| 10/19/2015 | 11/1/2016 | 11/27/2017 | 3/21/2019 |
| 11/2/2015 | 11/19/2016 | 1/6/2018 | 3/25/2019 |
| 11/3/2015 | 11/20/2016 | 1/9/2018 | 3/26/2019 |
| 11/9/2015 | 11/21/2016 | 1/22/2018 | 3/27/2019 |
| 11/10/2015 | 11/23/2016 | 1/25/2018 | 4/2/2019 |
| 11/16/2015 | 11/27/2016 | 3/1/2018 | 4/3/2019 |
| 12/7/2015 | 1/4/2017 | 3/2/2018 | 4/8/2019 |
| 12/10/2015 | 1/7/2017 | 3/5/2018 | 4/24/2019 |
| 1/5/2016 | 1/8/2017 | 3/8/2018 | 5/16/2019 |
| 1/13/2016 | 1/9/2017 | 3/13/2018 | 5/20/2019 |
| 1/14/2016 | 1/10/2017 | 3/14/2018 | 5/23/2019 |
| 1/15/2016 | 1/11/2017 | 3/15/2018 | 5/28/2019 |
| 1/18/2016 | 1/12/2017 | 3/16/2018 | 5/31/2019 |
| 1/19/2016 | 1/19/2017 | 3/21/2018 | 9/30/2019 |
| 1/20/2016 | 1/20/2017 | 3/22/2018 | |
| 1/22/2016 | 1/23/2017 | 3/23/2018 | |
| 1/25/2016 | 1/24/2017 | 4/6/2018 | |

* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.

# EXHIBIT B



LEGEND

| | |
|---|---|
| ——— APPROXIMATE SITE BOUNDARY | ←——— STORM WATER DRAINAGE FLOW DIRECTION |
| — — — APPROXIMATE WASTE MANAGEMENT UNIT (WMU) BOUNDARY | APPROXIMATE LOCATIONS OF GEOSYNTHETIC INTERIM COVER |
| — — — APPROXIMATE RUNON WATERSHED BOUNDARY | CLOSED LANDFILL AREA |
| — — — DIRT ROAD | HYDROSEED, OR SEED & STRAW AREAS |
| ——— FENCE | STOCKPILE BERM |
| OVERSIDE & OTHER DRAINAGE PIPES | ABOVE GRADE HDPE LORS PIPE |
| ☐ BUILDING | INTERCEPTOR DITCH |
| ● POWER POLE | DRAINAGE AREA BOUNDARY |
| ○ VEGETATION | SB-1 ● REMAINING CAPACITY MEASURING ROD |
| ✳ MW-12 MONITORING WELL | SILT FENCE |
| ⊕ U-4 LYSIMETER LOCATION | JUTE MAT |
| RUN-ON/RUN-OFF MONITORING POINT | SSB STRAW BALE BARRIER |

NOTES:

1. HYDROSEED OR SEED/STRAW MAY BE UTILIZED AS SHOWN ON PLAN AND/OR AS DETERMINED BY SITE MANAGER ON AREAS IDENTIFIED AS REQUIRING SEDIMENT CONTROL.
2. SILT FENCE MAY BE UTILIZED AS SHOWN ON PLANS AND/OR AS DETERMINED BY SITE MANAGER ON AREAS IDENTIFIED AS REQUIRING SEDIMENT CONTROL.
3. EROSION BLANKETS MAY BE UTILIZED AS SHOWN ON PLANS AND/OR AS DETERMINED BY SITE MANAGER ON AREAS IDENTIFIED AS REQUIRING SEDIMENT CONTROL.
4. ADDITIONAL BMPs MAY BE UTILIZED AS NECESSARY AS DETERMINED BY SITE MANAGER.
5. EMERGENCY EROSION CONTROL PRODUCTS SHALL BE STORED ONSITE AND MAY CONSIST OF SEEDS, STRAW, SILT FENCE, FIBER ROLLS AND/OR EROSION BLANKETS.
6. WMUs 1, 2, & 3 CLOSED MARCH 2007. VARIOUS PERMANENT DRAINAGE STRUCTURES ARE PLACED WITHIN CLOSURE AREA BUT NOT SHOWN.

7. CONSTRUCTION GATE AREA GRADED TO DIRECT FLOWS TO ONSITE DRAINAGE STRUCTURES.

TOPOGRAPHIC CONTOURS WERE PREPARED USING PHOTOGRAMMERIC SURVEY METHODS BY GEOMAPS, RANCHO CORDOVA, CA. DATE OF PHOTOGRAPHY JUNE 30, 2014.

2-FOOT CONTOURS REMOVED FOR CLARITY. REDUCED SIZE PLANS NOT TO SCALE.

REV. 6-15

SHEET NO. A1

DRAWN BY: HJC
CHECKED BY: WED
PROJECT NO.: 70525-01
DATE: 06/03/15

REVISIONS:

STORM WATER SITE PLAN
UPDATE 1/3/2017

NEAL ROAD RECYCLING & WASTE FACILITY
1023 NEAL ROAD
PARADISE, BUTTE COUNTY, CALIFORNIA

HULTGREN - TILLIS
ENGINEERS

PH: 530-894-9487, FAX: 530-894-2437