1

2

3

4

5

6

7

8                      **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    CALIFORNIA OPEN LANDS,                    No.  2:20-CV-0123-KJM-DMC

12              Plaintiff,

13       v.                                     ORDER

14    BUTTE COUNTY DEPARTMENT OF
      PUBLIC WORKS, et al.,
15
                Defendants.
16

17

18              Plaintiff, who is proceeding with retained counsel, brings this civil action.

19    Pending before the Court is Plaintiff's motion to compel a wet weather site inspection pursuant to

20    Federal Rule of Civil Procedure 34.  See ECF No. 28.  The parties have timely filed a joint

21    statement as required by the Court's local rules.  See ECF No. 29.  The matter was submitted on

22    the record without oral argument.  See ECF No. 30.

23              The purpose of discovery is to "remove surprise from trial preparation so the

24    parties can obtain evidence necessary to evaluate and resolve their dispute." United States v.

25    Chapman Univ., 245 F.R.D. 646, 648 (C.D. Cal. 2007) (quotation and citation omitted). Rule

26    26(b)(1) of the Federal Rules of Civil Procedure offers guidance on the scope of discovery

27    / / /

28    / / /

                                          1

1   permitted:

> Parties may obtain discovery regarding any nonprivileged information that
> is relevant to any party's claim or defense and proportional to the needs of
> the case, considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant information,
> the parties' resources, the importance of the discovery in resolving the
> issues, and whether the burden or expense of the proposed discovery
> outweighs its likely benefit. Information within this scope of discovery
> need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Under Rule 37 of the Federal Rules of Civil Procedure, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). The court may order a party to provide further responses to an "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4). "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" Hunt v. County of Orange, 672 F.3d 606, 616 (9th Cir. 2012) (quoting Avila v. Willits Envtl. Remediation Trust, 633 F.3d 828, 833 (9th Cir. 2011)).

The party moving to compel bears the burden of informing the court (1) which discovery requests are the subject of the motion to compel, (2) which of the responses are disputed, (3) why the party believes the response is deficient, (4) why any objections are not justified, and (5) why the information sought through discovery is relevant to the prosecution of this action. McCoy v. Ramirez, No. 1:13-cv-1808-MJS (PC), 2016 U.S. Dist. LEXIS 75435, 2016 WL 3196738, at *1 (E.D. Cal. June 9, 2016); Ellis v. Cambra, No. 1:02-cv-5646-AWI-SMS PC, 2008 U.S. Dist. LEXIS 24418, 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008).

"Relevance for purposes of discovery is defined very broadly." Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir. 1998). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, No. 07cv200 JM (PCL), 2009 U.S. Dist. LEXIS 42339, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal citation omitted).

1

# I. BACKGROUND

2

### A.  <u>Plaintiff's Allegations</u>

3       This action proceeds on Plaintiff's original complaint.  <u>See</u> ECF No. 1.  Plaintiff

4  brings suit under the citizen enforcement provision of the Federal Water Pollution Control Act

5  (Clean Water Act or CWA), 33 U.S.C. §§ 1251-1387.  <u>See</u> ECF No. 1, pg. 1.  Specifically, the

6  action arises under 33 U.S.C. § 1365(a)(1)(A).  Plaintiff seeks injunctive relief pursuant to 33

7  U.S.C. § 1365(a), civil penalties pursuant to 33 U.S.C. § 1319(d), and declaratory relief pursuant

8  to 33 U.S.C. §§ 2201-2202.  <u>See</u> ECF No. 1, pgs. 1-1.

9       Plaintiff alleges violations of the CWA at Defendants' Neal Road Recycling and

10  Waste Facility (Facility) in Paradise, California.  <u>See id.</u> at 2.  According to Plaintiff:

11
> . . . Defendants discharge pollutant-contaminated storm water from
> the Facility into a wetland preserve protected by a conservation easement,
12
> which discharges into an unnamed tributary to Hamlin Slough, then into
> Hamlin Slough, which is a tributary to Butte Creek, which in turn is a
13
> tributary to the Sacramento River and the Sacramento-San Joaquin Delta
> ("Impacted Waters"). The Impacted Waters are waters of the United States
14
> within the meaning of the Clean Water Act. Defendants are in violation of
> both the substantive and procedural requirements of the CWA.
15

16      <u>Id.</u> at 2-3.

17      Plaintiff contends discharge of polluted storm water is prohibited except when in

18  compliance with the terms of a National Pollutant Discharge Elimination System (NDPES)

19  permit issued pursuant to 33 U.S.C. § 1342.  <u>See id.</u> at 3.  According to Plaintiff, Defendants are

20  not in compliance with the terms of NDPES General Permit No. CAS000001 (Permit).  <u>See</u> ECF

21  No. 1, pg. 3.  In addition to violating the CWA, Plaintiff alleges Defendants' conduct violates

22  California's General Industrial Permit for storm water discharge under State Water Resources

23  Control Board Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order No.

24  92-12-DWQ, Water Quality Order No. 97-03-DWQ, and Water Quality Order No. 14-0057-

25  DWQ.  <u>See</u> ECF No. 1, pg. 3.  Plaintiff further contends that Defendants' failure to comply with

26  the Permit "is recognized as a significant cause of the continuing decline in water quality of

27  receiving waters, such as the Sacramento River, and the Sacrament-San Joaquin Delta."  <u>Id.</u>

28  / / /

3

1    Plaintiff's factual allegations are set forth in paragraphs 53 through 71 of the

2    complaint as follows:

3    53. The Facility is comprised of approximately 229 acres, of which
190 acres is landfill and 140 acres is industrial use area. A site map of the

4    Facility is attached as Exhibit B. Defendants' primary industrial activities
at the Facility include handling, storing, and landfilling solid waste

5    (including inert construction and demolition materials), green waste,
recyclable materials, waste tires, stockpiled cover soil, leachate, diesel,

6    used oil, motor oil and lubricants, hydraulic oil, and cleaners. In addition,
small amounts of hazardous materials are occasionally found within the

7    incoming solid wastes and recyclables. Most of these industrial activities
occur outside in areas that are exposed to storm water and storm flows due

8    to the lack of overhead coverage, functional berms, and other storm water
controls.

9    54. The primary industrial activities at the Facility fall under
Standard Industrial Classification ("SIC") Codes 5093 ("Scrap and Waste

10    Materials") and, 4953 ("Landfills and Land Application Facilities").

11    55. Defendants collect and discharge storm water associated with
industrial activities at the Facility through at least one discharge point into
the wetland protected under the Conservation

12    Easement, which flows into an unnamed tributary to Hamlin Slough, then
into Hamlin Slough, which is a tributary to Butte Creek, which in turn is a

13    tributary to the Sacramento River and the Sacramento-San Joaquin River
Delta. The Delta and its tributaries are waters of the United States within

14    the meaning of the Clean Water Act.

15    56. Defendants obtained General Permit coverage beginning on or
about March 6, 1992. On July 13, 2018, Defendants updated their Notice
of Intent to comply with the General Permit. The Facility's Waste

16    Discharge Identification ("WDID") number is 5R04I000249.

17    57. On August 10, 2015, Defendants uploaded to the Storm Water
Multiple Application & Report Tracking System ("SMARTS") a SWPPP,
certified on June 29, 2015.

18    58. Defendants uploaded an amended SWPPP to SMARTS on or
about September 30, 2019. Between August 10, 2015 and September 30,

19    2019 Defendants did not upload any amended SWPPPs to SMARTS.

20    59. Plaintiff is informed and believes, and thereupon alleges, that
the Facility is divided into operational units referred to as Modules by
Defendants. Each Module is a portion of the Facility that is used to landfill

21    solid waste.

22    60. On February 14, 2019, Defendants became aware of landfill
leachate seeping out of the Module 4 face and into Sediment Basin 4, a storm

23    water basin located downstream of Module 4. As landfill leachate was
flowing out of Module 4 and into Sediment Basin 4, the leachate comingled

24    with industrial storm water in Sediment Basin 4. The water in the Sediment
Basin 4 was being pumped into a storm water conveyance ditch, which
discharged into the wetland protected by the Conservation Easement.

25    61. On February 27, 2019, Defendants again became aware of landfill
leachate seeping out of Module 4 and into Sediment Basin 4. Just as before,

26    the comingled leachate and storm water was pumped from Sediment Basin 4
into a storm water conveyance ditch that discharged into the wetland

27    protected by the Conservation Easement.

28    62. On March 6, 2019, Defendants became aware that Module 4
was again seeping landfill leachate into Sediment Basin 4.

4

63. Plaintiff is informed and believes, and thereupon alleges that on October 23, 2019 landfill leachate seeped into the southeast corner of the wetland protected by the Conservation Easement, and the soil saturated by the seep was subsequently excavated and removed by Defendants.

64. Plaintiff is informed and believes that Defendants' storm water controls, to the extent any exist, fail to achieve BAT and BCT standards.

65. The management practices at the Facility are wholly inadequate to prevent the sources of contamination described above from causing the discharge of pollutants to waters of the United States and fail to meet BAT and BCT standards.

66. Information available to Plaintiff indicates that as a result of these practices, storm water containing pollutants harmful to fish, plant and bird life, and human health are being discharged from the Facility to the Impacted Waters during significant rain events.

67. Information available to Plaintiff indicates that Defendants have not fulfilled the requirements set forth in the General Permit for discharges from the Facility due to the continued discharge of contaminated storm water.

68. Plaintiff is informed and believes, and thereupon alleges, that Defendants have failed to develop and implement an adequate Storm Water Pollution Prevention Plan at the Facility.

69. Plaintiff is informed and believes, and thereupon alleges, that Defendants have failed to develop and implement adequate storm water monitoring, reporting and sampling programs at the Facility.

70. Plaintiff is informed and believes, and thereupon alleges, that Defendants have discharged, and continues to discharge, unauthorized non-storm water from the Facility.

71. Plaintiff is informed and believes, and thereupon alleges, that all of the violations alleged in this Complaint are ongoing and continuing.

ECF No. 1, pgs. 11-13.

Plaintiff alleges four claims for relief as follows:

| | |
|---|---|
| FIRST CLAIM | Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan for the Facility (Violations of the Permit and 33 U.S.C. §§ 1311, 1342). |
| SECOND CLAIM | Failure to Develop and Implement the Best Available and Best Conventional Treatment Technologies at the Facility (Violations of the Permit and 33 U.S.C. §§ 1311, 1342). |
| THIRD CLAIM | Failure to Develop and Implement an Adequate Monitoring Implementation Plan for the Facility (Violations of the Permit and 33 U.S.C. §§ 1311, 1342). |
| FOURTH CLAIM | Discharge of Contaminated Storm Water From the Facility (Violations of the Permit and 33 U.S.C. §§ 1311(a), 1342). |

ECF No. 1, pgs. 13-17.

5

1         Plaintiff seeks declaratory relief, injunctive relief, and civil penalties.  See id. at

2 17-18.

3       **B.**      **Procedural History**

4         Plaintiff filed its complaint on January 16, 2020.  See ECF No. 1.  Defendants filed

5 their answer on February 27, 2020.  See ECF No. 8.  On May 2020, the Court issued a schedule

6 for the litigation.  See ECF No. 12.  A settlement conference was held on March 10, 2021, at

7 which time the case was not settled.  See ECF No. 17.  Thereafter, further settlement discussions

8 were conducted with the Court on April 16, 2021, see ECF No. 19, April 26, 2021, see ECF No.

9 20, and April 27, 2021, see ECF No. 22.  These discussions also did not result in resolution of the

10 case.  On July 29, 2021, the Court approved the parties' stipulation to extend scheduling

11 deadlines.  See ECF No. 27.  Pursuant to the parties' stipulation and the Court's order, discovery

12 in this matter closes in October 2022.  See id.

13       **C.**      **Discovery in Dispute**

14         Plaintiff served Defendants with a request for inspection of land and property

15 pursuant to Federal Rule of Civil Procedure 34 on October 23, 2020.  See ECF No. 29, pgs. 58-60

16 (Defendants' Exhibit G).  Plaintiff seeks to enter the Facility "during three rain events starting

17 November 26, 2020, through the close of discovery in this action [currently October 2022]. . . ."

18 Id. at 58.  Plaintiff asks to "inspect, photograph, test, record video, or sample" the following areas

19 of the Facility:

20             1.     Any areas or equipment at the Facility from which any liquids or

21                   runoff may drain or be drained or discharged, whether in the past, present, or future, to storm drains or other conveyances located on or

22                   adjacent to the Facility; and

23             2.     The following objects located on such areas: (a) all storm drains, (b) all paved and unpaved surfaces, (c) all loading or unloading areas,

24                   (d) all maintenance areas, (e) all storage areas, (f) all fueling areas, (g) all bermed areas, (h) all entrances and exits, (i) all storm water

25                   pollution management measures and (j) all areas of potential spills of product, fuel or other potential water pollution sources.

26             Id. at 58-59.

27 / / /

28 / / /

6

1    Plaintiff's request further stated: "Samples may include samples of soil, materials, product, or

2    runoff that may contribute pollutants to storm drains on or adjacent to Defendants' facility."  Id.

3    at 59.

4             Defendants served a written response on December 3, 2020.  See ECF No. 29, pgs.

5    62-67 (Defendants' Exhibit H).  Defendants object and refuse to permit the requested inspection

6    of the Facility.  See id. at 64.  Generally, Defendants object that the requested inspection is not

7    proportional to the needs of the case.  See id. at 64-66.  More specifically, Defendants contend the

8    inspection is not necessary because: (1) the County is in compliance with the Permit; (2) the

9    County has a Stormwater Pollution Prevention Plan in compliance with the Permit; and (3) the

10   County implements best available technology (BAT) and best control technology (BCT) to

11   control pollution.  See id. at 64-65.  Defendants further contend that health and safety risks would

12   be caused by the requested inspection.  See id. at 66.

13

14                                         **II.  DISCUSSION**

15            In the parties' joint statement, Plaintiff argues that Defendant has interposed

16   frivolous boilerplate proportionality objections to thwart permissible discovery.  See ECF No. 29,

17   pg. 8.  According to Plaintiff:

18                 A wet weather site inspection is authorized under Federal Rules of
                 Civil Procedure 34 and 26 if the inspection seeks information that is
19               relevant to any party's claims or defenses. To demonstrate that it had
                 considered the proportionality of its requested inspection, and that the
20               requested inspection was proportional to the needs of the case, in its June
                 23, 2021 and August 17, 2021 letters (Plaintiff's Exhibits A and C),
21               Plaintiff explained the importance of conducting wet weather site
                 inspections and how certain evidence can only be obtained during rain
22               events, and how that evidence was relevant to COL's claims. In response,
                 Defendants have simply repeated these boilerplate objections and have
23               attempted to shift the burden entirely onto Plaintiff. Defendants have
                 failed to make a *prima facia* argument for why the site inspection request
24               – which is routine in storm water cases, where the conditions of the
                 facility at issue, and how storm water flows through it, lie at the heart of
25               the case -- is not proportional. Defendants have not explained why they
                 only now raise proportionality concerns after allowing Plaintiff to conduct
26               a dry weather inspection of the Facility on December 3, 2020. Defendants
                 have not explained why a dry weather inspection was relevant and
27               proportionate, but a wet weather inspection is not.

28   / / /

                                                   7

Defendants argue that the boilerplate objections, which are repeated 18 times without variation in their August 24th letter, are "merely further explanations of how the proportionality objections *in the original response* to the Request (served on December 3, 2020) apply to each of the specific allegations in the several claims in the Complaint." (See Plaintiff's Exhibit F, emphasis original.) To be clear, the "original response" to which Defendants refer consists of four objections which are entirely frivolous and fail to raise any viable proportionality objections. Defendants' first three objections argue (1) that the Facility is in compliance with the General Permit, (2) that the Facility's SWPPP is in compliance and (3) that the Facility implements all necessary pollution control measures, and therefore the site inspection is unnecessary and not proportional to the needs of the case. These are absurd objections because the reason Plaintiff requested the site inspection is to prove that Defendants are (1) not in compliance with the General Permit, (2) that the Facility's SWPPP is not in compliance, and (3) that the Facility fails to implement all necessary pollution control measures. Defendants' three arguments that Plaintiff needs to prove its case before it can collect the evidence necessary to prove its case is sanctionable conduct.

Defendants' fourth objection is the only colorable objection, and yet it is also entirely frivolous in this context. Defendants argue that the site inspection is not proportional to the needs of the case because of health and safety risks created by the requested inspection. Defendants do not state with any specificity what the health and safety risks are except to the extent they reference the operation of large equipment as a potentially "significant health, safety, and welfare" issue. Yet Plaintiff has already conducted a dry site inspection at the Facility, and "operation of large equipment" did not preclude that inspection – nor did Defendants raise proportionality or relevancy objections then. The parties were able to navigate the operation of large equipment at the Facility and proceed in a safe manner. Plaintiff asked Defendants to provide information as to whether the conditions at the Facility have changed since the last inspection, but Defendants have not provided any such information. Even if there are increased health and safety risks at the Facility that have arisen since December 2020, the parties could stipulate to inspection protocols that would mitigate any potential risks. Defendants did not offer to do that, but instead unreasonably rejected the entire inspection.

Plaintiff has provided a reasoned basis for requiring the requested wet weather inspection, including explaining how the inspection directly relates to collecting evidence necessary to prove its claims. On the other hand, Defendants have failed to provide any support for their objections that the requested inspection is not proportionate to the needs of the case. Defendants should therefore be compelled to allow Plaintiff to inspect the facility under wet weather conditions.

Id. at 8-10.

Notably, Plaintiff states that it has already conducted a "dry site inspection" at the Facility. The Court presumes this refers to a prior site inspection which occurred during dry weather conditions. The Court also notes that Defendants state that such an inspection occurred. See id. at 17 (Defendants' portion of joint statement stating that "a dry weather inspection already

occurred in this case. . .").

Defendants first contend Plaintiff is attempting to use a Rule 34 site inspection to conduct an improper fishing expedition. See id. at 10-16.  Briefing on this argument – which the Court finds unpersuasive given that Defendants agreed to a prior dry weather site inspection – constitutes the vast majority of Defendants' portion of the joint statement.

More to the point, Defendants contend their general proportionality objections are appropriate and not mere boilerplate. See id. at 16.  According to Defendants:

> In addition, Defendants' proportionality objections in its original Responses (Defendants' Exhibit H) are valid. As discussed above and in each of the objections in Defendants' original Responses (Defendants' Exhibit H), the wet weather inspection sought by Plaintiff is not proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." (FRCP Rule 26(b)(1).) The validity of Defendants' proportionality objections is highlighted by (1) the fact that the wet weather inspection is merely an inappropriate fishing expedition for issues that are not relevant to the actual allegations in Plaintiff's 60-day Notice Letter and to the actual claims in the Complaint, for the reasons explained above, which shows that the requested inspection has no relevance to the "issues at stake in the action" and is not important discovery that resolves "the issues" in this case (FRCP Rule 26(b)(1); (2) the costs to Defendants and the complexities of such inspection (during wet weather at the Facility), which even Plaintiff recognizes, above, demonstrates that the "burden or expense of the proposed discovery outweighs its likely benefit" (FRCP Rule 26(b)(1); and (3) the fact that a dry weather inspection already occurred in this case, coupled with all of the relevant documentation and information regarding the Facility that is available to Plaintiff, as discussed at great length in the Defendants' original objections to this inspection, demonstrates how Plaintiff already has "access to relevant information." (FRCP Rule 26(b)(1).)
>
> ECF No. 29, pg. 17.

Defendants do not specifically address the reasons they assert in their response to Plaintiff request as to why the inspection is unnecessary.  Nor do Defendants offer any specific argument relating to their objection based on health and safety risks.

/ / /

/ / /

/ / /

1  **A.    General Proportionality Objection**

2          Defendants generally object to the requested site inspection on the grounds that it

3  is not proportional to the needs of the case under Federal Rule of Civil Procedure 26.  According

4  to Defendants, Plaintiff is using a site inspection as a fishing expedition.  Plaintiff contends the

5  proportionality objection is mere boilerplate interposed to thwart discovery.

6          Defendants' proportionality objections, as raised on their response to Plaintiff's

7  request for a wet weather site inspection, appear to this Court to in fact be boilerplate objections.

8  In particular, Defendants merely restate the language from Rule 26 and offer no further

9  explanation particular to the claims alleged in this case.  Defendants' argument in the joint

10 statement is also largely boilerplate recitation of various provisions under Rule 26 with little to no

11 analysis to the specific issues involved in this case.  As outlined above, Plaintiff alleges violations

12 of federal and state law with respect to discharge of storm water at the Facility.  Storm water is

13 most likely to result from wet weather conditions at the Facility.  It is thus proportional and

14 directly relevant to the needs of the case to permit Plaintiff to inspect the Facility during wet

15 weather when storm water is present, especially given that Plaintiff bears the ultimate burden of

16 proof.

17         Defendants' proportionality objections are overruled.

18 **B.    Specific Objections**

19         More specifically, Defendants object that the requested site inspection is not

20 necessary because: (1) the County is in compliance with the Permit; (2) the County has a

21 Stormwater Pollution Prevention Plan in compliance with the Permit; and (3) the County

22 implements BAT and BCT to control pollution.  Defendants further object that health and safety

23 risks would be caused by the requested inspection.

24         1.    Lack of Necessity

25         The Court agrees with Plaintiff that Defendants' objections on the basis that the

26 requested inspection are not necessary are absurd.  Plaintiff alleges in the complaint that

27 Defendants are violating the CWA as well as the governing Permit and associated state

28 regulations.  Plaintiff seeks a site inspection to discover facts related to these allegations.  Yet

10

1    Defendants would have the Court accept the position that discovery into alleged violations is

2    unnecessary based on their word that they are in full compliance.  In this Court, however, disputes

3    are resolved based on the facts as appropriately presented and not on a party's word.  If

4    Defendants have been and continue to be in compliance, the facts will show it.  In the meantime,

5    Plaintiff is entitled to discover what the facts truly are.  The Court will not disallow Plaintiff an

6    avenue to discover the facts simply because Defendants say they already know what they are.  To

7    do so would be to thwart the entire purpose of the adversarial process.

8            Defendants' objections based on lack of necessity – which Defendants do not

9    support in the joint statement – are overruled.

10                        2.        Health and Safety Risks

11           Plaintiff concedes in the joint statement that Defendants' objection based on health

12   and safety risks is the only colorable objection.  The Court agrees.  In their response to Plaintiff's

13   site inspection request, Defendants state:

14           There is significant public health, safety and welfare issue that is
             raised by such inspection. Plaintiff's representatives that enter areas of the
15           Facility risk their safety and the safety of workers driving large equipment
             while performing their duties at the Facility. Butte County must protect the
16           public health, safety and welfare and cannot have invitees on the Facility
             inspecting, photographing, testing, recording video, and sample numerous
17           areas of the Facility.

18   ECF No. 29, pg. 66 (Defendants' Exhibit H).

19   Again, the Court notes that Defendants do not offer any argument in support of this objection in

20   the joint statement.

21           As Plaintiff observes in the joint statement, the only potential health and safety

22   risk identified by Defendants is associated with workers driving large equipment during the

23   inspection.  Despite this alleged risk, Defendants have permitted a similar site inspection in dry

24   weather – which appears to have been conducted without incident – and have not offered any

25   argument as to why or how the potential health and safety risk to workers operating large

26   equipment has changed since the dry weather inspection or is unreasonably exacerbated in wet

27   weather.

28   / / /

                                                    11

Defendants' objection based on potential health and safety risks associated with the requested wet weather site inspection is overruled.

### III.  CONCLUSION

Because Plaintiff's motion to compel is granted, Plaintiff is entitled to an award of reasonably expenses.  See Fed. R. Civ. P. 37(a)(5)(A).  Plaintiff's counsel will be required to submit a declaration in support of reasonable expenses, to which Defendants may respond. Reasonable expenses will be awarded by separate order following submission of Plaintiff's declaration and Defendants' response thereto.

The parties were able to agree on appropriate protocols for a dry weather site inspection.  The Court expects the parties to work together in good faith to do the same with respect to the wet weather site inspection permitted by this order without further intervention by the Court.

Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion to compel, ECF No. 28, is granted;

2.      Defendants shall permit a site inspection consistent with Plaintiff's request served on October 23, 2020, within 180 days of the date of this order during wet weather conditions. In the unlikely absence of any wet weather during that period, the Plaintiff may apply to this Court for an extension of the 180 day deadline;

3.      Plaintiff shall submit a declaration in support of reasonable expenses associated with its motion to compel within seven days of the date of this order; and

4.      Defendants may submit a response to Plaintiff's declaration within seven days of the date of service thereof.

Dated:  October 26, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

12