1  ANDREW L. PACKARD (State Bar No. 168690)
   Law Offices of Andrew L. Packard
2  245 Kentucky Street, Suite B3
   Petaluma, CA 94952
3  Tel: (707) 782-4060
   Fax: (707) 782-4062
4  E-mail: andrew@packardlawoffices.com

5  [Additional counsel listed on p. 2]

6  Attorneys for Plaintiff
   CALIFORNIA OPEN LANDS

7
                    UNITED STATES DISTRICT COURT
8
                    EASTERN DISTRICT OF CALIFORNIA
9

10 CALIFORNIA OPEN LANDS,                    Case No: 2:20-cv-00123-DJC-DMC

11         Plaintiff,                        **PLAINTIFF'S STATEMENT OF
                                             UNDISPUTED FACTS IN SUPPORT
12     v.                                    OF PLAINTIFF'S MOTION FOR
                                             PARTIAL SUMMARY JUDGMENT**
13 BUTTE COUNTY DEPARTMENT OF
   PUBLIC WORKS, ERIC MILLER, AND            (FRCP 56; Eastern District Civil L.R.
14 DENNIS SCHMIDT,                           260)

15         Defendants.                       Hearing Date: February 29, 2024
                                             Hearing Time: 1:30 p.m.
16                                           Courtroom: 10, Hon. Daniel J. Calabretta
                                             Trial Date: June 24, 2024
17

18

19

20

21

22

23

24

25

26

27

28
   Plaintiff's Statement              1      Case No.: 2:20-cv-00123-DJC-DMC
   of Undisputed Facts in Support
   of Plaintiff's Motion for
   Partial Summary Judgment

Brian D. Acree (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
Tel: (510) 517-5196
E-mail: brian@brianacree.com

William N. Carlon (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
Tel: (530) 514-4115
E-mail: william@carlonlaw.com

Attorneys for Plaintiff
CALIFORNIA OPEN LANDS

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                    2          Case No.: 2:20-cv-00123-DJC-DMC

1
2

STATEMENT OF UNDISPUTED FACTS

3

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 260(a), Plaintiff

4

California Open Lands submits its Statement of Undisputed Facts in support of its

5

Motion for Partial Summary Judgment, together with references to supporting material

6

facts and cites to supporting evidence.

7
8

ISSUE NO. 1: Defendants violated section III of the General Permit by discharging

9

leachate generated from Defendants' landfill facility to waters of the United States.

| UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1.      Landfill leachate left the confines of Waste Module 4 ("Module 4") beginning sometime between February 13, 2019, when the storm began, and February 14, 2019 at around 7:44 a.m., when the leachate seeps were first observed by landfill staff.  SCS Engineers Module 4 Seep Notification dated March 13, 2019, ex. 1 at 7-14 (BUTTE01693-1700). | |
| 2.      Leachate flowed down the southern face of Module 4 and into Sediment Basin #4 – a storm water collection basin – at an estimated rate of 475 gallons per hour.  SCS Engineers Module 4 Seep Notification dated March | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                    3          Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| 13, 2019, ex. 1 at 7, 11 (BUTTE01693, 1697). | |
| 3.    Defendants pumped contaminated storm water in Sediment Basin #4 up and out to a roadside ditch which flowed to the Preserve until this pump was turned off at approximately 1:40 p.m. on February 14, 2019.  SCS Engineers Module 4 Seep Notification dated March 13, 2019, ex. 1 at 8, 11 (BUTTE01694, 1697). | |
| 4.    Contaminated storm water discharged from the Preserve via a concrete weir and flowed off the Facility to the west into an unnamed creek which flows to Hamlin Slough, which in turn is a tributary to Butte Creek.  SCS Engineers Module 4 Seep Notification dated March 13, 2019, ex. 1 at 7-14 (BUTTE01693-1700). | |
| 5.    Landfill leachate was again observed seeping out of Module 4 on February 26, 2019 at approximately 8:00 a.m.  SCS Engineers Module 4 Seep Notification dated March 13, 2019, ex. 1 | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment

4          Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| at 8, 11 (BUTTE01694, 1697). | |
| 6.     Again, the leachate flowed down the southern face of Module 4 and into Sediment Basin #4.  SCS Engineers Module 4 Seep Notification dated March 13, 2019, ex. 1 at 8, 11 (BUTTE01694, 1697). | |
| 7.     Just as before, the contaminated storm water in Sediment Basin #4 was pumped up and out into the roadside ditch that flowed into the Preserve until the pump was turned off at approximately 7:41 a.m. on February 27, 2019.  SCS Engineers Module 4 Seep Notification dated March 13, 2019, ex. 1 at 8, 11 (BUTTE01694, 1697). | |
| 8.     The Preserve discharged contaminated storm water via the concrete weir again on February 27, 2019, and continued discharging every day, except for March 5, 2019, up to and including March 8, 2019.  SCS Engineers Module 4 Seep Notification dated March 13, 2019, ex. 1 at 8, 11 (BUTTE01694, 1697).; Excerpts of the | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                    5          Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| Deposition of Eric Miller, May 25, 2023 ("Miller Depo."), ex. 2 at 108:4-109:12 (165:4-166:12). | |
| 9.     There is no dispute that Defendants discharged landfill leachate from the Facility.  SCS Engineers Module 4 Seep Notification dated March 13, 2019, ex. 1 at 7-14 (BUTTE01693-1700); Miller Depo., ex. 2 at 105:12-106:5 (140:12-141:5), 107:9-25 (142:9-25). | |
| 10.     It is undisputed that the Sacramento-San Joaquin Delta and its tributaries, including Hamlin Slough and Butte Creek, are waters of the United States within the meaning of the Clean Water Act.  Defendants' Amended Answer, ECF No. 48, 2:20-25. | |
| 11.     It is also undisputed that Defendants' discharges of landfill leachate reached these waters.  Excerpt of Defendants' Responses to Requests for Admission, Set Two, No. 65, ex. 3; Storm Water Pollution Prevention Plan, September 30, 2019 ("2019 SWPPP"), | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                6        Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| ex. 4 at 126-127 (BUTTE02952-2953); Storm Water Pollution Prevention Plan, February 21, 2021 ("2021 SWPPP"), ex. 5 at 173 (COL009310); Excerpts of the Deposition of Sean Covington ("Covington Depo."), ex. 6 at 239:11-13, 240:18-22 (33:11-13, 47:18-22). | |
| 12.     The Neal Road Recycling and Waste Facility ("Facility" or "Landfill"), located at 1023 Neal Road in Paradise, CA, is a solid waste facility.  The Facility is approximately 229 acres, and consists of five Class III waste management units, also known as modules.  2021 SWPPP, ex. 5 at 172 (COL009309). | |
| 13.     Defendants' primary industrial activity is the receiving, handling, and disposal of municipal solid waste. Defendants also manage and store landfill leachate collected from the waste modules via a leachate collection and removal system, a lined surface impoundment, and trucks that transport leachate from and around the Facility. 2021 SWPPP, ex. 5 at 179 | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                    7        Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| (COL009316). | |
| 14.    Defendants also handle a variety of other industrial materials at the Facility including, inert construction and demolition materials, green waste, recyclable materials, waste tires, stockpiled cover soil, diesel, used oil, motor oil and lubricants, hydraulic oil, and cleaners.  2021 SWPPP, ex. 5 at 180 (COL009317). | |
| 15.    The Facility has been developed in a northeast-to-southwest trending canyon eroded into a gently sloping plateau.  The canyon containing the Facility outlets to Nance Canyon to the southwest with elevations at the site dropping approximately 200 feet from the northeast to the southwest.  Storm water is collected at the Facility in a series of conveyances and basins.  2021 SWPPP, ex. 5 at 172 (COL009309). | |
| 16.    In general storm water generated at the Facility flows southwest and into the wetland Preserve before discharging off-site.  2021 SWPPP, ex. 5 at 175 | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                8        Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| (COL009312). | |
| 17.     Storm water runoff from the Facility drains in a southwesterly direction toward an unnamed intermittent stream that joins the intermittent stream in Nance Canyon approximately one mile southwest of the Facility property boundary, and approximately one-half mile southwest of Neal Road.  The combined flow from these two streams discharges into Hamlin Slough, which is tributary to Butte Creek, and ultimately the Sacramento River.  2021 SWPPP, ex. 5 at 173 (COL009310). | |
| 18.     On February 14, 2019 and February 27, 2019, substantial flows left via the concrete weir, passing over the access road along the western boundary of the Facility, and flowing in a southwesterly direction via the intermittent stream.  Declaration of Steve Jackson in Support of Plaintiff's Motion for Partial Summary Judgment, ¶¶ 6-20. | |
| 19.     The Facility is subject to several different permits – none of which | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                9        Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| authorize the discharge of landfill leachate to surface waters.  2021 SWPPP, ex. 5 at 174 (COL009311). | |

ISSUE NO. 2: Defendants have failed to comply with the SWPPP requirements of the General Permit, section X.

| UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 20.     Wetlands have existed in the Preserve since at least 2011.  Army Corps of Engineer Compliance Inspection Report, June 28, 2011, ex. 7 at 243-244; and Perpetual Conservation Easement Grant No. 2007-0051757, November 2, 2007, ex. 8 at 246-304. | |
| 21.     None of the Facility's SWPPP site maps identify the Preserve and none identify the presence of wetlands at the Preserve.  Excerpts of the Deposition of Travis Peterson ("Peterson Depo."), ex. 9 at 309:4-19 (96:4-19), 310:18-22 (97:18-22); 2021 SWPPP, ex. 5 at 208 (COL009345), 210 (COL009347), 212 (COL009349); Miller Depo., ex. 2 at 92:13-16 (38:13-16), 93:19-24 (55:19-24), 95:16-20 (60:16-20); 2019 SWPPP, ex. 4 at 158-160 (BUTTE02984-2986); | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                    10        Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| Excerpts of the Deposition of Craig Cissell ("Cissell Depo"), ex. 10 at 319:20-24 (29:20-24), 327:16-21 (112:16-21), 328:1-3, 7-9 (113:1-3, 7-9), 330:15-17, 20-21 (115:15-17, 20-21); Storm Water Pollution Prevention Plan, June 24, 2015 ("2015 SWPPP"), ex. 11 at 407-408 (BUTTE03287-3288); Miller Depo 1, ex. 2 at 112:17-21 (174:17-21), 113:5-11 (175:5-11); Storm Water Pollution Prevention Plan, August 6, 2014 ("2014 SWPPP"), ex. 12 at 684 (BUTTE04635). | |
| 22.     There is no dispute that the Preserve contains wetlands Miller Depo., ex. 2 at 90:23-91:21 (33:23-34:21). | |
| 23.     There is no dispute that the Preserve should be identified on the SWPPP site map.  Peterson Depo., ex. 9 at 310:14-22 (97:14-22). | |
| 24.     The 2014 SWPPP also fails to identify the wetlands in the Preserve. 2014 SWPPP, ex. 12 at 684 (BUTTE04635). | |
| 25.     The primary industrial activity at | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                    11     Case No.: 2:20-cv-00123-DJC-DMC

the Facility is the disposal of municipal solid waste in the active waste module units. 2014 SWPPP, ex. 12 at 587 (BUTTE04538); 2015 SWPPP, ex. 11 at 345 (BUTTE03225); 2019 SWPPP, ex. 4 at 132 (BUTTE02958); 2021 SWPPP, ex. 5 at 179 (COL009316).

26.     A waste module unit is made up of several phases, one or two of which may be active at any given time. The active phase is determined by the development plan of any given module, based on engineering and permitting constraints. Miller Depo., ex. 2 at 101:18-102:10 (80:18-81:10).

27.     Waste is placed at the working face of the active module. Miller Depo., ex. 2 at 103:21-24 (82:21-24).

28.     The working face moves daily and is closed at the end of each day with material known as daily cover. Miller Depo., ex. 2 at 103:15-20 (82:15-20).

29.     The Facility has changed the active phase where municipal solid waste has been disposed at least eight

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                12     Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| times during the Relevant Period. Excerpt of Second Quarter 2015 Monitoring Report, ex. 13 at 686; Excerpt of First Quarter 2016 Monitoring Report, ex. 14 at 690; Excerpt of Third Quarter 2016 Monitoring Report, ex. 15 at 693; Excerpt of Second Quarter 2018 Monitoring Report, ex. 16 at 696; Excerpt of Second Quarter 2020 Monitoring Report, ex. 17 at 699; Excerpt of First Quarter 2021 Monitoring Report, ex. 18 at 702; Excerpt of Second Quarter 2021 Monitoring Report, ex. 19 at 705; Excerpt of Third Quarter 2021 Monitoring Report, ex. 20 at 708. | |
| 30.     During the Relevant Period, the active Module has changed at least once, in the second quarter of 2018 when waste began being placed in Module 5, in addition to Module 4. Excerpt of Second Quarter 2018 Monitoring Report, ex. 16 at 696. | |
| 31.     None of the site maps reflect the changes to the Module or the active phases.  2021 SWPPP, ex. 5 at 208-212 (COL009345-009349); 2019 SWPPP, | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment

13      Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| ex. 4 at 158-160 (BUTTE02984-2986); 2015 SWPPP, ex. 11 at 408 (BUTTE03288); 2014 SWPPP, ex. 12 at 684 (BUTTE04635). | |
| 32.     None of the SWPPPs were revised or amended to reflect the changes to the locations of where the main industrial activities were conducted at the Facility.  2021 SWPPP, ex. 5 at 181 (COL009318); 2019 SWPPP, ex. 4 at 132 (BUTTE02958); 2015 SWPPP, ex. 11 at 356-357 (BUTTE03236-3237); 2014 SWPPP, ex. 12 at 593 (BUTTE04544). | |
| 33.     The 2014 SWPPP identifies Waste Module Unit 4 as the active module.  However, the 2014 SWPPP does not identify which phase within WMU 4 is active.  2014 SWPPP, ex. 12 at 588 (BUTTE04539). | |
| 34.     According to quarterly monitoring reports, the active phase at the beginning of the relevant period, November 15, 2014, was Module 4, Phase D.  Excerpt of Fourth Quarter and | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                    14     Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| Annual 2014 Monitoring Report, ex. 21 at 711. | |
| 35.     In the second quarter of 2015, the Facility began placing waste into Phase E of Module 4 as well.  Excerpt of Second Quarter 2015 Monitoring Report, ex. 13 at 687. | |
| 36.     The 2015 SWPPP was implemented between June 24, 2015 and September 29, 2019.  2015 SWPPP, ex. 11 at 328 (BUTTE03208); 2019 SWPPP, ex. 4 at 121 (BUTTE02947). | |
| 37.     During that period, the Facility changed the active phase at least three times.  Excerpt of First Quarter 2016 Monitoring Report, ex. 14 at 690; Excerpt of Third Quarter 2016 Monitoring Report, ex. 15 at 693; Excerpt of Second Quarter 2018 Monitoring Report, ex. 16 at 696. | |
| 38.     The first change occurred in the first quarter of 2016, when the Facility stopped placing waste in Phase E of Module 4, and only used Phase D. | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                    15        Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| Excerpt of First Quarter 2016 Monitoring Report, ex. 14 at 690. | |
| 39.     In the third quarter of 2016, Phase E was used once again, in addition to Phase D.  Excerpt of Third Quarter 2016 Monitoring Report, ex. 15 at 693. | |
| 40.     In the second quarter of 2018, the Facility opened Module 5, and began placing waste in Phase A of Module 5, as well as continuing to place waste in Phases D and E of Module 4.  Excerpt of Second Quarter 2018 Monitoring Report, ex. 16 at 696. | |
| 41.     The 2015 SWPPP was never revised or amended to reflect these changes.  Miller Depo., ex. 2 at 111:7-13 (172:7-13). | |
| 42.     The 2015 SWPPP site map was never revised or amended to reflect these changes.  Miller Depo., ex. 2 at 111:7-13 (172:7-13). | |
| 43.     The 2019 SWPPP was implemented between September 30, | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                16      Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| 2019, and February 3, 2021.  2019 SWPPP, ex. 4 at 121 (BUTTE02947); 2021 SWPPP, ex. 5 at 167 (COL009304). | |
| 44.    During that period, the Facility changed the active phases at least twice.  Excerpt of Second Quarter 2020 Monitoring Report, ex. 17 at 699; Excerpt of First Quarter 2021 Monitoring Report, ex. 18 at 702. | |
| 45.    In the second quarter of 2020, the Facility added Phase B of Module 5, and on January 14, 2021, the Facility added Phase C of Module 5. Excerpt of Second Quarter 2020 Monitoring Report, ex. 17 at 699; Excerpt of First Quarter 2021 Monitoring Report, ex. 18 at 702. | |
| 46.    The 2019 SWPPP was never revised or amended to reflect these changes.  Cissell Depo., ex. 10 at 319:3-6 (22:3-6). | |
| 47.    The 2019 SWPPP site map was never revised or amended to reflect these changes.  Cissel Depo., ex. 10 at 326:21-24 (61:21-24), 320:20-22 (28:20- | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment          17      Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| 22). | |
| 48.    The 2021 SWPPP is the current SWPPP being implemented at the Facility, since February 4, 2021.  Miller Depo., ex. 2 at 86:7-21 (27:7-21). | |
| 49.    So far, the Facility has changed the active phases at least twice during this period.  Excerpt of Second Quarter 2021 Monitoring Report, ex. 19 at 705; Excerpt of Third Quarter 2021 Monitoring Report, ex. 20 at 708. | |
| 50.    In the second quarter of 2021, the Facility only placed waste in Module 5, Phase C.  Excerpt of Second Quarter 2021 Monitoring Report, ex. 19 at 705. | |
| 51.    In the third quarter of 2021, the Facility added back Phase B of Module 5.  Excerpt of Third Quarter 2021 Monitoring Report, ex. 20 at 708. | |
| 52.    The 2021 SWPPP has not been revised or amended to reflect these changes.  Miller Depo., ex. 2 at 86:5-6 (27:5-6). | |
| 53.    The 2021 SWPPP site map has | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment

18     Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| not been revised or amended to reflect these changes.  Miller Depo., ex. 2 at 87:21-23 (28:21-23). | |
| 54.     There is no dispute that areas at the Facility where Posi-Shell® has been applied are impervious.  Peterson Depo., ex. 9 at 311:3-312:9 (117:3-118:9). | |
| 55.     There is also no dispute that areas where Posi-Shell® has been applied at the Facility should be identified as impervious surfaces on the SWPPP's site maps, but were not. Peterson Depo., ex. 9 at 311:3-312:9 (117:3-118:9). | |
| 56.     Posi-Shell® was applied to Module 4, Phases D and F in the fourth quarter of 2019.  State Water Resources Control Board Notice of Violation, August 19, 2021, ex. 22 at 713-722. | |
| 57.     The 2019 SWPPP was not revised or amended to reflect the application of Posi-Shell.  Cissel Depo., ex. 10 at 322:12-14 (31:12-14), 323:3-5, 12-14 (34:3-5, 12-14). | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                    19      Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| 58.     The 2021 SWPPP fails to identify any areas with Posi-Shell.  Miller Depo 1, ex. 2 at 93:25-94:2 (54:25-55:2), 96:2-4 (61:2-4), 97:4-6 (62:4-6). | |
| 59.     In April of 2022, the parties to this action resolved a conservation easement enforcement action brought by California Open Lands in Butte County Superior Court.  Mutual Settlement Agreement and Release, April 25, 2022, ex. 23 at 724-797. | |
| 60.     As part of that settlement, Defendant Butte County Department of Public Works agreed to install certain advanced BMPs at the Facility.  Mutual Settlement Agreement and Release, April 25, 2022, ex. 23 at 724-797. | |
| 61.     The advanced BMPs included installing a series of manually-operated flow control weir boxes to direct the flow of storm water, and installing a secondary containment system to contain leachate spill from trucks when they are filled.  Mutual Settlement Agreement and Release, April 25, 2022, | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                    20        Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| ex. 23 at 727-728. | |
| 62.    The County confirmed on July 13, 2022 that the flow control weirs were successfully installed.  Letter from Gregory Einhorn dated July 13, 2022, ex. 24 at 799-809. | |
| 63.    The secondary containment system was confirmed to have been installed on June 16, 2023.  Letter from Gregory Einhorn dated June 30, 2023, ex. 25 at 811-813. | |
| 64.    The weirs' primary function is to divert storm water, and thus they are advanced BMPs.  Mutual Settlement Agreement and Release, April 25, 2022, ex. 23 at 727. | |
| 65.    The 2021 SWPPP, and its site map, was not revised or amended to identify either the flow control weir boxes or the secondary containment system.  Cissell Depo., ex. 10 at 329:9-11 (114:9-11). | |
| 66.    Construction and demolition debris and green waste are separate | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                    21      Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| types of industrial materials that are stored in separate locations at the Facility, yet the 2021 SWPPP lumps them together and describes their locations as "Varies and See Drawing 1." Miller Depo., ex. 2, 95:10-96:3; 2021 SWPPP, ex. 5, COL009318. | |
| 67.    Defendants admit that these are different materials that should be identified separately in the SWPPP. Miller Depo., ex. 2 at 103a:10-103b:3 (95:10-96:3). | |
| 68.    Defendants also admit that these materials are not identified on the 2021 SWPPP site map.  Miller Depo., ex. 2 at 103c:4-7 (97:4-7). | |
| 69.    The 2021 SWPPP identifies leachate as an industrial material, but only describes its location as the "Class II Surface Impoundment – See Drawing 2."  2021 SWPPP, ex. 5 at 181 (COL009318). | |
| 70.    The leachate collection and removal system is the primary mechanism by which leachate is | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                    22      Case No.: 2:20-cv-00123-DJC-DMC

transported from the waste modules to the leachate impoundments, yet it is not identified as being a location where leachate is "stored, received, shipped, and handled" in the 2021 SWPPP. Cissell Depo., ex. 10 at 324:12-325:13 (54:12-55:13); 2021 SWPPP, ex. 5 at 181 (COL009318).

71.     A March 17, 2022 Technical Memorandum describes a significant change to the Facility – the installation and repair of approximately five acres of rain fly over Module 4.  Technical Memorandum: "Summary of NRRWF's Module 4 Rainfly Installation Project, 2022" dated March 17, 2022, ex. 26 at 815-833.

72.     This project was fully implemented by March 22, 2022, but the 2021 SWPPP was never revised to reflect the new conditions at Module 4. Miller Depo., ex. 2 at 104:2-10 (129:2-10).

73.     The 2021 SWPPP identifies a feature, the covered aerated static pile

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                23      Case No.: 2:20-cv-00123-DJC-DMC

("CASP"), that never came to be.  Miller Depo., ex. 2 at 88:19-22 (31:19-22).

74.     The proposed CASP project was wholly abandoned, with no prospect of it being implemented at the Facility, due to financial limitations.  Miller Depo., ex. 2 at 88:23-89:9 (31:23-32:9).

75.     Yet the 2021 SWPPP and site map, which reflect the Facility's proposal to install the CASP, were never revised to reflect this change, and Defendants concede that the site map is therefore inaccurate insofar as it depicts a proposed industrial activity that does not exist, and will never exist, at the Facility. Miller Depo., ex. 2 at 98:2-6 (63:2-6).

76.     In 2017, Defendants uploaded to SMARTS a document entitled "SWPPP Amendment No. 1."  Storm Water Pollution Prevention Plan Amendment, January 17, 2017, ex. 27 at 835-836 (BUTTE04652-4653).

77.     The document identifies a series of amendments that were purportedly made to the SWPPP, including (1)

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                    24        Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| revising the title page to identify the correct legally responsible person; (2) updating the legally responsible person's information in the certification of the SWPPP; (3) updating the amendment log; (4) updating the members of the pollution prevention team; (5) adding information about the hydrologic setting of the Facility; (6) updating the pollutant source assessment; and, (7) updating sampling procedures.  Storm Water Pollution Prevention Plan Amendment, January 17, 2017, ex. 27 at 835-836 (BUTTE04652-4653). | |
| 78.     However, Defendants admit that the SWPPP was never revised to incorporate these amendments, and no new SWPPP was certified and submitted via SMARTS that reflected these amendments.  Miller Depo., ex. 2 at 110:13-19 (171:13-19). | |

ISSUE NO. 3: Defendants have failed to develop and implement an adequate monitoring implementation plan for the Facility.

| UNDISPUTED MATERIAL FACT AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 79.     Leachate is a potential source of | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment

25        Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| pollutants at the Facility.  Miller Depo., ex. 2 at 99:25-100:15 (72:25-73:15). | |
| 80.     Yet none of the parameters identified in the Monitoring Implementation Plans in the SWPPP require the analysis of parameters that are indicators of leachate.  Peterson Depo., ex. 9 at 313 (122:15-22). | |
| 81.     The Facility is a Class III Municipal Solid Waste Landfill.  Excerpt of Waste Discharge Requirements Order R5-2022-0009, ex. 28 at 839. | |
| 82.     There is no dispute that the Facility has discharged landfill wastewater in the form of contaminated storm water.  Miller Depo., ex. 2 at 105:12-106:5 (140:12-141:5), 107:9-25 (142:9-25). | |
| 83.     Moreover, there is no dispute that Defendants' Monitoring Implementation Plan does not require analysis of the Regulated Parameters.  Excerpt of Butte County's Second Amended Responses to Requests for Admission, ex. 29 at 844-847 (Nos. 31, 33, 35, 37, 39, and | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment          26     Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| 41). | |
| 84.     When Defendants discharged contaminated storm water in February of 2019, and collected samples on February 14, 2019 and February 26, 2019, they did not have those samples analyzed for all of the Regulated Parameters.  SCS Engineers Module 4 Seep Notification dated March 13, 2019, ex. 1 at 15-81 (BUTTE01701-1767). | |
| 85.     Specifically, they did not analyze the samples of contaminated storm water for biochemical oxygen demand, ammonia (as nitrogen), α-Terpineol, benzoic acid, or *p*-Cresol.  SCS Engineers Module 4 Seep Notification dated March 13, 2019, ex. 1 at 15-81 (BUTTE01701-1767). | |
| 86.     To the extent that the Facility discharges contaminated storm water in the future, the Monitoring Implementation Plan would not require the analysis of the Regulated Parameters.  Peterson Depo., ex. 9 at 313:10-22 (122:10-22). | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                27     Case No.: 2:20-cv-00123-DJC-DMC

ISSUE NO. 4: COL has standing.

| UNDISPUTED MATERIAL FACT AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 87.    Among Plaintiff's rights and duties set forth in the Easement are the rights to preserve and protect the water quality in the Preserve, and to prevent any activity on or use of the Preserve that harms the Preserve.  Nielsen Decl., ¶ 4; Perpetual Conservation Easement Grant No. 2007-0051757, November 2, 2007, ex. 8 at 249-250. | |
| 88.    Plaintiff has an affirmative duty to require the restoration of any areas or features of the Preserve that may be damaged by any impermissible or harmful activity or use.  Nielsen Decl., ¶ 4; Perpetual Conservation Easement Grant No. 2007-0051757, November 2, 2007, ex. 8 at 249-250. | |
| 89.    The discharge of leachate-contaminated water into the Preserve harms and threatens to harm the water quality, wildlife, and other conservation | |

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                    28     Case No.: 2:20-cv-00123-DJC-DMC

values of the Preserve.  In addition, the failure to allow adequate flow volumes to the Preserve threatens the integrity of the entire wetland itself, including the plants within it, that provide habitat for wildlife in the Preserve.  Nielsen Decl., ¶ 5.

90.     Plaintiff has been directly harmed, and continues to be under the threat of future direct harms, by Defendants' discharges in violation of the Clean Water Act, which harm the water quality, wildlife, and other conservation values of the Preserve.  Nielsen Decl., ¶ 6.

91.     Plaintiff has been directly harmed, and continues to be under the threat of future direct harms, by Defendants' failure to maintain an adequate Storm Water Pollution Prevention Plan and failure to otherwise follow the reporting requirements of the CWA.  This information would assist the Regional Water Quality Control Board in monitoring the County's compliance with the CWA and the General Industrial Permit.  More importantly, it would

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment

29     Case No.: 2:20-cv-00123-DJC-DMC

greatly assist Plaintiff in managing its obligations to protect the Preserve.  The County's failure to follow these reporting requirements has harmed Plaintiff by preventing it from better understanding threats to the Preserve and hampering its obligations under the Easement. Nielsen Decl., ¶ 7.

92.     Since Plaintiff has a duty to protect the conservation values of the Preserve, Plaintiff has been harmed by the actual and threatened discharges of contaminated water into the Preserve, and by Defendants' failure to comply with the reporting requirements of the CWA.  Plaintiff has been required to spend in excess of $50,000 and over 800 hours of staff time seeking to remedy these violations of the CWA and the harm caused by them in the course of the past four and a half years.  These costs include experts in hydrology and wetlands, retained to study the wetland in the Preserve, including damage caused by the County's leachate-contaminated discharges; lab sampling and analysis; and investigative fees and

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                30      Case No.: 2:20-cv-00123-DJC-DMC

| | |
|---|---|
| costs.  Staff time involved extensive communications with the County, State and Regional water boards, and the Army Corps of Engineers, together with California Public Records Act requests, and Freedom of Information Act request to obtain information from these agencies.  Nielsen Decl., ¶ 8, exs. 1, 2. | |

Dated: January 18, 2024

LAW OFFICE OF WILLIAM CARLON


By: */s/ William Carlon*
_____
WILLIAM CARLON
Attorneys for Plaintiff
CALIFORNIA OPEN LANDS

Plaintiff's Statement
of Undisputed Facts in Support
of Plaintiff's Motion for
Partial Summary Judgment                 31     Case No.: 2:20-cv-00123-DJC-DMC