Diane G. Kindermann (SBN 144426)
dkindermann@aklandlaw.com
Glen C. Hansen (SBN 166923)
ghansen@aklandlaw.com
ABBOTT & KINDERMANN, INC.
2100 21st Street
Sacramento, California 95818
Telephone:    (916) 456-9595
Facsimile:    (916) 456-9599

Attorneys for Defendants
BUTTE COUNTY DEPARTMENT OF
PUBLIC WORKS, DENNIS SCHMIDT,
ERIC MILLER

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA OPEN LANDS, a non-profit land trust organization,<br><br>Plaintiff,<br><br>v.<br><br>BUTTE COUNTY DEPARTMENT OF PUBLIC WORKS, a political subdivision of the State of California, DENNIS SCHMIDT, an individual, and ERIC MILLER, an individual,<br><br>Defendants. | No.  2:20-CV-00123-KJM-DMC<br><br>**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>(FRCP 56; Eastern District Civil L.R. 260)<br><br>Hearing:    February 29, 2024<br>Time:        1:30 p.m.<br>Location:   Courtroom: 10<br>Judge:      Hon. Daniel J. Calabretta<br><br>Trial Date: June 24, 2024 |

-1-

Pursuant to Federal Rule of Civil Procedure 56, Local Rule 260(b) and Standing Order section I.D, Defendants Butte County Department Of Public Works, Dennis Schmidt, and Eric Miller (collectively, "Defendants" or "County") hereby submit the following Statement of Undisputed Facts (numbers 93 - 110) in opposition to Plaintiff California Open Lands' ("COL") Motion for Partial Summary Judgment.

**COL'S ISSUE NO. 1**: Defendants violated section III of the General Permit by discharging leachate generated from Defendants' landfill facility to waters of the United States.

| UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 93.    The Neal Road Recycling and Waste Facility ("NRRWF" or "Facility") has been developed in a northeast-to-southwest-trending canyon that historically eroded into a gently sloping plateau. The NRRWF comprises 229 acres. The solid waste facility permit lists the permitted area at 190 acres of which 140 acres is permitted for waste disposal. The NRRWF consists of five Class III operation modules identified as Waste Management Units (WMUs) 1, 2, 3, 4, and 5. Other significant features at the NRRWF include a Class II surface impoundment for landfill leachate and landfill gas condensate, storm water basins, a Primary Sedimentation Basin | |

-2-

| | |
|---|---|
| (PSB), and a soil cover stockpile.  Expert Report Of Eric Miller, Exhibit 3 to Deposition of Eric Miller ("Miller Depo."), Defendants' Appendix Of Exhibits In Opposition To Motion For Partial Summary Judgment ("County's Appendix"), Exhibit C at 156. | |
| 94.     On or about November 8, 2018, the Camp Fire destroyed several miles of storm drainage pipes, improvements and conveyance systems, at least thirty-five landfill gas extraction wells, several miles of landfill gas collection system infrastructure, portions of the landfill's base liner system, thousands of lineal feet of the site's leachate collection and removal system, and other critical landfill infrastructure, including downed power and phone lines and interne infrastructure, that affected the performance of pumps, instrumentation, and communications.  Plaintiff's Responses To Defendant's Interrogatories (Set Two), Response to Special Interrogatory No. 27, County's Appendix, Exhibit D at 170:1-6 (21:1-6). | |

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

95.     Prior to the Camp Fire, which initiated November 8, 2018 and burned the Facility as evidenced in photographic documentation and by personal observation, the NRRWF fully complied with the BMPs and with the requirements and regulations for storm water management in the Clean Water Act, the Industrial General Permit and the WDRs. Prior to the Camp Fire and back to 2016, there were no storm water discharges of any kind at the NRRWF either onto or off the site.  Expert Report Of Eric Miller, Exhibit 3 to Miller Depo., County's Appendix, Exhibit C at 156.

96.     Leachate discharges from the southwest toe of Waste Module Unit ("WMU") 4 of NRRWF (WMU-4 to Storm Water Basin 4 (SWB-4) and the Primary Sedimentation Basin (PSB), also known as the Conservation Easement, occurred at the NRRWF on February 14, 2019, February 26, 2019, and March 6, 2019. The leachate discharges were the direct result of a series of natural disasters which can be classified as ACTS OF GOD.  A series of manmade and natural

-4-

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

events beginning November 8, 2018, with the onset of the Camp Fire caused severe damage to the Facility. The Camp Fire destroyed the infrastructure required to operate the Facility under state and federal regulatory requirements, including the Clean Water Act, the Industrial General Permit and the WDRs. Storm Water Best Management Practices (BMPs) associated with WMUs 1, 2, 3 and 4, WMUs poly covers, soil grass covers, and other infrastructure required to meet local, state, and federal regulations were destroyed.  Expert Report Of Eric Miller, Exhibit 3 to Miller Depo., County's Appendix, Exhibit C at 156.

97.    The infrastructure destroyed by the Camp Fire was being repaired by NRRWF personnel when a series of severe local storm events caused by atmospheric rivers impacted the NRRWF beginning in late November 2018 which produced over three inches of rain in three days in a pattern of high intensity storms.  From October 2018 through December 2018 the Facility received

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| nearly eight inches of precipitation.  The site received more than five inches of rain in January 2019 with wetter weather continuing into early February 2019. NRRWF received nearly thirteen inches of rain in February 2019.  Expert Report Of Eric Miller, Exhibit 3 to Miller Depo., County's Appendix, Exhibit C at 156. | |
| 98.      BMPs that had been in place to mitigate the potential impacts of storm water sheet flows were partially repaired by NRRWF personnel, or were in the process of repair, when these series of atmospheric rivers and subsequent rainfall overwhelmed the damaged BMPs resulting in leachate seep events. Prior to the leachate seep events, the NRRWF BMPs, even though damaged and partially repaired, had effectively controlled the discharge of leachate from all the WMUs. The intense precipitation associated with these severe local storm events overwhelmed NRRWF site infrastructure. Leachate discharged from the southwest toe of WMU-4 and entered storm water contained in SWB-4. Expert Report Of Eric Miller, Exhibit 3 to Miller | |

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| Depo., County's Appendix, Exhibit C at 156-157. | |
| 99.     On February 14, 2019, an intense storm water event produced 2.75 inches of precipitation caused numerous seeps along the toe and mid-slope of the southern side of Module 4.  Liquid was observed flowing into the temporary storm water basin #4 at an estimated rate of 475 gallons per hour.  The storm water and leachate in SWB-4 was discharged by a pump that had either inadvertently been turned on or left in automatic mode, resulting with a discharge into a drainage ditch that feeds the PSB.  The seep areas on the Module 4 slope were managed as best as possible by landfill staff.  Pumps were manually shut off.  Expert Report Of Eric Miller, Exhibit 3  to Miller Depo., County's Appendix, Exhibit C at 157. | |
| 100.    Another atmospheric storm event occurred on February 26, 2019, and additional seeps were observed from the toe of Module 4 which flowed into storm water basin #4.  The storm water and leachate in SWB-4 was discharged by a | |

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| pump that was inadvertently turned on or left in automatic mode, into the drainage ditch that feeds the PSB. Pumps were manually shut off.  NRRWF personnel attempted to mitigate the discharge of leachate to storm water but were unable to complete this work as saturated surface soil conditions from the severe storm events prevented the use of heavy equipment, and the use of electrically powered equipment to install pipes necessary to discharge the leachate to a suitable impoundment.  Expert Report Of Eric Miller, Exhibit 3 to Miller Depo., County's Appendix, Exhibit C at 157. | |
| 101.   The acts of god, specifically the Camp Fire and the rain events, led to the saturation of the soils in the area, led to the saturation and introduction of leachate into that waste module, and simply reducing then the amount of leachate would not have prevented the seeps from occurring.· The seeps would have occurred due to the acts of god that introduced excess amounts of precipitation into that module."  Peterson | |

-8-

| | |
|---|---|
| Depo., County Exhibit E at 193:18-194:1 (73:18-74:1). | |
| 102.    Each of the permits for the Neal Road Recycling and Waste Facility ("NRRWF" or "Facility") cite Title 27 design storm standards that require facilities to be constructed to accommodate storm water runoff from 24-hour precipitation events with a return period of 100 years.  The permits and Title 27 do not specify what happens to atmospheric river storm water that cannot be controlled by this design standard, nor does it provide that a discharge due to conditions that overwhelm these standards is a violation. Declaration of Travis Peterson, ¶3; Deposition of Travis Peterson ("Peterson Depo.), County's Appendix, Exhibit E at 190:25-192:3 (24:25-26:3). | |
| 103.    Other NPDES permits, including the USEPA Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity that informed California's Industrial General Permit, include "bypass" and "upset" provisions that deal with the intentional or | |

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| unintentional diversion of a waste stream around pollution controls resulting in discharge. "Bypass" includes the intentional diversion of waste when it is unavoidable to prevent loss of life, personal injury, or severe property damage, or when there is no feasible alternatives to bypass. "Upset" includes an exceptional incident in which there is unintentional and temporary noncompliance with permit effluent limitations because of factors beyond reasonable control as occurred at the Facility with the atmospheric rivers in February 2019. Declaration of Travis Peterson, ¶3. | |
| 104.    The volume of precipitation introduced to the system, to the Facility, to Module 4 was not in the control of the facility itself.· It was too much for the design of the system.· Cumulatively, the system received much more precipitation than any 100-year designed storm event and therefore the seeps occurred. Peterson Depo., County's Appendix, Exhibit E at 195:20-196:1 (75:20-76:1). | |

-10-

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

105.    The designed storm is based on the -- the probability of a 100-year storm event occurring over a 24-hour period of a certain amount of rain.· Those design storms are -- are valid because of the infrequency and low probability that it will occur.· The probability that a variety of large storms would impact a specific area one after the other is exceptionally low probability that that will occur. But it cannot be taken out of context.· You can't take one specific storm all by itself and – without accounting for the impacts of immediately preceding storms.· So the entire area was overwhelmed.· The facility itself was overwhelmed.· The soils were saturated.· The ponds were full.· Declarations of emergency were in the process of being declared, if not already declared.· So if we look at any one of those storm events all by itself, it's not going to explain what happened.· What explains what happened are the exceptionally low probability of a bunch of storms of a great magnitude happening one after the other, and it actually occurred this time, and it creates a

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| situation where it's -- where the system -- or the facility is not designed to hold or withstand that amount of water.  Peterson Depo., County's Appendix, Exhibit E at 196:13-197:15 (76:13-77:15). | |
| 106.   On February 28, 2019, the Chief Administrative Officer of the County of Butte proclaimed the existence of a local emergency within the County of Butte due to "conditions of extreme peril to the safety of persons and property" from the 2019 February storms, and such proclamation was ratified by Resolution No. 19-029, adopted by the Butte County Board of Supervisors on March 5, 2019. Butte County Board of Supervisors Resolution No. 19-029, adopted March 5, 2019, County's Appendix, Exhibit A at 5-6. | |

**COL'S ISSUE NO. 2**: Defendants have failed to comply with the SWPPP requirements of the General Permit, section X.

| UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 107.   COL's claim that "[n]one of the Facility's SWPPP site maps identify the Preserve and none identify the presence | |

-12-

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

of wetlands at the Preserve," Motion, 20:9-11, to the extent that claim involves the 2021 SWPPP, is not listed in the Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act, dated November 15, 2019. Exhibit A to Complaint For Declaratory And Injunctive Relief And Civil Penalties (Docket No. 1, p. 28 of 34).

108.    COL's claim that "[n]one of the Facility's SWPPP site maps identify the Preserve and none identify the presence the wetlands at the Preserve," Motion, 20:9-11, to the extent that claim involves the 2021 SWPPP, is not listed in any Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act that was sent by COL to Defendants after November 15, 2019. Declaration of Glen Hansen In Opposition To Motion For Partial Summary Judgment ("Hansen Decl."), ¶8.

109.    The primary sedimentation basin was designed to serve as both a storm water sedimentation basin and a Preserve Area as part of an environmental mitigation program. Storm Water Pollution

-13-

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Prevention Plan, September 30, 2019 ("2019 SWPPP"), ex. 4 at 126 (BUTTE02952); Storm Water Pollution Prevention Plan, February 21, 2021 ("2021 SWPPP"), ex. 5 at 173 (C0L009310);  COL's Responses to Interrogatories, Set Two, Response to Special Interrogatory No. 27, County's Appendix, Exhibit D at 170:20-21 (21:20).

110.    The Primary Sedimentation Basin is identified in the SWPPPs , and the PSB is the Preserve.  2014 SWPPP, Ex. 12 at 684; 2015 SWPPP, Ex. 11 at 408; 2019 SWPPP, Ex. 4 at 159; 2021 SWPPP, Ex. 5 at 210; Responses to Interrogatories, Set Two, Response to Special Interrogatory No. 29, County's Appendix, Exhibit D at 178:27-179:1 (34:27-35:1).

111.    COL's claim that "each site map fails to identify the locations of industrial activity and material subject to the General Permit," Motion, 20:19-22:13, to the extent that claim involves the 2021 SWPPP on any site map after November 15, 2019, is not listed in the Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act,

-14-

| | |
|---|---|
| dated November 15, 2019.  Exhibit A to Complaint For Declaratory And Injunctive Relief And Civil Penalties (Docket No. 1, p. 28 of 34). | |
| 112.   COL's claim that "each site map fails to identify the locations of industrial activity and material subject to the General Permit," Motion, 20:19-22:13, to the extent that claim involves the 2021 SWPPP on any site map after November 15, 2019, is not listed in the Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act, dated November 15, 2019.  Exhibit A to Complaint For Declaratory And Injunctive Relief And Civil Penalties (Docket No. 1, p. 28 of 34). | |
| 113.   COL's claim that the 2021 SWPPP and site map fails to identify all impervious areas, Motion, 22:14-24, is not listed in the Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act, dated November 15, 2019.  Exhibit A to Complaint For Declaratory And Injunctive Relief And Civil Penalties (Docket No. 1, p. 28 of 34). | |

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| 114.    COL's claim that the 2021 SWPPP and site map fails to identify all impervious areas, Motion, 22:14-24, is not listed in any Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act that was sent by COL to Defendants after November 15, 2019.  Hansen Decl., ¶8. | |
| 115.    PosiShell® is only a "temporary" BMP.  Peterson Depo., County's Appendix, Exhibit E at 200:2 – 202:18 (116:2-118:18.) | |
| 116.    COL's claim that "each SWPPP fails to accurately describe the locations of all industrial materials," Motion, 24:2-28, to the extent that claim involves the 2021 SWPPP, is not listed in the Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act, dated November 15, 2019. Exhibit A to Complaint For Declaratory And Injunctive Relief And Civil Penalties (Docket No. 1, p. 28 of 34). | |
| 117.    COL's claim that "each SWPPP fails to accurately describe the locations of all industrial materials," Motion, 24:2-28, to the extent that claim involves the | |

-16-

| | |
|---|---|
| 2021 SWPPP, is not listed in any Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act that was sent by COL to Defendants after November 15, 2019. Hansen Decl., ¶8. | |
| 118.   COL's claim that the description in the 2021 SWPPP of the location of leachate as the "Class II Surface Impoundment – See Drawing 2" is legally insufficient, Motion, 24:20-28, is not listed in the Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act, dated November 15, 2019.  Exhibit A to Complaint For Declaratory And Injunctive Relief And Civil Penalties (Docket No. 1, p. 28 of 34). | |
| 119.   COL's claim that the description in the 2021 SWPPP of the location of leachate as the "Class II Surface Impoundment – See Drawing 2" is legally insufficient, Motion, 24:20-28, is not listed in any Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act that was sent by COL to Defendants after November 15, 2019.  Hansen Decl., ¶8. | |

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| 120.    The 2021 SWPPP describes the location of leachate as "Class II Surface Impoundment – See Drawing 2"; however, the location of leachate is labeled and identified in Drawing 3 of the 2021 SWPPP.  2021 SWPPP, ex. 5 at 212 (C0L009349). | |
| 121.    COL's claim that "Defendants have failed to revise the SWPPP when necessary," Motion, 25:1-26:9, to the extent that claim involves the 2021 SWPPP or any alleged failure after November 15, 2019, is not listed in the Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act, dated November 15, 2019. Exhibit A to Complaint For Declaratory And Injunctive Relief And Civil Penalties (Docket No. 1, p. 28 of 34). | |
| 122.    COL's claim that "Defendants have failed to revise the SWPPP when necessary," Motion, 25:1-26:9, to the extent that claim involves the 2021 SWPPP or any alleged failure after November 15, 2019, is not listed in any Notice Of Violations And Intent To File Suit Under The Federal Water Pollution | |

-18-

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| Control Act that was sent by COL to Defendants after November 15, 2019. Hansen Decl., ¶8. | |
| 123.  COL's claim that "the 2021 SWPPP and site maps fail to identify the advanced BMPs implemented as a result of the parties' State Court settlement agreement," Motion, 23:1-24:1, is not listed in the Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act, dated November 15, 2019.  Exhibit A to Complaint For Declaratory And Injunctive Relief And Civil Penalties (Docket No. 1, p. 28 of 34). | |
| 124.  COL's claim that "the 2021 SWPPP and site maps fail to identify the advanced BMPs implemented as a result of the parties' State Court settlement agreement," Motion, 23:1-24:1, COL's SUF 59-65, is not listed in any Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act that was sent by COL to Defendants after November 15, 2019.  Hansen Decl., ¶8. | |
| 125.  COL's claim that "the 2021 SWPPP and site maps fail to identify the advanced | |

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| BMPs implemented as a result of the parties' State Court settlement agreement," Motion, 23:1-24:1, COL's SUF 59-65, is not stated in the Complaint For Declaratory And Injunctive Relief And Civil Penalties, ¶¶72-77 (Docket No. 1, pgs. 13, 14 of 34). | |
| 126.   COL's claim that "the 2021 SWPPP and site maps fail to identify the advanced BMPs implemented as a result of the parties' State Court settlement agreement," Motion, 23:1-24:1, COL's SUF 59-65, is not listed by COL in its discovery responses.  Plaintiff's Response to Defendants' Special Interrogatories (Set One), Special Interrogatory No. 1, County's Appendix, Exhibit H at 344:15-353:23 (2:15-11:23), | |
| 127.   COL's claim that "the 2021 SWPPP and site maps fail to identify the advanced BMPs implemented as a result of the parties' State Court settlement agreement," Motion, 23:1-24:1, COL's SUF 59-65, did not accrue until after the non-expert discovery cutoff in this case, and was not included in COL's expert witness report.   SUF 62, 63; Docket Nos. | |

-20-

| | |
|---|---|
| 68, 76.  Thus, the County did not even learn about this claim until this Motion was filed, and was prevented by COL from being able to conduct any discovery or expert report on this claim.  Hansen Decl., ¶8. | |
| 128.    COL's claim that "the 2021 SWPPP was never revised to reflect" the "installation and repair of approximately five acres of rain fly over Module 4," Motion 25:7-13, COL's SUF 71, 72, is not listed in the Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act, dated November 15, 2019.  Exhibit A to Complaint For Declaratory And Injunctive Relief And Civil Penalties (Docket No. 1, p. 28 of 34). | |
| 129.    COL's claim that "the 2021 SWPPP was never revised to reflect" the "installation and repair of approximately five acres of rain fly over Module 4," Motion 25:7-13, COL's SUF 71, 72, is not listed in any Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act that was sent | |

-21-

| | |
|---|---|
| by COL to Defendants after November 15, 2019.  Hansen Decl., ¶8. | |
| 130.   COL's claim that "[t]he 2021 SWPPP identifies a feature, the covered aerated static pile ('CASP"), that never came to be" and "the 2021 SWPPP and site map, which reflect the Facility's proposal to install the CASP, were never revised to reflect this change," Motion 25:14-22, is not listed in the Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act, dated November 15, 2019.  Exhibit A to Complaint For Declaratory And Injunctive Relief And Civil Penalties (Docket No. 1, p. 28 of 34). | |
| 131.   COL's claim that "[t]he 2021 SWPPP identifies a feature, the covered aerated static pile ('CASP'), that never came to be" and "the 2021 SWPPP and site map, which reflect the Facility's proposal to install the CASP, were never revised to reflect this change," Motion 25:14-22, is not listed in any Notice Of Violations And Intent To File Suit Under The Federal Water Pollution Control Act that was sent by COL to Defendants after | |

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| November 15, 2019.  Hansen Decl., ¶8. | |
| 132.    Sample parameters required by the Facility primary and secondary Standard Industrial Code5 (SIC) numbers 4953, Landfills and Land Application Facilities, and 5093, Scrap and Waste Materials, which take into account relevant industry considerations based on the operation of such facilities, including the presence of leachate, are:<br>• pH<br>• TSS<br>• 0 G<br>• COD<br>• Fe (Total)<br>• Al (Total)<br>• Pb (Total)<br>• Zn (Total)<br>        Subchapter N contains requirements for landfills (Part 445). However, the NRRWF is not subject to Subchapter N requirements as demonstrated in the Facility SWPPP. Peterson Depo., County's Appendix, Exhibit E at 188:19-189:4; 203:7-204:17 (18:19-19:4, 119:7-120:17). | |
| 133.    The monitoring implementation plan for the Facility does not require storm water collected at the Facility to be analyzed for biological oxygen demand, and the GENERAL PERMIT does not | |

-23-

| | |
|---|---|
| require storm water collected at the Facility to be analyzed for biological oxygen demand, ammonia (as nitrogen), a-Terpineol, Benzoic acid, p-Cresol, or Phenol.  Peterson Depo., County's Appendix, Exhibit E at 188:19-189:4; 203:7-204:17  (18:19-19:4, 119:7-120:17). | |

**COL'S ISSUE NO. 4:** COL has standing.

| UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | MOVING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 134.    At no time in the "meet and confer process" described by COL on page 3, lines 15-18, of the Motion, did COL's counsel ever disclose that COL would raise the issue of COL's standing as a part of its motion for summary judgment. Email from Will Carlon to Glen Hansen, dated August 16, 2023, County's Appendix, Exhibit I; Hansen Decl., ¶7. | |
| 135.    The  "Conservation Easement" that is described on page 28, lines 20-25, of COL's Motion For Partial Summary Judgment is the same document as the Perpetual Conservation Easement Grant that is attached as Exhibit A to the Complaint for Declaratory and Injunctive | |

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| Relief filed on June 22, 2020, by California Open Lands, in the Superior Court of the County of Butte, Case No. 20CV01220;. County's Request For Judicial Notice In Opposition To Motion For Partial Summary Judgment; County's Appendix, Exhibit B. | |
| 136.   COL's discussion of its standing on pages 28 to 31 of the Motion restates allegations raised by COL in the Complaint For Declaratory And Injunctive Relief filed by COL on June 22, 2020, against Butte County Department Of Public Works in the Superior Court of California, County of Butte, case no. 20CV01220.  County's Appendix, Exhibit B; County's Request For Judicial Notice as to Exhibit B. | |

Dated:  February 1, 2024                    ABBOTT & KINDERMANN, INC.


By:   /s/ Glen C. Hansen
        GLEN C. HANSEN
        DIANE G. KINDERMANN
        Attorneys for Defendants
        BUTTE COUNTY DEPARTMENT OF
        PUBLIC WORKS, DENNIS SCHMIDT,
        ERIC MILLER

-25-

**DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**