ANDREW L. PACKARD (State Bar No. 168690)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com

[Additional counsel listed on p. 2]

Attorneys for Plaintiff
CALIFORNIA OPEN LANDS

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA OPEN LANDS,<br><br>Plaintiff,<br><br>v.<br><br>BUTTE COUNTY DEPARTMENT OF PUBLIC WORKS, ERIC MILLER, and DENNIS SCHMIDT,<br><br>Defendants. | Case No: 2:20-cv-00123-DJC-DMC<br><br>PLAINTIFF'S REPLY RE SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>(FRCP 56; Eastern District Civil L.R. 260)<br><br>Hon. Daniel J. Calabretta<br>Trial Date: June 24, 2024 |

Brian D. Acree (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
Tel: (510) 517-5196
E-mail: brian@brianacree.com

William N. Carlon (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
Tel: (530) 514-4115
E-mail: william@carlonlaw.com

Attorneys for Plaintiff
CALIFORNIA OPEN LANDS

## I. INTRODUCTION

Plaintiff's Motion for Partial Summary Judgment can be granted with respect to the alleged Monitoring Implementation Plan ("MIP") violations because it rests on two independent bases, either of which is sufficient grounds to support the motion. Defendants do not meaningfully dispute Plaintiff's first basis for alleging that the MIPs have been, and continue to be, inadequate under the requirements of the General Permit because Defendants do not analyze their storm water samples for parameters that are indicators of leachate. The Court's analysis can end there.

## II. ARGUMENT

### A. Defendants Identify Leachate as a Pollutant that Is Likely to Be Present in Storm Water Discharges, but Do Not Include Parameters that Are Indicators of Leachate in Their Monitoring Implementation Plan as Required by the General Permit.

Plaintiff does not allege, as suggested by Defendants, that all storm water discharges must be sampled for the Regulated Parameters. ECF No. 101 at 3:14-16. Instead, Plaintiff argues that all storm water discharges must be sampled for additional parameters identified by Defendants on a facility-specific basis that serve as indicators of the presence of all industrial pollutants identified in the pollutant source assessment. ECF No. 91 at 27:10-15; *see* ECF No. 92 at 52 (General Permit, section XI.B.6.c). In this case, Defendants' pollutant source assessments have identified leachate as an industrial pollutant that is likely to be present in storm water discharges. *E.g.*, ECF No. 91-2 at 140 and 189. The General Permit requires Defendants to select parameters that are indicators of the presence of leachate. ECF No. 92 at 52 (General Permit, section XI.B.6.c). Defendants may choose parameters other than the Regulated Parameters that are indicators of leachate, but they do not do so currently, and have not done so during the entire Relevant Period.

The parameters for sampling and analysis are set forth in section 9.3.1.7 of the 2019 and 2021 SWPPPs. ECF No. 91-2 at 154-155, and 203-204. These parameters include three that are required for all industrial facilities, total suspended solids, oil and grease, and pH. *Id.* at 154 and 203. In addition, the MIPs require analysis of iron, lead,

1 aluminum, zinc, and chemical oxygen demand because those pollutants are associated
2 with the Facility's Standard Industrial Classification ("SIC") codes.  ECF No. 92 at 44, 55
3 (General Permit, section XI.B.6.d and Table 1).  The General Permit Fact Sheet
4 explains how these SIC code parameters were chosen:

> In the early 1990s, U.S. EPA, through its group application program, evaluated nationwide monitoring data and developed the listed parameters and SIC associations shown in Table 1 of this General Permit. The 2008 MSGP requires that Dischargers analyze storm water effluent for the listed parameters under certain conditions. In addition to the parameters in Table 1 of this General Permit, Dischargers are required to select additional facility-specific analytical parameters to be monitored, based upon the types of materials that are both exposed to and mobilized by contact with storm water. Dischargers must, at a minimum, understand how to identify industrial materials that are handled outdoors and which of those materials can easily dissolve or be otherwise transported via storm water.

ECF No. 92 at 260-261.  The SIC code parameters are generally associated with the types of facilities that fall within their respective classifications.  However, the General Permit requires facility-specific analytical parameters to be monitored in addition to those parameters that are generally associated with certain types of industrial activities. *Id.*  Thus, the General Permit includes both sections XI.B.6.c and XI.B.6.d.  Subsection c requires facility-specific parameters identified by the discharger in the pollutant source assessment, and subsection d requires the more general parameters identified on an industry-wide basis.  *Id.*

Defendants now argue that the parameters associated with SIC codes 4953 and 5093 are indicators of leachate.  ECF No. 101 at 3:27-4:28.  Defendants argue that General Permit section XI.B.6.c is "…not needed because the parameters already selected served as indicators of the presence of identified industrial pollutants…."  *Id.* at 4:19-21.  This post-hoc argument is unsupported by any facts, conflicts with the General Permit's explanation of how these sampling requirements came to be, and conflicts with Defendants' own expert's opinion.  The General Permit requires facility-specific parameters *in addition to* the general industry parameters.  *See* ECF No. 92 at 260-261 (General Permit, Fact Sheet); ECF No. 92 at 52.  General

Permit sections XI.B.6.c and d. Defendants have identified leachate as a parameter that is likely to be present at this Facility in particular. ECF No. 91-2 at 140 and 189. When asked whether any of the monitoring implementation plans include pollutants that are indicators of leachate in the storm water sampling requirements, Defendants' expert responded that he did not believe that there were any such indicators. ECF No. 91-2 at 316:18-22. In contrast to their expert's sworn testimony, Defendants now argue that the general industry-based parameters are, in fact, indicators of the presence of leachate. ECF No. 101 at 19-21. Defendants do not provide any evidence to support this argument, and this conclusory statement alone is insufficient to defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, it is not enough to defeat a motion for summary judgment to merely raise a dispute as to which version of your own witnesses' testimony you are asking the Court to believe. *See*, *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975); *Brooks v. E.I. Du Pont De Nemours and Co., Inc.*, 944 F.Supp. 448, 450 (E.D. N.C. 1996); *Jean v. Dugan*, 814 F. Supp. 1401, 1405 (N.D. Ind. 1993).

By operating their Facility without a compliant MIP, Defendants have violated the General Permit and the Clean Water Act each day during the Relevant Period, and will continue to do so until they bring their MIP into compliance.

### III. CONCLUSION

Defendants do not meaningfully dispute Plaintiff's allegation that Defendants' MIPs are deficient because they fail require Defendants to analyze all of their storm water samples for parameters that are indicators of the presence of leachate, which was identified by Defendants in their Facility-specific pollutant source assessments as a pollutant that is likely to be present in storm water discharges from the Facility. This is sufficient basis to grant Plaintiff's Motion for Partial Summary Judgment with respect to the MIP claim.

//

//

Respectfully submitted,

Dated: April 9, 2024                                LAW OFFICE OF WILLIAM CARLON

Attorney for Plaintiff                        By:    /s/ William Carlon_____
CALIFORNIA OPEN LANDS                                William Carlon