ANDREW L. PACKARD (State Bar No. 168690)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com

[Additional counsel listed on p. 2]

Attorneys for Plaintiff
CALIFORNIA OPEN LANDS

Diane G. Kindermann (SBN 144426)
dkindermann@aklandlaw.com
Glen C. Hansen (SBN 166923)
ghansen@aklandlaw.com
ABBOTT & KINDERMANN, INC.
2100 21st Street
Sacramento, California 95818
Telephone: (916) 456-9595
Facsimile: (916) 456-9599

Attorneys for Defendants
BUTTE COUNTY DEPARTMENT OF
PUBLIC WORKS, DENNIS SCHMIDT,
ERIC MILLER

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA OPEN LANDS, <br><br> Plaintiff, <br><br> v. <br><br> BUTTE COUNTY DEPARTMENT OF PUBLIC WORKS, ERIC MILLER, AND DENNIS SCHMIDT, <br><br> Defendants. | Case No: 2:20-cv-00123-DJC-DMC <br><br> **JOINT PRETRIAL CONFERENCE STATEMENT** <br><br> (Local Rule 281) <br><br> Pre-trial Conference Date: April 18, 2024 <br> Conference Time: 1:30 p.m. <br> Courtroom: 10, Hon. Daniel J. Calabretta <br> Trial Date: June 24, 2024 |

Brian D. Acree (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
Tel: (510) 517-5196
E-mail: brian@brianacree.com

William N. Carlon (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
Tel: (530) 514-4115
E-mail: william@carlonlaw.com

Attorneys for Plaintiff
CALIFORNIA OPEN LANDS

Plaintiff California Open Lands ("Plaintiff") and Defendants Butte County Department of Public Works, Eric Miller, and Dennis Schmidt (collectively, "Defendants") hereby submit this Joint Pretrial Conference Statement pursuant to Local Rule 281 and Judge Calabretta's Standing Order.

**Neutral Joint Statement of Case**

This is a civil enforcement action brought under the citizen suit provision of the Federal Water Pollution Control Act, also known as the Clean Water Act. 33 U.S.C. §§ 1251-1387 *et seq.*  Defendants own and/or operate a landfill facility, the Neal Road Recycling and Waste Facility ("Facility"), that is subject to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board ("SWRCB") Water Quality Order No. 14-57-DWQ, as amended by Order 2015-0122 and Order 2018-0028-DWQ ("General Permit").  The General Permit authorizes the discharges of industrial storm water to waters of the United States, so long as those discharges comply with all requirements, provisions, limitations, and prohibitions in the General Permit.  General Permit, section I.A.8.

Plaintiff alleges that Defendants have discharged, and will continue to discharge, industrial storm water from their Facility in violation of the General Permit, and that Defendants violate the Clean Water Act by violating the requirements set forth in the General Permit.  Specifically, Plaintiff alleges that Defendants failed to develop and implement an adequate storm water pollution prevention plan for the Facility; that Defendants failed to develop and implement an adequate monitoring implementation plan for the Facility; and, that Defendants discharge storm water associated with industrial activities containing pollutants and in ways that are not authorized by the General Permit, or any other NPDES permit.

Defendants deny that they have discharged storm water that was contaminated by leachate into any water of the United States, as defined by the United States Supreme Court and the federal regulations applying the Clean Water Act, and therefore Defendants deny that they have violated the General Permit.    In addition, Defendants

1  deny that they have violated the requirement set forth in the General Permit.

2  Defendants also deny that they failed to develop and implement an adequate storm

3  water pollution prevention plan or an adequate monitoring implementation plan for the

4  Facility.

5  **1. Jurisdiction – Venue.**

6  The court has subject matter jurisdiction over the claims for relief set forth in the

7  complaint pursuant to 33 U.S.C. § 1365(a) (citizen suits to enforce effluent standards or

8  limitations under the Clean Water Act), 28 U.S.C. § 1311 (actions arising under the laws

9  of the United States), and 28 U.S.C. §§ 2201-2202 (power to issue declaratory

10  judgments in cases of actual controversy).

11  **2. Jury – Non-Jury.**

12  Plaintiff has not requested a jury trial. Defendants demanded a jury trial in their

13  Amended Answer.  ECF No. 48 at 16:9. Defendants hereby waive their demand for a

14  jury trial and agree to have the case decided by the Court.

15  **3. Undisputed Facts.**

16  **3.1.   Camp Fire And Atmospheric Rivers**

17  a.  On or about November 8, 2018, the Camp Fire destroyed several miles of storm

18      drainage pipes, improvements and conveyance systems, at least thirty-five

19      landfill gas extraction wells, several miles of landfill gas collection system

20      infrastructure, portions of the landfill's base liner system, thousands of lineal feet

21      of the site's leachate collection and removal system, and other critical landfill

22      infrastructure, including downed power and phone lines and interne

23      infrastructure, that affected the performance of pumps, instrumentation, and

24      communications.

25  b.  The infrastructure destroyed by the Camp Fire was being repaired by Facility

26      personnel when a series of severe local storm events caused by atmospheric

27      rivers impacted the Facility beginning in late November 2018 which produced

28      over three inches of rain in three days in a pattern of high intensity storms. The

Facility received over four inches of rainfall between November 26, 2018 and November 30, 2018 with over two inches recorded on November 30, 2018.

c. The Facility received more than five inches of rain in January 2019 with wetter weather continuing into early February 2019.

d. The Facility received nearly thirteen inches of rain in February 2019.

e. On February 28, 2019, the Chief Administrative Officer of the County of Butte proclaimed the existence of a local emergency within the County of Butte due to "conditions of extreme peril to the safety of persons and property" from the 2019 February storms, and such proclamation was ratified by Resolution No. 19-029, adopted by the Butte County Board of Supervisors on March 5, 2019.

f. The Facility's Best Management Practices ("BMPs") were overwhelmed by the storm events in February and March 2019, and leachate discharged from the southwest toe of Waste Module 4.

g. During the winter of 2018-2019, the Landfill experienced rainfall combined with (3) intense rain events difficult for the existing storm water BMPs to contain/control, and as a result, the Facility had sediment movement within the storm water system, including sediment deposits within the Preserve.

i. Due to precipitation events, the storm water controls were overwhelmed, and storm water carrying sediment flowed into the Preserve basin.

### 3.2    Leachate Seeps of 2019

a. On February 14, 2019, an intense storm water event produced 2.75 inches of precipitation, which caused numerous seeps along the toe and mid-slope of the southern side of Waste Module 4 ("Module 4") at the Facility.

b. Landfill leachate left the confines of Module 4 beginning sometime between February 13, 2019, when the storm began, and February 14, 2019 at around 7:44 a.m., when the leachate seeps were first observed by landfill staff.

c. Leachate flowed down the southern face of Module 4 and into Storm Water Basin #4 — a storm water collection basin — at an estimated rate of 475 gallons per

1    hour.

2    d.    Defendants pumped contaminated storm water in Storm Water Basin #4 up and

3    out to a roadside ditch which flowed to the Preserve until this pump was turned

4    off at approximately 1:40 p.m. on February 14, 2019.

5    e.    The Primary Sedimentation Basin ("PSB") was designed to serve as both a storm

6    water sedimentation basin and a preserve area as part of an environmental

7    mitigation program.

8    f.    The Primary Sedimentation Basin is identified in the SWPPPs, and the PSB is

9    the Preserve.

10    g.    Storm water discharged from the Preserve on February 14, 2019 via a concrete

11    weir and flowed off the Facility to the west into an unnamed creek which flows to

12    Hamlin Slough, which in turn is a tributary to Butte Creek. Another atmospheric

13    storm event occurred on February 26, 2019, and landfill leachate was again

14    observed seeping out of Module 4 on February 26, 2019.

15    h.    Leachate flowed down the southern face of Module 4 and into Storm Water Basin

16    #4 on February 26, 2019.

17    i.    The contaminated storm water in Storm Water Basin #4 was pumped up and out

18    into the roadside ditch that flowed into the Preserve until the pump was turned off

19    at approximately 7:41 a.m. on February 27, 2019.

20    j.    On February 14, 2019 and February 27, 2019, storm water flows left the

21    Preserve via the concrete weir, passing over the access road along the western

22    boundary of the Facility, and flowing in a southwesterly direction.

23    k.    The Preserve discharged storm water via the concrete weir again on February

24    27, 2019, and continued discharging every day, except for March 5, 2019, up to

25    and including March 8, 2019.

26    l.    On December 15, 2022, Defendants provided their Investigative Final Report

27    prepared by Compliance SFO, Inc. and Formation Environmental, LLC ("2022

28    IFR") to the SWRCB pursuant to the SWRCB Investigative Order WQ-2020-

0036-EXEC dated November 28, 2020. The SWRCB responded to the Investigative Final Report on May 1, 2023.

### 3.3    Defendants and the Facility

a.    Defendant Butte County Department of Public Works owns and operates the Facility.

b.    Defendant Eric Miller was the Manager of the Neal Road Recycling and Waste Facility, and in that capacity was responsible for the day-to-day operations of the Facility, including the operation and maintenance of the Facility's storm water management system.

c.    Defendant Dennis Schmidt was the Director of Butte County Department of Public Works, and in that capacity was responsible for overseeing and directing the operations of the Facility.

d.    The Neal Road Recycling and Waste Facility, located at 1023 Neal Road in Paradise, CA, is a solid waste facility.

e.    The Facility is a Class III Municipal Solid Waste Landfill.

f.    The Facility is approximately 229 acres, and consists of five Class III waste management units, also known as modules.

g.    The Facility has been developed in a northeast-to-southwest trending canyon eroded into a gently sloping plateau. The canyon containing the Facility outlets to Nance Canyon to the southwest with elevations at the site dropping approximately 200 feet from the northeast to the southwest. Storm water is collected at the Facility in a series of conveyances and basins.

h.    One of the basins into which storm water is collected is a wetland preserve, which held under easement by Plaintiff and protected in perpetuity.

i.     Wetlands have existed in the Preserve since at least 2011, and continue to exist there today.

j.    Storm water runoff from the Facility drains in a southwesterly direction toward an unnamed intermittent stream that joins the intermittent stream in Nance Canyon

1   approximately one mile southwest of the Facility property boundary, and

2   approximately one-half mile southwest of Neal Road. The combined flow from

3   these two streams discharges into Hamlin Slough, which is tributary to Butte

4   Creek, and ultimately the Sacramento River.

5   k.   Plaintiff sent Defendants a letter notifying Defendants of the alleged violations,

6   pursuant to Clean Water Act section 505(a), 33 U.S.C. § 1365(a), on November

7   15, 2019.

8   l.   Plaintiff's claim that none of the Facility's SWPPP site maps identify the Preserve

9   and none identify the presence of wetlands at the Preserve, to the extent that

10   claim involves the 2021 SWPPP, is not listed in the letter sent by Plaintiff on

11   November 15, 2019.

12   m.   Plaintiff's claim that each site map in the SWPPPs fails to identify the locations of

13   industrial activity and material subject to the General Permit, to the extent that

14   claim involves the 2021 SWPPP on any site map after November 15, 2019, is not

15   listed in the letter sent by Plaintiff on November 15, 2019.

16   n.   Plaintiff's claim that the 2021 SWPPP and site map fails to identify all impervious

17   areas is not listed in the letter sent by Plaintiff on November 15, 2019.

18   o.   Plaintiff's claim that the description in the 2021 SWPPP of the location of

19   leachate as the "Class II Surface Impoundment – See Drawing 2" is not listed in

20   the letter sent by Plaintiff on November 15, 2019.

21   p.   Plaintiff's claim that Defendants have failed to revise the SWPPP when

22   necessary, to the extent that claim involves the 2021 SWPPP or any alleged

23   failure after November 15, 2019 is not listed in the letter sent by Plaintiff on

24   November 15, 2019.

25   q.   Plaintiff's claim that the 2021 SWPPP and site maps fail to identify the advanced

26   BMPs implemented as a result of the parties' State Court settlement agreement

27   is not listed in the letter sent by Plaintiff on November 15, 2019.

28   r.   Plaintiff's claim that the 2021 SWPPP was never revised to reflect the installation

1  and repair of approximately five acres of rain fly over Module 4 is not listed in the
2  letter sent by Plaintiff on November 15, 2019.

3  s.  Plaintiff's claim that the 2021 SWPPP identifies a feature, the covered aerated
4      static pile ("CASP"), that never came to be, and that the 2021 SWPPP and site
5      map, which reflect the Facility's proposal to install the CASP, were never revised
6      to reflect this change, is not listed in the letter sent by Plaintiff on November 15,
7      2019.

8  t.  At no time after November 15, 2019, did Plaintiff ever send to Defendants
9      another Notice Of Violations And Intent To File Suit Under The Federal Water
10     Pollution Control Act.

11 u.  Defendants' primary industrial activity is the receiving, handling, and disposal of
12     municipal solid waste in the active waste module units. Defendants also manage
13     and store landfill leachate collected from the waste modules via a leachate
14     collection and removal system, a lined surface impoundment, and trucks that
15     transport leachate from and around the Facility.

16 v.  Waste is placed at the working face of the active module.

17 w.  A waste module unit is made up of several phases, one or two of which may be
18     active at any given time. The active phase is determined by the development
19     plan of any given module, based on engineering and permitting constraints.

20 x.  The working face moves daily and is closed at the end of each day with material
21     known as daily cover.

22 y.  Defendants also handle a variety of other industrial materials at the Facility
23     including, inert construction and demolition materials, green waste, recyclable
24     materials, waste tires, stockpiled cover soil, diesel, used oil, motor oil and
25     lubricants, hydraulic oil, and cleaners.

26 z.  The Facility has changed the active phase where municipal solid waste has been
27     disposed at least eight times between November 15, 2014 through to the
28     present.

aa.   Between November 15, 2014 through to the present, the active Module has changed at least once, in the second quarter of 2018 when waste began being placed in Module 5, in addition to Module 4.

None of the SWPPPs were revised or amended to reflect the changes to the locations of where the main industrial activities were conducted at the Facility. The 2014 SWPPP identifies Waste Module Unit 4 as the active module.

bb.   The 2014 SWPPP does not identify which phase within Waste Module 4 was active between November 15, 2014 and June 23, 2015.

cc.   The active phase at the Facility during the period beginning November 15, 2014, was Module 4, Phase D.

dd.   In the second quarter of 2015, the Facility began placing waste into Phase E of Module 4 in addition to Phase D of Module 4.

ee.   The 2015 SWPPP was implemented between June 24, 2015 and September 29, 2019.

ff.   Between June 24, 2015 and September 29, 2019, the Facility changed the active phase at least three times.

gg.   In the first quarter of 2016, the Facility stopped placing waste in Phase E of Module 4, and only used Phase D.

hh.   In the third quarter of 2016, the Facility started placing waste in Phase E again, in addition to Phase D.

ii.   In the second quarter of 2018, the Facility opened Module 5, and began placing waste in Phase A of Module 5, as well as continuing to place waste in Phases D and E of Module 4.

jj.   The 2015 SWPPP was never revised or amended to reflect the changes to the active phases or change in module.

kk.   The 2015 SWPPP site map was never revised or amended to reflect the changes to the active phases or change in module.

ll.   The 2019 SWPPP was implemented between September 30, 2019 and February

3, 2021.

mm.    Between September 30, 2019 and February 3, 2021, the Facility changed the active phase at least twice.

nn.    In the second quarter of 2020, the Facility added Phase B of Module 5.

oo.    On January 14, 2021, the Facility added Phase C of Module 5, in addition to Phase B.

pp.    The 2019 SWPPP was never revised or amended to reflect the changes to the active phases**.**

qq.    The 2019 SWPPP site map was never revised or amended to reflect the changes to the active phases.

rr.    The 2021 SWPPP is the current SWPPP being implemented at the Facility, since February 4, 2021.

ss.    The Facility has changed the active phases at least twice since February 4, 2021.

tt.    In the second quarter of 2021, the Facility only placed waste in Module 5, Phase C.

uu.    In the third quarter of 2021, the Facility added back Phase B of Module 5, in addition to Phase C.

vv.    The 2021 SWPPP has not been revised or amended to reflect the changes to the active phase.

ww.    The 2021 SWPPP site map has not been revised or amended to reflect the changes to the active phase.

xx.    Posi-Shell® was applied to surfaces on Module 4 at Phases D and F in the fourth quarter of 2019.

yy.    Areas at the Facility where Posi-Shell® has been applied are considered impervious surfaces.

zz.    The areas where Posi-Shell® has been applied at the Facility were not identified as impervious surfaces on any of the SWPPP's site maps.

aaa.  The 2019 SWPPP was not revised or amended to reflect the application of Posi-Shell®.

bbb.  The 2021 SWPPP does not identify any areas with Posi-Shell®.

ccc.  By at least July 13, 2022, advanced BMPs in the form of flow control weirs had been installed at the Facility.

ddd.  By at least June 16, 2023, advanced BMPs in the form of a secondary containment system to contain leachate spills from trucks where they are filled had been installed at the Facility.

eee.  The 2021 SWPPP, and its site map, was not revised or amended to identify either the flow control weirs or the secondary containment system.

fff.  Construction and demolition debris, tires, and green waste are separate types of industrial materials that are stored in separate locations at the Facility.

ggg.  A March 17, 2022 Technical Memorandum describes a significant change to the Facility — the installation and repair of approximately five acres of rain fly over Module 4.

hhh.  The rainfly project was fully implemented by March 22, 2022, but the 2021 SWPPP was never revised to reflect the new conditions at Module 4.

iii.  The 2021 SWPPP identifies a feature, the covered aerated static pile ("CASP"), that never came to be.

jjj.  The proposed CASP project was wholly abandoned, with no prospect of it being implemented at the Facility, due to financial limitations.

kkk.  The 2021 SWPPP and site map, which reflect the Facility's proposal to install the CASP, were never revised to reflect that the CASP was no longer going to be installed.

lll.  The 2021 site map is therefore inaccurate insofar as it depicts a proposed industrial activity that does not exist, and with no prospect of it being implemented in the future, at the Facility.

mmm. . The heading of section 7.2.2 of the 2019 SWPPP and the 2021 SWPPP states:

"POLLUTANTS LIKELY TO BE PRESENT IN INDUSTRIAL STORM WATER
DISCHARGES AND AUTHORIZED NSWD."  Under that heading it states:  "As
described in Section 7.2.1 above, the following pollutants could be present in
storm water discharges from the Facility: … Leachate. "

nnn.   Defendants did not analyze storm water discharge samples collected on
February 14, 2019 and February 26, 2019 for biochemical oxygen demand,
ammonia (as nitrogen), a-Terpineol, benzoic acid, or p-Cresol.

   **4.  Disputed Factual Issues.**

a.   Whether the County completed numerous improvements to the leachate and
storm water control measures as of December 19, 2019.

b.   Whether the volume of precipitation introduced to the Facility and Module 4, was
too much for the design of the system.

c.   Whether the discharges of leachate from the Facility were due to factors beyond
Defendants' reasonable control.

d.   Whether Facility personnel attempted to mitigate the discharge of leachate
contaminated storm water into the Preserve.

e.   Whether the storm water discharged from the Preserve on February 14, 2019,
February 27, 2019, February 28, 2019, March 1, 2019, March 2, 2019, March 3,
2019, March 4, 2019, March 6, 2019, March 7, 2019, and March 8, 2019 was
contaminated with landfill leachate.

f.   Whether Defendants ever discharged landfill leachate from the Facility during the
Relevant Period.

g.   Whether the storm water discharged from the Preserve on February 14, 2019,
and each day from February 27, 2019, up to and including March 8, 2019, except
for March 5, 2019, ever reached a water of the United States for which there is
jurisdiction under the Clean Water Act.

h.   Whether the storm water discharges on February 14, 2019 and February 27,
2019 flowed via the intermittent stream in Nance Canyon.

i.    Whether the Facility's SWPPP site maps identify the Preserve.

j.    Whether the Facility's SWPPP site maps identify the presence of wetlands at the Preserve.

k.    Whether the site maps accurately reflect where solid waste is being landfilled at the Facility during the period beginning February 14, 2019 through to the present.

l.    Whether any of the monitoring implementation plans in the Facility's SWPPPs require analysis of storm water samples for parameters that are indicators of leachate.

m.    Whether at any time after November 15, 2019, the Facility ever discharged landfill wastewater from the Facility. Whether the 2021 SWPPP describes the location of the leachate at the Facility.

n.    The 2021 SWPPP does not accurately identify or describe where construction and demolition debris is located at the Facility.

o.    The 2021 SWPPP does not accurately identify or describe where green waste is located at the Facility.

p.    The 2021 SWPPP does not accurately identify or describe where tires are located at the Facility.

**5.  Disputed Evidentiary Issues.**

Plaintiff is not aware of any disputed evidentiary issues.

Defendants will file a motion in limine to preclude and prevent all evidence as to whether the 2021 SWPPP and site maps fail to identify the advanced BMPs implemented as a result of the parties' State Court settlement agreement on the grounds that such claim (1) was not included in Plaintiff's letter of November 15, 2019; (2) was not included in the Complaint; (3) was not listed in Plaintiff's discovery responses; (3) did not even arise until after the close of non-expert discovery cutoff, and so Defendants were prevented from conducting any discovery on this claim; (4) was not included in Plaintiff's expert witness disclosures and so Defendants were not able to question Plaintiff's expert witness about this claim; and (5) was never raised by Plaintiff

until it filed its Motion For Partial Summary Judgment in January 2024.

**6.  Special Factual Information in Certain Actions.**

No special factual information requirements apply to this action.

**7.  Relief Sought.**

Plaintiff seeks declaratory relief in the form of an order finding Defendants have violated and continue to be in violation of the Clean Water Act as alleged in Plaintiff's First, Second, Third, and Fourth claims for relief.

Plaintiff also seeks an injunction prohibiting Defendants from discharging pollutants from the Facility in violation of the Clean Water Act; prohibiting Defendants from further violating the substantive and procedural requirements of the General Permit; and requiring Defendants to take all appropriate actions to restore water quality in the waters into which they discharge.

Plaintiff also seeks an order requiring Defendants to pay civil penalties of $37,500 per day per violation for all violations occurring between December 6, 2013 through November 2, 2015, and $66,712 per day per violation for all violations occurring after November 2, 2015.

Defendant denies that Plaintiff is entitled to any relief.

**8.  Points of Law.**

**8.1 Clean Water Act**

a.  Following *Sackett v. EPA* (2023) 598 U.S. 651, and amended regulations applying the *Sackett* decision, 88 Fed.Reg. 61964–61969, amending 88 Fed.Reg. 61964, jurisdiction under the Clean Water Act extends to "only those relatively permanent, standing or continuously flowing bodies of water 'forming geographic features' that are described in ordinary parlance as 'streams … oceans, rivers, [and] lakes'" and not "occasional, intermittent," or "ephemeral" flows. Tributaries of such waters must be "relatively permanent, standing or continuously flowing bodies of water" to be deemed jurisdictional.

b. The Clean Water Act is a strict liability statute and does not excuse "de minimis" or "rare" violations. *Union Oil*, 813 F.2d at 1491; *Stoddard v. Western Carolina Regional Sewer Authority*, 784 F.2d 1200, 1208 (4th Cir. 1986); *Atlantic States Legal Foundation v. Tyson Foods*, 897 F.2d 1128, 1142 (11th Cir. 1990); *Hawaii's Thousand Friends v. City & Cnty. Of Honolulu*, 821 F. Supp. 1368, 1392 (D. Haw. 1993).

c. Subject matter jurisdiction attaches if a citizen plaintiff shows a person is "in violation" or a permit condition at the time the complaint is filed either: "(1) by proving violations that continue on or after the date the complaint is filed or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Sierra Club v. Union Oil Co.*, 853 F.2d 667, 671 (9th Cir. 1988).

d. To establish a violation of the Clean Water Act, a plaintiff need only prove that the discharger violated the terms and conditions of its NPDES permit. 33 U.S.C. §§ 1311(a), 1342(k); *Hawaii's Thousand Friends v. City and County of Honolulu*, 821 F. Supp 1368, 1392 (D. Haw. 1993) ("NPDES compliance is a matter of strict liability and a defendant's intent and good faith are irrelevant"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Failure to comply with the SWPPP requirements of the General Permit is a violation of the Clean Water Act. 33 U.S.C. §§ 1311(a), 1365(f); *see Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000) ("the Clean Water Act allows citizen suits based on violations of any conditions of an NPDES permit, even those which are purely procedural").

e. The rare or de minimus nature of a violation is irrelevant to determining liability under the Clean Water Act. *Sierra Club v. Union Oil Company of California*, 813 F.2d 1480, 1291 (9th Cir. 1987), rev'd on other

grounds, 485 U.S. 931, amended by 853 F.2d 667 (9th Cir.), remanded to, 716 F.Supp. 429 (N.D. Cal. 1988) (CWA and the regulations promulgated under it "make no provision for 'rare' violations").

f.  Self-monitoring reports are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

g.  Section 309(d) of the CWA sets forth the following penalty factors that district court judges are to use when determining an appropriate civil penalty: "the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require." 33 U.S.C. Section 1319(d).

**8.2 Theories of Recovery**

a.  Plaintiff's Theories of Recovery

i.  Defendants failed to develop and implement an adequate storm water pollution prevention plan for the Facility during the Relevant Period.

i.  Defendants failed to include adequate site maps in each SWPPP during the entire Relevant Period (November 15, 2014 through to the present).

ii.  Each SWPPP failed to accurately describe the locations of all industrial materials during the period in which each SWPPP was in effect.

iii.  Defendants failed to revise their SWPPP when necessary.

ii.  Defendants failed to implement Best Available Technology Economically Achievable and Best Conventional Pollutant

Control Technology at the Facility.

    i. The February 2019 leachate seeps, and subsequent seeps from Modules 4 and 5, demonstrate the Facility's failure to implement adequate measures to control and contain leachate on site.

    ii. Defendants have implemented inadequate pollution control measures to prevent pollutants, such as sediment, in storm water discharges.

iii. Defendants failed to develop and implement an adequate monitoring and implementation plan for the Facility during the Relevant Period.

    i. Defendants' monitoring and implementation plans do not require analysis for parameters that are indicators of leachate.

    ii. Defendants failed to analyze discharges of contaminated storm water for parameters required by Subchapter N C.F.R. §§ 401-471, and are likely to repeat this violation in the future.

iv. Defendants discharged contaminated storm water from the Facility in violation of the General Permit's water quality-based conditions and the Clean Water Act because Defendants' Facility is not permitted to discharge landfill leachate to surface waters.

b. Defendants deny each and every theory of recovery proffered by Plaintiff, and each and every basis for such theories.

**8.3 Disputed Points of Law**

a. Whether the permits for the Facility, implicitly include the "bypass" and "upset" provisions of other NPDES permits, including the USEPA Multi-

Sector General Permit for Stormwater Discharges Associated with Industrial Activity that informed California's Industrial General Permit, which are intended to provide regulatory relief when conditions beyond the design standards are experienced, and intentional or unintentional diversion of a waste stream around pollution controls result in discharge that would otherwise be prohibited.

b. Whether facilities that are constructed to accommodate storm water runoff from a design storm of a 24-hour precipitation event with a return frequency of 100 years, but regulations do not specify what happens to atmospheric river storm water that cannot be controlled by this design standard, and which do not provide that a discharge due to conditions that overwhelm these standards, are in violation of the General Permit or the Clean Water Act.

c. Following *Sackett v. EPA* (2023) 598 U.S. 651, and amended regulations applying the *Sackett* decision, 88 Fed.Reg. 61964–61969, amending 88 Fed.Reg. 61964, whether the intermittent stream that is adjacent to the Facility is merely ephemeral drainage and not a jurisdictional Water of the United States under the Clean Water Act.

d. Whether Defendants are required to identify on their SWPPP site maps the current locations of all active phases and waste modules at the Facility.  General Permit, section X.E.3.f.

e. Whether Defendants are required to amend the SWPPP every time the location of the active phases and waste modules at the Facility are changed.

f. Whether all areas of industrial activity are sufficiently identified in each of Defendants' SWPPPs.

g. Whether Defendants are required to identify on their SWPPP site maps all locations where Posi-Shell® has been applied.  General Permit,

section X.E.3.d.

    h.  Whether the leachate seeps that occur at Defendants' Facility are violations of the General Permit's requirements to implement Best Available Technology Economically Achievable and Best Conventional Pollutant Control Technology.

    i.  The issue which the Court required supplemental briefing in its Order Re Supplemental Briefing (ECF No. 99), on March 19, 2024.

    j.  Whether there is a requirement that the 2021 SWPPP must be revised if the proposed CASP project has not yet been installed.

**9.  Abandoned Issues.**

    a.  Plaintiff: None.

    b.  Defendants:  None.

**10. Witnesses.**

    a.  Plaintiff's Witnesses

        i.  Matthew Hagemann, expert

        ii.  Stephen Jackson

        iii.  Stephanie Young

        iv.  Erin Garner

        v.  Yvonne West

        vi.  Eric Miller

        vii.  Craig Cissell

        viii.  Wayne Pearce

        ix.  Patrick DeCarvalho

        x.  Jimmie Galloway

        xi.  Holly Nielsen

    b.  Defendants' Witnesses

        i.  Eric Miller, County's person most knowledgeable and expert

        ii.  Craig Cissell

     iii.  Travis Peterson, expert

     iv.  Sean Covington, expert

     v.  Ginger Fodge, expert

     vi.  Stephanie Young

     vii.  Erin Garner

     viii.  Yvonne West

     ix.  Wayne Pearce

     x.  Patrick DeCarvalho

     xi.  Jimmie Galloway

     xii.  Kim Haas

     xiii.  Todd Storti

     xiv.  Kevin Miller

**11. Exhibits – Schedules and Summaries.**

  a.  Joint Exhibits

     i.  National Pollutant Discharge Elimination System General Permit No. CAS000001, State Water Resources Control Board Water Quality Order 2014-0057-DWQ as amended by Order 2015-0122-DWQ and Order 2018-0028-DWQ.

     ii.  National Pollutant Discharge Elimination System General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 92-12-DWQ, as amended by Order Nos. 97-03-DWQ and 2014-0057-DWQ.

     iii.  Storm Water Pollution Prevention Plan, August 6, 2014

     iv.  Storm Water Pollution Prevention Plan, June 24, 2015

     v.  Storm Water Pollution Prevention Plan, September 30, 2019

     vi.  Storm Water Pollution Prevention Plan, February 21, 2021

     vii.  Perpetual Conservation Easement Grant No. 2007-0051757, November 2, 2007

b.  Plaintiff's Exhibits

    i.  Central Valley Regional Water Quality Control Board Notice of Violations, August 21, 2019

    ii.  State Water Resources Control Board Notice of Violation, Waste Discharge Requirements Order R5-2011-00449, Industrial Storm Water General Permit, and Clean Water Act Section 301, June 11, 2020

    iii.  State Water Resources Control Board Notice of Violation, August 19, 2021

    iv.  SCS Engineers Module 4 Seep Notification, March 13, 2019

    v.  SCS Engineers Storm Water Basin #4 Remediation Report, September 10, 2019

    vi.  Army Corps of Engineer Compliance Inspection Report, June 28, 2011

    vii.  Second Quarter 2015 Monitoring Report

    viii.  First Quarter 2016 Monitoring Report

    ix.  Third Quarter 2016 Monitoring Report

    x.  Second Quarter 2018 Monitoring Report

    xi.  Second Quarter 2020 Monitoring Report

    xii.  First Quarter 2021 Monitoring Report

    xiii.  Second Quarter 2021 Monitoring Report

    xiv.  Third Quarter 2021 Monitoring Report

    xv.  Fourth Quarter and Annual 2014 Monitoring Report

    xvi.  State Water Resources Control Board Comments to the Investigative Work Plan, July 1, 2021

    xvii.  Mutual Settlement Agreement and Release, April 25, 2022

    xviii.  Letter from Gregory Einhorn, July 13, 2022

    xix.  Letter from Gregory Einhorn, June 16, 2023

xx.   Technical Memorandum: "Summary of NRRWF's Module 4 Rainfly Installation Project, 2022," March 17, 2022

xxi.   Storm Water Pollution Prevention Plan Amendment, January 17, 2017 (Ex. 3 to Miller 1 Depo.)

xxii.   NRRWF Pump Refueling Log, 2/13/19 – 3/7/19 (Ex. 4 to Miller 1 Depo.)

xxiii.   NRRWF Module 4/5 Interface Seep Notification, February 8, 2021

xxiv.   NRRWF Module 4B Seep Notification, October 26, 2021

xxv.   Videos of leachate flowing from the seeps at Module 4 into Sediment Basin #4, being pumped into a roadside ditch, flowing to the Preserve, and discharging from the Preserve, February 14, 2019

xxvi.   Videos of leachate flowing from the seeps at Module 4 into Sediment Basin #4, being pumped into a roadside ditch, flowing to the Preserve, and discharging from the Preserve February 27, 2019

xxvii.   Photographs and Video from December 14, 2021 inspection

xxviii.   Lab results from storm water sampling conducted on February 14, 2019

xxix.   Lab results from storm water sampling conducted on February 26, 2019

xxx.   Regional Board Inspection Report, October 28, 2019

xxxi.   Level 1 ERA report for iron and magnesium, April 2020

xxxii.   Regional Board Soil Remediation Report, LCRS Pipe Leak, April 15, 2020

xxxiii.   Golder Joint Technical Document, June 2020

xxxiv.   State Water Resources Control Board Investigative Final

1    Report, May 1, 2023

2    xxxv.   Contemporaneous notes of Steven Jackson, March 7, 2019.

3    xxxvi.   Butte County Department of Public Works Operating Budget

4    Enterprise Fund for Fiscal Years 2017-2021

5    xxxvii.   Gallaway Consulting, Inc. Neal Road Preserve Mitigation

6    Monitoring Annual Report, December 5, 2008

7    xxxviii.   California Open Lands Preserve Inspection, May 31, 2019

8    xxxix.   Contemporaneous notes of Eric Miller re leachate spill, October

9    17, 2019

10    xl.   NRRWF Regional Board Notification of October 17, 2019

11    leachate spill.

12    xli.   State Water Resources Control Board Record of

13    Communication, November 4, 2019

14    xlii.   State Water Resources Control Board Discharge Calculations,

15    January 23, 2020.

16    xliii.   Video of trucks being loaded with leachate from lined leachate

17    pond, January 24, 2020.

18    xliv.   Videos of native soil stock pile erosion into Preserve, January

19    24, 2020.

20    xlv.   Videos of stockpiled material within Preserve, January, 24,

21    2020.

22    xlvi.   Videos of access road going over leachate pipe, January 24,

23    2020.

24    xlvii.   Leachate Collection and Control System Pipe Leak Soil

25    Remediation Report, March 11, 2020

26    xlviii.   Addendum to LCRS Pipe Leak Spill Remediation Report, July

27    28, 2020.

28    c.   Defendants Exhibits:

i. Resolution No. 19-029 passed and adopted on March 5, 2019, by the Butte County Board of Supervisors

ii. Investigative Final Report, prepared by Compliance SFO, Inc. & Formation Environmental, LLC, dated December 14, 2022

iii. Weekly Inspection Reports of Stephen Jackson

iv. Emails from Holly Nielsen to Stephen Jackson dated June 28, 2019

v. Email from Stephen Jackson to Laura Shively dated June 28, 2019

vi. Email from Patrick DeCarvalho to Holly Nielsen dated June 28, 2019

vii. Handwritten Note dated June 28, 2019

viii. Email from Holly Nielsen to Todd Storti and Erick Miller dated July 15, 2019

ix. Email from Laura Shively to Holly Nielsen dated July 29, 2019

x. Email from Stephen Jackson to Greg Ghelson dated July 29, 2019

xi. Letter from Todd Storti to Holly Nielsen dated September 10, 2019

xii. Letter from Jody Gallaway to USACE dated November 26, 2002

xiii. Letter of Transmittal from Gallaway Consulting, Inc., with attachment, to Betty Wane, USFWS

xiv. USACE Permit Evaluation and Decision Document for Categorically Excluded Projects

xv. USACE letter to Mike Crump, dated December 9, 2003

xvi. Letter from Elena Gregg to USACE dated June 14, 2010

xvii. Email from Stephen Jackson to Eric Miller dated September 25,

1   2019

2   xviii.   Email from Stephen Jackson to Patrick DeCarvalho dated

3           September 26, 2019

4   xix.    Email from Stephen Jackson to Eric Miller dated September 26,

5           2019

6   xx.     Letter from Todd Storti to USACE dated July 31, 2019

7   xxi.    Daily Inspection Forms

8   xxii.   Report Environmental Violations – submitted, received August

9           23, 2019

10  xxiii.  Record of Communication dated August 22, 2019

11  xxiv.   Emails from Holly Nielsen to Patrick DeCarvalho dated June

12          29, 2019

13  xxv.    Email from Patrick DeCarvalho to Eric Miller dated July 1, 2019

14  xxvi.   November 2018 Camp Fire Damage to Leachate Conveyance

15          Line, 4th Quarter Monitoring Report Addendum

16  xxvii.  Letter from Todd Storti to Kate Burger dated August 23, 2019

17  xxviii. Technical Memorandum from SCS Engineers dated September

18          23, 2019

19  xxix.   CVRWQCB's Operations Plan for Managing Storm Water and

20          Leachate, Neal Road Class III Municipal Solid Waste Landfill

21          dated October 29, 2019

22  xxx.    CVRWQCB's Transmittal of Compliance Inspection Report

23          dated December 27, 2019

24  xxxi.   Letter from Stephen Erthe to Stephen Jackson dated January

25          15, 2020

26  xxxii.  Photographs of Camp Fire damage to the Facility

27  xxxiii. Photographs of repairs to rainfly in September 2019

28  xxxiv.  Letter from Stephen Jackson to Yvonne West dated August 25,

2020

xxxv. Letter from Laura Drabandt to Eric Miller dated January 29, 2020

xxxvi. Letter from Stephanie Young to Neal Road Landfill File dated January 23, 2020

xxxvii. Interview at Neal Road and Waste Facility dated October 15, 2019 (Stephen Jackson)

xxxviii. Interview at Neal Road and Waste Facility dated November 4, 2019 (Eric Miller)

xxxix. Interview at Neal Road and Waste Facility dated November 4, 2019 (Todd Storti)

xl. Interview at Rolls, Anderson & Rolls Civil Engineers, October 16, 2019 (Holly Nielsen and Herb Votaw)

xli. Telephone Interview, December 18, 2019 (Heidi Cummings)

xlii. Interview at Neal Road Recycling, December 20, 2019 (Kevin Miller)

xliii. Defendants reserve the right to include additional exhibits in their continuing analysis of the approximately 20,000 pages of documents produced in this case.

12. **Discovery Documents.**

a. Plaintiff anticipates entering the following discovery documents as evidence at trial:

i. Deposition transcripts and exhibits of Defendant Eric Miller, who was designated as one of Defendant Butte County Department of Public Works' persons most knowledgeable, and as Defendants' expert witness;

ii. Deposition transcripts and exhibits of Craig Cissell, who was designated as one of Defendant Butte County Department of

Public Works' persons most knowledgeable.

    b.  Defendants anticipate entering the following discovery documents as evidence at trial:

        i.  Deposition transcripts and exhibits of Holly Nielsen, who was designated as Plaintiff's person most knowledgeable

        ii.  Plaintiff's Responses to Defendant's Interrogatories (Set One) served in this case on November 4, 2022

        iii.  Plaintiff's Responses To Defendant's Interrogatories (Set Two), which responses were served in this case on November 4, 2022

    c.  The following documents or portions thereof may be introduced for purposes of impeachment, rehabilitation, or similar purposes or if a witness is unavailable.

        i.  Deposition transcripts and exhibits of Holly Nielsen

        ii.  Deposition transcripts and exhibits of Defendants' experts Eric Miller, Travis Peterson, Sean Covington, and Ginger Fodge.

        iii.  Deposition transcripts and exhibits of Plaintiff's expert Matthew Hagemann.

### 13. Further Discovery or Motions.

Plaintiff does not anticipate seeking any further discovery or making any motions.

Defendants will make a motion under FRCP 36(b) seeking leave of court to amend their responses to Requests For Admissions, Set Two, Requests Nos. 47, 48 and 50 from "Admit" to "Deny."  The basis for that motion are (1) that such Requests For Admissions asked Defendants to admit that the wetlands portion of the Preserve are Waters of the United States ("WOTUS"): (2) that at the time Defendants provided responses to those Requests For Admission on February 6, 2023, those wetlands were included in broad definition of WOTUS in the federal regulations promulgated by the U.S. Environmental Protection Agency and the U.S.Army Corps of Engineers; (3) but

then **after** those responses were provided by Defendants, the U.S. Supreme Court issued its decision in *Sackett v. EPA,* 598 U.S. 651 (May 25, 2023), and on September 8, 2023, the EPA/USACE amended the regulations, 88 Fed.Reg. 61964–61969, amending 88 Fed.Reg. 61964, such that WOTUS (i.e., jurisdiction under the Clean Water Act) extends to "only those relatively permanent, standing or continuously flowing bodies of water 'forming geographic features' that are described in ordinary parlance as 'streams … oceans, rivers, [and] lakes'" and not "occasional, intermittent," or "ephemeral" flows; wetlands must have a "continuous surface connection" to a WOTUS that makes it "difficult to determine where the 'water' ends, and the 'wetland' begins"; and tributaries of such waters must be "relatively permanent, standing or continuously flowing bodies of water" to be deemed jurisdictional; (4) in light of the Supreme Court's decision in *Sackett*, and in light of the amended regulations that define WOTUS following *Sackett*, Defendants should be granted leave to change their responses to the Requests For Admission because such responses are now factually and legally wrong." As a matter of law, the wetlands in the Preserve are not Waters of the United States.

Also, Defendants will make the motion in limine discussed in Section 5, above.

**14. Stipulations.**

The Parties have made the following stipulations regarding exhibits:

    a. The following documents prepared by the State Water Resources Control Board are authentic and admissible pursuant to Federal Rules of Evidence rules 402 and 901:

| Date | Document | Bates Numbers |
|---|---|---|
| November 6, 2018 | Industrial General Permit | |
| August 19, 2021 | State Water Resources Control Board Notice of Violation | |
| July 1, 2021 | State Water Resources Control Board Comments | |

| | to the Investigative Work Plan | |
|---|---|---|
| May 1, 2023 | State Water Resources Control Board Investigative Final Report | |

b. The following documents prepared by the Central Valley Regional Water Quality Control Board or its staff members are authentic and admissible pursuant to Federal Rules of Evidence rules 402 and 901:

| Date | Document | Bates Numbers |
|---|---|---|
| August 21, 2019 | Central Valley Regional Water Quality Control Board Notice of Violations | |

c. The following documents prepared by the Army Corps of Engineers or its staff members are authentic and admissible pursuant to Federal Rules of Evidence rules 402 and 901:

| Date | Document | Bates Numbers |
|---|---|---|
| June 28, 2011 | Army Corps of Engineer Compliance Inspection Report | |

d. The following documents prepared by or on behalf of the Butte County Department of Public Works are authentic and admissible pursuant to Federal Rules of Evidence rules 402 and 901:

| Date | Document | Bates Numbers |
|---|---|---|
| August 6, 2014 | Storm Water Pollution Prevention Plan | |
| June 24, 2015 | Storm Water Pollution Prevention Plan | |
| September 30, 2019 | Storm Water Pollution | |

| | Prevention Plan | |
|---|---|---|
| February 21, 2021 | Storm Water Pollution Prevention Plan | |
| | Quarterly and Annual Monitoring Reports | |
| March 13, 2019 | SCS Engineers Module 4 Seep Notification | |
| September 10, 2019 | SCS Engineers Storm Water Basin #4 Remediation Report | |
| July 13, 2022 | Letter from Gregory Einhorn | |
| June 16, 2023 | Letter from Gregory Einhorn | |
| March 17, 2022 | Technical Memorandum: "Summary of NRRWF's Module 4 Rainfly Installation Project, 2022" | |
| February 8, 2021 | NRRWF Module 4/5 Interface Seep Notification | |
| October 26, 2021 | NRRWF Module 4B Seep Notification | |
| December 14, 2022 | Investigative Final Report, Prepared By Compliance SFO, Inc. and Formation Environmental, LLC | |

**15. Amendments – Dismissals.**

None.

**16. <u>Settlement Negotiations.</u>**

Defendants made a final settlement offer on April 10, 2024, and Plaintiff is considering that offer.  The Parties have made significant progress toward reaching a settlement, but there are still a few issues on which the Parties have not yet reached agreement.

**17. <u>Agreed Statements.</u>**

Plaintiff does not believe it is feasible to present any part of the action upon an Agreed Statement of Facts.

**18. <u>Separate Trial of Issues.</u>**

None.

**19. <u>Impartial Experts – Limitation of Experts.</u>**

None.

**20. <u>Attorneys' Fees.</u>**

Plaintiff will move for attorneys' fees within twenty-eight (28) days after entry of a final judgment in Plaintiffs' favor pursuant to Federal Rule of Civil Procedure, rules 54(d), 58 and Local Rules 230 and 293.

**21. <u>Trial Exhibits.</u>**

No special handling required.

**22. <u>Trial Protective Order.</u>**

Plaintiffs are not seeking a trial protective order pursuant to Local Rule 141.1(b)(2).

**23. <u>Miscellaneous.</u>**

None.

Respectfully submitted,

Dated:  April 11, 2024          LAW OFFICE OF WILLIAM CARLON


                                By:    /s/ William Carlon_____
                                       William Carlon
                                       Attorney for Plaintiff

CALIFORNIA OPEN LANDS

Dated:  April 11, 2024                ABBOTT & KINDERMANN, INC.


By:    /s/ Glen Hansen_____
       Glen Hansen
       Attorney for Defendants
       BUTTE COUNTY DEPARTMENT OF PUBLIC
       WORKS, DENNIS SCHMIDT, ERIC MILLER