ANDREW L. PACKARD (State Bar No. 168690)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel:  (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com

Attorneys for Plaintiff
CALIFORNIA OPEN LANDS

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA OPEN LANDS, a non-profit land trust organization,<br><br>Plaintiff,<br><br>vs.<br><br>BUTTE COUNTY DEPARTMENT OF PUBLIC WORKS, DENNIS SCHMIDT, AND ERIC MILLER,<br><br>Defendants. | Case No. 2:20-cv-00123-DJC-DMC<br><br>**[PROPOSED] CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387)** |

**WHEREAS**, Plaintiff California Open Lands (hereinafter "COL") is a nonprofit land trust organization dedicated to the preservation and management of open space, the exchange of scientific information, public education, and responsible conservation of the natural resources of the Sacramento River Watershed;

**WHEREAS**, Defendant Butte County Department of Public Works (hereinafter "County" or "Defendant") owns and/or operates an approximately 229-acre solid waste disposal and management facility at 1023 Neal Road, in Paradise, California ("Facility");

**WHEREAS**, COL and Defendant collectively shall be referred to as the "Parties;"

**WHEREAS**, storm water discharges at the Facility are directed through a series of basins, pipes and ditches to a primary sedimentation basin ("PSB") located on the south west part of the Facility;

- 1 -

**WHEREAS,** a wetland preserve exists within the PSB, and the Preserve as defined in the Perpetual Conservation Easement Grant, recorded in the Official Records, County of Butte, on November 2, 2007, contains actively managed areas and passively managed areas. The storm water detention basin is to be actively managed and the wetland area that exists within the Preserve is to be passively managed.

**WHEREAS**, the Perpetual Conservation Easement Grant, recorded in the Official Records, County of Butte, on November 2, 2007, Section F, provides: "The Preserve includes the water in wetlands and drainage features, including water resulting from direct precipitation onto the Preserve and/or flows through the drainage features from natural storm events which partially or completely fill depressions on the surface of the Preserve. The Preserve will contain actively managed areas and passively managed areas. The storm-water detention basin will be actively managed, and the wetland area will be passively managed."

**WHEREAS**, the Parties cannot agree on the physical extent of the Preserve and do not agree on the specific definitions of any of the terms and phrases "Preserve," "wetland preserve," "storm water detention basin," "PSB," "actively managed areas" and "passively managed areas" as used herein;

**WHEREAS**, the wetland preserve is protected under an easement that COL contends currently renders the wetland preserve "waters of the United States," and which Defendant contends has a "dual permitted function" as a storm water detention basin;

**WHEREAS**, Defendant contends that storm water collected in the PSB passes through a Portland Cement Concrete discharge structure located on the west side of the wetland preserve; Defendant contends that the discharge of storm water from the PSB and wetland preserve only occurs when there are extreme weather events known as an atmospheric river; Defendant contends that storm water discharges at the base of the discharge structure pass over large boulders, a gravel road, and then a gently sloping southwest trending grass covered field; Defendant contends that storm water discharges from the discharge structure flow in a southwest direction by gravity sheet flow; Defendant contends that no defined drainage channel exists in the grass covered field directly connecting the discharge structure discharge

- 2 -

point to the unnamed intermittent drainage way located in Nance Canyon; Defendant contends that the southwest gravity sheet flow of storm water discharged from the discharge structure would flow about one mile to the unnamed Nance Canyon intermittent drainage way; and Defendant contends that it is unlikely that Facility storm water discharges enter this intermittent drainage way given the travel distance from the Facility discharge point to the intermittent drainage way;

**WHEREAS**, the Facility collects and discharges storm water from the Facility into storm water conveyances that discharge to an unnamed tributary to Hamlin Slough, which drains to Hamlin Slough, which is a tributary of Butte Creek, which is a tributary of the Sacramento River, the Sacramento-San Joaquin Delta and the San Francisco Bay (a map of the Facility as configured at the time of the execution of this agreement is attached hereto as **Exhibit A** and incorporated herein by reference);

**WHEREAS**, Plaintiff contends that, and in Defendants' discovery responses in February 2023 Defendants admitted that, the unnamed tributary to Hamlin Slough, Hamlin Slough, Butte Creek, the Sacramento River, the Sacramento-San Joaquin Delta and the San Francisco Bay are waters of the United States within the meaning of the Clean Water Act;

**WHEREAS**, storm water discharges associated with industrial activity are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001, State Water Resources Control Board ("State Board") Water Quality Order No. 14-57-DWQ, issued pursuant to Section 402(p) of the Clean Water Act ("Act"), 33 U.S.C. § 1342(p), (hereinafter "General Permit");

**WHEREAS**, on or about November 15, 2019, Plaintiff provided written notice of Defendant's alleged violations of the Act ("Notice Letter"), and of its intention to file suit against Defendant to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the U.S. Attorney General; the Executive Director of the State Board; the Executive Officer of the Regional Water Quality Control Board, Central Valley Region ("Regional Board"); and to Defendant, as required by the Act, 33 U.S.C. § 1365(b)(1)(A) (a true and correct copy of COL's Notice Letter is attached hereto

- 3 -

as **Exhibit B** and incorporated herein by reference);

**WHEREAS**, Defendant denies the occurrence of the alleged violations and maintain that the County has complied at all times with the provisions of the General Permit and the Clean Water Act or, alternatively, that there are no "ongoing and continuous" violations of the General Permit, or the Clean Water Act and contend that any occurrences were the result of the Camp Fire and Acts of "God;"

**WHEREAS**, on or about January 16, 2020, COL filed a complaint against Defendants in the United States District Court, Eastern District of California ("Action");

**WHEREAS**, the Parties agree that it is in their mutual interest to resolve this matter as to all entities and persons named in the Notice Letter and the Action without further litigation and enter into this Consent Decree ("Agreement");

**WHEREAS**, for purposes of this Agreement only, the Parties stipulate that venue is proper in this Court, and that Defendant does not contest the exercise of jurisdiction by this Court to dismiss this matter with prejudice under the terms of this Agreement;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES AS FOLLOWS:**

**I.   PROCEDURAL COMMITMENTS OF THE PARTIES**

**1.** Within five (5) calendar days of mutual execution of this Agreement, the Parties shall submit this Agreement to the United States Department of Justice ("USDOJ") and the United States Environmental Protection Agency ("USEPA") for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c);

**2.** At the time the Agreement is submitted for review to the USDOJ and the USEPA, COL shall submit a Notice of Settlement in the District Court and inform the Court of the expected expiration of the statutory review period identified above;

**3.** Within ten (10) calendar days of expiration of the forty-five (45)-day statutory review period, or the earlier receipt of non-objection from the United States Department of Justice, the Parties shall file this Consent Decree with the Court and request that it be entered

by the Court (the date of entry of this Agreement shall be referred to herein as the "Entry Date").

4.      Within ten (10) calendar days of the Entry Date, COL shall file a joint stipulation dismissing the individual defendants Dennis Schmidt and Eric Miller.

## II.    COMMITMENTS OF DEFENDANT

1.      **Compliance with General Permit and the Clean Water Act.**  Throughout the term of this Agreement, the County shall continue to implement all storm water Best Management Practices ("BMPs") measures needed to operate the Facility in compliance with the requirements of the General Permit and the Clean Water Act.

2.      **Implementation of Specific Storm Water Best Management Practices.** Unless otherwise indicated below, on or before **August 15, 2024**, the County shall complete the implementation and incorporation into the Facility's Storm Water Pollution Prevention Plan ("SWPPP") of the following storm water source control measures and BMPs at the Facility:

(a)      ***Repairs and Improvements to Access Road Bisecting Module 4 at Basin 4.***  In order to prevent the potential discharge of leachate from the upper slopes of Module 4 into Basin 4, the County, in response to the Complaint, has installed and maintains the gravel-filled trench along the upslope side of the access road crossing the face of the module above the basin of Module 4 to convey any leachate or leachate-contaminated storm water to the Facility's lined leachate pond (See **Exhibit A**); and shall install and maintain the berm along the downslope side of this access road to prevent leachate or leachate-contaminated storm water from crossing the access road and flowing into Basin 4.

(b)      ***Repairs and Improvements to Module 4's South Slope Facing Basin 4***.  In order to prevent erosion of Module 4's south slope facing Basin 4, the County shall, three (3) times during the term of the Agreement, have a qualified third-party consultant fully review the condition of the slope surface, including any surfacing used to prevent erosion.  The first such review under this Agreement shall be completed on or before October 1, 2024, a second

review will occur after the 2024-2025 wet season and before October 1, 2025, and a third review will occur after the 2025-2026 wet season and before October 1, 2026.  The County shall continue to monitor the condition of the shell as part of its ongoing storm water BMPs and as part of its compliance with Waste Discharge Requirements Order R5-2022-0009, Butte County, Neal Road Class III Municipal Solid Waste Landfill, 1023 Neal Road, Chico, California, Butte County ("WDRs") including, but not limited to, L. Stormwater Provisions 1-5.  Within thirty (30) days of the completion each such assessment, the County shall share the consultant's written report of findings with COL and, within ninety (90) days, weather permitting, implement all of the consultant's feasible recommendations for slope surface repair or maintenance.  All BMPs, including those for surfacing, shall be installed in accordance with the manufacturer's recommendations.

(c)     ***Improvements to System Routing Storm Water from Basin 4***.  The County shall maintain the automated existing pump in Basin 4 installed on December 5, 2011, to maintain appropriate freeboard and prevent slope destabilization.  If any changes to Basin 4 occur as part of Facility operations, the County will continue to monitor storm water to prevent slope destabilization.  Pursuant to the Parties' April 25, 2022 Settlement Agreement ("State Court Settlement") resolving Case No. 20CV01220 section 6.A, the County has installed a gate located along the north portion of the unlined drainage ditch in the area adjacent to Module 4, such that the gate will cause water that is pumped into the ditch from Basin 4 to flow to the PSB.  Nothing in this Agreement shall be interpreted to conflict with the requirements of Section 6.A of the State Court Settlement.

(d)     ***Prevention of All Leachate Discharges to Waters of the United States***.  The County shall comply with the Clean Water Act's prohibitions regarding the discharge of leachate or leachate-contaminated storm water to waters of the United States.  In the event that leachate ever contaminates the storm water collected in Basin 4, the County shall ensure that the Facility valve system routes all such leachate-contaminated storm water to the lined leachate basin located in the southwest corner of the Facility.

(e)      ***Maintenance of the Eastern Third of the PSB and Sediment Basins No. 2, 3 and 4***.  As part of ongoing Facility maintenance efforts, the County shall remove all accumulated fines in the eastern third of the PSB and Sediment Basins No. 2, 3 and 4 on or before October 31, 2024, and again on or before October 31, 2025.

(f)      ***Improved Employee Training & QISP Certification.***  Defendant shall continue to improve its employee training in regard to the Industrial General Permit, industrial storm water BMP installation, and storm water monitoring training.  Defendant shall ensure that, at all times during the Term of this Consent Decree, the Facility shall have at least one member of the Storm Water Pollution Prevent Team designated in the SWPPP formally certified as a Qualified Industrial Storm Water Practitioner ("QISP");

(g)      ***Automated Rain Gauge and Collection of Rain Data***.  In response to the Complaint, the County installed and maintains an automated rain gauge at the Facility and will share such data with Plaintiff for the Term of this Consent Decree, on December 31, 2024 for the preceding four months' data, on April 30, 2025 for the preceding four months' data, on December 31, 2025 for the preceding four months' data, on April 30, 2026, for the preceding four months' data, and on December 31, 2026, for the preceding four months' data.

**3.      SWPPP Amendments.**  On or before August 15, 2024, Defendant shall amend, and certify and upload to SMARTS, the Facility SWPPP to incorporate all of the relevant requirements of this Agreement and the General Permit.  These revisions shall reflect all then-current site conditions and practices and identify potential pollutants and their sources, identify the location of all pervious and impervious areas, drop inlets, subsurface conveyances, BMPs, and storm water flow vectors.  These revisions shall also provide for required data logging, weekly monitoring and maintenance of all Facility collection and discharge points during the Wet Season; and the annual storm water management training for Facility employees described in (f) above.  The Facility SWPPP shall be amended to add an additional Sampling Location to supplement the Sampling Location defined as "SW-1" at the current location (at the Basin Spillway) which is located where storm water enters the revised Primary Sediment Basin area, as identified on **Exhibit A**.

- 7 -

**4.      Sampling Frequency.**  For the 2024-2025 and 2025-2026 reporting years ending June 30th (2025 and 2026), Defendant shall collect and analyze samples from four (4) Qualifying Storm Events[1] ("QSEs") within the first half of each reporting year (July 1 to December 31), and four (4) QSEs within the second half of each reporting year (January 1 to June 30).  A trail camera will be installed by the County, which will monitor possible QSE discharges from the concrete discharge structure located on the west side of the PSB to document whether or not there has been a QSE.  The storm water sample results shall be compared with the values set forth in **Exhibit C**, attached hereto, and incorporated herein by reference.  If the results of any such samples exceed the parameter values set forth in **Exhibit C**, Defendant shall comply with the "Exceedance Response Actions" requirements set forth below in Section 6.

**5.      Sampling Parameters.**  All eight (8) samples in each reporting year shall be analyzed for each of the constituents listed in **Exhibit C** by a laboratory accredited by the State of California, except for pH, which shall be analyzed in the field using a handheld, properly calibrated pH meter.  All samples collected from the Facility shall be delivered to the laboratory as soon as possible to ensure that sample "hold time" is not exceeded.  Analytical methods used by the laboratory shall comply with General Permit requirements in regard to both test method and detection limit.  See General Permit, Table 2, at 43.  All sampling results shall be provided to COL within fifteen (15) business days of Defendant's receipt of the laboratory report from each sampling event, pursuant to the Notice provisions below.

**6.      Exceedance Response Actions ("ERA"); COL's Review of ERA Reports; Meet-and-Confer.**  If the results of sampling discussed herein exceed the applicable NALs set forth in **Exhibit C**, Defendant shall comply with the applicable requirements of the General Permit, including the applicable Exceedance Response Action ("ERA") described in Sections

---

[1] A Qualifying Storm Event (QSE) is defined in the General Permit as a precipitation event that: (a) Produces a discharge for at least one drainage area; and (b) is preceded by 48 hours with no discharge from any drainage area.  *See* General Permit, Section XI(b)(1).

I.M and XII of the General Permit.  Any Level 1 ERA Evaluation required under Section XII.C.1 of the General Permit during the term of this Agreement shall be memorialized in a memorandum shared with Plaintiff pursuant to the Notice provisions of this Agreement on or before its due date (October 1 following the applicable reporting year); at Plaintiff's request, the Parties' counsel shall meet and confer in good faith regarding the sufficiency of the evaluation pursuant to the dispute resolution provisions herein. Any Level 1 ERA Report required under Section XII.C.2 of the General Permit during the term of this Agreement shall be shared with Plaintiff pursuant to the Notice provisions of this Agreement on or before its due date (January 1); at Plaintiff's request, the Parties' counsel shall meet and confer in good faith regarding the sufficiency of the report pursuant to the dispute resolution provisions herein.  Any Level 2 ERA Action Plan required under Section XII.D.1 of the General Permit during the term of this Agreement shall be shared with Plaintiff concurrently with uploading it to the SMARTS platform on or before pursuant to the Notice provisions of this Agreement on or before its due date (January 1); Any Level 2 ERA Technical Report required under Section XII.D.2 of the General Permit during the term of this Agreement shall be shared with Plaintiff concurrently with uploading it to the SMARTS platform on or before its due date (January 1); at Plaintiff's request, the Parties shall meet and confer in good faith regarding the sufficiency of the report pursuant to the dispute resolution provisions herein.

**7.  Inspections During the Term of this Agreement.**  Defendant shall permit representatives of COL to perform up to two (2) physical inspections of the Facility during the term of this Agreement.  COL shall provide at least seventy-two (72) hours advance notice of such physical inspection, except that Defendant shall have the right to deny access if circumstances would make the inspection unduly burdensome and pose significant interference with business operations or any party/attorney, or the safety of individuals.  In such case, Defendants shall specify at least three (3) dates within the two (2) weeks after the initially-noticed date upon which a physical inspection by COL may proceed.  If COL cancels less than twenty-four hours prior to the scheduled site visit, this scheduling of a site visit shall constitute the one of the two site visits to which COL is entitled under this Agreement.  These

- 9 -

inspections shall be performed by COL's counsel and consultants and may include sampling, photographing, and/or videotaping; COL shall provide Defendant with copies of all sampling reports, photographs and/or video within forty-five (45) days of receipt thereof.  At the County's election, County representatives, including counsel and consultants, may be present at any COL site visits.

**8. Site Visit Protocol**.

At any site visit, COL shall adhere to the following protocols:

a)   COL representatives may only have vehicular access and temporary parking on established roads, which are shown on **Exhibit A** hereto.

b)   All COL representatives must wear a florescent safety vest provided by the County at all times.

c)   All COL representatives must wear safety or hiking boots, and wear a hard hat provided by the County.

e)   No dogs or other pets are allowed on the Facility or Easement unless they are a service animal and written proof of such is with the COL representative at the site visit.

f)   COL representatives shall wear long pants, due to the potential presence of rattlesnakes, as well as other wildlife such as reptiles, birds, bobcat/lynx, etc., and vegetation such as poison oak, etc.

**9.   Communications to/from Regional and State Water Boards.**  During the term of this Agreement, the County shall provide COL with copies of all documents submitted to, or received from the Regional Water Board or the State Water Board concerning storm water management at the Facility, including, but not limited to, all documents and reports submitted to the Regional Water Board and/or State Water Board as required by the current General Permit.  Such courtesy copies of documents and reports shall be provided to COL pursuant to the Notice provisions set forth below within ten (10) days of the County's submission(s) to such agencies.

**10.    SWPPP Amendments.**  Pursuant to the Notice provisions set forth below, Defendant shall provide COL with a complete copy of any updated versions of the Facility SWPPP by email within ten (10) days of uploading it to the State Water Board's SMARTS system during the term of the Agreement.

**11.    Conservation Easement.**  The County reserves the right to seek judicial approval to terminate the Conservation Easement.  If a court approves the termination of the Conservation Easement, the County will record a termination of the Conservation Easement once all other necessary legal proceedings to terminate the Conservation Easement are concluded.  COL reserves all rights to challenge any efforts to terminate the Conservation Easement and the Parties acknowledge that the Conservation Easement is not modified in any way by the terms of this Agreement.

**III.    COMMITMENTS OF PLAINTIFF**

1.    **COL's Entry into Conservation Area**.  To the extent that the Conservation Easement remains in effect during the Term of this Agreement, COL may enter the Conservation Easement with all the rights granted to it under the Conservation Easement, including during the compliance monitoring inspections described herein, during the Term of this Agreement.  However, if during the Term of this Consent Decree, a court terminates COL's rights under the Conservation Easement, COL shall retain all rights granted to it under this Consent Decree during the Term of this Agreement notwithstanding the termination of COL's rights under the Conservation Easement.

**IV.    MITIGATION, COMPLIANCE MONITORING AND FEES AND COSTS**

1.    **Mitigation Payment.**  As mitigation to address any potential harms from the Clean Water Act violations alleged in the Action, the County shall, within thirty (30) calendar days of the Entry Date, remit a check in the amount of Three Hundred Thousand Dollars ($300,000.00), payable to "Rose Foundation for Communities and the Environment" to the following address: Rose Foundation, Attn: Jodene Isaacs, 201 4th Street, Suite 102, Oakland,

- 11 -

CA 94607-4369.  These funds shall be used for the exclusive purpose of grantmaking to acquire and manage land and conservation easements to study and improve water quality in Butte County, exclusive of any property within ten (10) miles of the Facility.

**2.      Compliance Monitoring Funding.**  To defray COL's reasonable investigative, expert, consultant and attorneys' fees and costs associated with monitoring Defendant's compliance with this Agreement, Defendant agrees to reimburse COL an amount not to exceed Eleven Thousand Five Hundred Dollars ($11,500) for each of the two Wet Seasons covered by this Agreement (Twenty-three Thousand Dollars ($23,000) total for the term of the Agreement).  Compliance monitoring activities may include, but shall not be limited to, site inspections, review of water quality sampling reports, evaluations, technical reports, action plans and annual reports, as well as discussions with Defendant concerning the ERA reports and action plans referenced above.  These tasks will be conducted by COL's staff, counsel and experts, and COL shall provide the County with an invoice detailing all of the compliance monitoring activities and the County shall, within thirty (30) days, remit payment to COL for the amount invoiced as set forth below.  The Parties agree that County's failure to timely remit such payments shall be a material breach of this Agreement.  Payment shall be made payable to the "Law Offices of Andrew L. Packard Attorney Client Trust Account" and remitted to Plaintiff's counsel by ACH or wire transfer within thirty (30) days of Defense counsel's receipt of the invoice by email pursuant to the Notice terms herein.

**3.      Reimbursement of Fees & Costs.**  Plaintiff shall file a motion for fees and costs within sixty (60) days of the Court's entry of this Agreement, notwithstanding the 28-day deadline imposed by Federal Rule of Civil Procedure Rule 54(d), and Local Rule 293.

## V.      DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT DECREE

**1.**      If a dispute under this Agreement arises, or either Party believes that a breach of this Agreement has occurred, the Parties shall meet and confer within seven (7) days of receiving written notification from the other Party of a request for a meeting to determine whether a breach has occurred and to develop a mutually agreed upon plan, including

implementation dates, to resolve the dispute.  If the Parties fail to meet and confer, or the meet-and-confer does not resolve the issue, after at least seven (7) days have passed after the meet-and-confer occurred or should have occurred, either Party may request a conference with Magistrate Judge Kendall J. Newman for the purpose of assisting in resolving any dispute. The parties hereby consent to proceed before Judge Newman for all purposes and agree to execute any documents required to formalize such jurisdiction.  Only after a conference with Judge Newman fails to resolve the parties' dispute, or if Magistrate Judge Newman is unavailable, shall any party be entitled to all rights and remedies under the law to enforce this Agreement, including filing a motion with the District Court of California, Eastern District, which shall retain jurisdiction over the Action until the Termination Date for the limited purposes of enforcement of the terms of this Agreement.  The Parties shall be entitled to seek attorneys' fees and costs incurred in any such motion, and such fees and costs shall be awarded, pursuant to the provisions set forth in the then-applicable federal Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure, and applicable case law interpreting such provision.

      **2.**       **COL's Waiver and Release.**  Upon the Entry Date of this Agreement, COL, on its own behalf and on behalf of its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases Defendants and its officers, directors, employees, shareholders, parents, subsidiaries, and affiliates, and each of its predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other representatives (each a "Released Defendant Party") from, and waives all claims which arise from or pertain to the Action, including, without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, or any other sum incurred or claimed or which could have been claimed in this Action (exclusive of all fees, including fees of attorneys, experts, and others, costs and expenses of suit), for the alleged failure of Defendant to comply with the Clean Water Act at the Facility, up to the Entry Date.

      **3.**       **Defendant's Waiver and Release.**  Upon the Entry Date of this Agreement, Defendant, on its own behalf and on behalf of its members, subsidiaries, successors, assigns,

directors, officers, agents, attorneys, representatives, and employees, releases COL and its officers, directors, employees, shareholders, parents, subsidiaries, and affiliates, and each of its predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other representatives (each a "Released Defendant Party") from, and waives all claims which arise from or pertain to the Action, including, without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed in this Action.

## VI.    MISCELLANEOUS PROVISIONS

1.      The Parties enter into this Agreement for the purpose of avoiding prolonged and costly litigation.  Nothing in this Agreement shall be construed as, and Defendant expressly does not intend to imply, an admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Agreement constitute or be construed as an admission by Defendant of any fact, finding, conclusion, issue of law, or violation of law. However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Agreement.

2.      The Agreement shall be effective upon mutual execution by all Parties.  The Agreement shall terminate on the "Termination Date," which shall be **April 1, 2027**, unless the Parties are seeking to resolve an open dispute under the Agreement on that date, in which case the Termination Date shall be continued until all disputes are resolved.

3.      The Agreement may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.  An executed copy of this Agreement shall be valid as an original.

4.      In the event that any one of the provisions of this Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

5.      The language in all parts of this Agreement, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  This Agreement shall be construed pursuant to the law of the United States, without regard to choice of law principles.

6.      The undersigned are authorized to execute this Agreement on behalf of their

- 14 -

respective Parties and have read, understood and agreed to be bound by all of the terms and conditions of this Agreement.

7.      All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Agreement are contained herein.  This Agreement and its attachments are made for the sole benefit of the Parties, and no other person or entity shall have any rights or remedies under or by reason of this Agreement, unless otherwise expressly provided for therein.

8.      **Notices.**  Any notices or documents required or provided for by this Agreement or related thereto that are to be provided to COL pursuant to this Agreement shall be hand-delivered or sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below:

> Holly Nielsen
> California Open Lands
> P.O. Box 4440
> Chico, California 95928
> Tel: (530) 872-7281
> Email: hollylane75@hotmail.com

> With copies sent to:

> Andrew L. Packard
> Law Offices of Andrew L. Packard
> 245 Kentucky Street, Suite B3
> Petaluma, California 94952
> Tel:  (707) 782-4060
> E-mail: andrew@packardlawoffices.com

Any notices or documents required or provided for by this Agreement or related thereto that are to be provided to Defendants pursuant to this Agreement shall be sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below:

> Brad Stephens
> Office of the Butte County Counsel
> 25 County Center Drive, Suite 210
> Oroville, CA  95965-3380
> Phone: (530) 552-4070
> E-mail: bstephens@buttecounty.net

- 15 -

Brunella Wood
Office of the Butte County Counsel
25 County Center Drive, Suite 210
Oroville, CA  95965-3380
Phone: (530) 552-4070
E-mail:  bwood@buttecounty.net

With copies sent to:

Diane G. Kindermann
Abbott & Kindermann, Inc.
2100 21st Street
Sacramento, CA 95818
Tel: (916) 456-9595
E-mail: dkindermann@aklandlaw.com

Each Party shall promptly notify the other of any change in the above-listed contact information.

> **9.**    Signatures of the Parties transmitted by facsimile or email shall be deemed binding.

> **10.**    If for any reason the Court should object to this Agreement in the form presented, the Parties shall use their best efforts to work together to modify the Agreement within thirty (30) days so that it is acceptable to the Court.  If the Parties are unable to modify this Agreement in a mutually acceptable manner, this Agreement shall become null and void.

> **11.**    This Agreement shall be deemed to have been drafted equally by the Parties and shall not be interpreted for or against any party on the ground that any such party drafted it.

> **12.**    This Agreement and the attachments contain all of the terms and conditions agreed upon by the Parties relating to the matters covered by the Agreement, and supersede any and all prior and contemporaneous agreements, negotiations, correspondence, understandings, and communications of the Parties, whether oral or written, respecting the matters covered by this Agreement.

> **13.**    This Agreement may be amended or modified only by a writing signed by the Parties or their authorized representatives.

The Parties hereto enter into this Agreement and respectfully submit it to the Court for entry upon the expiration of the statutory review period.

IT IS HEREBY SO STIPULATED:

Dated: _____, 2024        California Open Lands

                                   By:   _____
                                         Holly Nielsen, Executive Director

Dated: _____, 2024        Butte County Department of Public Works

                                   By:   _____
                                         Joshua Pack, Director of Public Works

IT IS SO ORDERED:

Dated:_____         By:   _____
                                         United States District Court Judge
                                         Eastern District of California

1    entry upon the expiration of the statutory review period.

2

3    IT IS HEREBY SO STIPULATED:

4

5    Dated: April 25, 2024          California Open Lands

6                                    By: _____

7                                         Holly Nielsen

8    Dated: _____, 2024       Butte County Department of Public Works

9

10                                   By: _____

11                                        Joshua Pack, Director of Public Works

12   IT IS SO ORDERED:

13   Dated:_____          By: _____

14                                        United States District Court Judge

15                                        Eastern District of California

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -

1    entry upon the expiration of the statutory review period.

2

3    IT IS HEREBY SO STIPULATED:

4

5    Dated: _____, 2024      California Open Lands

6                                      By: _____

7                                          Holly Nielsen

8    Dated: _Apl 29_, 2024           Butte County Department of Public Works

9

10                                     By: _____

11                                         Joshua Pack, Director of Public Works

12   IT IS SO ORDERED:

13   Dated:_____          By: _____

14                                        United States District Court Judge

15                                        Eastern District of California

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A – Facility Site Map**





LEGEND

- – – FACILITY BOUNDARY
- ——— PERMITTED DISPOSAL BOUNDARY
- MW-9 GROUNDWATER MONITORING WELL (17)
- U-8 LYSIMETER (5)
- SW-8 STORM WATER MONITORING POINT (4)
- SP-1 SOIL GAS PROBE MULTI-LEVEL (14)

THE BACKGROUND TOPOGRAPHY SHOWN ON THIS PLAN WAS SURVEY BY GEO MAPS FLOWN ON JULY 1, 2021.

SHEET TITLE: MONITORING POINT LOCATIONS

PROJECT TITLE: NEAL ROAD RECYCLING AND WASTE FACILITY BUTTE COUNTY, CALIFORNIA

DATE: 4/16/24
SCALE: 1"=400'
FIGURE: 2

SCS ENGINEERS
ENVIRONMENTAL CONSULTANTS

NEAL ROAD RECYCLING AND WASTE FACILITY
BUTTE COUNTY DEPT. OF PUBLIC WORKS
BUTTE COUNTY, CALIFORNIA

**EXHIBIT B – CWA Notice of Violation and Intent to Sue Letter**

Law Offices Of

# ANDREW L. PACKARD

245 Kentucky Street, Suite B3, Petaluma, CA 94952
Phone (707) 782-4060   Fax (707) 782-4062
Info@PackardLawOffices.com

November 15, 2019

**VIA CERTIFIED MAIL**

Dennis Schmidt, Director of Public Works    Todd Storti, Deputy Director Waste Management
Butte County Public Works                   Butte County Public Works
7 County Center Drive                        7 County Center Drive
Oroville, CA 95965                           Oroville, CA 95965

Eric Miller, Manager
Waste Management Division
Neal Road Recycling and Waste Facility
7 County Center Drive
Oroville, CA 95965

**Re:    NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE
         FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT")
         (33 U.S.C. §§ 1251 *et seq*.)**

Dear Dennis Schmidt, Todd Storti and Eric Miller:

This firm represents California Open Lands ("COL, pursuant to the conservation easement, has an obligation to protect and conserve") in regard to violations of the Clean Water Act ("the Act") occurring at Neal Road Recycling and Waste Facility located at 1023 Neal Road, in Paradise, California (the "Facility"). This letter is being sent to you as the responsible officers, and/or operators of the Facility. Unless otherwise noted, Dennis Schmidt, Todd Storti, Eric Miller, Butte County Department of Public Works, and Neal Road Recycling and Waste Facility shall hereinafter be collectively referred to as "Butte County." The purpose of this letter is to provide Butte County with notice of the violations of the Industrial General Permit occurring at the Facility, including, but not limited to, discharges of polluted storm water associated with industrial activities from the Facility into local surface waters.

Butte County is in ongoing violation of the substantive and procedural requirements of the Clean Water Act, 33 U.S.C. § 1251 *et seq*., and National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 State Water Resources Control Board Water Quality Order No. 14-57-DWQ ("General Permit" or "Permit").[1] Prior to July 1, 2015,

---

[1] The Facility's Waste Discharge Identification ("WDID") number is 5R04I000249.

Notice of Violation and Intent To File Suit
November 15, 2019
Page 2

Butte County's storm water discharges from the Facility were regulated under Water Quality Order No. 91-13-DWQ, as amended by Water Quality Orders 92-12-DWQ and 97-03-DWQ.

On July 1, 2015, the 2015 General Permit went into effect, superseding the 1997 General Permit that was operative between 1997 and June 30, 2015. The 2015 General Permit includes many of the same fundamental requirements and implements many of the same statutory objectives and requirements as the 1997 General Permit. Violations of either of the 1997 and 2015 General Permits are enforceable under the law. 2015 General Permit, Finding A.6. All references to the "General Permit" herein refer to both the 1997 and 2015 General Permits.

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Act subjects Butte County to a penalty for all violations occurring during the period commencing five years prior to the date of this Notice Letter. These provisions of law authorize civil penalties of up to $37,500 per day per violation for all Clean Water Act violations occurring after January 12, 2009, and $54,833 per day per violation for all violations that occurred after November 2, 2015. In addition to civil penalties, COL, pursuant to the conservation easement, has an obligation to protect and conserve will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law. Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur. *See* 40 C.F.R. § 135.2. As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility. 40 C.F.R. § 135.3(a). At the expiration of sixty (60) days from the date of this letter, COL, pursuant to the conservation easement, has an obligation to protect and conserve intends to file suit under Section 505(a) of the Act in federal court against Butte County for violations of the Clean Water Act and the Permit, described further below.

## I.     Background

### A.     California Open Lands

COL, pursuant to the conservation easement, has an obligation to protect and conserve is a non-profit land trust organization based in Chico, California. COL is dedicated to the preservation and management of open space, the exchange of scientific information, public education, and responsible conservation of the natural resources of the Sacramento River Watershed, including the waters into which Butte County discharges polluted storm water. COL owns a conservation easement on a wetland into which Butte County discharges polluted storm water from the Neal Road Facility. COL, pursuant to the conservation easement, has an obligation to protect and conserve holds a conservation easement over the wetlands into which the Facility discharges (the "Preserve"). The Preserve is an important source of groundwater

Notice of Violation and Intent To File Suit
November 15, 2019
Page 3

recharge for the Tuscan Aquifer, and a tributary to Hamlin Slough, Butte Creek and the Sacramento River. COL, pursuant to the conservation easement, has an obligation to protect and conserve these waters for their estuarine habitat and the rare, threatened and endangered species it supports, the wildlife habitat, fresh water and marine habitat, and other designated beneficial uses. The discharge of pollutants from the Facility impairs each of these uses. Discharges of polluted storm water from the Facility are ongoing and continuous. Thus, the interests of COL, pursuant to the conservation easement, has an obligation to protect and conserve has been, is being, and will continue to be adversely affected by Butte County's failure to comply with the Clean Water Act and the General Permit.

### B.    The Clean Water Act

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco Baykeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1156 (9th Cir. 2002). The Act is administered largely through the NPDES permit program. 33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme). The discharge of pollutants without an NPDES permit, or in violation of a permit, is illegal. *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program). The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b). Pursuant to Section 402 of the Act, the Administrator of the USEPA has authorized California's State Board to issue individual and general NPDES permits in California. 33 U.S.C. § 1342.

### C.    California's General Permit for Storm Water Discharges Associated with Industrial Activities

Between 1997 and June 30, 2015, the General Permit in effect was Order No. 97-03-DWQ, which COL, pursuant to the conservation easement, has an obligation to protect and conserve refers to herein as the "1997 General Permit." On April 1, 2014, pursuant to Order No. 2014-0057-DWQ the General Permit was reissued and became effective on July 1, 2015. For purposes of this notice letter, COL, pursuant to the conservation easement, has an obligation to protect and conserve refers to the reissued permit as the "2015 General Permit." Accordingly, Butte County is liable for violations of the 1997 General Permit and ongoing violations of the 2015 General Permit, and civil penalties and injunctive relief are available remedies. *See Illinois*

Notice of Violation and Intent To File Suit
November 15, 2019
Page 4

*v. Outboard Marine, Inc.*, 680 F.2d 473, 480-81 (7th Cir. 1982) (relief granted for violations of an expired permit); *Sierra Club v. Aluminum Co. of Am.*, 585 F. Supp. 842, 853-54 (N.D.N.Y. 1984) (holding that the Clean Water Act's legislative intent and public policy favor allowing penalties for violations of an expired permit); *Pub. Interest Research Group of N.J. v. Carter-Wallace, Inc.*, 684 F. Supp. 115, 121-22 (D.N.J. 1988) ("Limitations of an expired permit, when those limitations have been transferred unchanged to the newly issued permit, may be viewed as currently in effect").

Facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a Notice of Intent to Comply ("NOI"). 1997 General Permit, Provision E.1; 2015 General Permit, Standard Condition XXI.A. Facilities must file their NOIs before the initiation of industrial operations. *Id.* Facilities must strictly comply with all of the terms and conditions of the General Permit; a violation of the General Permit is a violation of the CWA.

The General Permit contains three primary and interrelated categories of requirements: (1) discharge prohibitions, effluent limitations, and receiving water limitations; (2) Storm Water Pollution Prevention Plan ("SWPPP") requirements; and (3) self-monitoring and reporting requirements.

### D.    Butte County's Facility

Information available to COL, pursuant to the conservation easement, has an obligation to protect and conserve indicates that Butte County's industrial activities at the approximately 229-acre Facility include, but are not limited to: active landfill activities, equipment maintenance and fueling, stockpiling and storage of various industrial materials such as green wastes, soil, waste tires, white goods, and other recyclables, and the impoundment and storage of leachate. The industrial activities at the Facility fall under Standard Industrial Classification ("SIC") Codes 5093 and 4953 ("Scrap and Waste Materials" and "Landfills and Land Application Facilities," respectively).

Butte County collects and discharges storm water associated with industrial activities at the Facility through at least one discharge point into the California Open Land's Conservation Easement Preserve (the "Preserve"), from which the water flows into an unnamed tributary to Hamlin Slough, then into Hamlin Slough, which is a tributary to Butte Creek, which in turn is a tributary to the Sacramento River and the Sacramento-San Joaquin River Delta ("the Delta"). The Preserve, Hamlin Slough, Butte Creek, the Sacramento River, the Delta, and all of their tributaries are all waters of the United States within the meaning of the Clean Water Act.

The areas of industrial activity at the Facility are sources of pollutants. The General Permit requires Butte County to analyze storm water samples for TSS, pH, and Oil and Grease. 1997 General Permit, Section B.5.c.i; 2015 General Permit, Section XI.B.6. Facilities under SIC Code 5093 and 4953 must also analyze storm water samples for iron ("Fe"), lead ("Pb"), aluminum ("Al"), zinc ("Zn") and chemical oxygen demand ("COD"). 1997 General Permit, Tables 1-2; 2015 General Permit, Tables 1-2. In addition to these parameters, the General Permit

Notice of Violation and Intent To File Suit
November 15, 2019
Page 5

requires facilities to analyze storm water samples for all parameters likely to be present.  2015 General Permit, Section XI.B.6.c.

## II.     Butte County's Violations of the Act and Permit

Based on its review of available public documents, COL, pursuant to the conservation easement, has an obligation to protect and conserve is informed and believes that Butte County is discharging in violation of both the substantive and procedural requirements of the CWA and the General Permit.  These violations are ongoing and continuous.  Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, Butte County is subject to penalties for all violations of the Act since November 15, 2014.

### A.     Butte County Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations

Butte County's storm water sampling results provide conclusive evidence of Butte County's failure to comply with the General Permit's discharge prohibitions, effluent limitations, and receiving water limitations.  Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation."  *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

#### 1.     Discharge Prohibitions

The General Permit prohibits all discharges of storm water associated with industrial activities to waters of the United States except as specifically authorized by the General Permit or another NPDES permit.  2015 General Permit, Section III.A.  The General Permit further prohibits the discharge of liquids or materials other than storm water to waters of the United States unless authorized by another NPDES permit.  2015 General Permit, Section III.B.

The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance.  1997 General Permit, Discharge Prohibition A.2; 2015 General Permit, Discharge Prohibition III.C. The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Water Board's Basin Plan or statewide water quality control plans and policies.  1997 General Permit, Receiving Water Limitation C.2; 2015 General Permit, Discharge Prohibition III.D.  To the extent that Butte County's discharges include landfill leachate, such discharges constitute unauthorized non-storm water discharges, and violate the General Permit.

#### 2.     Technology Based Effluent Limitations

Dischargers are required to reduce or prevent pollutants in their storm water discharges through the implementation of Best Available Technology Economically Achievable ("BAT")

Notice of Violation and Intent To File Suit
November 15, 2019
Page 6

for toxic and nonconventional pollutants and Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.  1997 General Permit, Effluent Limitation B.3; 2015 General Permit, Effluent Limitation V.A.  Conventional pollutants include Total Suspended Solids, Oil & Grease, pH, Biochemical Oxygen Demand and Fecal Coliform.  40 C.F.R. § 401.16.  All other pollutants are either toxic or nonconventional.  40 C.F.R. §§ 401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA benchmarks") serve as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT.  *Santa Monica Baykeeper v. Kramer Metals,* 619 F. Supp. 2d 914, 920, 923 (C.D. Cal 2009); 1997 General Permit, Effluent Limitations B.5-6; 2015 General Permit, Exceedance Response Action XII.A.

The following EPA benchmarks have been established for pollutants discharged by Butte County: total suspended solids – 100 mg/L; oil & grease – 15.0 mg/L; iron – 1.0 mg/L; aluminum – 0.75 mg/L; zinc – 0.26 mg/L; lead – 0.262 mg/L; chemical oxygen demand – 120 mg/L; and, pH – 6.0-9.0 s.u.

### 3.       Receiving Water Limitations

Storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards in any affected receiving water.  1997 General Permit, Receiving Water Limitations C.1, C.2; 2015 General Permit, Receiving Water Limitations VI.A, VI.B.

Dischargers are required to prepare and submit documentation to the Regional Board upon determination that storm water discharges are in violation of the General Permit's Receiving Water Limitations.  1997 General Permit, p. VII; 2015 General Permit, Special Condition XX.B.  The documentation must describe changes the discharger will make to its current storm water Best Management Practices ("BMPs") in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards.  Id.

The *Water Quality Control Plan for the Central Valley Region* (Revised April 2016) ("Basin Plan") also sets forth water quality standards and prohibitions applicable to Butte County's storm water discharges.  The Basin Plan identifies present and potential beneficial uses for the Sacramento River, which include municipal and domestic water supply, hydropower generation, agricultural supply, industrial service supply, navigation, wildlife habitat, warm freshwater habitat, cold freshwater habitat, warm and cold spawning, and contact and non-contact water recreation.  Basin Plan, II-5.00.

### 4.       Butte County's Discharges of Leachate-Contaminated Storm Water

On a number of occasions, Butte County has allowed storm water contaminated with landfill leachate to discharge in the Preserve, a water of the United States.  COL believes that these discharges are likely to recur given Butte County's management of the Neal Road Facility.

Case 2:20-cv-00123-DJC-DMC   Document 109-2   Filed 06/28/24   Page 30 of 37
Notice of Violation and Intent To File Suit
November 15, 2019
Page 7

On February 14, 2019, Butte County staff became aware that landfill leachate was seeping out of the face of Module 4 and into Sediment Basin 4.  Landfill staff documented a diesel pump with a six-inch diameter pipe operating at Sediment Basin 4.  The pump was moving the leachate-contaminated storm water into a drainage ditch which transported the water to the Primary Sediment Basin and ultimately the Preserve.

On February 27, 2019, landfill staff became aware of landfill leachate seeping out of the Module 4 face and into Sediment Basin 4.  This leachate-contaminated water was again being pumped out of Sediment Basin 4, into a drainage ditch, and ultimately flowed into the Preserve.

On March 6, 2019, landfill staff documented additional landfill leachate seeps entering the storm water conveyance system.

On October 23, 2019, staff for COL observed landfill leachate seeping, and subsequent excavation of the seep, in the southeast corner of the settlement basin portion of the Preserve.

### a.   Butte County's Non-Storm Water Discharges are Violations of the General Permit

Butte County's non-storm water discharges are violations of the General Permit's discharge prohibitions.  COL, pursuant to the conservation easement, has an obligation to protect and conserve is informed and believes that Butte County has known that its discharges of storm water include prohibited non-storm water since at least November 15, 2014.

COL, pursuant to the conservation easement, has an obligation to protect and conserve alleges that such violations occur each time storm water discharges from the Facility.  Attachment A hereto, sets forth the specific rain dates on which COL, pursuant to the conservation easement, has an obligation to protect and conserve alleges that Butte County has discharged storm water containing impermissible levels of TSS, Fe, Al, COD, Zn, Cu, and O&G, as well as non-storm water discharges, in violation of the General Permit.  1997 General Permit, Discharge Prohibition A.2, Receiving Water Limitations C.1 and C.2; 2015 General Permit, Discharge Prohibitions III.C and III.D, Receiving Water Limitations VI.A, VI.B.  Butte Creek may have had other violations that can only be fully identified and documented once discovery and investigation have been completed.  Hence, to the extent possible, COL includes such violations in this Notice and reserves the right to amend this Notice, if necessary, to include such further violations in future legal proceedings.

### 5.   Butte County Has Failed to Implement BAT and BCT

Dischargers must implement BMPs that fulfill the BAT/BCT requirements of the CWA and the General Permit to reduce or prevent discharges of pollutants in their storm water discharges.  1997 General Permit, Effluent Limitation B.3; 2015 General Permit, Effluent Limitation V.A.  To meet the BAT/BCT standards, dischargers must implement minimum BMPs and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions

Notice of Violation and Intent To File Suit
November 15, 2019
Page 8

where necessary to reduce or prevent pollutants in discharges.  *See* 1997 General Permit, Sections A.8.a-b; 2015 General Permit, Sections X.H.1-2.

Butte County has failed to implement the minimum BMPs required by the General Permit, including: good housekeeping requirements; preventive maintenance requirements; spill and leak prevention and response requirements; material handling and waste management requirements; erosion and sediment controls; employee training and quality assurance; and record keeping.  Permit, Section X.H.1(a-g).  These failures include, but are not limited to, failing to adequately screen incoming waste streams thus allowing contaminated soil to be accepted into the Facility, using contaminated soil from the Camp Fire cleanup efforts as daily cover at the Landfill, and failing to prevent storm water run-on from concrete stockpiles offsite. Butte County has further failed to implement advanced BMPs necessary to reduce or prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards, including: exposure minimization BMPs; containment and discharge reduction BMPs; treatment control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent limitations.  1997 General Permit, Section A.8.b; 2015 General Permit, Sections X.H.2.  Butte County has reassigned a key member of the Storm Water Pollution Prevention Team without adequate replacement, which indicates to COL that the violations described herein are likely to continue.

Each day that Butte County has failed to develop and implement BAT and BCT at the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).  Butte County has been in violation of the BAT and BCT requirements at the Facility every day since at least November 15, 2014.

**6.      Butte County Has Failed to Implement an Adequate Monitoring Implementation Plan**

The General Permit requires dischargers to implement a Monitoring Implementation Plan.  2015 General Permit, Section X.I.  As part of their monitoring plan, dischargers must identify all storm water discharge locations.  2015 General Permit, Section X.I.2.a.  Dischargers must then conduct monthly visual observations of each drainage area, as well as visual observations during discharge sampling events.  2015 General Permit, Section XI.A.1 and 2.

Dischargers must collect and analyze storm water samples from two (2) storm events within the first half of each reporting year (July 1 to December 31) and two (2) storm events during the second half of each reporting year (January 1 to June 3).  2015 General Permit, Section XI.B.  Section XI.B requires dischargers to sample and analyze during the wet season for basic parameters such as pH, total suspended solids ("TSS") and oil and grease ("O&G"), certain industry-specific parameters set forth in Table 2 of the General Permit, and other pollutants likely to be in the storm water discharged from the facility based on the pollutant source assessment. 2015 General Permit, Section XI.B.6.  Dischargers must submit all sampling and analytical results via SMARTS within thirty (30) days of obtaining all results for each sampling event.  2015 General Permit Section XI.B.11.

Notice of Violation and Intent To File Suit
November 15, 2019
Page 9

Butte County has failed to develop and implement an adequate Monitoring Implementation Plan. These failures include: failing to analyze all required parameters, failing to analyze for total metals for all relevant parameters (instead measuring only dissolved metals), failing to identify in the Monitoring Implementation Plan the Preserve, failing to collect samples from all discharge points during each sampling event; and, failing to collect the required number of samples during each reporting period. Each day that Butte County has failed to develop and implement an adequate Monitoring Implementation Plan is a separate and distinct violation of the Act and Permit. Butte County has been in violation of the Monitoring Implementation Plan requirements every day since at least November 15, 2014.

### 7. Butte County Has Failed to Develop and Implement an Adequate Storm Water Pollution Prevention Plan

The General Permit requires dischargers to develop and implement a site-specific SWPPP. 1997 General Permit, Section A.1; 2015 Permit, Section X.A. The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) annual comprehensive facility compliance evaluation; and (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. *See id.*

Dischargers must revise their SWPPP whenever necessary and certify and submit via the Regional Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify and submit via SMARTS for any non-significant revisions not more than once every three (3) months in the reporting year. 2015 General Permit, Section X.B; see also 1997 General permit, Section A.

COL, pursuant to the conservation easement, has an obligation to protect and conserve's investigation indicates that Butte County has been operating with an inadequately developed or implemented SWPPP in violation of General Permit requirements. The Facility's SWPPP contains a site map that lacks all required information; the Facility's pollutant source description and assessment fails to capture all potential pollutants at the Facility; the Facility has failed to implement and maintain minimum and advanced BMPs to reduce or prevent pollutants in industrial storm water discharges, and that failure is reflected in the absence of sufficient BMPs in the SWPPP; and, the SWPPP's monitoring and implementation plan is deficient because it fails to accurately report the Facility's industrial storm water.

Butte County has further failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, resulting in the Facility's poor storm water management. Each day Butte County failed to develop and implement an adequate SWPPP is a violation of the General Permit. The SWPPP violations described above were at all times in violation of Section A of the 1997 General Permit, and Section X of the 2015 General Permit. Butte County has been in violation of these requirements at the Facility every day since at least November 15, 2014.

Notice of Violation and Intent To File Suit
November 15, 2019
Page 10

### III.    Persons Responsible for the Violations

COL, pursuant to the conservation easement, has an obligation to protect and conserve puts Butte County on notice that they are the persons and entities responsible for the violations described above. If additional persons are subsequently identified as also being responsible for the violations set forth above, COL, pursuant to the conservation easement, has an obligation to protect and conserve puts Butte County on formal notice that it intends to include those persons in this action.

### IV.    Name and Address of Noticing Parties

The name, address and telephone number of the noticing party is as follows:

Holly Nielsen, Executive Director
California Open Lands
P.O. Box 4440
Chico, CA 95928
(530) 872-7281

### V.    Counsel

COL, pursuant to the conservation easement, has an obligation to protect and conserve has retained legal counsel to represent it in this matter. Please direct all communications concerning this letter to:

Andrew L. Packard
William N. Carlon
Law Offices Of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Telephone: (707) 782-4060
Fax: (707) 782-4062
andrew@packardlawoffices.com
wncarlon@packardlawoffices.com

### VI.    Conclusion

COL, pursuant to the conservation easement, has an obligation to protect and conserve believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit. We intend to file a citizen suit under Section 505(a) of the CWA against Butte County and their agents for the above-referenced violations upon the expiration of the 60-day notice period. If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day

Notice of Violation and Intent To File Suit
November 15, 2019
Page 11

notice period.  We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.


Sincerely,

William N. Carlon
Law Offices of Andrew L. Packard
Counsel for CALIFORNIA OPEN LANDS

Notice of Violation and Intent To File Suit
November 15, 2019
Page 12

## SERVICE LIST

### VIA CERTIFIED MAIL

Andrew Wheeler, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Mike Stoker, Regional Administrator
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

William Barr, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Patrick Pulupa, Executive Officer
Central Valley Regional Water Quality Control Board
11020 Sun Center Drive, Suite 200
Rancho Cordova, CA 95670

**ATTACHMENT A**
**Notice of Intent to File Suit, Butte Creek**
**Significant Rain Events,\* November 15, 2014 – November 15, 2019**

| | | | |
|---|---|---|---|
| 11/13/2014 | 2/1/2016 | 2/2/2017 | 4/7/2018 |
| 11/20/2014 | 2/18/2016 | 2/3/2017 | 4/17/2018 |
| 11/21/2014 | 2/22/2016 | 2/6/2017 | 5/25/2018 |
| 11/24/2014 | 3/4/2016 | 2/8/2017 | 5/26/2018 |
| 12/1/2014 | 3/7/2016 | 2/16/2017 | 10/4/2018 |
| 12/3/2014 | 3/8/2016 | 2/17/2017 | 11/26/2018 |
| 12/4/2014 | 3/11/2016 | 2/20/2017 | 11/30/2018 |
| 12/5/2014 | 3/12/2016 | 2/21/2017 | 12/6/2018 |
| 12/11/2014 | 3/13/2016 | 3/5/2017 | 12/17/2018 |
| 12/12/2014 | 3/14/2016 | 3/21/2017 | 1/14/2019 |
| 12/15/2014 | 3/21/2016 | 3/22/2017 | 1/16/2019 |
| 12/16/2014 | 3/22/2016 | 3/23/2017 | 1/17/2019 |
| 12/17/2014 | 5/2/2016 | 3/24/2017 | 1/22/2019 |
| 12/18/2014 | 5/6/2016 | 3/25/2017 | 2/4/2019 |
| 12/19/2014 | 5/9/2016 | 4/17/2017 | 2/5/2019 |
| 12/30/2014 | 6/18/2016 | 4/20/2017 | 2/13/2019 |
| 1/16/2015 | 10/3/2016 | 5/31/2017 | 2/14/2019 |
| 2/9/2015 | 10/15/2016 | 6/8/2017 | 2/26/2019 |
| 3/11/2015 | 10/16/2016 | 6/9/2017 | 2/27/2019 |
| 3/23/2015 | 10/25/2016 | 10/20/2017 | 3/4/2019 |
| 4/7/2015 | 10/26/2016 | 11/6/2017 | 3/6/2019 |
| 4/8/2015 | 10/28/2016 | 11/9/2017 | 3/8/2019 |
| 4/24/2015 | 10/29/2016 | 11/13/2017 | 3/11/2019 |
| 9/17/2015 | 10/31/2016 | 11/16/2017 | 3/20/2019 |
| 10/19/2015 | 11/1/2016 | 11/27/2017 | 3/21/2019 |
| 11/2/2015 | 11/19/2016 | 1/6/2018 | 3/25/2019 |
| 11/3/2015 | 11/20/2016 | 1/9/2018 | 3/26/2019 |
| 11/9/2015 | 11/21/2016 | 1/22/2018 | 3/27/2019 |
| 11/10/2015 | 11/23/2016 | 1/25/2018 | 4/2/2019 |
| 11/16/2015 | 11/27/2016 | 3/1/2018 | 4/3/2019 |
| 12/7/2015 | 1/4/2017 | 3/2/2018 | 4/8/2019 |
| 12/10/2015 | 1/7/2017 | 3/5/2018 | 4/24/2019 |
| 1/5/2016 | 1/8/2017 | 3/8/2018 | 5/16/2019 |
| 1/13/2016 | 1/9/2017 | 3/13/2018 | 5/20/2019 |
| 1/14/2016 | 1/10/2017 | 3/14/2018 | 5/23/2019 |
| 1/15/2016 | 1/11/2017 | 3/15/2018 | 5/28/2019 |
| 1/18/2016 | 1/12/2017 | 3/16/2018 | 5/31/2019 |
| 1/19/2016 | 1/19/2017 | 3/21/2018 | 9/30/2019 |
| 1/20/2016 | 1/20/2017 | 3/22/2018 | |
| 1/22/2016 | 1/23/2017 | 3/23/2018 | |
| 1/25/2016 | 1/24/2017 | 4/6/2018 | |

\* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.

1
2
3
4
5

**EXHIBIT C – Storm Water Sampling Parameters**

6
7

| Parameter | Value |
|---|---|
| pH | 6.0 – 9.0 |
| Total Suspended Solids | 100 mg/L |
| Oil & Grease | 15 mg/L |
| Chemical Oxygen Demand | 120 mg/L |
| Biochemical Oxygen Demand | 30 mg/L |
| Nitrate + Nitrite Nitrogen | 0.68 mg/L |
| Iron | 1.0 mg/L |
| Copper | 0.0332 mg/L |
| Cadmium | 0.0053 mg/L |
| Lead | 0.262 mg/L |
| Nickel | 1.02 mg/L |
| Mercury | 0.0014 mg/L |
| Aluminum | 0.75 mg/L |
| Silver | 0.0183 mg/L |
| Zinc | 0.26 mg/L |
| SVOCs | Present |

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28