ANDREW L. PACKARD (State Bar No. 168690)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com

BRIAN D. ACREE (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
Tel: (510) 517-5196
E-mail: brian@brianacree.com

WILLIAM N. CARLON (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
Tel: (530) 514-4115
E-mail: william@carlonlaw.com

Attorneys for Plaintiff
CALIFORNIA OPEN LANDS

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA OPEN LANDS,<br><br>            Plaintiff,<br><br>    v.<br><br>BUTTE COUNTY DEPARTMENT OF PUBLIC WORKS, ERIC MILLER, and DENNIS SCHMIDT,<br><br>            Defendants. | Case No: 2:20-cv-00123-DJC-DMC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: October 3, 2024<br>Hearing Time: 1:30 p.m.<br>Courtroom 10, Hon. Daniel J. Calabretta |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN that on October 3, 2024 at 1:30 p.m., or as soon thereafter as the matter may be heard by the above-titled court, Plaintiff California Open Lands will and hereby does move the Court for an award of attorneys' fees and costs pursuant to 33 U.S.C. § 1365(d) on the grounds that Plaintiff is a prevailing party and an award of attorneys' fees and litigation expenses is appropriate.

This motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities in Support of Motion for Attorneys' Fees and Costs; the supporting declarations of Richard Pearl and Christopher Sproul; the supporting declaration of Plaintiff's lead counsel, Andrew L. Packard; the supporting declaration of Plaintiff's client representative, Holly Nielsen; Plaintiff's Request for Judicial Notice; all pleadings and papers on file in this action; and such other evidence and/or argument as the parties may present to this Court at the hearing on this motion.

Counsel for Plaintiff hereby certifies that meet and confer efforts have been exhausted, both during settlement negotiations, and afterwards:

(a) the matter settled on April 30, 2024, pursuant to a consent decree resolving all issues except attorneys' fees and costs;

(b) on May 1, 2024, Plaintiff's counsel wrote a letter offering to compromise and settle the fees and costs portion using rates applied by Magistrate Judge Cota in a sanctions award *in this case* over two years ago; to structure the payment of the fees and costs in installments over time; and, to engage a mediator to avoid this motion entirely; and,

(c) on May 6, 2024, Defendants rejected all of these proposals.

Andrew L. Packard

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ............................................................................. 2

TABLE OF AUTHORITIES ......................................................................................... 4

INTRODUCTION ........................................................................................................ 6

FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 7

LEGAL STANDARD .................................................................................................... 8

ARGUMENT ............................................................................................................. 11

   I.     Plaintiff Is the Prevailing Party and No Special Circumstances Apply ........................ 11

   II.    Plaintiff's Counsel Expended a Reasonable Number of Hours ...................................... 12

   III.   Plaintiff's Requested Hourly Rates Are Reasonable ..................................................... 17

       A.     Relevant Legal Community ................................................................................. 17

           1. Plaintiff's Good Faith Efforts to Retain Qualified Local Counsel ...................... 19

       B.     Prevailing Hourly Rates in the San Francisco Bay Area for Similar Services by Lawyers of Reasonably Comparable Skill, Experience, and Reputation .............. 22

   IV.  Plaintiff's Requested Costs Are Reasonable ................................................................. 26

CONCLUSION ........................................................................................................... 27

**TABLE OF AUTHORITIES**

**Cases**

*Ackerley Commc'ns, Inc. v. City of Salem*,
   752 F.2d 1394 (9th Cir. 1985) ............................................... 8

*Ballen v. City of Redmond*,
   466 F.3d 736 (9th Cir. 2006) .................................................. 9

*Barjon v. Dalton*,
   132 F.3d 496 (9th Cir. 1997) ........................................... 10, 18

*Blum v. Stenson*,
   465 U.S. 886 (1984) ............................................ 10, 17, 18, 26

*Center for Biological Diversity v. County of San Bernardino (Hawarden Dev. Co.)*,
   188 Cal.App.4th 603, 615 (2010) ........................................... 21

*Chalmers v. City of Los Angeles*,
   796 F.2d 1205 (9th Cir. 1986) .............................................. 10

*Davis v. Mason County*, 927
   F.2d 1473 (9th Cir. 1991) ................................................. 10

*Fair Housing of Marin v. Combs*,
   285 F.3d 899, 908 (9th Cir. 2002) ......................................... 17

*Gates v. Deukmejian*,
   987 F.2d 1392 (9th Cir. 1992) ......................................... 10, 18, 21

*Gonzalez v. City of Maywood*,
   729 F.3d 1196 (9th Cir. 2013) ............................................ 9, 12

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ...................................................... 9, 10

*In re Nucorp Energy, Inc.*,
   764 F.2d 655 (9th Cir. 1985) ............................................... 9

*L.H. v. Schwarzenegger*,
   645 F. Supp. 2d 888 (E.D. Cal. 2009) ..................................... 18

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ........................................... 9, 10

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010) ................................................................................................ 9, 18

*Resurrection Bay Cons. Alliance v. City of Seward*,
    640 F.3d 1087 (9th Cir. 2011) ...................................................................................... 8

*Richard S. v. Dep't of Developmental Servs.*,
    317 F.3d 1080 (9th Cir. 2003) ............................................................................. 8, 9, 12

*Saint John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.*,
    574 F.3d 1054 (9th Cir. 2009) ........................................................................... 8, 11, 12

*S.F. Baykeeper v. W. Bay Sanitary Dist.*,
    No. 09-cv-5676 EMC, 2011 U.S. Dist. LEXIS 138093 (N.D. Cal. Dec. 1, 2011) ........................... 12

*Sierra Club v. EPA*,
    75 F. Supp. 3d 1125 (N.D. Cal. Dec. 8, 2014) ............................................................... 27

*Shany Co. v.Crain Walnut Shelling, Inc.*,
    No. 2:11-cv-01112-KJM-EFB, 2015 U.S. Dist. LEXIS 8006 (E.D. Cal. Jan. 23, 2015)............. 18, 21

*Sorenson v. Mink*,
    239 F.3d 1140 (9th Cir. 2001) ..................................................................................... 9

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
    2012 U.S. Dist. LEXIS 42287, at *17 (E.D. Cal. Mar. 26, 2012) .................................. 18

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
    489 U.S. 782 (1989) ............................................................................................. 9, 11

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) ..................................................................... 10, 22, 26

Widrig v. Apfel,
    140 F3d 1207 (9th Cir. 1998) ............................................................... 10, 22, 23, 26

*Yenidunya Invs., Ltd. v Magnum Seeds, Inc.*,
    No. 2:11-cv-1787-WBS 2012 U.S. Dist. LEXIS 20421 (E.D. Cal, Feb. 17, 2012) .................. 18, 21

**Statutes**

33 U.S.C. § 1365(d)................................................................................................ 2, 6, 8, 27

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **INTRODUCTION**

3    This action arises out of Defendants' violations of the Clean Water Act, including their

4    failure to develop and implement adequate Storm Water Pollution Prevention Plans and

5    Monitoring Implementation Plans, which Plaintiff alleges caused the discharge of landfill

6    leachate via storm water from the Neal Road Landfill in Butte County ("Facility").  These

7    activities resulted in highly-contaminated discharges to a wetland protected under a

8    conservation easement held by Plaintiff California Open Lands ("Plaintiff").[1]  This citizen suit

9    enforcement action was brought to address the County's unlawful activity, and, after four years

10   of litigation, was settled pursuant to a Consent Decree ("Decree"); on July 12, 2024, following

11   the United States Department of Justice's review without objection, this Court granted the

12   Parties' request for entry.  ECF No. 110.  The Parties were unable to resolve the issue of

13   attorneys' fees and costs in the Decree, and thus Plaintiff brings this motion for attorneys' fees

14   and costs under the statutory fee-shifting provision of the Clean Water Act.  33 U.S.C. §

15   1365(d).

16   The Decree addresses these long-standing Clean Water Act violations by requiring the

17   County to implement a series of pollution-prevention measures by August 15, 2024, including

18   repairs and improvements to access roads, berms, conveyance trenches, and slope surfaces at

19   the Facility.  ECF No. 109-2 at 5-7.  In addition, the Decree includes corrective injunctive relief in

20   the way of improved catchment basin maintenance, increased employee training, and

21   heightened sampling requirements (both as to pollutant parameters and as to frequency).  *Id.*

22   at 8.  As mitigation for the harms caused, Defendants will pay $300,000 to the Rose Foundation

23   for Communities and the Environment to fund grants to acquire and manage land and

24   conservation easements and to study and improve water quality in Butte County.  *Id.* at 11-12.

25   As detailed in the supporting declarations filed herewith, the case was prosecuted and

26   settled efficiently.  Plaintiff succeeded in fully vindicating the public's interest in protecting the

27
28

---

[1] This action addresses Defendants' violations of the Clean Water Act.  Plaintiff also brought an action in state court to address the Defendants' violations of the terms of the conservation easement; that action was settled on April 25, 2022.

Plaintiff's Notice of Motion and Motion        6        Case No.: 2:20-cv-00123-DJC-DMC
For Attorneys' Fees and Costs

surface waters of Hamlin Slough, Butte Creek, the Sacramento River and the Sacramento-San Joaquin River Delta, as well as the groundwater lying beneath them as part of the Tuscan Aquifer.  As a prevailing party, Plaintiff is entitled to an award of its reasonable attorneys' fees in the amount of $918,747.50, and costs in the amount of $54,713.10.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Facility is an active landfill, comprising 229 acres, owned by Butte County.  It receives approximately 500 tons of waste per day, and engages in municipal solid waste conveyance and storage, equipment maintenance and fueling, and the stockpiling and storage of industrial materials, including green wastes, soil, waste tires, white goods, and other recyclables.  Defendants' unlawful discharges of landfill leachate[2] and industrial storm water to Hamlin Slough, which flows to Butte Creek, then to the Sacramento River and the Sacramento-San Joaquin River Delta, are the subject of the action.

The procedural background of the case, including the process leading up to the parties' entry into the Decree, is described in detail in the Declaration of Andrew L. Packard in Support of Plaintiff's Motion for Attorneys' Fees and Costs ("Packard Dec.") filed herewith.  Packard Dec. at ¶¶ 8-29.  For the convenience of the Court, all of the attorney hours worked in the case have further been assigned to one of six categories:

Category 1:    Investigation, Case Initiation and Management

Category 2:    Discovery

Category 3:    Settlement Efforts Without Court Assistance

Category 4:    Settlement Efforts with Court Assistance

Category 5:    Motion for Summary Judgment and Trial Preparation

Category 6:    Fee Motion

---

[2] Under the CWA, Defendants are required to manage their landfill leachate in a manner that avoids *any* discharges from the Facility to these waters, and instead directs any leachate or leachate-contaminated waters to the Facility's lined impoundment pond (and ultimately shipped off site, to a sewage treatment plant).  By contrast, industrial *storm water* discharges in California are regulated under the General Industrial Storm Water Permit, which is part of the National Pollutant Discharge Elimination System, the permitting program established under the CWA for discharges of pollutants to the nation's waterways.

1    *Id.* at ¶¶ 50-61, Exhibit 4.

2         All of the litigation costs incurred in the action are described in detail in Mr. Packard's

3    supporting declaration and in the detailed costs summary appended thereto.  *Id.* at ¶¶ 35, 62-

4    63, Exhibit 3.  The biographies and work experience of Plaintiff's counsel are also described in

5    Mr. Packard's supporting declaration.  *Id.* at ¶¶ 4-6, 40 and 42-43.

6    **LEGAL STANDARD**

7         The Clean Water Act authorizes the court to "award costs of litigation (including

8    reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party,

9    whenever the court determines such award is appropriate."  33 U.S.C. § 1365(d).  An award is

10   appropriate where there are no special circumstances found that would warrant a denial of the

11   award.  *Saint John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1062

12   (9th Cir. 2009).  The "special circumstances" standard is quite strict, and "fee awards 'should be

13   the rule rather than the exception.'"  *Id.* citing *Ackerley Commc'ns, Inc. v. City of Salem*, 752 F.2d

14   1394, 1396 (9th Cir. 1985).  "Given this circuit's narrow interpretation of the 'special

15   circumstances' standard, examples of consideration that do *not* rise to the level of special

16   circumstances are more prevalent than examples of considerations that do."  *Resurrection Bay*

17   *Conservation All. v. City of Seward*, 640 F.3d 1087, 1092 (9th Cir. 2011).

18        A party is considered to have prevailed when it has "obtained judicially enforceable

19   'actual relief on the merits of [their] claim that materially alter[ed] the legal relationship

20   between the parties.'"  *St. John's Organic Farm v. Gem County Mosquito Abatement Dist.*, 574

21   F.3d 1054, 1058-59 (9th Cir. 2009) citing *Richard S. v. Dep't of Developmental Servs.*, 317 F.3d

22   1080, 1088 (9th Cir. 2003).  "[T]he relief achieved need not be of precisely the same character

23   as the relief sought in the complaint, but it must require defendants to do something they

24   otherwise would not have been required to do."  *St. John's Organic Farm*, 574 F.3d at 1059.

25   Plaintiff also does not need to prevail on every claim in order to be considered a prevailing

26   party, in fact, "[t]he threshold for sufficient relief to confer prevailing party status is not high. 'If

27   the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the

28   benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award

of some kind.'" *Id.* citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 291 (1989).  Binding settlement agreements over which the district court retains jurisdiction to enforce confer "prevailing party" status on a Plaintiff.  *Richard S.*, 317 F.3d at 1088.

Courts in this district use the "lodestar" method to decide whether requested fees are reasonable.  *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001) citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate").  The party seeking the award must submit evidence supporting the hours worked and rates claimed to allow the court to determine whether the lodestar is reasonable.  *Id.* at 433.  Once the movant provides this information, "there is a 'strong presumption' that the lodestar figure is reasonable."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).  "[O]nly in rare circumstances should a court adjust the lodestar figure, as this figure is the presumptively accurate measure of reasonable fees."  *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006).  Included in the lodestar of hours considered appropriate are those hours spent on recovering fees ("fees on fees").  *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-660 (9th Cir. 1985) ("[i]n statutory fee cases, federal courts, including our own, have uniformly held that time spent establishing the entitlement to and amount of the fee is compensable").

"A district court, using the lodestar method to determine the amount of attorney's fees to award, must determine a reasonable number of hours for which the prevailing party should be compensated.  Ultimately, a 'reasonable' number of hours equals '[t]he number of hours . . . [which] could reasonably have been billed to a private[3] client.'"  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111

---

[3] The term "private client," as used by the court in *Moreno* comes from the Supreme Court's discussion of the importance of vindicating Congressional policies by encouraging citizen enforcement in *Hensley v. Eckerhart*, 461 U.S. 424 (1983).  The Supreme Court uses the term "private" in the context of "private practice" and "private sector" when setting forth the standard to determine whether hours are reasonably expended. *E.g., id.* at 434.  Thus, when the courts refer to a "private client" they are referring to a client that a lawyer might have in private practice – i.e., a paying client.

1  (9th Cir. 2008) (internal citations omitted).  When considering the number of hours reasonably

2  expended in a case, the Ninth Circuit has observed that,

3        [i]t must also be kept in mind that lawyers are not likely to spend
      unnecessary time on contingency fee cases in the hope of inflating

4        their fees.  The payoff is too uncertain, as to both the result and
      the amount of the fee. It would therefore be the highly atypical

5        case where Plaintiff's lawyer engages in churning.  By and large,
      the court should defer to the winner lawyer's professional

6        judgment as to how much time he was required to spend on the
      case; after all, he won, and might not have, had he been more of a

7        slacker.

8  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

9        To determine whether rates are reasonable, "the district court should be guided by the

10  rate prevailing in the community for similar work performed by attorneys of comparable skill,

11  experience, and reputation."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir.

12  1986) citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  "A declaration regarding the prevailing

13  rate in the relevant community is sufficient to establish a reasonable hourly rate.  *Widrig v.*

14  *Apfel*, 140 F3d 1207, 1209 (9th Cir. 1998); *Hensley*, 461 U.S. at 437 ("[a] request for attorney's

15  fees should not result in a second major litigation").

16        "Generally, the relevant community is the forum in which the district court sits."  *Barjon*

17  *v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) citing *Davis v. Mason County*, 927 F.2d 1473, 1488

18  (9th Cir. 1991); *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).  "Affidavits of the

19  plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate

20  determinations in other cases . . . are satisfactory evidence of the prevailing market rate."

21  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

22        Where, as here, a party is unable to retain counsel in the community where the court is

23  located, despite making a good faith effort to do so, the court may award higher out-of-forum

24  rates that are consistent with where the party's counsel practices.  *Barjon v. Dalton*, 132 F.3d

25  496 (9th Cir. 1997) citing *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) ("if local

26  counsel was unavailable, either because they were unwilling or unable to perform because they

27  lack the degree of experience, expertise, or specialization required to handle properly the

28  case").

**ARGUMENT**

> **I.      Plaintiff Is the Prevailing Party and No Special Circumstances Apply**

Plaintiff is entitled to fees and costs under the Clean Water Act because it is a prevailing party and there are no special circumstances to support a denial of the motion.  Plaintiff is a prevailing party because the Court granted Plaintiff's motion for partial summary judgment and found Defendants liable for violations on two of the four claims for relief Plaintiff sought in its Complaint.[4]  ECF No. 104.  This is adequate to establish Plaintiff's prevailing party status because Plaintiff succeeded on two "significant claim[s] affording it some of the relief sought." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. at 791.  Moreover, the Decree, which was entered and so ordered by this Court, and which provides for the continuing jurisdiction of the Court for the limited purposes of enforcement of the terms of the Decree, materially changes the legal relationship between the parties.  *St. John's Organic Farm*, 574 F.3d at 1059.

In addition to requiring compliance with the General Permit and the Clean Water Act, the Decree requires the implementation of specific storm water best management practices that Defendants would not have otherwise been required to implement.  ECF No. 109-2 at 5-8. These improvements include repairs and improvements to access roads to improve leachate and storm water management; repairs and improvements to storm water basins and waste modules to prevent erosion and prevent future leachate seeps; improvements to storm water conveyance systems to maintain appropriate freeboard in basins, and to prevent slope destabilization; implementing emergency protocols to prevent future discharges of leachate via storm water; maintenance of storm water basins; improved training for employees; and, maintenance of an automated rain gauge.  *Id.*  The Decree also requires storm water plan improvements; increased sampling requirements and parameters; allows for Plaintiff to inspect the Facility up to two times during the term of the Decree; commits Defendants to providing

---

[4] Rather than concede this seemingly obvious point, Defendants agree only to the following: "[a]s to the prevailing party issue, the Court's Order on the Plaintiff's Motion for Summary Adjudication [sic] speaks for itself."  Packard Dec. at ¶ 28.

1   Plaintiff with their communications to and from the Regional and State Water Boards; and

2   requires Defendants to provide Plaintiff with copies of any storm water plan amendments.  *Id.*

3          The Decree further requires Defendants to pay $300,000 to the Rose Foundation for

4   Communities and the Environment to address any potential harms from the violations alleged

5   in the action.  *Id.*  The funds are to be used for grantmaking to acquire and manage land and

6   conservation easements to study and improve water quality in Butte County, exclusive of any

7   property within ten miles of the Facility.  *Id.*  The Decree also requires Defendants to pay

8   Plaintiff $23,000 to defray Plaintiff's reasonable investigative, expert, consultant and attorneys'

9   fees and costs associated with monitoring Defendants' compliance with the Decree.  *Id.*

10          The injunctive terms required in Section II of the Decree, and the monetary payments

11  required by Section IV, are significant forms of relief obtained by Plaintiff that require

12  Defendants to do something that they were not otherwise required to do.  *St. John's Organic*

13  *Farm*, 574 F.3d at 1059.  Because the Decree is a judicially-enforceable document, these

14  requirements materially change the legal relationship between the parties.  *Id.* at 1058-59;

15  *Richard S.*, 317 F.3d at 1088; *S.F. Baykeeper v. W. Bay Sanitary Dist.*, No. C-09-5676 EMC, 2011

16  U.S. Dist. LEXIS 138093, at *12 (N.D. Cal. Dec. 1, 2011) citing *Saint John's Organic Farm v. Gem*

17  *Cty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1058-59 (9th Cir. 2009) (judicially-enforceable

18  settlement agreement is sufficient to confer prevailing party status for fee award under the

19  Clean Water Act).  Plaintiff is therefore a prevailing party.

20          **II.     Plaintiff's Counsel Expended a Reasonable Number of Hours**

21          To determine whether Plaintiff's attorneys could have reasonably billed the hours

22  sought to a private client, this Court should begin its review with the billing records that

23  Plaintiff submits with this motion.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir.

24  2013).  Plaintiff's counsel maintained contemporaneous time records reflecting a reasonable

25  number of hours to prosecute this action.  Packard Dec. at ¶ 32, Exhibit 4.  Plaintiff's counsel

26  also exercised care here, expending only the hours reasonably calculated to advance the

27  objectives of the case.  *Id.* at ¶ 34.  Counsel's billing records are sufficiently detailed to

28  demonstrate that these are hours that could have reasonably been billed to a private client,

and to establish their entitlement to compensation for all hours included in this request.  *Id.* at

¶ 36, Exhibit 4.  Mr. Packard, as lead counsel, oversaw assignments and ensured the

appropriate delegation of tasks based on seniority and billing rate, working with Mr. Acree and

Mr. Carlon so that each of them handled discreet parts of the case work to avoid any

duplication of effort.  *Id.* at ¶ 33-34.

Counsel have reviewed and edited the over 1,300 billing entries set forth in Exhibit 4 to

ensure that the present fee application only seeks compensation for those hours reasonably

and efficiently expended in the furtherance of this litigation, and to reflect only those hours

that could have been billed to a private client.  *Id.* at ¶¶ 31-34.

**Category 1:    Investigation, Case Initiation and Management**

The majority of these billing entries were incurred in the first year of the case and

involve time spent by counsel familiarizing themselves with the case, collecting publicly-

available documents, interviewing witnesses and assembling and analyzing seven years of

storm water sampling results, leachate spill notifications, Annual Reports, Storm Water

Pollution Prevent Plans ("SWPPPs") and communications to and from the Central Valley

Regional Water Quality Control Board ("Regional Board"), the State Water Resources Control

Board ("State Board"), and the United States Army Corps of Engineers ("USACE").  Packard Dec.

¶¶ 8-11, 51-52, Exhibit 4, Category 1.  It also included drafting a notice of violation to initiate

the case, meeting and conferring with opposing counsel, drafting and filing a complaint and

reviewing the answer, and drafting and reviewing initial disclosures.  *Id*.  This category also

includes billing entries from the next four years of the case for non-discovery based

investigations, document review, and discussions with witnesses and regulatory agencies, and

for case management related activities and discussions with the court, client and opposing

counsel.[5]  *Id*.  The total number of attorney hours expended on this category over the course of

5 years is 117.4  hours, averaging approximately 23.5 hours per year of litigation.  Packard Dec.

¶¶ 51-52, Exhibit 4, Category 1.

---

[5] For example, the State Board conducted a parallel investigation into the leachate discharges
at issue in this case, and Plaintiff needed to stay up to date on the progress of that investigation
through Public Records Act requests. *Id.*

**Category 2:    Discovery**

Extensive discovery efforts were required in this case, and billing entries span from April of 2020 to November of 2023.  Plaintiff propounded written discovery resulting in the production of over 5,900 documents and the developments of numerous admissions, which helped Plaintiff to narrow the factual and legal issues in dispute.  Packard Dec. ¶¶ 15, 53-54.  Plaintiff also responded to the County's discovery.  Packard Dec. ¶ 20.  Plaintiff conducted a formal discovery inspection of the Facility on December 3, 2020, and then had to move to compel a second wet weather inspection in the Fall of 2021.[6]  Packard Dec. ¶¶ 15-16, 53-54.  These entries also include three "person most qualified" depositions which Plaintiff began to take in March of 2023 and which carried on through June of 2023 due to the County's designation of deponents who were not prepared to testify on the subject matters identified in Plaintiff's deposition notices.[7]  Packard Dec. ¶¶ 23, 53-54.  This category includes time spent conducting four depositions of Defendants experts, as well as reviewing the expert reports and other documents relied on by the experts for their testimony, a process that required extra time due to revisions in Defendants' reports.  Packard Dec. ¶¶ 24, 53-54.  This category also includes time spent interviewing and retaining Plaintiff's expert, familiarizing them with the case, and reviewing documents and coordinating with the expert to prepare the expert reports related to their testimony.  *Id.*  This category also includes routine tasks attendant to discovery, such as drafting and negotiating protective orders and stipulations to extend time.  *Id.*  The total number of attorney hours expended on this category over the course of 5 years is 382.9 hours, 234.9 of which was spent from April of 2020 to March of 2023, when written discovery and site inspections and retention of Plaintiff's expert were the major allocation of discovery time, and 148 hours were expended from March of 2023 to November of 2023 when the persons most qualified and expert depositions took place. Packard Dec. ¶¶ 53-54, Exhibit 4, Category 2.

---

[6] Plaintiff was awarded fees and costs as sanctions in this motion to compel, and does not seek to recover that time here.  Packard Dec. ¶ 66.

[7] Defendants eventually designated a prepared deponent, but Plaintiff was forced to move to compel and was awarded fees and costs as sanctions for its efforts.  Plaintiff does not seek to recover that time here, either.  Packard Dec. ¶¶ 66, 67.

**Categories 3 and 4:    Settlement Efforts with and Without Court Assistance**

This category includes time spent conducting a limited inspection of the easement parcel on February 21, 2020 with the client and local counsel; convening a settlement call on March 11, 2020 with the County's new outside counsel, Abbot & Kindermann; requesting and obtaining a settlement-protected site inspection, with experts present, on May 27, 2020; and convening a second settlement call on July 2, 2020.  Packard Dec. ¶¶ 12-13, 17-22, 29, 55-58, Exhibit 4, Categories 3 and 4.  It also includes time spent seeking an order referring the case to a settlement conference with Magistrate Judge Kendall J. Newman.  ECF No. 11.  Settlement conferences were later held with Magistrate Judge Newman on March 10, 2021, and again on June 29, 2022.  Packard Dec. ¶¶ 17-20, 57, Exhibit 4, Categories 3 and 4.  In preparation for the conferences, and at the direction of the Magistrate Judge, Plaintiff prepared a comprehensive settlement demand, and was required to conduct extensive research on the law regarding the termination and modification of conservation easements because of Defendants settlement positions.  *Id*.

The first conference did not result in a settlement.  *Id*.  The second conference with Magistrate Judge Newman was more productive than the first, insofar as the parties exchanged more detailed drafts of a potential consent decree.  *Id*.  However, it did not resolve the case either, and the parties proceeded with another six months of discovery while at the same time continuing to keep the settlement discussion moving forward.  *Id.*

By January of 2023, the parties had reached an agreement that defense counsel agreed to submit to the Butte County Board of Supervisors.  *Id*.  In early February 2023, the Board of Supervisors rejected the agreement without explanation, presenting an apparently final impasse to resolving the case and necessitating the completion of discovery and the preparation of a motion for summary judgment.  *Id*.  The parties began discussing settlement again during the summary judgment process, and within twelve days of the Court's ruling on the motion, the parties reached terms on a fully-executed consent decree and submitted it to the Department of Justice for its statutorily-mandated review.  *Id*. at ¶ 29.

The total amount of time spent pursuing settlement in this case over 5 years, which

included two judicial settlement conferences, dozens of phone calls and letters exchanging drafts and explaining demands, negotiating a final agreement that was rejected by Defendants in February of 2023, and then negotiating the final agreement that settled this matter was 292.6 hours. *Id*. at 55-58, Exhibit 4, Categories 3 and 4.

**Category 5:    Motion for Summary Judgment and Trial Preparation**

After the County refused to approve the settlement agreement drafted after nearly 3 and a half years of litigation and settlement efforts, Plaintiff completed discovery and then prepared a motion for partial summary judgment and began to prepare for trial, with the bulk of the time spent on this phase of the case occurring in between November of 2023 and April of 2024. Packard Dec. ¶¶ 27-28, 59-60, Exhibit 4, Category 5. Preparation of the motion took three months and required the review of thousands of pages of document production and deposition transcripts to compile the undisputable evidence in support of the motion. *Id*. Ultimately, the motion was rested on 92 statements of undisputed facts backed by 847 pages of exhibits. *Id*. The total time expended on this category was 198.3 hours. The time required to prepare and file the motion was 100 hours, the reply took 41 hours, and the supplemental briefing ordered by the court took 24.1 hours. *Id*. Plaintiff's attorneys spent 20 hours preparing documents and witnesses for trial and preparing the pre-trial conference statement. The remaining time was spent attending the motion hearing, reviewing the order, and on other tasks attendant to the motion for summary judgment and trial preparation. *Id*.

**Category 6:    Fee Motion**

This final category included time spent on this fee motion. Since Defendants were not willing to concede any substantive factual or legal points relevant to this fee motion, Plaintiff was required to conduct the research necessary to support its rates, including an extensive review of fee awards and consultation with two experts in fee awards in the relevant geographic area and practice area. Packard Dec. ¶¶ 61, Exhibit 4, Category 6. Plaintiff's counsel were also required to review five years' worth of billing entries, emails, and documents to review the time expended on this case and construct a narrative for the court of how the time in this case was expended. *Id*. They were also required to categorize the time in a way

that made the time spent understandable, exercise billing judgment regarding what expenditures were reasonable, and to compile exhibits and evidence in support of the request. *Id.*  107.3 hours have been spent to date on preparing this motion

**Billing Deductions**

Plaintiff's attorneys exercised a substantial amount of billing discretion in arriving at the number of hours requested, and when recording their time as a practice would make reductions for time spent inefficiently or duplicatively.  Packard Dec. ¶¶ 33-34.  Additionally, after compiling the billing entries, the attorneys made further deductions of 75.2 hours of attorney time, 63.1 hours of paralegal time and over $600 in costs from their request.  This amount includes 13.8 hours of travel time, 33.3 hours of time for attorney conferences, and 24.7 hours that were previously compensated as sanctions for Defendants' failures to comply with discovery requests.  Packard Dec. ¶¶ 64-69.  The cuts of attorney time alone, not including the time previously compensated in sanctions awards, amounts to a cut of nearly 4% of the total hours sought in this case. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 908 (9th Cir. 2002) (noting exercise of considerable billing judgment as a factor in approving hours requested).

### III.   Plaintiff's Requested Hourly Rates Are Reasonable

Plaintiff was represented in this action by the Law Offices of Andrew L. Packard, the Law Office of Brian Acree, and the Law Office of William Carlon.[8]  The attorney fee rates sought in this motion and discussed in detail below are the prevailing rates in the relevant legal community.

### A.  Relevant Legal Community

Rates are reasonable if they are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895, n.11 (1984).  "Generally, the relevant community is the forum in

---

[8] Until the beginning of this year, Mr. Carlon was a senior associate at Mr. Packard's firm, at which point he started the Law Office of William Carlon and continued representing Plaintiff as co-counsel to Mr. Packard's firm. Packard Decl. ¶ 39.

which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).  "Rates from outside the forum may be used if local counsel was unwilling or unable to do the work because they 'lack the degree of experience, expertise, or specialization required to handle properly the case.'" *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 2012 U.S. Dist. LEXIS 42287, at *17 (E.D. Cal. Mar. 26, 2012) citing *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992); see also *L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888 (E.D. Cal. 2009) (San Francisco rates applied to Eastern District case because local counsel was unavailable).  Eastern District courts have also held that in circumstances where hiring out of forum counsel will result in more efficient litigation of a case, either because of counsel's familiarity with the matter or because it has represented the same client in accompanying or related proceedings, an award of out of forum rates is appropriate.  *Yenidunya Invs., Ltd. v Magnum Seeds, Inc.*, No. 2:11-cv-1787-WBS 2012 U.S. Dist. LEXIS 20421 (E.D. Cal, Feb. 17, 2012) (attorneys "had already had developed experience and expertise on the facts underlying this specific case" and thus efficiency derived from attorneys' prior and ongoing representation of party justified deviation from forum rates); *Shany Co. v.Crain Walnut Shelling, Inc.,* No. 2:11-cv-01112-KJM-EFB, 2015 U.S. Dist. LEXIS 8006, at *12-13 (E.D. Cal. Jan. 23, 2015) (party "could not be expected to hire new counsel to represent it" in trial over matter that had previously been submitted to arbitration).

Finally, current rates are generally used to determine statutory fees, as rough compensation for the delay in payment experienced by the prevailing attorneys.  *Perdue v Kenny A.* 559 U.S. 542, 555 (2010); *Cal Fee Awards*, 3d ed. (Mar. 2024 Supp.) § 9.111, p. 9 -129. Attorneys representing non-profit organizations on a contingent fee basis in public interest litigation are entitled to the rates charged for comparably complex federal litigation.  See *Blum*, supra, 465 U.S. at 895 n.11.

Here, the relevant legal community is the San Francisco Bay area because Plaintiff was unable to find, after exhaustive efforts, qualified local counsel willing or able to take its case; and because the lawyers Plaintiff ultimately retained all have their offices in and practice in the San Francisco Bay Area. Packard Dec. ¶¶ 37-43.

//

**1.  Plaintiff's Good Faith Efforts to Retain Qualified Local Counsel**

Plaintiff made extensive efforts to retain local[9] counsel for this case.  Declaration of Holly Nielsen in Support of Motion for Attorneys' Fees and Costs ("Nielsen Dec."), filed herewith, at ¶¶ 6-23.  When Plaintiff became aware of landfill leachate discharges into its wetland preserve, it began to try and resolve the violations using whatever means were at its disposal.  Initially, Plaintiff attempted to informally address the violations with the County, but that was unsuccessful.  *Id.*at ¶¶ 7-10.  Plaintiff also tried to resolve the violations by involving state and federal regulatory agencies, but that was similarly unsuccessful.  *Id*. at ¶ 10.  Plaintiff's executive director, between July 8, 2019 and July 10, 2019, began contacting local and regional environmental groups for assistance in obtaining legal counsel to address the violations.  *Id.* at ¶ 11.  During the course of these conversations, it became clear to Plaintiff that one of the tools at its disposal was a citizen suit against Defendants for violations of the Clean Water Act.  *Id.* at ¶ 16.  Plaintiff's search for counsel expanded as it became less likely that it was going to find qualified local counsel in Chico, or even Butte County.  *Id.* at ¶¶ 6-23.

Plaintiff contacted the Butte Environmental Counsel and the Northern California Regional Land Trust, both located in Chico, California.  *Id.* at ¶ 11.  Plaintiff also contacted the California Council of Land Trusts, located in Sacramento, California, and the California Sportfishing Protection Alliance,[10] then a Stockton, California based organization.  *Id.* at ¶ 11, 17.  Staff at these organizations advised Plaintiff that it would be difficult to retain local counsel, especially on a contingent basis, because there are only a few attorneys in the area who specialize in deed restrictions and environmental conservation.  *Id.* at ¶ 11.  The California Sportfishing Protection Alliance recommended that Plaintiff contact Mr. Packard's firm.  *Id.*

---

[9] In his order granting discovery sanctions to Plaintiff in January 2021, Magistrate Judge Cota declined to award Plaintiff's counsel San Francisco Bay Area rates on the basis that Plaintiff had not, at that time, provided sufficient evidence that its search for counsel included lawyers located in Sacramento, and not just Butte County.  ECF No. 35 at 3.  The declaration of Holly Nielsen submitted in support of this motion demonstrates that Plaintiff's search was not just limited to Butte County, but also included the forum in which the district court sits, Sacramento.

[10] The California Sportfishing Protection Alliance has extensive experience litigating citizen suits enforcing the Clean Water Act.

Plaintiff's Notice of Motion and Motion        19         Case No.: 2:20-cv-00123-DJC-DMC
For Attorneys' Fees and Costs

Plaintiff was referred to four attorneys located in Chico: Richard Harriman, Rick Leland, William Volpe, and Sara Knowles.  *Id.* at ¶¶ 12, 14.  Plaintiff contacted these lawyers between July 8, 2019 and July 10, 2019, but none were able or willing to take the Plaintiff's case, except for Ms. Knowles, who agreed to a consultation that ended September 23, 2019.  *Id.* at ¶¶ 12-15, 17.

On July 24, 2019, following the recommendation of the California Sportfishing Protection Alliance, Plaintiff contacted Mr. Packard's firm to discuss the case and his prior history with the Facility.  *Id.* at 17, fn. 2.  Plaintiff did not retain Mr. Packard at that time, but continued to search for counsel.

On September 18, 2019, as it became clear that the arrangement with Ms. Knowles was not going to meet Plaintiff's needs, Plaintiff's executive director contacted California Sportfishing Protection Alliance again, and was again referred to Mr. Packard's firm.  *Id.* at ¶ 17.  On October 4, 2019, Plaintiff contacted the Land Trust Alliance, a national organization based in Washington, D.C., to seek advice for finding representation.  *Id.* at ¶ 21.  The Land Trust Alliance indicated that the counsel they use are located on the East Coast, and that they were not aware of any counsel in Butte County or Sacramento that would be qualified and willing to take on the case on a contingent basis.  *Id.*  They also recommended that Plaintiff try contacting Clean Water Act specialists in the event that conservation easement specialists were unavailable.  *Id.*

Following this advice, Plaintiff contacted Mr. Packard's firm again on October 4, 2019 to see whether they would be willing and able to take the case.  *Id.* at ¶ 22.  Mr. Packard's firm agreed to take the case, and after three months of looking for a lawyer, both near and far, Plaintiff finally had legal counsel.  *Id.*

Plaintiff's inability to find qualified counsel located in either Butte County or Sacramento -- despite a good faith, extensive search – warrants the application of out-of-forum rates.

In the state court proceedings on appeal, the Third District Court of Appeals found that Ms. Nielsen's unsuccessful but good faith efforts to retain local counsel for that action warranted the application of San Francisco Bay Area rates for all three of the attorneys seeking fees in this motion.  See Plaintiff's Request for Judicial Notice.  Federal and state standards with

1  respect to the award of out-of-forum rates are very similar, and each requires a showing that

2  local counsel was unavailable or otherwise inappropriate for the case.  Compare *Gates* 987 F.2d

3  at 1405 and cases cited therein with *Center for Biological Diversity v. County of San Bernardino*

4  *(Hawarden Dev. Co.),* 188 Cal.App.4th 603, 615 (2010).  The decision of the California Court of

5  Appeal for the Third District and the Butte County Superior Court that Plaintiff met the

6  requirement of showing that no local counsel were available to take on this matter, despite

7  Plaintiff's diligent but unsuccessful attempts to retain local counsel willing and able to take this

8  case on a contingent fee basis, is therefore relevant to this matter, since those decisions were

9  based largely on the same facts.

10       In addition, Eastern District courts have awarded out-of-forum rates where the

11  circumstances of the case show that there was an efficiency to be gained from hiring such

12  counsel, either because they had familiarity with the underlying facts of the case or had been

13  counsel in a related matter.  *Yenidunya Invs., Ltd. v Magnum Seeds, Inc.*, No. 2:11-cv-1787-WBS,

14  2012 U.S. Dist. LEXIS 20421 (E.D. Cal, Feb. 17, 2012) (applying prevailing rates in San Francisco,

15  where the defendant's counsel was based, and not the forum district of Sacramento because

16  counsel had extensive first-hand familiarity with the dispute between the parties); *Shany Co. v.*

17  *Crain Walnut Shelling, Inc.,* No. 2:11-cv-01112-KJM-EFB, 2015 U.S. Dist. LEXIS 8006, at *12-13

18  (E.D. Cal. Jan. 23, 2015) (applying prevailing rates in San Francisco rather than Sacramento

19  because party "could not be expected to hire new counsel to represent it" in trial over matter

20  that had previously been submitted to arbitration).  Here, Plaintiff brought both a state and,

21  later, a federal Clean Water Act action against the County over the discharge of pollutants from

22  the landfill into the wetland preserve.  Packard Dec. ¶ 8.  While the cases involved substantially

23  different areas of law, they shared a common set of facts.  *Id.*  Additionally, Mr. Packard's firm

24  had previously litigated a Clean Water Act case against the County regarding discharges from

25  the same landfill.  *Id.*  Accordingly, here the facts strongly support a finding that the Plaintiff's

26  counsel's familiarity with the case provided an efficiency that justifies applying out-of-forum

27  rates.  Particularly given the state court's finding that out-of-forum rates were appropriate to

28  award for the state case, it would make no sense to require Plaintiff to hire entirely different

counsel with less experience in the matter to prosecute a Clean Water Act case over the same conduct that was at issue in the state case.  This is therefore precisely the type of case to which the holdings of *Yenidunya* and *Shany* should apply.

**B. Prevailing Hourly Rates in San Francisco Bay Area for Similar Services by Lawyers of Reasonably Comparable Skill, Experience, and Reputation**

"Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998) (a declaration regarding the prevailing rate in the relevant community is sufficient to establish a reasonable hourly rate).

In setting its hourly rates here, Plaintiff's counsel reviewed the hourly rates charged by other lawyers of reasonably comparable skill, experience, and reputation in the San Francisco Bay Area.  Packard Dec. at ¶¶ 46-48.  Plaintiff's counsel further relied on their own experience and knowledge of prevailing rates in the San Francisco Bay Area legal community.  *Id.* at ¶¶ 41, 45, 47.  In addition, Plaintiff retained the services of fee expert Richard Pearl to opine on the reasonableness of Plaintiff's requested rates.  *Id.* at ¶¶ 38, 41, 45.  Mr. Pearl is frequently called on to opine about the reasonableness of attorneys' fees, and has prepared opinions or provided live testimony on attorneys' fee matters in over two hundred cases.  Declaration of Richard Pearl in Support of Plaintiff's Motion for Attorneys' Fees ("Pearl Dec."), at ¶¶ 8-14. Plaintiff's counsel also sought review of their rates by Chrisopher Sproul, an extensively experienced and well-respected environmental litigator in the Bay Area.  Declaration Of Christopher Sproul in Support of Motion for Attorneys' Fees and Costs ("Sproul Dec."), ¶¶ 5-15. Based on this extensive review, reasonable 2024 hourly rates for the attorneys in this case are as follows (Pearl Dec. ¶¶ 15-29, Sproul Dec. ¶¶ 16-31, Packard Dec. ¶¶ 46-48):

| Attorney | Years of Experience | Rate |
|---|---|---|
| Andrew Packard | 30 | $1,015 |
| Brian Acree | 24 | $935 |
| William Carlon | 8 | $730 |

Supporting Declarations of Knowledgeable Fee Motion Litigators in the Bay Area

*Richard Pearl*.  Richard Pearl has written the leading treatise on attorneys' fee awards in California, *California Attorney Fee Awards* (3d ed., Cal. CEB 2010) and its cumulative Supplements between 2011 and March 2024.  Pearl Dec. ¶ 6.  Mr. Pearl has long been recognized as the leading authority on fee recovery in California.  *Id*. at ¶¶ 8-14.  Mr. Pearl reviewed the rates sought by Plaintiff for each of its lawyers in the case.  *Id.* at ¶¶ 15-17.  He then evaluated the rates using five factors: (1) counsels' credentials, experience, and performance; (2) the testimony of counsels' peers; (3) recent hourly rate determinations; (4) hourly rates set by law firms located in the legal community; and, (5) rates shown by credible rate surveys.  *Id.* at ¶¶ 18-29.  Mr. Pearl found that the rates requested by Plaintiff's counsel are reasonable.  *Id.* at ¶ 18.

Mr. Pearl's extensive research and comparisons are adequate evidence to support Plaintiff's requested rates.  *Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998).  Mr. Pearl examined over 30 attorney fee determinations in the San Francisco Bay Area from 2017 to 2024.  Pearl Dec. ¶ 22, Exhibit B.  Just in the 2020 to 2024 rate cases cited by Mr. Pearl, courts found that lead attorneys or partners like Mr. Packard with over 30 years of experience were awarded rates ranging between $960 and $1500, Pearl Dec. at 14:22, 15:11, lead attorneys or partners like Mr. Acree with between 20 and 30 years of experience were awarded between $810 and $1275, *id.* at 14:23, 15:22, and lead attorneys or partners with less than 12 years of experience like Mr. Carlon were awarded between $600 and $1,010, *id.* at 16:22, 15:24.  Mr. Pearl also noted that rates had risen by as much as 10% per year since 2018.  *Id*. at ¶ 22, fn. 3.

Mr. Pearl also found that Plaintiff's counsels rates are "well within the range of stated non-contingent hourly rates charged by numerous San Francico Bay Area law firms that regularly engage in civil litigation of comparable complexity."  *Id.* at ¶ 23.  Again, the data upon which he based this finding is extensive, and included rates provided by 30 firms from 2018 to 2023.  *Id.* at ¶ 23, Exhibit C.  Just from the examples of 2022 to 2023 rates provided in the body of his declaration, rates for attorneys with over 30 years of experience ranged from $1,050 to $1,225, rates for attorneys with 20-30 years of experience ranged from $1,050 to $1,100, and

1  attorneys with less than 12 years of experience ranged from $700 to $775.  *Id.* at ¶ 23.

2        Finally, Mr. Pearl found that Plaintiff's "counsel's rates are within the range of Bay Area

3  rates actually charged also is based in part on the 2023 Real Rate Report by Wolters Kluwer."

4  *Id.* at ¶ 24.  Mr. Pearl described the utility and reliability of the Real Rate Report as follows:

> [T]he Real Rate Report surveys and analyzes hundreds of law firm invoices to determine the range of hourly rates actually charged in a particular locale, which it then divides by "First Quartile," "Median," and "Third Quartile." As such, the Reports have been found to be a useful source for determining the reasonableness of hourly rates requested by successful litigants. See, e.g., *French v. City of Los Angeles*, supra, 2022 U.S. Dist. LEXIS 111194, at *52 ("this Court has found that the [2021] Real Rate Report provides a helpful reference point and consults it here," citing Report's Third Quartile rates); *Vogel v. MS Food Servs.* (C.D. Cal. Dec. 26, 2018) No. 16-cv-8433 DSF, 2018 WL 11027947, at *3 (Real Rate Report "is based on actual legal billing, matter information, and paid and processed invoices from more than 90 companies — not just on posted or advertised rates."); *RG Abrams Ins. v. Law Offices of C.R. Abrams* (C.D. Cal. 2022) 342 F.R.D. 461, 524 n.13 (same).

13 *Id.*  Mr. Pearl concluded that "the 2023 Report describe the rates charged by 115 San Francisco

14 Area "Litigation" partners.  *Id.*  For that category, the Third Quartile San Francisco Area rate was

15 $1,124 per hour.  *Id.*  Given Counsel's high levels of experience, expertise, and skills here, the

16 Report's Third Quartile rates —i.e., the range of rates charged by the top 25% of San Francisco

17 area litigators—are the most appropriate measure here."  *Id.* at ¶ 25.  Mr. Pearl then also noted

18 that, extending the scope beyond "Litigation" partners, the "2023 Third Quartile rate charged

19 by 114 San Francisco partners with 21 or more years of experience at $1,059 per hour" and that

20 overall the report found "Third Quartile "Partner" rates at $1,045 and "Associate" rates at $691

21 per hour. Again, Counsel's requested 2024 rates here are readily in line with these rates."  *Id.* at

22 ¶ 26.

23        Finally, Mr. Pearl also noted that the "LSI Laffey Matrix . . . also supports Counsel's

24 requested rates."  *Id.* at ¶ 27.  Mr. Pearl concluded that:

> The LSI Laffey Matrix rate for the period ending June 1, 2024 for attorneys like Mr. Packard and Mr. Acree with 20 or more years of experience is $1,057 per hour. For attorneys with 8-10 years of experience like Mr. Carlon, the rate is $777 per hour. When adjusted to account for the 9% cost-of-living differential between the Washington D.C. Area and the San Francisco Bay Area . . . those rates equal $1,152 and $847 per hour. Again, given Counsel's specialized expertise and litigation experience, their requested

rates are modest in comparison to the rates suggested by the Laffey Matrix.

*Id.* at ¶ 28.

*Christoper Sproul*.  Mr. Sproul is an experienced environmental litigator who is highly knowledgeable about attorney fee awards in the Northern District.  Sproul Dec. ¶¶ 5-15.  As part of his firm's ongoing work representing clients in citizen suits brought in the Northern District of California, the attorneys at his firm routinely research and discuss cases pertaining to prevailing market rates.  Sproul Dec. ¶¶ 14-17.  Consequently, Mr. Sproul is well-informed about the prevailing market rates in the San Francisco Bay Area charged by attorneys doing the same work as Plaintiff's counsel.  Mr. Sproul, as a federal court litigator based in San Francisco, is also generally familiar with the commercial rates charged by attorneys in the San Francisco Bay Area.  *Id.* at ¶¶ 5-14.

Mr. Sproul compared the rates requested by each of Plaintiff's attorneys to rates awarded by courts in the Northern District from 2019 to 2022 to counsel of comparable, and lesser, experience in similar cases of complex civil litigation.  Sproul Dec. ¶¶ 18-20.  He then adjusted the awards to account for 3% inflation, an amount much lower than the actual inflation in attorney fee rates over the time period in question, to arrive at a 2024 rate value for each of the awards analyzed.  Sproul Dec. ¶ 19.  Comparing Mr. Packard's requested rate to 27 instances of rates awarded to similarly experienced attorneys, Mr. Sproul found that the average award was $1,219.30, substantially above the $1,015 Mr. Packard is requesting here.  Sproul Dec. ¶ 19.  Comparing Mr. Acree's requested rates to the rates from 37 awards for comparable work, Mr. Sproul concluded that the average award was $1,082.48, substantially higher than the $935 requested by Mr. Acree.  Sproul Dec. ¶¶ 21-25.  Comparing Mr. Carlon's requested rates to those from 25 instances of comparable awards, Mr. Sproul concluded that the average award was $780.66, again, substantially above the $730 that Mr. Carlon is requesting here.  Sproul Dec. ¶¶ 26-30.

Given the above, Plaintiff's attorneys have presented sufficient evidence, based on their own personal knowledge, the knowledge of a recognized expert in attorney fee awards, the knowledge of an experienced environmental litigator, and on the review of dozens of attorney

fee cases, the reported rates of dozens of Bay Area law firms, and on surveys of the rates of over a hundred comparable attorneys, that their rates are well "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 895, n.11 (1984); *see also United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998) (a declaration regarding the prevailing rate in the relevant community is sufficient to establish a reasonable hourly rate).

## IV.    Plaintiff's Requested Costs Are Reasonable

Through the date of this filing, Plaintiff has incurred $54,713.10 in litigation costs. Packard Dec. ¶¶ 62-63, Exhibit 3.  Over ninety percent of these costs are for expert consultants' services and depositions.  The case was litigated right up until the pre-trial conference, and included discovery, trial preparations, the depositions of Defendants' three declared experts and one rebuttal expert, and the preparation of a detailed consent decree.  *Id.*  Plaintiff's experts[11] conducted numerous in-person inspections of the approximately 229-acre Facility, provided detailed reports and recommendations, educated and advised Plaintiff's counsel about technical issues related to the Facility's storm water management in support of litigation and settlement.  *Id.* at ¶¶ 53, 63.  Plaintiff's expert was deposed, and assisted with preparing for Defendants' experts' depositions.  *Id.*  Plaintiff's expert prepared a comprehensive expert report, requiring the review of hundreds, if not thousands, of pages of dense technical documents regarding the operations of a large landfill.  *Id.*  Notwithstanding how far this case went toward trial, these costs are relatively low for an environmental matter such as this.  *Id.* at ¶ 35.  In addition, the negotiation of the Decree necessarily involved technical issues related to storm water pollution prevention including detailed review and analysis of the Facility's complex storm water conveyance systems (comprised of a series of sump pumps, manually-operated valves and miles of conduit), as well as the separately managed leachate collection and removal system.  *Id.* at ¶ 63.  The remaining costs were in the nature of court fees, process

---

[11] Plaintiff initially retained John Lane, a geologist local to Chico and who was familiar with the Facility.  Mr. Lane did much of the early expert work in the case, until approximately 2021, when Matthew Hagemann was retained.

server fees, printing, postage, and travel costs -- all reasonably incurred for reasonable, typical out-of-pocket expenses normally charged to a paying client. *Id.* at ¶ 63, Exhibit 3. All of these litigation costs were necessarily incurred and are fully recoverable. *Sierra Club*, 75 F. Supp. 3d at 1153, 33 U.S.C. § 1365(d).

**CONCLUSION**

Due to the expertise of counsel, the efficiency with which this complex litigation was prosecuted herein, and the exemplary public interest settlement produced as a result, Plaintiff respectfully requests that the Court grant its requested lodestar award of $918,747.50 in reasonable attorneys' fees, and $54,713.10 in litigation costs.

| Attorney | Years of Practice | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Andrew Packard | 30 | $1,015 | 337.9 | $342,968.50 |
| Brian Acree | 24 | $935 | 100.2 | $93,687.00 |
| William Carlon | 8 | $730 | 660.4 | $482,092.00 |
| Costs | | | | $54,713.10 |
| | | | TOTAL | $973,460.60 |

Dated:  July 24, 2024          LAW OFFICES OF ANDREW L. PACKARD


By:    /s/ Andrew L. Packard
Andrew L. Packard
Attorneys for Plaintiff
CALIFORNIA OPEN LANDS