ANDREW L. PACKARD (State Bar No. 168690)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
E-mail: andrew@packardlawoffices.com

BRIAN D. ACREE (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
Tel: (510) 517-5196
E-mail: brian@brianacree.com

WILLIAM N. CARLON (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
Tel: (530) 514-4115
E-mail: william@carlonlaw.com

Attorneys for Plaintiff
CALIFORNIA OPEN LANDS

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA OPEN LANDS,<br><br>     Plaintiff,<br><br>     v.<br><br>BUTTE COUNTY DEPARTMENT OF PUBLIC WORKS, ERIC MILLER, and DENNIS SCHMIDT,<br><br>     Defendants. | Case No: 2:20-cv-00123-DJC-DMC<br><br>**DECLARATION OF HOLLY NIELSEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Hearing Date: October 3, 2024<br>Hearing Time: 1:30 p.m.<br>Courtroom: 10, Hon. Daniel J. Calabretta |

I, HOLLY NIELSEN, hereby declare under penalty of law that the following facts are true and correct:

1. I make this declaration based on my own personal knowledge, and I am competent to testify to the matters set forth herein.

2. Plaintiff California Open Lands ("COL") is a 501(c)(3) non-profit corporation organized under the laws of the State of California, and dedicated to the conservation of Northern California's flora and fauna on open lands in perpetuity.  As a land trust, it accomplishes this mission by using land acquisition and easement restrictions to promote the preservation and return of California native plants, using indigenous agricultural practices, extensive community outreach, and advocacy before federal, state and local government agencies.

*My Responsibilities as the Executive Director of Plaintiff California Open Lands*

3. I served as COL's Executive Director from 2013 until 2023.  Since that time, I have been retained by COL to continue to manage the Neal Road Preserve, including the organization's approval of the settlement terms in this action, and, going forward, oversight of the County's compliance with the Consent Decree.

4. As COL's Executive Director, I was generally responsible for the day-to-day operations of the organization.  These operations included operations management, strategic development, community relations, property inspections and biological monitoring on eleven land preserves, vegetation management and coordination with contractors, ensuring regulatory compliance of land preserves, preserve acquisition, development of preserve funding mechanisms and cost estimates, and review of regulatory documents.  I was also specifically responsible for COL's public outreach and coordination of volunteers, and the organization's support for botanical and biological research and monitoring in the Northern Sacramento Valley, through advocacy for more public and private regional land conservation.  In the course of this work, I was also responsible for updating COL's Board of Directors through phone calls, emails, texts and our regularly scheduled board meetings.

5. COL is a member of the Land Trust Alliance ("LTA"), a national leader in policy, standards, education and training for the land trust community.  My responsibilities as COL's Executive Director included communicating with the LTA and familiarizing myself with their

work in support of COL's conservation goals.

*My Efforts to Address the County's Unlawful Discharges Through the Regulatory Agencies*

6. Since 2007, COL has held a conservation easement ("Easement") protecting an approximately 6-acre parcel located within the Neal Road Landfill. The Easement establishes COL's management and monitoring duties to protect this land in perpetuity.

7. Beginning in the spring and summer of 2019, COL was informed and became extremely concerned about the Butte County Department of Public Works' ongoing mismanagement of the Neal Road Landfill and the resulting discharges of hundreds of thousands of gallons of landfill leachate into COL's wetland preserve ("Preserve"). In May of 2019, I conducted COL's annual review of the Preserve, pursuant to COL's obligations under the Easement, and observed water in the Preserve that appeared to be contaminated.

8. Upon further investigation, I contacted the County on July 15, 2019 via email to gather more information about the contamination in the Preserve. The County replied on August 5, 2019, but failed to address COL's concerns. On September 3, 2019, I again wrote the County to notify them that they had violated the Easement by allowing unauthorized motorized vehicles to access the Preserve, by causing chemical pollution to contaminate the soils of the Preserve, and by depositing in the Preserve, or allowing to be deposited, three to four feet of gravel sediments. In the course of various responses in August and September of 2019, the County largely dismissed COL's concerns and rejected COL's proposal to resolve the dispute.

9. I also attempted to resolve these issues by meeting with County landfill staff and managers Todd Storti, Eric Miller and Steven Jackson. The issues COL raised were not resolved, and were not reported by the County to the regulatory agencies as required by the Easement.

10. I then contacted the United States Army Corps of Engineers and the Central Valley Regional Water Quality Control Board ("Board") to obtain more information and register COL's increasing concerns. Although the Board did issue a Notice of Violation against the County on August 21, 2019, these efforts were equally unavailing.[1]

---

[1] The State Water Resources Control Board ("State Board") later conducted its own investigation of the violations at issue in this action, issuing its own Notice of Violation on June 11, 2020. Neither of the notices issued by the Regional and State Boards resulted in any

Nielsen Dec ISO Motion                             3              Case No.: 2:20-cv-00123-DJC-DMC
For Attorneys' Fees and Costs

*My Efforts to Obtain Qualified Local Counsel*

11. To obtain counsel, beginning on or about July 8, 2019 through July 10, 2019, I first contacted local and regional environmental groups, including the Butte Environmental Counsel, the Northern California Regional Land Trust, the California Council of Land Trusts, in Sacramento, and the California Sportfishing Protection Alliance ("CSPA"). Staff at these organizations advised me that it would be difficult to retain local counsel, especially on a contingent basis, because there are only a few attorneys in the area who specialize in deed restrictions and environmental conservation. Notably, they also repeatedly pointed out that most local attorneys would be either unable to represent COL in an action against the County due to conflicts, or unwilling to represent COL because it is in their business interest to maintain congenial relations with Butte County officials and representatives, given the small size of the community. CSPA recommended that I contact Mr. Packard's firm.

12. In the course of my conversations with the local and regional environmental groups, I was referred to three local attorneys in Chico: Richard Harriman, Rick Leland, and William Volpe. I made phone calls to these local attorneys between July 8, 2019 and July 10, 2019.

13. When I interviewed Mr. Harriman, he informed me that he was extremely busy with ongoing litigation over a local development and would be unavailable. I then contacted Mr. Leland, who had previously served on COL's board of directors, but he had recently retired and moved. Mr. Volpe was uninterested in the case, due to conflicts of interests with the County.

14. On or about July 10, 2024, the COL board agreed to a consultation with local attorney Sara Knowles, who had been recommended by her office mate, Mr. Leland.

15. On or about August 29, 2019, COL was informed that Ms. Knowles was going to reach out to Butte County regarding the issues at the Preserve to assess whether they were meaningful correction of the County's violations of the Easement, necessitating legal action on COL's part to fulfill its duties under the Easement.

willing to work with COL or not, and if not, the following step would be some kind of legal action.

16. During the course of the conversations described above, it became clear to me that one of the tools at COL's disposal was a citizen suit against the County for violations of the Clean Water Act, and as it became clear that we were not going to find qualified local counsel in Chico, or even Butte County, my search for counsel expanded.

17. On or about September 18, 2019, I again connected with Bill Jennings, then the Executive Director of CSPA[2], to gather more options for the COL board to consider, as far as potential paths forward in protecting the Easement. Mr. Jennings again recommended that I contact the Law Offices of Andrew L. Packard.[3]

18. Mr. Jennings suggested that Mr. Packard's firm might be a good fit for COL in this case because, in addition to having expertise in citizen enforcement under the Clean Water Act, the firm had previously represented CSPA in a successful Clean Water Act case against the County involving water pollution issues at the Neal Road landfill in 2010, and was therefore familiar with the County's longstanding stormwater management problems at the landfill.

19. On or about September 23, 2019, the COL board met with Ms. Knowles to consider if COL would be required to choose the legal route in defending the easement because of the County's unwillingness to participate in informal resolution of COL's allegations. During this meeting, it became apparent that Ms. Knowles lacked the legal expertise to support COL, and although she assisted in the very initial stages of the case, Ms. Knowles was not willing to continue on a contingent basis, which was a necessity for COL, as a non-profit with a small annual operating budget.

20. Shortly thereafter, Ms. Knowles ceased communicating with me and would no longer answer my questions, at which point COL considered the legal consultation period with

---

[2] CSPA has been a leading citizen enforcer of the Clean Water Act in California over the last thirty years.

[3] On July 24, 2019, as part of my early search for counsel, I had contacted the Law Offices of Andrew L. Packard and we had a preliminary discussion about the case.

her to be over.

21. On or about October 4, 2019, I talked to the Land Trust Alliance's national legal team, and asked them for advice about finding representation in our situation. The Land Trust Alliance indicated that the attorneys they used were located on the east coast, and that they weren't aware of any attorneys in Butte County or Sacramento that would be qualified and willing to take on the case on a contingent basis. They also recommended that we try contacting Clean Water Act specialists in the event that conservation easement specialists were unavailable.

22. On or about October 4, 2019, I approached Mr. Packard's firm to determine whether he would be willing to assist in this case. Mr. Packard's firm was the only law firm I contacted who was willing to take this case on a contingent basis, and the only law firm that was not apprehensive about professional or social conflicts arising out of representing a party suing Butte County. Between counsels' lack of qualifications, unwillingness to work contingently, and concerns about representing a party suing Butte County, I was completely unable to obtain local counsel in Butte County for this case.

23. After retaining Mr. Packard's firm, COL also sought out local counsel with experience in conservation easement law. I interviewed attorney Mark Habib, a local attorney who has practiced in Butte County for thirty years, with experience on matters involving real estate and conservation easements. Mr. Habib was retained on or about January 10, 2020, but indicated from the beginning that he was available on a very limited basis, only, in an advisory role.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 18, 2024 in Chico, California.

Holly Nielsen