Diane G. Kindermann (SBN 144426)
dkindermann@aklandlaw.com
Glen C. Hansen (SBN 166923)
ghansen@aklandlaw.com
ABBOTT & KINDERMANN, INC.
2100 21st Street
Sacramento, California 95818
Telephone:   (916) 456-9595
Facsimile:   (916) 456-9599

Attorneys for Defendants
BUTTE COUNTY DEPARTMENT OF
PUBLIC WORKS, DENNIS SCHMIDT,
ERIC MILLER

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA OPEN LANDS, a non-profit land trust organization,<br><br>Plaintiff,<br><br>v.<br><br>BUTTE COUNTY DEPARTMENT OF PUBLIC WORKS, a political subdivision of the State of California, DENNIS SCHMIDT, an individual, and ERIC MILLER, an individual,<br><br>Defendants. | No.  2:20-CV-00123-KJM-DMC<br><br>**DEFENDANTS' <u>OPPOSITION</u> TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Hearing:   October 3, 2024<br>Time:   1:30 p.m.<br>Location:   Courtroom: 10<br>Judge:   Hon. Daniel J. Calabretta |

-1-

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................6

II.    PLAINTIFF'S FEDERAL LAWSUIT NOT ONLY FOLLOWED THE CAMP FIRE AND EXTRAORDINARY RAINFALL FROM ATMOSPHERIC RIVERS, BUT ALSO DUPLICATED EFFORTS ALREADY TAKEN BY STATE AGENCIES........7

III.   AN AWARD OF ATTORNEYS' FEE AND COSTS SHOULD BE ADJUSTED DOWNWARD TO REFLECT THAT PLAINTIFF WAS ONLY PARTIALLY SUCCESSFUL IN THIS CASE. ...........................................................8

    A.    Many Of Plaintiff's Claims Were Duplicative Of The Actions Taken By Governmental Agencies And Produced No Benefits In This Litigation........8

    B.    COL Pursued Meritless Claims Against The County...................................9

IV.   MANY HOURS INCLUDED IN THIS MOTION WERE UNREASONABLY INCURRED BY PLAINTIFF'S ATTORNEYS AND SHOULD NOT BE COMPENSATED. ...............................................................10

    A.    Hours Included In This Motion Were *Also* Billed In The Related State Action, For Which Plaintiff Has Already Been Compensated. ...................10

    B.    A Significant Portion Of Plaintiff's Billings Are For Intra-Office Conferences Between Plaintiff's Three Attorneys. .........................................14

    C.    Hours Billed By Plaintiff In This Case Were Spent On Frivolous Discovery Disputes. ................................................................16

    D.    Many Hours Billed In This Case Were Incurred On Meritless Claims. ......17

    E.    Many Hours Were Spent By Plaintiff's Attorneys On Noncompensable Administrative Work, And On Work That Is Too Vaguely Described.........17

    F.    The 107.3 Hours Spent In Preparing The Instant Motion For Attorneys' Fees Are Excessive And Unreasonable...................................................18

V.    THE OUT-OF-FORUM SAN FRANCISCO BAY AREA RATES SOUGHT BY PLAINTIFF DO *NOT* APPLY HERE.  SACRAMENTO MARKET RATES APPLY. ................................................................19

    A.    Plaintiff Did Not In Good Faith Seek A Sacramento Attorney....................19

    B.    The Determination By The State Courts Of Out-Of-Forum Rates In The State Action In Butte County Is Irrelevant In This Federal Lawsuit In Sacramento...............................................................23

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

C.    "Efficiency" Does Not Support Out-Of-Forum Rates Here..........................23

D.    The Motion Is Inconsistent With Plaintiff's Own Evidence Of The San Francisco Bay Area Rates Of Its Attorneys. ...............................................25

VI.    THE SACRAMENTO RATES AWARDED EARLIER IN THIS CASE BY MAGISTRATE JUDGE COTA ARE CORRECT.......................................................26

VII.    THE COSTS SOUGHT BY PLAINTIFF ARE UNREASONABLE.........................27

VIII.    CONCLUSION .................................................................................................28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

1

## TABLE OF AUTHORITIES

2

### CASES

*Am. Canoe Ass'n v. City of Louisa*
   683 F. Supp. 2d 480, 483-484 (E.D.Ky. 2010) ......................................................17

*Ash Grove Cement Co. v. Liberty Mat. Ins. Co.*
   No. 3:09-CV-00239-HZ, 2014 U.S. Dist. LEXIS 27129, 2014 WL
   837389, at *5 (D.Or. 2014), *aff'd*, 649 F. App'x 585 (9th Cir. 2016)......................14

*Atlantic States Legal Foundation, Inc. v. Universal Tool & Stamping Co*
   798 F. Supp. 522, 525-526 (N.D.Ind. 1992) ..........................................................22

*Cf. Moreno v. City of Sacramento*
   534 F.3d 1106, 1111 (9th Cir. 2008) ......................................................................27

*Christiansburg Garment Co. v. Equal Employment Opportunity Comm.*
   434 U.S. 412, 420 (1978) ........................................................................................9

*City of Burlington v. Dague*
   505 U.S. 557, 561-562 (1992) ................................................................................17

*Ecological Rights Found. v. Hot Line Construction*, Inc.
   |No. 5:20-cv-01108-AB-kk, 2024 U.S. Dist. LEXIS 129282 (C.D.Ca.,
   July 19, 2024)..........................................................................................................19

*Gates v. Deukmejian*
   987 F.2d 1392, 1405 (9th Cir. 1992) ................................................................20, 23

*Goldingay v. Progressive Cas. Ins. Co.*
   No. 3:17-cv-1491-SI, 2019 U.S. Dist. LEXIS 28192, 2019 WL 852992,
   at *19 (D.Or. 2019) .................................................................................................18

*Harris v. Marhoefer*
   24 F.3d 16, 18-19 (9th Cir. 1994) ...........................................................................17

*Hensley v. Eckerhart*
   461 U.S. 424, 434 (1983) .......................................................................................17

*Kirtsaeng v. John Wiley & Sons, Inc.*
   579 U.S. 197, 207 (2016) .........................................................................................6

*Maule v. Biter*
   No. 1:11-CV-00486 AWI GSA, 2011 U.S. Dist. LEXIS 110150, 2011 WL
   4500879, at *14 (E.D.Ca. 2011) .............................................................................23

*Missouri v. Jenkins*
   491 U.S. 274, 288 n.10, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989) ....................18

*Murphy v. Celestron Acquisition, LLC*
   No. 5:20-cv-03642-EJD, 2024 U.S. Dist. LEXIS 49710 at *14, 2024 WL
   1221963 (N.D.Ca. 2024) .........................................................................................27

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*
   478 U.S. 546, 559 (1986) ........................................................................................17

*People v. Stone*
   (2009) 46 Cal.4th 131, 140 (Ca. 2009)...................................................................23

*Precision Seed Cleaners v. Country Mut. Ins. Co.*
   976 F.Supp.2d 1228, 1252 (D.Or. 2013).................................................................15

-4-

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

*Sackett v. EPA*
    598 U.S. 651 (2023) ........................................................................................8

*Scalia v. Cnty. of Kern*
    NO. 1:17-cv-01097-AWI-CDB, 2023 U.S. Dist. LEXIS 73664, 2023 WL
    3124385, at *7 (E.D.Ca. 2023) ........................................................................18

*Seachris v. Brady-Hamilton Stevedore Co.*
    994 F.3d 1066, 1083 (9th Cir. 2021) ..............................................................14

*Shany Co. v. Crain Walnut Shelling, Inc.*
    No. 2:11-CV-01112-KJM-EFB, 2015 U.S. Dist. LEXIS 8006, 2015 WL
    351660, at *13 (E.D.Ca. 2015) .......................................................................24

*Sierra Club v. Hamilton County Bd. of County Comm'rs*
    504 F.3d 634, 656 (6th Cir. 2007 ...................................................................17

*Tarango v. City of Bakersfield*
    No. 1:16-CV-0099-JLT, 2017 U.S. Dist. LEXIS 192920, 2017 WL
    5564917, at *11 (E.D. Cal. Nov. 20, 2017) .....................................................14

*Van Gerwen v. Guar. Mut. Life Co.*
    214 F.3d 1041, 1045 (9th Cir. 2000) ..............................................................14

*Waterkeeper v. Corona Clay Co.*
    No.: 8:18-cv-00333-DOC (DFM), 2024 U.S. Dist. LEXIS 10550, at *14-
    *15 (C.D.Ca. 2024) ........................................................................................27

*Welch v. Metro. Life Ins. Co.*
    480 F.3d 942, 948-949 (9th Cir. 2007) .....................................................16, 27

*Wynn v. Walmart Inc.*
    No. 6:22-cv-01126-MK, 2023 U.S. Dist. LEXIS 49549, 2023 WL
    2602412, at *7-*8 (D.Or. 2023) ......................................................................18

*Yenidunya Invs., Ltd. v. Magnum Seeds, Inc.*
    No. CIV. 2:11-1787 WBS, 2012 U.S. Dist. LEXIS 20421, 2012 WL
    538263 (E.D.Ca. 2012) .............................................................................23, 24

**STATUTES**

33 U.S.C. § 1365(d) .............................................................................................8

42 U.S. § 1988 ...................................................................................................17

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

1

## I.   INTRODUCTION

2       An "oft-stated concern" of the U.S. Supreme Court's is that "an application for

3  attorney's fees 'should not result in a second major litigation.'" *Kirtsaeng v. John Wiley*

4  *& Sons, Inc.*, 579 U.S. 197, 207 (2016).  But that aptly describes Plaintiff's extravagant

5  request for $973,460.60 for attorney's fees and costs.  As an example,  nearly 11% of

6  the total sum requested, $106,103,32, was allegedly incurred by Plaintiff in merely

7  preparing the instant Motion For Attorneys' Fees and Costs ("Motion").

8       This Clean Water Act litigation arose out of both the Plaintiff's taking advantage of

9  the Camp Fire and a series of extraordinary natural disasters that befell the County's

10  Neal Road Recycling and Waste Facility ("NRRWF" or "Facility") in 2018-19, and the

11  Plaintiff's paralleling the State Water Resources Control Board ("Board") responsive

12  actions in addressing storm water discharges caused by those natural disasters.  The

13  end result of this 4-year federal lawsuit was the County's agreement to some technical

14  changes to the Facility's operation and SWPPPs, in the form of a Consent Decree.

15  Plaintiff never showed any harm to humans or the environment or its Conservation

16  Easement from either the discharges or from the technical errors that this Court pointed

17  out in its Order on Plaintiff's Motion For Partial Summary Judgment.

18       Now Plaintiff seeks nearly $1 Million in fees and costs for achieving only a partial

19  success in this case.  Many of the fees it seeks are duplicative of the fees Plaintiff was

20  already compensated for in a parallel action in the California state courts that admittedly

21  involved "the same facts" and "the same conduct" as this federal lawsuit.  Also, Plaintiff

22  seeks unreasonable fees for intra-office conferences between its three attorneys,

23  frivolous discovery disputes, meritless claims, noncompensable administrative work,

24  vaguely described work, and an excessive amount of time spent on the instant Motion.

25  Additionally, Plaintiff wrongly seeks out-of-forum San Francisco Bay Area rates.  And

26  Plaintiff also fails to demonstrate the reasonableness of many costs in the Motion.

27       Accordingly, this Court should issue an award of fees and costs to Plaintiff that is

28  dramatically less than what is sought in the instant Motion.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

## II.  PLAINTIFF'S FEDERAL LAWSUIT NOT ONLY FOLLOWED THE CAMP FIRE AND EXTRAORDINARY RAINFALL FROM ATMOSPHERIC RIVERS, BUT ALSO DUPLICATED EFFORTS ALREADY TAKEN BY STATE AGENCIES

In the past, there were no storm water discharges of any kind at the Facility either on to or off the site.  But in November 2018, the Camp Fire destroyed critical landfill infrastructure required to operate the Facility under state and federal regulatory requirements, including the Clean Water Act ("CWA"), and the Industrial General Permit ("IGP").

Immediately after the Camp Fire, a series of atmospheric rivers dumped extraordinary and unprecedented amounts of rainfall on the still-damaged Facility. Leachate discharges from the southwest toe of Waste Module Unit 4 of NRRWF (WMU-4 to Storm Water Basin 4 (SWB-4) and the Primary Sedimentation Basin (PSB), also known as the Conservation Easement, occurred at the NRRWF on February 14, 2019, February 26, 2019, and March 6, 2019, which discharges were the direct result of a series of natural disasters which can be classified as Acts of God.

The State Water Resources Control Board ("State Board") investigated the discharges and ordered the County to provide more detail and to conduct additional investigation to determine if any remediation was necessary.  No additional remediation was deemed necessary by the State Board and no fines were warranted.  Declaration of Diane Kindermann In Support of County's Opposition to Motion for Attorneys' Fees and Costs ("Kindermann Decl."), ¶3.  Plaintiff readily admits that "the State Board conducted a *parallel investigation* into the leachate discharges at issue in this case." Motion, 13:27-28. The County spent considerable resources complying with every request of the State Board and the Regional Water Quality Control Board in addressing those discharges. See e.g., Investigative Final Report, prepared by Compliance SFO, Inc. & Formation Environmental, LLC, dated December 14, 2022, p. vii, attached as Exhibit F to County's Appendix In Opposition To Motion For Partial Summary Judgment (Docket 93-8, at 227-311).

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiff not only took advantage of this extraordinary situation created by such natural disasters, but also disregarded the fact that the State was already addressing the discharges at the Facility.  Plaintiff brought both this federal lawsuit and the parallel State Action.  Now having received the County's agreement to some technical changes to the Facility's operation and SWPPPs via a Consent Decree after 4 years of litigation (and never having shown any harm to humans, the environment or the Conservation Easement from the County's conduct), Plaintiff seeks nearly One Million Dollars in fees and costs via this Motion.

**III.  AN AWARD OF ATTORNEYS' FEE AND COSTS SHOULD BE ADJUSTED DOWNWARD TO REFLECT THAT PLAINTIFF WAS ONLY PARTIALLY SUCCESSFUL IN THIS CASE**

The Clean Water Act provides that in any citizen suit brought pursuant to its provisions, the Court "*may* award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is *appropriate*." 33 U.S.C. § 1365(d) (emphasis added). The nearly One Million Dollars in attorneys' fees and costs that Plaintiff seeks in its Motion is not appropriate for the following reasons.

**A.  Many Of Plaintiff's Claims Were Duplicative Of The Actions Taken By Governmental Agencies And Produced No Benefits In This Litigation.**

Plaintiff's Fourth Cause of Action was wholly unnecessary because it concerned purported discharges even while Plaintiff admits that "the State Board conducted a *parallel investigation* into the leachate discharges at issue in this case."  Motion, 13:27-28.  Furthermore, neither the intermittent stream that is adjacent to the Facility and is an ephemeral drainage (where stormwater drained in February and March 2019), nor the conservation easement discussed in the Complaint (and the instant Motion), are jurisdictional Waters of the United States following the United States Supreme Court's decision in *Sackett v. EPA,* 598 U.S. 651 (2023), and amended regulations applying the *Sackett* decision, 88 Fed.Reg. 61964–61969, amending 88 Fed.Reg. 61964.  Therefore, the Clean Water Act did not even apply to such discharges.

Thus, all of the work spent by Plaintiff on the Fourth Cause of Action was unnecessary, and therefore unreasonable.  For example, Plaintiff's alleged "need[] to stay up to date on the progress of that [State] investigation through Public Records Act requests"  Motion, 13:27-28, was unnecessary and excessive.  The work on the Fourth Cause of Action produced no benefits in this lawsuit and no remedies in the Consent Decree.  Contrary to Plaintiff's argument, there is no evidence in this case or in the instant Motion that the remedies achieved in the Consent Decree in any way protects "the surface waters of Hamlin Slough, Butte Creek, the Sacramento River and the Sacramento-San Joaquin River Delta, as well as the groundwater lying beneath them as part of the Tuscan Aquifer," as Plaintiff asserts. Motion, 6:26-7:3.  Because Plaintiff does not distinguish between causes of action in its billings, an across-the-board reduction is warranted on the ground that the Fourth Cause of Action was pointless.

**B.    COL Pursued Meritless Claims Against The County.**

Attorneys' fee awards should "protect defendants from burdensome litigation having no legal or factual basis."  Florio, at 723 (citing *Christiansburg Garment Co. v. Equal Employment Opportunity Comm.*, 434 U.S. 412, 420 (1978).  Plaintiff included several claims in this lawsuit that have no legal or factual basis. For example, Plaintiffs alleged that the 2021 SWPPP and site maps failed to identify advanced BMPs as a result of the parties' State Court Settlement Agreement in 2022, even though (as this Court found) that claim was never raised in the Complaint, did not accrue until after the close of non-expert discovery, and could not have been addressed by the County in discovery.  Order [regarding Motion for Partial Summary Judgment], at 18-19 (Docket 104, at 18-19). And yet, Plaintiff now wrongly seeks attorneys' fees in its pursuit of that meritless claim.

Other claims in this lawsuit having no legal or factual basis include the following:

- The SWPPP maps' alleged failure to comp[y with section X.E.3.f of the General Permit. Order, at 15-16 (Docket 104, at 15-16).

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

- The 2014 and 2015 SWPPP's alleged failure to list the locations where each industrial material is stored, received, shipped and handled.  Order, at 16 (Docket 104, at 16).

- The 2021 SWPPP's alleged insufficient identification of the leachate collection and removal system.  Order, at 20 (Docket 104, at 20).

- The alleged failure to revise the SWPPP due to alleged amendments. Order, at 21-22 (Docket 104, at 21-22).

- Plaintiff's allegations that Defendants will likely fail to test contaminated storm water for the Regulated Parameters in the future.  Order, at 26-27 (Docket 104, at 26-27).

The fees and costs incurred by Plaintiff in pursuit of such claims are unreasonable and inappropriate, and any award by this Court should be reduced accordingly.

**IV.   MANY HOURS INCLUDED IN THIS MOTION WERE UNREASONABLY INCURRED BY PLAINTIFF'S ATTORNEYS AND SHOULD NOT BE COMPENSATED**

**A.   Hours Included In This Motion Were *Also* Billed In The Related State Action, For Which Plaintiff Has Already Been Compensated.**

Plaintiff readily admits that the parallel action filed by Plaintiff in the Butte County Superior Court ("State Action") 6 months *after* this federal lawsuit was based "largely on the same facts" as this federal lawsuit. Motion, 21:8-9.  Plaintiff concedes that the two actions "shared a common set of facts" and that "the same conduct" alleged in this federal lawsuit "was at issue in the state case."  Motion, 21:22-23, 22:1-2.  For example, Plaintiff not only states that this federal lawsuit was brought due to the County's alleged "highly-contaminated discharges to a wetland protected under a conservation easement held by Plaintiff,"  Motion, 6:5-9, but also states that Plaintiff "brought an action in state court to address the Defendants' violations of the terms of the conservation easement." Motion, 6:27-28.  Such commonality of "facts" and "conduct" would normally cause an efficiency that reduces the hours spent by a party.  But not here.  Plaintiff simply duplicated the work and billed both cases for that work.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

When the Plaintiff's billing spreadsheet here (attached as Exhibit 4 to the Declaration of Andrew Packard in support of the instant Motion) is compared to the billing spreadsheet in the State Action, it becomes readily apparent that 35.4 hours of billing entries in both cases are exactly or virtually identical.  Declaration of Glen Hansen In Support of County's Opposition To Motion For Attorneys' Fees ("Hansen Decl.") ¶¶2-4, Exs. C, D.  Plaintiff already received compensation in the State Action for that duplicative work.  Motion, 20:25-21:9; Plaintiff's Request For Judicial Notice, Exs. 1, 2; Declaration of Gregory P. Einhorn In Support Of Defendant's Opposition To Motion For Attorneys' Fees And Costs ("Einhorn Decl."), Ex. B.  A small sample of those duplicative billing entries, which demonstrate both the interconnectedness of the two cases and how Plaintiff is seeking to recover fees for the same work in the two cases, include the following:

| Date of Entry | Description of Work in the Spreadsheet in the State Action (for which Mr. Packard declared, under penalty of perjury, that the fees were incurred "in bringing this action" in the State Courts (Declaration of Andrew Packard in the State Action ("State Packard Decl."), ¶43 (Einhorn Decl., Ex. B))). | Description of Work in the Spreadsheet in Support of The Instant Motion (for which Plaintiff *also* seeks compensation in this federal lawsuit) |
|---|---|---|
| 11/8/2019 | "Conf. call w/HM re: recent soil results, parameters to test, board input on NOV, expected timeframes for NOV and CEE mitigation" Time: "0.4"  [State Packard Decl., Ex. F, p. 042 (Einhorn Decl, Ex. B).] | "Conf. call w/HM re: recent soil results, parameters to test, board input on NOV, expected timeframes for NOV and CEE mitigation" Time: 0".4" [Entry no. 73, (Docket 112-1, at 30).] |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

| 12/17/2020 | "Review and refine sett. Outline" Time: "1.1" *and* "Confer w/WC re: details of settlement" Time: "0.4" [State Packard Decl., Ex. F, p. 048 (Einhorn Decl, Ex. _).] | "Review and refine settlement outline, and confer w/WC re: details of same" Time: "1.6" [Entry no. 226 (Docket 112-1, at 35).] |
|---|---|---|
| 2/1/2021 | "Review and edit monetary demand letter after TC w/client" Time: "0.6" [State Packard Decl., Ex. F, p. 049 (Einhorn Decl., Ex. B).] | "TC with client and edit demand letter per client input" Time: "0.6" [Entry no. 259 (Docket 112-1, at 36).] |
| 3/10/2021 | "Prep and attend sett. conf." Time: "2.4" *and* "Post-conference TCs with DK, HN re: Sett Conf." Time: "0.4" [State Packard Decl., Ex. F, p. 049 (Einhorn Decl, Ex. B).] | "Prep and attend sett. Conf., and post-conf. TCs with client, DK re: same" Time: "2.9" [Entry no. 298 (Docket 112-1, at 37).] |
| 6/18/2021 | "Discuss discovery responses w/AP" Time: "0.4" [State Packard Decl., Ex. F, p. 053 (Einhorn Decl, Ex. B).] | "discuss disco responses w/AP" Time: "0.3" [Entry no. 359 (Docket 112-1, at 39).] |
| 7/21/2021 and 7/22/2021 | "Review and respond to Haddix re: settlement call Friday 7/23" Time: "0.2" *and* "Draft note to DK/GH w/agenda for 7/23 call" Time: "0.2" [State Packard Decl., Ex. F, p. 055 (Einhorn Decl, Ex. B).] | "review and respond to Haddix re: settlement call Friday 7/23" Time: "0.2" *and* "draft note to DK w/agenda for 7/23 settlement call and prep for same" Time: "0.3" [Entry nos. 384, 385, Docket 112-1, at 40.] |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

1    Plaintiff's billing records also demonstrate that compensation for work done

2  exclusively for the *State Action* (and was compensated in the State Action) is now being

3  sought in this Motion.  For example, in this Motion Plaintiff seeks compensation for the

4  July 4, 2021 entry of "mtg w/BA, WC re: *MSJ* and related discovery," and the July 26,

5  2021 entry of "TC WC AP re *MSJ*."  Entry nos. 389, 392 (Docket 112-1, at 40, 41

6  (emphasis added).    However, there was no work on a motion for summary judgment in

7  the federal lawsuit until 20 months later in March 2023. Entry no. 868, Docket 112-1, at

8  57.  Plaintiff did begin working on a Motion For Summary Judgment in the *State Action* in

9  July 2021.  State Packard Decl., Ex. F, p. 055 (Einhorn Decl, Ex. B). Thus, Plaintiff seeks

10  to be paid in this federal lawsuit for work done solely for the State Action.

11    And there was ample work that Plaintiff declared under penalty of perjury was part

12  of the State Action (for which it was already compensated), which unquestionably

13  involves this federal lawsuit.  For example, Plaintiff seeks compensation in the instant

14  Motion for "review and respond to proposed stip. extending deadlines, emails to/from

15  Magistrate Newman and Def. counsel" on March 16, 2021. Entry no. 304, Docket 112-1,

16  at 37.  And yet, in the State Action (for which Plaintiff was already compensated),

17  Plaintiff sought fees on that same date for *exactly the same thing*:  "Review + respond to

18  emails w/ Judge and counsel."  In fact, many of the settlement discussions between

19  Plaintiff and the County until December 2021 (55.8 hours) were billed by Plaintiff in the

20  State Action (for which Plaintiff has been compensated) *and* were billed in this lawsuit

21  and are included in this Motion.  Hansen Decl., ¶6, Exs. C , D.  Plaintiff already included

22  the many settlement efforts of this federal lawsuit as part of the State Action.  See State

23  Packard Decl., ¶¶19, 22, and Ex. F, at 049 [2.4 hours to prepare for and attend

24  settlement conference on March 10, 2021] (attached as Exhibit B to Einhorn Decl.).

25    Indeed, the crossover work is so ubiquitous in Plaintiff's billings in this Motion and

26  the interconnected State Action that is not possible for either the County or this Court to

27  know exactly how much duplication exists.  Plaintiff likely does not know either.

28

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

1     A reasonable attorney would substantially r*educe* the amount of billings sought in

2 this federal lawsuit since it was duplicative of what was done in the interconnected State

3 Action.  Such a reduction is appropriate because a "paying client" (Motion 9:25-28)

4 would not pay for such duplication by its attorney, and "[h]ours that are not properly

5 billed to one's client also are not properly billed to one's adversary pursuant to statutory

6 authority." *Hensley*, 461 U.S. at 434.  Rather than reduce the billing entries to account

7 for the duplication in the State Action, Plaintiff did the exact opposite.  Plaintiff seeks

8 compensation here for work that Mr. Packard swore under oath was done for the State

9 Action, and that was already compensated by the State Courts.

10     Thus, this Court should make a significant across-the-board cut in the lodestar

11 hours sought in this Motion not only to account for Plaintiff's double-billing, but also to

12 account for the fact that much less work was actually needed in this action because of

13 the identical facts in both cases.  Courts must deny compensation for time expended on

14 work deemed 'excessive, redundant, or otherwise unnecessary.'" *Seachris v. Brady-*

15 *Hamilton Stevedore Co*., 994 F.3d 1066, 1083 (9th Cir. 2021) (quoting *Van Gerwen v.*

16 *Guar. Mut. Life Co*., 214 F.3d 1041, 1045 (9th Cir. 2000)).

17
     **B.     A Significant Portion Of Plaintiff's Billings Are For Intra-Office**
18     **Conferences Between Plaintiff's Three Attorneys.**

19     Plaintiff's retention of three different attorneys to work on this run-of-the-mill Clean

20 Water Act case created significant amounts of inappropriate billings.  "A party is certainly

21 free to hire and pay as many lawyers as it wishes, but cannot expect to shift the cost of

22 any redundancies to its opponent." *Ash Grove Cement Co. v. Liberty Mat. Ins. Co*., No.

23 3:09-CV-00239-HZ, 2014 U.S. Dist. LEXIS 27129, 2014 WL 837389, at *5 (D.Or. 2014),

24 *aff'd*, 649 F. App'x 585 (9th Cir. 2016) (citations omitted).  Plaintiff completely ignores

25 this Court's admonition that, "in general, two attorneys cannot bill for communicating with

26 each other, as such time is duplicative and unnecessary." *Tarango v. City of Bakersfield*,

27 No. 1:16-CV-0099-JLT, 2017 U.S. Dist. LEXIS 192920, 2017 WL 5564917, at *11 (E.D.

28 Cal. Nov. 20, 2017).  *See Precision Seed Cleaners v. Country Mut. Ins. Co*., 976

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

F.Supp.2d 1228, 1252 (D.Or. 2013).  Here, 82.2 hours were spent and billed on intra-office conferences between Plaintiff's three  different attorneys. Hansen Decl., ¶7, Ex. D. For example, Plaintiff seeks fees for having one of its attorneys "bring [a second attorney] up to speed, " to "debrief" a second attorney, and to give a "status update" to the other two attorneys.  Packard Decl., Ex. 4, Entry nos. 63, 130, 325 (Docket 112-1, at 30, 32, 38).  Here is a sample of one such conferences:

| Entry No. | Attorney | Time Date | Description | Hours |
|-----------|----------|-----------|-------------|-------|
| 812 | AP | 1/10/2023 | Review responsive draft settlement agreement and confer with WC/BA re same | 1.3 |
| 815 | WC | 1/10/2023 | Confer w/AP and BA re settlement | 0.5 |
| 816 | BA | 1/10/2023 | TC WC AP re settlement, review draft agreement | 0.8 |

Packard Decl., Ex. 4, Entry nos. 812, 815, 816 (Docket 112-1, at 55).

Here is a sample what appears to be a telephone call "TC" (and possibly even double-billing for a single call – actually, its ambiguous, like many entries):

| Entry No. | Attorney | Time Date | Description | Hours |
|-----------|----------|-----------|-------------|-------|
| 1145 | BA | 3/21/2024 | TC WC AP re supp briefing, PTCS | 0.6 |
| 1146 | AP | 3/21/2024 | Confer with BA and WC re settlement, supplemental brief and pretrial conference statement | 0.6 |
| 1147 | BA | 3/21/2024 | TC WC AP re settlement, and MSJ | 0.6 |
| 1148 | WC | 3/21/2024 | Confer w/AP and BA re suppl brief, settlement, and trial prep | 0.6 |

Packard Decl., Ex. 4, Entry nos. 812, 815, 816 (Docket 112-1, at 55).

1    This Court should reduce the lodestar by 82.2 hours to eliminate unnecessary

2    time billed on intra-office conferences and telephone calls between Plaintiff's multiple

3    attorneys. *See e.g., Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007).

4

5    **C.    Hours Billed By Plaintiff In This Case Were Spent On Frivolous Discovery Disputes.**

6    Plaintiff propounded Requests For Admissions on October 23, 2020, which the

7    County responded to on December 3, 2020, and counsel for Plaintiff reviewed on

8    December 18, 2020.  Hansen Decl., ¶10 Packard Decl., Ex. 4, Entry no. 230 (Docket

9    112-1, at 35).  Over a year later, in a letter dated January 5, 2022, Plaintiff suddenly

10   demanded – within 6 days – that the County provide amended responses to the

11   Requests For Admission.  Hansen Decl., ¶10.  By January 19, 2022, Plaintiff's counsel

12   was already spending time drafting a Motion to Compel Further Responses to Requests

13   For Admissions. Hansen Decl., ¶10; Packard Decl., Ex. 4, Entry nos. 526, 529, 530, 534

14   (Docket No. 112-1, at 46).  On January 28, 2022, counsel for the County not only

15   responded to that letter of January 5, but also provided Amended Responses to the

16   Requests for Admission (which certainly could not have been done in the 6 days

17   demanded by Plaintiff's counsel). Hansen Decl., ¶10.  While Plaintiff withdrew that first

18   Motion to Compel on February 2, 2022, Docket 36, Plaintiff immediately pursued yet

19   another Motion to Compel Further Responses to the County's Amended Responses to

20   Requests For Admissions, and Plaintiff pursued a third Motion to Compel Further

21   Responses.  Hansen Decl., ¶10; Docket 39, 43, 45;  Packard Decl., Ex. 4, Entry nos.

22   541, 542, 545, 546, 547, 555, 557, 559, 560, 561, 562, 566, 572, 573, 575 (Docket 112-

23   1, at 46-47).  The second and third motions were frivolous, and were eventually never

24   pursued by Plaintiff, despite Plaintiff's counsel spending considerable time in their

25   preparation, and forcing the County's attorneys to do the same in the Joint Statement

26   drafting process.  Hansen Decl., ¶10.  That entire episode illustrates the

27   unreasonableness of the hours spent by Plaintiff in frivolously arguing over discovery

28   responses by the County.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

1

     **D.**    **Many Hours Billed In This Case Were Incurred On Meritless Claims.**

2

     Any award issued by this Court for fees and costs should take into account that

3 Plaintiff was only partially successful in this case, as discussed above. "The bulk of

4 attorney fee case law comes from claims under 42 U.S.C. § 1988(b), the statute for

5 attorney fees in civil rights actions. The Supreme Court has applied those standards to

6 attorney fees in environmental law cases." *Am. Canoe Ass'n v. City of Louisa*, 683 F.

7 Supp. 2d 480, 483-484 (E.D.Ky. 2010), citing *City of Burlington v. Dague*, 505 U.S. 557,

8 561-562 (1992), *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S.

9 546, 559, (1986).  *See e.g., Sierra Club v. Hamilton County Bd. of County Comm'rs*, 504

10 F.3d 634, 656 (6th Cir. 2007.  "[T]he extent of a plaintiff's success is a crucial factor for

11 determining the proper amount of an award of attorney's fees under 42 U.S. § 1988."

12 *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  A court should reduce a fee award if

13 "the relief, however significant, is limited in comparison to the scope of the litigation as a

14 whole." *Hensley,* 461 U.S. at 439-40. Where "a plaintiff has achieved only partial or

15 limited success, the product of hours reasonably expended on the litigation as a whole

16 times a reasonable hourly rate may be an excessive amount."  *Id.* at 436. If so, courts

17 have equitable discretion to reduce the fee award. *Id.* at 436-37.  "The degree of the

18 plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the

19 determination of the size of a reasonable fee, not to eligibility for a fee award at all."

20 *Harris v. Marhoefer*, 24 F.3d 16, 18-19 (9th Cir. 1994).

21

     As discussed above, a number of Plaintiff's claims were completely meritless, and

22 others were duplicative of what the State enforcement agencies were already doing

23 about the alleged discharges.  An award of fees must reduce the lodestar amount

24 accordingly.

25

     **E.**    **Many Hours Were Spent By Plaintiff's Attorneys On Noncompensable**

26
                     **Administrative Work, And On Work That Is Too Vaguely Described.**

27

     "Courts consider tasks to be clerical, and thus not compensable in an attorney fee

28 award, if they involve 'filing motions with the court, filling out and printing documents,

-17-

preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents.'" *Goldingay v. Progressive Cas. Ins. Co.*, No. 3:17-cv-1491-SI, 2019 U.S. Dist. LEXIS 28192, 2019 WL 852992, at *19 (D.Or. 2019).  *See Missouri v. Jenkins,* 491 U.S. 274, 288 n.10, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989) ["[P]urely clerical or secretarial tasks should not be billed at a paralegal [or lawyer] rate, regardless of who performs them."] Here, Plaintiff billed at least 18.9 hours for administrative work that is not compensable, Hansen Decl., ¶8, which hours should therefore be reduced from the lodestar amount.

Also, 15.8 hours of time entries by Plaintiff's attorneys are so vague or ambiguous that this Court cannot determine the reasonableness of the alleged time spent.  Hansen Decl., ¶9.  Such hours should also be reduced from the lodestar amount. *See Wynn v. Walmart Inc.*, No. 6:22-cv-01126-MK, 2023 U.S. Dist. LEXIS 49549, 2023 WL 2602412, at *7-*8 (D.Or. 2023) [court cautions against "providing vague or otherwise inadequate descriptions of tasks because these practices hinder a court's ability to assess the reasonableness of the time expended."]  *See e.g., Scalia v. Cnty. of Kern*, NO. 1:17-cv-01097-AWI-CDB, 2023 U.S. Dist. LEXIS 73664, 2023 WL 3124385, at *7 (E.D.Ca. 2023) ["All the vague and redundant work descriptions discussed above render the Court's review for reasonableness exceedingly difficult and warrant a reduction in the number of hours expended."]

**F.    The 107.3 Hours Spent In Preparing The Instant Motion For Attorneys' Fees Are Excessive And Unreasonable.**

The 107.3 hours ($97,909.50) in attorneys' fees, and $8,193.82 in costs, sought by Plaintiff for preparing this Motion for Attorneys' Fees (and likely even more will be sought after the Reply Brief) are grossly excessive.[1]  For example, Plaintiff's attorneys

---

[1] 107.3 hours of attorney time, or $97,909.50, were allegedly spent by 3 attorneys for Plaintiff preparing the instant Motion. Packard Decl., ¶61.  That consists of 47.7 hours at $1,1015 per hour ($48,415.50) for Andrew Packard; 29.2 hours at $935 ($27,302.00) for Brian Acree; and 30.4 hours at $730 ($22,192.00) for William Carlon. Packard Decl., Ex. 4, col. 11; Motion, 27:10-13.  In addition, Plaintiff used attorney Richard Pearl to opine one fee rates for an additional "cost" of $8,193.82.  Packard Decl., ¶35, Ex. 3. Thus, Plaintiff seeks a total of $106,103.32 for this Motion ($97,909.50 fees + $8,193.82 costs = $106,103.32).

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

spent 17.9 hours for reviewing and revising their billing entries, Hansen Decl., ¶11, which are wholly unnecessary if the billings had been correctly entered initially in the manner described by Mr. Packard.  Packard Decl., ¶32.  By way of comparison, just last month the District Court for the Central District of California issued an attorney fee and costs award in *Ecological Rights Found. v. Hot Line Construction*, Inc., No. 5:20-cv-01108-AB-kk, 2024 U.S. Dist. LEXIS 129282 (C.D.Ca., July 19, 2024). In *Ecological Rights,* the District Court awarded $67,124.61 in preparing the fee motion (about 2/3rds of what Plaintiff seeks here).  Also, the fee motion in *Ecological Rights* involved a more complicated case necessitating the review of over three times more billed work than this lawsuit (3,600 hours in *Ecological Rights*, compared to 1,145 hours here), and the fee motion in *Ecological Rights* involved higher hourly rates by more experienced attorneys  *Id*. at *6, *8, *13.  Using *Ecological Rights* as a guide, the fees that should be awarded for preparing the instant Motion should be around $30,000 (and that is assuming the higher Bay Area rates sought by Plaintiff, which should not be awarded here, as discussed below). The excessive billing by Plaintiff's counsel on the instant fee Motion – nearly 3 times what is reasonable – is emblematic of the excessive billings by Plaintiff's counsel in the entirety of this case.

## V.     THE OUT-OF-FORUM SAN FRANCISCO BAY AREA RATES SOUGHT BY PLAINTIFF DO *NOT* APPLY HERE.  SACRAMENTO MARKET RATES APPLY

### A.     Plaintiff Did Not In Good Faith Seek A Sacramento Attorney.

Plaintiff is not entitled to San Francisco Bay Area rates.  On October 27, 2021, Magistrate Judge Dennis M. Cota granted Plaintiff's motion to compel a wet weather site inspection.  Docket 31.  After Plaintiff's counsel submitted a declaration in support of an award of reasonable expenses associated with that motion to compel, Docket 32 at 2, Judge Cota concluded: "Plaintiff has not provided evidence that Sacramento counsel was unavailable. Thus, Plaintiff is entitled to expenses at the prevailing hourly rate for attorneys in Sacramento, which is the forum community for this case."  Docket 35, at 3.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

1    The papers submitted in support of the instant Motion affirm that Judge Cota's earlier

2    conclusion rejecting out-of-forum rates also applies to this Motion.

3           Plaintiff's allegation that its search for counsel "included the forum in which the

4    district court sits, Sacramento," Motion, 19:23-26, is not true for these four reasons.

5           First, Plaintiff fails to provide any evidence that *Sacramento* counsel was

6    "unavailable, either because they are unwilling or unable to perform because they lack

7    the degree of experience, expertise, or specialization required to handle properly the

8    case." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).  There is no evidence

9    presented by Plaintiff that a Sacramento attorney informed Plaintiff that the attorney is

10   unwilling to represent Plaintiff in this federal lawsuit.  And Plaintiff did not submit any

11   evidence that shows that a Sacramento attorney was unable to perform because they

12   lack the degree of experience, expertise, or specialization required to handle properly

13   this Clean Water Act case.

14          Second, there is no evidence that Plaintiff made any attempts to actually contact

15   an attorney in Sacramento before hiring Mr. Packard.  Declaration of Holly Nielsen In

16   Support Of Motion For Attorneys' Fees And Costs ("Nielsen Decl."), ¶11 (Docket 112-2).

17   Plaintiff merely spoke with "three local attorneys in Chico."  *Ibid.*  But there *were* several

18   attorneys in Sacramento that Plaintiff could have potentially hired as counsel in this

19   federal litigation. See Kindermann Decl., ¶2.  Even Mr. Packard concedes that, well after

20   this federal lawsuit was commenced, "COL also retained Brian Acree, an attorney in

21   Sacramento with substantial experience in citizen suit enforcement …."  Packard Decl.,

22   ¶26.  Plaintiff never contacted such attorneys in Sacramento.  And there is no evidence

23   that Plaintiff even searched directories of Sacramento attorneys who handle Clean Water

24   Act or environmental law cases.  Thus, Plaintiff did not use good faith efforts to find

25   counsel in Sacramento.  Plaintiff only focused on Butte County.

26          Third, Plaintiff's allegation that "staff" at several non-profit organizations advised

27   Plaintiff that "it would be difficult" to retain "local counsel," Motion, 19:19; Nielsen Decl.,

28   ¶11 (Docket 112-2, at 4), is unavailing.  That statement only refers to attorneys in Butte

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

County, not in Sacramento.  The referrals were of "attorneys located in Chico." Motion 20:1-4.  While such staff "repeatedly pointed out that most local attorneys would be either unable to represent COL in an action against the County due to conflicts, or unwilling to represent COL because it is in their business interest to maintain congenial relations with Butte County officials and representatives, given the small size of the community," Nielsen Decl., ¶11, such descriptions apply to attorneys in Butte County, and not to attorneys in Sacramento.  Ms. Nielsen concluded:

> Mr. Packard's firm was the only law firm I contacted who was willing to take this case on a contingent basis, and the only law firm that was not apprehensive about professional or social conflicts arising out of representing a party suing Butte County. Between counsels' lack of qualifications, unwillingness to work contingently, and concerns about representing a party suing Butte County, I was completely unable to obtain local counsel in Butte County for this case.  *Id*. at ¶22.

But again, those statements could only be true of counsel located in Chico, Butte County, and not counsel in Sacramento; and there is no mention in Ms. Nielsen's conclusion about "local counsel" in Sacramento.  That is telling.

Fourth, the statement that "[s]taff at these organizations advised [Ms. Nielsen] that it would be *difficult* to retain local counsel, especially on a contingent basis, because there are only a few attorneys in the area who specialize in deed restrictions and environmental conservation," Nielsen Decl., ¶11, only speaks to the alleged *difficulty* of retaining counsel.  That is materially different than local counsel being "unavailable." "Unavailable" means that the attorney is "unwilling," or that the attorney is "unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates*, 987 F.2d at 1405.  So, staff's comments did not address availability.

Fifth, Plaintiff's only statement in the Motion that actually mentioned counsel in Sacramento was a purported discussion by Ms. Nielsen "[o]n or about October 4, 2019" with the "Land Trust Alliance's national legal team," which only uses attorneys "located on the east coast," and who "weren't aware of any attorneys in Butte County or Sacramento that would be qualified and willing to take on the case on a contingent

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

basis." Motion, 20:14-18; Nielsen Decl., ¶21.  However, even that statement does not

show that Plaintiff looked for Sacramento counsel for this federal lawsuit.  That is

because Land Trust Alliance "also recommended that we try contacting Clean Water Act

specialists in the event that conservation easement specialists were unavailable." *Id*.

That statement shows that Plaintiff's search was for an attorney for the State Action

involving a conservation easement, and not the present Clean Water Act case.  Also, Mr.

Packard had already been working (and billing) on this federal Clean Water Act matter

since July 24, 2019, Packard Decl., Ex. 4, Entry No. 1(Docket 112-1, at 28), and so the

communication with Land Trust Alliance in October 2019 could only have been about the

subsequent State Action involving the conservation easement, which was filed on June

22, 2020.  State Packard Decl., Ex. F, at 045; Einhorn Decl., ¶2, Ex. A.

Sixth, an earlier submission by Plaintiff to this Court reinforces the fact that

Plaintiff efforts were only focused on locating counsel in Butte County:

> I have been informed by COL's Executive Director, Holly Nielsen
> that she personally made extensive efforts over a period of many
> months, to *contact and retain local counsel in <u>Butte County</u> but was
> unable to do so*.. [Declaration Of Andrew L. Packard In Support Of
> Expenses Incurred In Bringing Motion To Compel Site Inspections,
> ¶5 (Docket 32, at 2) (emphasis and underline added).]

Thus, Plaintiff did not make a good faith effort in finding an attorney in Sacramento.

The evidence submitted by Plaintiff in this Motion is similar to the evidence

submitted by an environmental non-profit plaintiff in *Atlantic States Legal Foundation,*

*Inc. v. Universal Tool & Stamping Co*, 798 F. Supp. 522, 525-526 (N.D.Ind. 1992).  In

*Atlantic States*, plaintiff attempted to show why competent counsel in Fort Wayne,

Indiana, was unavailable for a similar Clean Water Act lawsuit, and why New York

counsel was allegedly needed at New York rates.  But that evidence was insufficient, and

the District Court denied out-of-forum rates.  The facts cited by the District Court as to

why plaintiff did not meet its burden of proof in demonstrating that it was necessary to

seek counsel outside of the forum, *ibid.*, are strikingly similar to the facts in this lawsuit.

Thus, Judge Cota's earlier conclusion in this case that "Plaintiff has not provided

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

1    evidence that Sacramento counsel was unavailable" is *still* true.  This Court should not

2    apply San Francisco Bay Area rates in deciding the instant Motion.

3         **B.      The Determination By The State Courts Of Out-Of-Forum Rates In The
                    State Action In Butte County Is Irrelevant In This Federal Lawsuit In
4                    Sacramento.**

5              Plaintiff argues that the decisions by the California Court of Appeal and the Butte

6    County Superior Court regarding the availability of "local counsel" in the State Action are

7    "relevant to this matter."  (Motion, 21:4-9.)  Not so.  The California Court of Appeal

8    considered "the *community where the court is located*, where local counsel was

9    unavailable or hiring local counsel was impracticable" Plaintiff's RJN, Ex. 1, at 4, 5

10   (Docket 113, at 7, 8) (emphasis added).  That community was "Butte County" and the

11   court was the "Butte County Superior Court," *ibid*, and so the "local counsel" in the State

12   Action was counsel located within Butte County.  *Ibid.*  The State Courts never

13   considered whether *Sacramento* counsel was "unwilling or unable to perform because

14   they lack the degree of experience, expertise, or specialization required to handle

15   properly the case." *Gates, supra,* 987 F.2d at 1392.  Thus, the State Courts' decisions as

16   to out-of-forum rates are not relevant here and have no persuasive effect regarding the

17   present Motion.  "The rule is settled that cases are not authority for matters not

18   considered.  *Maule v. Biter*, No. 1:11-CV-00486 AWI GSA, 2011 U.S. Dist. LEXIS

19   110150, 2011 WL 4500879, at *14 (E.D.Ca. 2011) (citing *People v. Stone* (2009) 46

20   Cal.4th 131, 140 (Ca. 2009)).

21        **C.      "Efficiency" Does Not Support Out-Of-Forum Rates Here.**

22             Contrary to Plaintiff's argument, out-of-forum rates are not appropriate here on the

23   grounds of "efficiency," Motion, 21:10-22:3, for the following five reasons.

24             First, contrary to Plaintiff's argument, *Yenidunya Invs., Ltd. v. Magnum Seeds,*

25   *Inc.*, No. CIV. 2:11-1787 WBS, 2012 U.S. Dist. LEXIS 20421, 2012 WL 538263 (E.D.Ca.

26   2012), does not support Plaintiff's position.  Motion, 21:10-22:3.  In *Yenidunya*, San

27   Francisco counsel "had first hand familiarity with *the dispute between the parties* over

28   the last six years on the contracts in question," "had already had developed experience

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

1  and expertise on the facts underlying *this specific case*," and had "prior dealings with

2  both parties in *this dispute*."  *Id.* at *19-*20 (emphasis added).  Thus, the San Francisco

3  counsel in *Yenidunya* "had extensive first-hand familiarity with the dispute between the

4  parties." *Shany Co. v. Crain Walnut Shelling, Inc.*, No. 2:11-CV-01112-KJM-EFB, 2015

5  U.S. Dist. LEXIS 8006, 2015 WL 351660, at *13 (E.D.Ca. 2015) [explaining *Yenidunya*].

6  None of that is true here.  There is no evidence that, prior to being retained for this

7  matter, Mr. Packard had any familiarity with the dispute between the County and Plaintiff,

8  had any prior dealings with Plaintiff, or had any knowledge of the facts underlying this

9  specific dispute.  *Yenidunya* is unavailing.

10      Second, *Shany* also does not support out-of-forum rates here.  In *Shany*, "the

11  same counsel represented Crain in the arbitration before the commencement of this

12  action," and "Crain could not be expected to hire new counsel to represent it in this

13  action, which sought declaratory and injunctive relief in connection with the *same*

14  *arbitration*."  2015 U.S. Dist. LEXIS 8006, at *12-*13 (emphasis added).  Such facts do

15  not exist here.  Prior to the representation in this matter, Mr. Packard did not represent

16  Plaintiff in any proceeding against the County on the present issues.

17      Third, Plaintiff falsely states that this federal action was brought *after* its state

18  action, in a fruitless attempt to bolster its "efficiency" argument. Motion, 21:20-22.  But

19  contrary to Plaintiff's argument, this federal action was filed on January 16, 2020 (Docket

20  1, at 1), while the *State Action* was filed *over 6 months later* on June 22, 2020.  Einhorn

21  Decl., ¶2, Ex. A.  Indeed, the billings submitted by Mr. Packard demonstrates that he

22  began working on this federal case in July 2019, three months before he began working

23  on the state case in October 2019.  Packard Decl., Ex. 4, Entry no. 1 (Docket 112-1, at

24  28).  Thus, prior to the representation for this federal action, Mr. Packard did not

25  previously work on any dispute between the parties.

26      Fourth, Mr. Packard states that his firm "had previously litigated a Clean Water

27  Act case against the County regarding discharges from the same landfill."  Motion,

28  21:23-25; Packard Decl., ¶8.  Presumably, Mr. Packard is referring to the case of

-24-

1  *California Sportfishing Protection Alliance v. Butte County Department of Public Works*,

2  et al., No. 2:10-cv-03203-LKK-KJM, filed in the United States district Court for the

3  Eastern District of California on November 29, 2010.  But that case is completely

4  different, with different facts, different allegations, different conduct, different parties and

5  even different law.  Indeed, Plaintiff does not even attempt to describe how that earlier

6  case provided Plaintiff's attorney with any knowledge of the underlying facts about the

7  dispute between the parties before this Court.  Thus, Mr. Packard's representation in that

8  case from a decade earlier provided no familiarity with the facts in this federal lawsuit.

9  Fifth, because the State Courts in the State Action never considered or decided

10  that Plaintiff had made a good faith effort in finding Sacramento counsel, as discussed

11  above, Plaintiff's reliance on the "state court's finding that out-of-forum rates were

12  appropriate to award for the state case," Motion, 21:27-22:2, does not support Plaintiff's

13  "efficiency" argument.

14  **D.     The Motion Is Inconsistent With Plaintiff's Own Evidence Of The San
15           Francisco Bay Area Rates Of Its Attorneys.**

16  As discussed above, this Court should apply market rates within the forum –

17  Sacramento.  But even assuming, *arguendo*, that Plaintiff can establish that Sacramento

18  counsel was unavailable and that Plaintiff may be awarded San Francisco Bay Area

19  market rates, the rates sought in Plaintiff's Motion ($1,015 for Andrew Packard, $935 for

20  Brian Acree, and $730 for William Carlon) are excessive.  Mr. Packard earlier stated in

21  *this case*, under penalty of perjury:  "I have practiced for 28 years and my 2021 fee rate

22  for work in the Northern District is $825/hour," and "[m]y associate, William Carlon has

23  practiced for 6 years and his 2021 fee rate for work in the Northern District is $400/hour."

24  Declaration Of Andrew L. Packard In Support Of Expenses Incurred In Bringing Motion To

25  Compel Site Inspections, ¶10 (Docket 32, at 3). Those same hourly rates for the San

26  Francisco Bay Area for 2022 ($825 for Mr. Packard, $750 for Brian Acree, and $400 for

27  William Carlon) was also declared under penalty of perjury by Mr. Packard in the State

28  Action.  State Packard Decl., ¶¶54, 58, 62; Einhorn Decl., Ex. B, at 11-14. Those same

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

1   hourly rates for these same attorneys were awarded in 2022 in a case in the Northern

2   District of California that similarly alleged "violations of the Clean Water Act and

3   California's General Industrial Permit for storm water discharge." *See e.g., Californians*

4   *for Alts. to Toxics v. Kernen Constr. Co.*, No. 20-cv-01348-YGR, 2022 U.S. Dist. LEXIS

5   248070, 2022 WL 22227777, at *6-*7 (N.D.Ca. 2022).[2]  Furthermore, 2024 rates should

6   not apply to Plaintiff's billings from July 2019 through December 2023, because a

7   "paying client" would never agree to that. For all these reasons, Plaintiff's request in its

8   Motion is unreasonable *even if* Bay Area rates applied here, which they do not.

9
10  **VI.   THE SACRAMENTO RATES AWARDED EARLIER IN THIS CASE BY MAGISTRATE JUDGE COTA ARE CORRECT**

11        As discussed above, Judge Cota awarded Plaintiff attorneys' fees in connection

12  with a discovery motion earlier in this case.  Docket 35, at 3.  Judge Cota held:  "[T]he

13  Court will allow the requested rate for associate counsel of $400.00 per hour. Time for

14  lead counsel, who has 28 years' experience, will be permitted at a rate of $450.00 per

15  hour." *Ibid.*  Those same hourly rates should be awarded in response to this Motion.

16        Buried in Plaintiff's papers in support of this Motion (but not discussed in the

17  Motion itself), is the opinion of Richard Pearl that the Sacramento market rates for

18  Plaintiff's counsel are $750 per hour for Mr. Packard, $720 per hour for Mr. Acree, and

19  $550 per hour for Mr. Carlon.  Declaration Of Richard Pearl In Support Of Motion For

20  Attorneys' Fees And Costs, ¶31 (Docket 112-3, at 21).  However, the evidence cited in

21  Mr. Pearl's declaration does not support those rates.  Hansen Decl., ¶12, Ex. E.  In fact,

22  applicable case law in the Eastern District demonstrate that the rates earlier awarded by

23  Magistrate Judge Cota in this federal litigation are reasonable and appropriate for this

24  case and Plaintiff's Motion. Hansen Decl., ¶13.

25  _____
26  [2] Even in Plaintiff's attempt to improperly rely on the out-of-forum rate decision by the Butte County Superior Court, Motion, 20:23-21:9, County's Opposition to Plaintiff's Request For Judicial Notice (filed herewith), Plaintiff carefully avoids any mention that the San Francisco Bay Area rates awarded by the
27  Butte County Superior Court *less than two months ago* were $825/hour for Mr. Packard, $750/hour for Mr. Acree, and $400/hour for Mr. Carlon, which are far less than the rates Plaintiff seeks in this Motion.  See
28  Exhibit 2 to Plaintiff's RJN (Docket 113, at 17).

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

1    **VII.    THE COSTS SOUGHT BY PLAINTIFF ARE UNREASONABLE**

2        Plaintiff seeks $54,713.10 in costs.  Motion, 26:9-27:4; Packard Decl., ¶¶62, 63,

3    Ex. 3.  This Court should significantly strike and/or reduce such costs for two reasons.

4        First, the $8,193.82 costs for the "Law Office of Richard Pearl (fee rates) Invoice

5    dated July 17, 2024" as an "expert" cost should be stricken, and/or significantly reduced,

6    as follows:  **(A)** There is no explanation in either the Motion or in the Declaration of Mr.

7    Packard that explains the need and rationale for such fees.[3]  **(B)** Such costs would not be

8    expected to be paid by a paying client.  *Cf. Moreno v. City of Sacramento,* 534 F.3d 1106,

9    1111 (9th Cir. 2008) ["Determining the number of hours reasonably expended requires

10    'considering whether, in light of the circumstances, the time could reasonably have been

11    billed to a private client.'" (Citation omitted.)]  **(C)** The purported "Invoice dated July 17,

12    2024" was never provided, and so the reasonableness of the cost cannot be determined.[4]

13    **(D)** The $8,193.82 appears wildly inflated.  *See* Hansen Decl., ¶12 (G).  **(E)** The only

14    description of such cost related to Mr. Pearl is essentially "block billing," and the Ninth

15    Circuit "do[es] not quarrel with the district court's authority to reduce hours that are billed

16    in block format." *Welch v. Metro. Life Ins. Co.*, *supra*, 480 F.3d 942, 948.  "When the

17    nature of the block-billing prevents a court from effectively determining whether the time

18    spent on tasks was reasonable, district courts in the Ninth Circuit have the authority to

19    apply a blanket discount to block-billed entries." *Murphy v. Celestron Acquisition, LLC*,

20    No. 5:20-cv-03642-EJD, 2024 U.S. Dist. LEXIS 49710 at *14, 2024 WL 1221963 (N.D.Ca.

21    2024). See e.g., *Waterkeeper v. Corona Clay Co.*, No.: 8:18-cv-00333-DOC (DFM), 2024

22    U.S. Dist. LEXIS 10550, at *14-*15 (C.D.Ca. 2024).

23        Second, the invoices from "SWAPE (environmental consultants)" should be

24    stricken and/or significantly reduced because none of the invoices were presented to this

25    Court, and therefore the reasonableness of the work of the expert cannot be determined.[5]

26

27    _____

[3] Plaintiff should not be allowed to present additional evidence with the Reply, as that would be patently unfair to the County and a violation of the County's due process rights to address such additional evidence

28    [4] See note 3, above.

[5] See note 3, above.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

1

## VIII.   CONCLUSION

For all of the many reasons explained above, this Court should issue an award of fees and costs to Plaintiff that is only a fraction of what is sought in the instant Motion.

Dated:  August 7, 2024                    ABBOTT & KINDERMANN, INC.


By: _____
GLEN C. HANSEN
DIANE G. KINDERMANN
Attorneys for Defendants
BUTTE COUNTY DEPARTMENT OF
PUBLIC WORKS, DENNIS SCHMIDT,
ERIC MILLER

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**