ANDREW L. PACKARD (State Bar No. 168690)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com

Brian D. Acree (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
Tel: (510) 517-5196
E-mail: brian@brianacree.com

William N. Carlon (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
Tel: (530) 514-4115
E-mail: william@carlonlaw.com

Attorneys for Plaintiff
CALIFORNIA OPEN LANDS

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA OPEN LANDS,<br><br>　　Plaintiff,<br><br>　　v.<br><br>BUTTE COUNTY DEPARTMENT OF PUBLIC WORKS, ERIC MILLER, AND DENNIS SCHMIDT,<br><br>　　Defendants. | Case No: 2:20-cv-00123-DJC-DMC<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Hearing Date: October 3, 2024<br>Hearing Time: 1:30 p.m.<br>Courtroom: 10, Hon. Daniel J. Calabretta |

## I. INTRODUCTION

Congress passed the Clean Water Act in 1972 with the lofty goal of restoring and maintaining "the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). As one of the ways to accomplish this goal, Congress included a citizen suit provision allowing any person to enforce the Act. 33 U.S.C. § 1365. To encourage such citizen suits, the Act includes a fee-shifting provision that authorizes the award of litigation costs to "any prevailing or substantially prevailing party."

Plaintiff prevailed after hard fought litigation. Plaintiff's counsel were required to spend over a thousand hours over almost five years of active litigation to achieve nearly all of Plaintiff's litigation goals. Those hours were required, in part, because the case was vigorously defended and did not settle until *after* Defendants were found to have violated the Clean Water Act. "While the Defendants were well within their rights to litigate this case as zealously as they deemed appropriate, they cannot now complain about the hours billed in response to this tactic." *Kirschbaum v. Rise L. Grp. Inc.*, No. 1:22-cv-1394-CL, 2024 U.S. Dist. LEXIS 85419, at *2 (D. Or. May 10, 2024). That vigorous defense continues with this motion, but as set forth below, the hours were well documented, the time spent was necessary, and the rates requested are reasonable.

It should also be noted here that Defendants continue to repeat the false claim that their illegal discharges and failures to comply with the General Permit were the result of the Camp Fire. As explained before, Defendants have been unable to explain exactly how the Camp Fire caused the leachate discharges. (ECF No. 94 at 6:2-12.) In fact, Defendant Eric Miller testified in his deposition that he could not think of any damage from the Camp Fire that caused the leachate seeps. (*Id.* at 6:12-18.) Defendants are therefore correct that a party in this litigation is "taking advantage of the Camp Fire," they just have the wrong party.

## II. ARGUMENT

### A. Plaintiff Is a Prevailing Party

Defendants ignore the incontrovertible fact that Plaintiff prevailed by successfully

obtaining judgment on the merits of several claims and by obtaining a settlement that secured nearly all the relief it sought in the action. Instead, they argue that the action below was a partial success because many of Plaintiff's claims were "meritless."

First, Defendants are incorrect as a matter of law regarding what constitutes the type of "partial success" that merits a reduction of fees. Where, a plaintiff obtains substantial relief that accomplishes its litigation goals, it is entitled to a fully compensatory fee award, even in cases where the court does not agree with every claim or theory raised. *Hensley v. Eckerhart,* 461 U.S. 424, 440 (1983) ("[A] plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised"). It is only where plaintiff did not succeed on *unrelated* claims, or obtained only limited relief, that a court should consider reducing a fee award. *Id*. However, here, Plaintiff obtained nearly all the relief it sought and did not pursue any claims that were not related to the Clean Water Act. Thus, there were no "unrelated" claims, or indeed any claims, that were denied by the Court, and thus no basis for finding only "partial success".

Second, Defendants are asking the court to find that they would have succeeded at trial on defenses that they raise for the first time here. Defendants waived the right to litigate those defenses when they settled, and it is inappropriate to attempt to turn a fee motion into a mini-trial on defenses that were never raised below. *MWS Wire Industries, Inc. v. California Fine Wire Co., Inc.*, 797 F.2d 799, 802 (9th Cir. 1986).

Third, none of the defenses raised by Defendants here have merit. But more essentially, Defendants miss the point. The question to be resolved on a fee motion is *not* how the merits of claims and defenses would have been determined at trial. The inquiry is simply whether Plaintiff achieved the results it sought through the litigation, and if so whether any unrelated claims raised by Plaintiffs were denied. *Hensley v. Eckerhart* 461 U.S. 424, 440 (1983). That inquiry dictates that here, a full award of fees is appropriate.

      **1.**    **Plaintiff's Action Was Not Precluded by Diligent Prosecution**

Defendants infer that the fee award must be reduced by an unspecified amount because Plaintiff somehow only obtained partial success due to the State investigation of its Clean Water Act violations. (ECF No. 114 at 17:1-24.) Defendants do not attempt to explain *how* that investigation makes Plaintiff's success only "partial," but implicit in Defendants' opposition is the notion that Plaintiff's action was not necessary because the State "was already addressing the discharges at the Facility." (ECF No. 114 at 8:2-3.) The Clean Water Act disallows citizen suits where the "State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order. . . ." 33 U.S.C. § 1365(b)(1)(B). However, here, the State never initiated any kind of action in any court, and Defendants present no facts that support an argument that Plaintiff's action should have been precluded by the diligent prosecution bar. Thus the "diligent prosecution" bar is irrelevant to this case.

### 2. Defendants' Arguments on the Merits Are Irrelevant

Defendants also argue that Plaintiff pursued "meritless" claims against the County, and on that basis the award of attorneys' fees and costs should be reduced an undetermined amount. (ECF No. 114 at 9:13-10:10.) Defendants' legal rationale for this type of fee reduction is based on the Supreme Court's decision in *Christiansburg Garment Co. v. Equal Employment Opportunity Comm.*, 434 U.S. 412, 420 (1978). There, the Court was considering whether a defendant was entitled to seek attorneys' fees and costs under Title VII of the Civil Rights Act of 1964. The Court held that a "prevailing" defendant could only recover fees if it showed that the plaintiff's case was "frivolous, unreasonable, or groundless." *Christiansburg Garment Co.*, 434 U.S. at 422. The Court's holding is completely inapplicable to the present case, because here, Plaintiff prevailed, not Defendant, and the case does not stand for the proposition that a prevailing plaintiff must have its award reduced for any claims that defendant argues are "meritless." Indeed, *Hensley*, decided later, held that a prevailing plaintiff is entitled to a

full fee award when it obtains most of the relief it sought in its complaint, *even in cases where related claims are abandoned or unsuccessful*.  Hensley, 461 U.S. at 440.

Further, the basis for Defendants' contention that Plaintiff brought "several claims in this lawsuit that have no legal or factual basis" appears to be entirely premised on a misunderstanding of the legal standard applicable to a motion for summary judgment. Defendants argue that because the Court did not grant summary judgment for Plaintiff on certain issues, those issues have "no legal or factual basis." (ECF No. 114 at 9:24.) This is wrong.  That the Court declined to grant summary judgment does not mean that there is no legal or factual basis for that claim, but rather that there is a dispute of material fact as to that claim.  Fed. R. Civ. P. 56(a).  That Plaintiff was not entitled to judgment as a matter of law is not to say that Plaintiff's claims were meritless, or that they could not have been proven at trial.

Defendants also argue, for the first time, that the Clean Water Act did not apply at all to the discharges at issue in this case, and that all work spent by Plaintiff on the Fourth Cause of Action was unnecessary, and therefore unreasonable.  (ECF No. 114 at 8:19-9:12.)  Defendants' attempt to litigate a defense as part of this fee motion is improper, factually and legally unfounded, and cannot be the basis for any cuts to Plaintiff's fee request.  Again, the inquiry relevant here is whether Plaintiff's success on its motion for partial summary judgment and the results it achieved through settlement make it a "prevailing party."  The law is clear that the answer here is in the affirmative.

    **B.**    **The Hours Sought in the Fee Motion Are Reasonable**

           **1.**    **There Was No Duplication of Time Sought in the State Action**

Defendants submit the declaration of attorney Glen Hansen in opposition to this motion to support an argument that Plaintiff has engaged in duplicative billing practices. (Declaration of Glen Hansen ISO Opposition ("Hansen Dec.") (ECF No. 114-2), at ¶¶ 4-5.)  Hansen compares the billing records from the state court action between the same parties to the billing records from this action to identify time entries that were "actually or virtually identical" or "very similar."  However, all of these entries, which total 43.5 hours,

actually reflect time spent on indivisible tasks pertaining to *both* cases, which was then split between the two billing matters accordingly.  (Reply Packard Dec. at ¶ 5.)  None of them are "duplicate entries."  A description of each entry and how they were split is provided in the accompanying Reply Declaration of Andrew Packard.  *Id.*  The vast majority of these time entries relate to efforts to settle *both* actions together.  *Id*.  Fee expert Richard Pearl has confirmed that this practice of splitting such time between two closely related billing matters is entirely fair and reasonable under these circumstances.  (Reply Pearl Dec. ¶ 4.)

### 2.     Time Spent on Attorney Conferences Was Reasonable

Defendants ask the court to disallow *all* of the time spent by Plaintiff's counsel conferring about the case, suggesting incorrectly that the case law does not permit the recovery of time spent conferring by attorneys.  First, the law is clear.  In hard-fought cases like this one, courts have generally recognized that conferencing and communication among counsel are essential, both in terms of efficiency and effectiveness.  *See, e.g.*, *Elise Dragu v. Motion Picture Industry Health Plan for Active Participants,* 159 F. Supp. 3d 1121, 1129 (N.D. Cal. 2016); *Ramos v. Lamm,* 632 F. Supp. 376, 383 (D. Colo. 1986).  Indeed, without communication between attorneys regarding strategy, tasks that need to be accomplished, and division of labor, it is far too easy for counsel to duplicate efforts unnecessarily.

Courts have also generally recognized that with respect to time spent conferring, fees should be denied for duplication "only if the attorneys are unreasonably doing the same work."  *Johnson v. Univ. College,* 706 F.2d 1205,1208 (11th Cir. 1983).  Accordingly, reductions for "conferencing are inappropriate unless the "time claimed is obviously and convincingly excessive under the circumstances*."  Charlebois v. Angels Baseball, LP*, 993 F. Supp. 2d 1109, 1123, 1125 (C.D. Cal. 2012).

Here, conferencing among Plaintiff's counsel was not "excessive under the circumstances."  In fact, it demonstrates an efficient use of time.  The majority of the conferencing entries cited by Defendants are for conferences of less than 20 minutes,

and generally were only billed by one attorney. (Reply Packard Dec. ¶ 13) Also, most of these conferences regarded the delegation of tasks prior to a filing or other activity in a case, which is an appropriate reason for attorneys to confer since it involves brainstorming about the task at hand and then assigning tasks for efficiency.[1] (*Id.*)

Over the course of 5 years of billing entries, Defendants only identified 82.2 hours (roughly 7.4% of the total hours) that were spent conferencing. That amounts to <u>19 minutes of total conferencing billing per week</u> over the course of the case, or the equivalent of one approximately 10 minute call between two attorneys each week to coordinate tasks and keep the litigation moving efficiently. That amount of time is *not* unreasonable, and is not out of line with the percentages found reasonable in numerous other cases. *See, e.g.*, *Riverside v. Rivera,* 477 U.S. 561, 573 n.6 (1986) (approving 197 hours (10% of time) spent by plaintiffs' two attorneys conferring with each other); *Charlebois, supra,* 993 F. Supp. 2d at 1125 (conferencing time equaled 12.3% of total fee award).

### 3. Time Spent Resolving Discovery Disputes Was Reasonable

Defendants shamelessly allege that Plaintiff spent hours "on frivolous discovery disputes," (ECF No. 114 at 16:4-28), despite being the only party in this litigation to have paid multiple sanctions for abusing the discovery process. Defendants take issue with 8.8 hours incurred in the discovery dispute arising out of Defendants' responses to Plaintiff's Requests for Admissions. (Reply Packard Dec. ¶¶ 21-24.) Defendants object to Plaintiff's lawyers spending time engaging in the meet and confer process required by Civil Local Rule 251(b). Here, that process resulted in amended responses, and clarity on Defendants' positions with respect to key issues to the case. That Plaintiff withdrew its discovery motions is not evidence that the motions, or the disputes, were frivolous, but rather that the meet and confer process was successful. When Plaintiff needed to, it followed through on discovery motions, and each time Defendants were forced to pay

---

[1] Defendants did, however, note correctly that one duplicate entry for this phone conference existed, and Plaintiff therefore withdraws its request for reimbursement for entry 1147 for 0.6 hours.

sanctions as a result of the unreasonable positions they had taken. (ECF Nos. 35, 86.)

### 4. The Majority of Entries Identified by Defendants as Administrative Included Substantive Legal Work

Of the 18.9 hours objected to by Defendants, Plaintiff concedes that 2.5 hours are clerical in nature and withdraws its request for those hours. (Reply Packard Dec. ¶ 16.) However, the remainder of the allegedly administrative entries are proper and should be awarded, though some can be reduced in part.

Entries that include reviewing documents and photographs and organizing the case folder are part of necessary attorney work. *See e.g., Zelaya v. City of L.A.*, No. 2:20-cv-08382-ODW (MAAx), 2024 U.S. Dist. LEXIS 112652, at *15 (C.D. Cal. June 25, 2024). Entries that include review of timesheets for preparation of a fee motion are also compensable, *see e.g., Ecological Rights Foundation,* and the time spent on these tasks was not unreasonable. (Reply Packard Dec. ¶¶ 17-20.)

### 5. Entries Are Sufficiently Detailed, and in Any Case, Can Be Explained Where Necessary

Defendants object to 15.8 hours as being too vague or ambiguous to determine whether the hours were reasonably spent. (ECF No. 114-2 at 3:22-25.) Counsel are "not required to record in great detail how each minute of [their] time was expended." *Hensley*, 461 U.S. at 437, n.12. All that is required is that counsel "identif[ies] the general subject matter of [the] time expenditures." *Fisher v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000). No cuts are warranted to these hours, because adequate information is provided and the time spent on these tasks was not unreasonable. (Reply Packard Dec. ¶¶ 9-15.); *see, e.g., Moonbug Ent. Ltd. v. Babybus Fujian Network Tech. Co., Ltd.*, No. 21-cv-06536-EMC, 2024 U.S. Dist. LEXIS 139833, at *20 (N.D. Cal. Aug. 6, 2024) (reviewing time entries like "review documents" and finding them to be reasonable in light of the time spent on the task).

### 6. The Time Spent on the Instant Motion Is Reasonable

Defendants object to the amount of time spent on this motion for fees and costs, and in support of their position compare this case to another Clean Water Act case where the fees were decided by a motion. (ECF No. 114 at 19:3-17 (citing *Ecological*

*Rights Found. v. Hot Line Construction, Inc.*, No. 5:20-cv-01108-AB-kk, 2024 U.S. Dist. LEXIS 129282 (C.D. Cal., July 19, 2024) ("*Ecological Rights*").)  Defendants argue that because in that case "the District Court awarded $67,124.61 in preparing the fee motion," the amount sought here by Plaintiff is excessive.  (ECF No. 114 at 19:7.)  Defendants urge the Court to use *Ecological Rights* as a guide in determining what is a reasonable amount of time to spend on a fee motion.  (*Id.* at 19:12.)  What Defendants missed is that the $67,124.61 was incurred entirely from responding to the defendant's opposition to the fee motion, not from the preparation of the fee motion in the first place.  *Ecological Rights* at *2, fn. 1 ("This is the amount Plaintiffs seek in the *reply* after reducing their initial request by $106,833.26 and $308, and after *adding $67,124.61 for work on the fee Motion*") (emphasis added); *see also*, *Id.* at ECF No. 267 at 7:4-7 ("Plaintiffs have further documented additional $67,124.61 in fees billing (after added billing judgment reductions) for their *additional work* responding to Hot Line's Opposition and lengthy Schratz Declaration") (emphasis added).  In other words, the reply alone exceeded $67,000 in the *Ecological Rights* case.  In fact, the motion for fees in the *Ecological Rights* case took approximately 155 hours to complete, at the adjusted lodestar of approximately $137,614.45.  (ECF No. 260-2.)  The 107.3 hours, plus an additional 75.3 hours, are therefore well within the range that Defendants themselves contend is reasonable, and should be granted in full.

### 7. The Time Spent on Reply Is Reasonable

COL's attorneys spent 75.3 hours crafting this reply and the associated declarations.  That amount of time was necessitated by the sheer number of arguments raised by Defendants.  Defendants attacked Plaintiff's fee motion on nearly every conceivable ground, arguing (1) that Plaintiff was not a prevailing party, (2) that it had already been compensated for some of the time claimed, (3) that its billing entries were vague and ambiguous, (4) that it was requesting to be compensated for administrative time, (5) that it should not be allowed to bill for time spent coordinating between attorneys, (6) that it should not have spent more than 30 hours on this fee motion, (7)

that it did not conduct a good faith search for local counsel, (8) that it gained no efficiency from using the same attorneys for its state and federal actions, (9) that its claimed Bay Area rates were not reasonable, and (10) that its evidence regarding local rates was not reasonable. The amount of time spent responding to such an aggressive opposition is not unreasonable even according to the cases cited by Defendants in their opposition.  (ECF No. 114 at 19:3-17 (citing *Ecological Rights Found.*; *see also* *Kirschbaum v. Rise L. Grp. Inc.*, No. 1:22-cv-1394-CL, 2024 U.S. Dist. LEXIS 85419, at *2 (D. Or. May 10, 2024)*.

        C.      **The Requested Rates Are Reasonable**

            1.      **COL Conducted a Good Faith Search for Local Counsel**

The law requires a good faith search for local counsel, not an exhaustive one, and Plaintiff satisfied that requirement by contacting local, regional, and national organizations in search of counsel.

Ms. Nielsen conducted an extensive search for counsel on behalf of Plaintiff. She interviewed at least 5 attorneys in the Butte County area, none of which referred her to or recommended counsel in the Sacramento area.  (ECF No. 112-2 at ¶¶ 11-23.) It was also reasonable for Ms. Nielsen, who is not an attorney, to seek the advice of the Northern California Regional Land Trust, the California Council of Land Trusts, the Land Trust Alliance, and the California Sportfishing Protection Alliance, much larger organizations that had greater experience in litigation, regarding attorneys who would be able and willing to take on COL's action.[2]  One of these organizations, the Council of Land Trusts, is located *in Sacramento*, and yet did not recommend any Sacramento area attorneys to COL.  (*Id.* at 4:3-13.)  It cannot be said that COL did not conduct a good faith search for local counsel.  *See e.g.*, *Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 618 [showing of "good faith" met

---

[2] Contrary to Defendants' contention, this case is simply nothing like *Atlantic States Legal Foundation, Inc. v. Universal Tool & Stamping Co*, 798 F. Supp. 522, 525-526 (N.D. Ind. 1992), where a New York law firm "initiated the case" by contacting a plaintiff in Kentucky. Here, Plaintiff spent 4 months interviewing local attorneys and organizations looking for counsel to handle the matter.

Plaintiff's Reply in Support          10     Case No.: 2:20-cv-00123-DJC-DMC
of Mot. for Attorneys' Fees & Costs

through declarant who was familiar with the local market for environmental attorneys opining that no local counsel were available.]

Defendants argue that "there *were* several attorneys in Sacramento that Plaintiff could have potentially hired as counsel in this federal litigation." (ECF No. 114 at 20:17-19.) Defendants, after conducting their own good faith search for counsel, present the names of four lawyers who they contend could have potentially represented Plaintiff in this action. (ECF No. 114-3, ¶ 2.) However, even a cursory review of these attorneys reveals that they were either not actually available, or not qualified or likely willing to take the case.

As set forth in the accompanying Reply Declaration of William Carlon ("Carlon Dec."), Adam Brumm would not have taken this case because his organization did not exist until over a year *after* Plaintiff sought counsel, and it appears that he brought his very first Clean Water Act enforcement action in 2022. (Carlon Dec. ¶¶ 7-9.) Mr. Mooney has some experience with Section 404 of the Clean Water Act, but his practice focuses on CEQA compliance, and he has not brought a citizen enforcement action under the Act in over 15 years. (*Id.* at ¶¶ 10-12.) Mr. Donlan and Mr. Robinson are familiar with water rights cases, but they do not appear to have *ever* brought a citizen enforcement action under the Act. (*Id.* at ¶¶ 13-14.) A further description of these attorneys' experience is provided in the accompanying declaration. (*Id.*) It does not appear that any of the attorneys suggested by Defendants was available or experienced enough in citizen enforcement cases to take on such an aggressively-defended case.

Defendants prove Plaintiff's point. Even defense counsel, despite their good faith efforts, were not able to locate Sacramento counsel who were qualified and available to take the case. Consequently, out-of-forum rates are appropriate.

**2.     The Evidence Supports the Reasonableness of the Requested Bay Area Rates**

Plaintiffs submitted evidence in their moving papers establishing that the rates of $1,015 for Mr. Packard, $935 for Mr. Acree, and $730 for Mr. Carlon are "in line" with the rates charged in the Bay Area for similar work by attorneys of comparable skill and

experience. *Blum v. Stenson*, 465 U.S. 886, 895 fn.11 (1984); *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). The burden thus shifted to Defendants to refute that evidence with evidence of their own. *Camacho,* 523 F.3d at 980. However, Defendants do not challenge, or even mention, the declarations of Richard Pearl and Chrisopher Sproul, nor do they present case analysis or survey data of their own regarding what the appropriate rates in the Bay Area would be. Because they did not refute this evidence, these rates should be presumed to be reasonable for the Bay Area. *U.S. v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015).

Defendants instead argue that Plaintiff's counsels' rates are inconsistent with the rates they have claimed in prior cases or settings. (ECF No. 114 at 25-26.) Defendants do not explain why Plaintiff's counsel should be limited to the rates they charged three years ago, but it is generally accepted that rates increase every year. As Mr. Pearl testified: "Listed billing rates, court awards, and published articles show that over the past four years, San Francisco Bay Area rates have risen as much as 10% per year." (Pearl Dec. at 17, fn.3, ECF No. 112-3.) This testimony was well supported with citations to data and was unrefuted by Defendants. The rate increases for Mr. Packard and Mr. Acree are in line with the average rate increases. Further, at the time of those prior rate requests, Mr. Carlon was an associate of Mr. Packard and has since opened his own law practice, justifying the increase in his rate. (Packard Dec. ¶ 39.) Finally, the inquiry is whether the rates requested are "in line" with the rates of similar attorneys in the same area, not whether the request is "in line" with prior requests made by Plaintiff's counsel in other cases. *Roberts v. City of Honolulu*, 938 F.3d 1020, 1025 (9th Cir. 2019) ("Examining prior fee awards [to plaintiff's counsel] in the district was not an acceptable substitute for considering the declarations submitted by" plaintiff's counsel). If the requested rates are "in line" with those in the relevant community, and here the unrefuted evidence indicates that they are, then the requested rates should be awarded.

   **3. The Sacramento Rates Suggested by Plaintiff Are Reasonable if the Court Chooses to Award Sacramento Rates.**

Defendants urge this Court to apply the rates that Magistrate Judge Cota awarded in January 2022. (ECF No. 114 at 26:15, citing ECF No. 35.) Aside from the fact that these rates are now well over two years old, they were awarded in the context of a motion to compel. (*See* ECF No. 31.) Nothing in Magistrate Judge Cota's order can be read to preclude Plaintiff from seeking out-of-forum rates, especially since the order was based on a bill of costs type declaration instead of a fully-briefed motion for fees.

Defendants provide no analysis in the two paragraphs of briefing they devote to Sacramento area rates for why they believe Mr. Pearl's testimony regarding an appropriate Sacramento area rate is not supported by the evidence he cites. In the declaration supporting their briefing, they do not dispute that the Sacramento area cases cited by My. Pearl, many of which he testified in as an expert, have awarded rates that are *clearly* in line with the rates he recommends. (*See* Pearl Decl. at 22:2-24:28.)

Instead, Defendants complain that the Eastern District cases cited by Mr. Pearl are not limited to Clean Water Act cases, but involve other areas of law. However, the scope of the inquiry is not limited to a specific area of practice, but rather includes "equally complex Federal litigation." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454-55 (9th Cir. 2010) ("Although the state officials urge us to look only to the rates charged by other attorneys involved in prison litigation, the proper scope of comparison is not so limited, but rather extends to all attorneys in the relevant community engaged in 'equally complex Federal litigation,' no matter the subject matter."); *Camacho v Bridgeport Fin., Inc.*, 523 F.3d at 979 (consumer attorneys not limited to rates charged by or awarded to other consumer attorneys). It is thus perfectly appropriate to cite cases of similar complexity in setting a fee.

In contrast, the Eastern District cases cited by Defendants are of practically no use in determining what current Sacramento rates are. *All but one* of the cases are from the Fresno area, not the Sacramento area. (ECF No. 114-2 at 14:4-15:17.) Unlike the Sacramento area cases cited by Mr. Pearl, these cases are of little relevance to

current *Sacramento* area rates.  The one case cited by Defendants that *is* from the Sacramento area, *Ontiveros v. Zamora*, is 10 years old, and it would be an abuse of discretion to set current rates based on a single ten-year-old case. *Camacho v. Bridgeport Financial, Inc.,* 523 F.3d 973, 981 (9th Cir. 2008) (Holding that "a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services"); *Moreno v. City of Sacramento,* 534 F.3d 1106, 1115 (9th Cir. 2008) ("The district court's function is to award fees that reflect economic conditions in the district; it is not to "hold the line" at a particular rate, or to resist a rate because it would be a "big step.").  Defendants have therefore not met their burden of showing that the numerous cases cited by Mr. Pearl were either incorrect or irrelevant, or of demonstrating what current Sacramento area rates are.  Accordingly, Mr. Pearl's suggested rates of $750 for Mr. Packard, $720 for Mr. Acree, and $550 for Mr. Carlon should be adopted by this Court should it determine that Sacramento, and not Bay Area, rates ought to be awarded.

### 4. It Was Efficient to Retain the Same Firm to Handle Both the State and Federal Actions

Defendants misread the Eastern District case law regarding when matters of efficiency permit an award of out of forum rate.  The issue central to both *Yenidunya Investments, Ltd. v. Magnum Seeds, Inc.,* No. 2:11-cv-1787 WBS, 2012 WL 538263, 2012 U.S. Dist. LEXIS 20421 (E.D. Cal., Feb. 17, 2012), and *Shany Co., Ltd. v. Crain Walnut Shelling, Inc.,* No. 2:11-cv-01112-KJM, 2015 WL 351660, 2015 U.S. Dist. LEXIS 8006 (E.D. Cal., Jan. 23, 2015) was whether the efficiency gained from hiring out-of-forum counsel justified foregoing retaining less expensive local counsel. *Yenidunya*, 2012 WL 538263 at *7; *Shany*, 2015 WL 351660 at *6.  Here, both the state and federal cases brought by COL were based largely on the same facts regarding discharges at the landfill and involve the same parties. There is *undeniably* an efficiency gained from having the same counsel represent COL in both matters. Hiring different local attorneys for this federal action would have required substantially more time for discovery and investigation, and additional time for coordination by local and Bay Area attorneys.

1  Additionally, Mr. Packard's experience of bringing a CWA case against the same
2  Defendant over the same landfill also provided some efficiency from his familiarity with
3  the landfill's operations. Accordingly, efficiency *is* an additional reason for this court to
4  award out of forum rates.

### 5. An Award of Current Rates Is Appropriate

Plaintiff's counsel have foregone payment in this case for 5 years.  The case law is clear that compensation for such a long delay in payment is appropriate, usually in the form of compensating all the hours incurred at current rates in order adjust for both inflation and the lost use of funds.  *Missouri v. Jenkins* 491 U.S. 274, 284 (1989); *Gates v. Deukmejian*, 987 F.2d 1392, 1406-1407 (9th Cir. 1992). Defendants' argument that Plaintiff's counsel should be awarded only their historical rates for each of the calendar years spent litigating this case rather than current rates for the full amount of time spent on this case is squarely contradicted by the case law.  Accordingly, Plaintiff should be awarded the current rates for the time spent on this matter given the contingent nature of the representation.

### III. THE COSTS SOUGHT BY PLAINTIFF ARE REASONABLE

Defendants object to two categories of costs that Plaintiff seeks: 1) costs[3] associated with the work performed by Mr. Pearl; and, 2) costs associated with SWAPE, the environmental consulting firm hired as an expert in support of this litigation. Defendants complain that no invoices were provided. ECF No. 114 at 27:11-12, 27:24-25. Those are attached to the Reply Declaration of Andrew Packard Exhibits 5 and 6.

With respect to the costs associated with Mr. Pearl, Defendants make an additional four arguments. First is that "[t]here is no explanation in either the Motion or in the Declaration of Mr. Packard that explains the need and rationale for such fees." (ECF No. 114 at 27:6-7.) Mr. Pearl's services were required because Plaintiff anticipated,

---

[3] It may be more appropriate to consider Mr. Pearl's costs as attorneys' fees, because Mr. Pearl is an attorney providing important legal services for this case. Regardless of whether his invoices are considered fees or costs, they are reasonable for the reasons explained herein.

Plaintiff's Reply in Support  15  Case No.: 2:20-cv-00123-DJC-DMC
of Mot. for Attorneys' Fees & Costs

correctly, that Defendants would take issue with the rates requested, and, in fact, the motion for fees explains that Mr. Pearl was retained to opine on the reasonableness of hourly rates. (ECF No. 112 at 22:15-16.) Second is that "[s]uch costs would not be expected to be paid by a paying client." (ECF No. 114 at 27:7-8.) This is absurd because Defendants themselves provide an example of where Mr. Pearl's fees were awarded for exactly this type of work. (ECF No. 114-2 at 10:4-8.) Defendants argue that Mr. Pearl's costs appear to be "wildly inflated" but aside from comparing a seven-year-old case to this one, they fail to provide any evidence supporting that assertion. Finally, Defendants attack Mr. Pearl's costs as impermissible block billing. (ECF No. 114 at 27:13-14.) The invoices provided with this Reply demonstrate that this is not the case.[4] Additionally, Plaintiff has recently received and paid 2 invoices, one for expert witness Christopher Sproul, and one from defense counsel for expert depositions, that have been added to the litigation costs being sought. (Reply Packard Decl. ¶27-28, Exhs 7-8)

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the court grant its requested lodestar award of $982,487.00 in attorneys' fees, and $66,793.03 in litigation costs.  These amounts account for the voluntary exclusion of time noted above, and include costs associated with this reply, and invoices Plaintiff received since the filing of this motion. (Reply Packard Decl. ¶¶13,16, Exhs. 7-9)

Respectfully submitted,

Dated:  August 20, 2024            LAW OFFICE OF WILLIAM CARLON

By:   /s/ William Carlon_____
William Carlon
Attorney for Plaintiff
CALIFORNIA OPEN LANDS

---

[4] Defendants preemptively object to the inclusion of any additional evidence on Reply, but as this Court acknowledged in its order on summary judgment, evidence that is submitted in response to arguments raised in Defendants' Opposition is permissible rebuttal evidence. ECF No. 104 at 10, fn. 6, citing TSI Inc. V. Azbil BioVigilant Inc., No. Cv-12-00083-PHX-DGC, 2014 WL 880408, *1 (D. Ariz. 2014).