ANDREW L. PACKARD (State Bar No. 168690)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
E-mail: andrew@packardlawoffices.com

BRIAN D. ACREE (State Bar No. 202505)
Law Office of Brian Acree
95 3rd Street, Second Floor
San Francisco, CA 94103-3103
Tel: (510) 517-5196
E-mail: brian@brianacree.com

WILLIAM N. CARLON (State Bar No. 305739)
Law Office of William Carlon
437 Post Street
Napa, CA 94559
Tel: (530) 514-4115
E-mail: william@carlonlaw.com

Attorneys for Plaintiff
CALIFORNIA OPEN LANDS

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA OPEN LANDS,<br><br>     Plaintiff,<br><br> v.<br><br>BUTTE COUNTY DEPARTMENT OF PUBLIC WORKS, ERIC MILLER, and DENNIS SCHMIDT,<br><br>     Defendants. | Case No: 2:20-cv-00123-DJC-DMC<br><br>**REPLY DECLARATION OF RICHARD PEARL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Hearing Date: October 3, 2024<br>Hearing Time: 1:30 p.m.<br>Courtroom: 10, Hon. Daniel J. Calabretta |

I, Richard M. Pearl, declare as follows:

1.     On July 24, 2024, Plaintiff filed my July 17, 2024 declaration in which I expressed my opinion that the hourly rates requested by Plaintiff's counsel in this matter were reasonable, i.e. that their requested hourly rates are readily in line with the hourly rates

1    charged by comparaably skilled and experienced attorneys for comparably difficult and

2    specialized work, i.e hard-fought civil litigation on complex, esoteric environmental issues. To

3    support that opinion, I submitted extensive data showing the rates charged and awarded for

4    reasonably comparable work in both the San Francisco Bay Area, where Plaintiff's counsel have

5    their offices, and in the Eastern District, where this case is venued.

6           2.      In opposition, the Defendants do not dispute my opinion that counsel's hourly

7    rates are reasonable as Bay Area rates. Through their attorney's declaration, however, they

8    claim that the evidence I put forth to support my opinion regarding Eastern District rates is not

9    sufficient. I have read that opposition and declaration, however, and stand by my position that

10   their requested rates are in line with those charged and/or awarded in the Eastern District.

11          3.      In their Reply Memorandum and declarations, Plaintiff's counsel address in more

12   detail the factual and legal reasons why Defendant's opposition fails to refute my testimony. I

13   have read Plaintiff's reply regarding Eastern District rates and concur in it without qualification.

14   Plaintiff's counsel also have asked that I review Defendants' opposition on three other issues: 1)

15   whether their hourly rates are defined solely by the rates charged by environmental attorneys,

16   as opposed to attorneys who litigate similarly complex cases in other areas of law; 2) the extent

17   to which counsel's "conferencing" activities are compensable; and 3) whether Mr.

18   Packard'spractice of splitting the attorney's expended time between two matters, where the

19   task at issue is undertaken in furtherance of both actions, indivisibly, such as a global

20   settlement. Again, I have read Plaintiff's reply memorandum and declarations on these issues

21   and concur entirely with its positions.

22          4.      Counsel also have asked that I specifically elaborate my opinion on the third

23   issue. My understanding is that for a period of nearly two years, from the inception of COL's

24   state and federal actions in late 2019 to the end of 2021, some, but not all, of the time

25   expended by Mr. Packard was dedicated to settlement discussions intended to resolve *both*

26   matters in a global settlement. For this and other similarly indivisible work (such as client board

27   meetings concerning both cases), Plaintiff's counsel would split that time between the two

28   cases, either evenly or in a manner reflecting the relative weight of each case in the task. As a

Richard Pearl Reply Dec ISO Motion          2          Case No.: 2:20-cv-00123-DJC-DMC
For Attorneys' Fees and Costs

1   result, none of this joint time was double-billed.  In my opinion, this is an utterly appropriate

2   manner in which to allocate an attorneys' time under these circumstances. It is entirely

3   consistent with how I would expect attorneys to bill such work to fee-paying clients. In fact, on

4   several occasions, I have billed similar matters the same way myself.

5          5.       Attached hereto as **Exhibit 1** is a true and correct copy of the Order Granting

6   Plaintiff's Motion for Reasonable Attorneys' Fees filed September 12, 2022 in *Brown v.*

7   *California Department of Corrections and Rehabilitation,* Sacramento Superior Court, Case No.

8   34-2015-00176321, a case which I noted in paragraph 32 of my orignal declaration.  This is a

9   2022 fee decision in Sacramento where Alan Reinach, with 25 years experience as an attorney

10  in California and an additional 10 years experince in New York was awarded a rate of $750, and

11  Wendy Mussell, an attorney with 23 years experience, was awarded $700 per  hour.

12         I declare under penalty of perjury of the laws of the United States of America that the

13  foregoing is true and correct.

14         Executed on August 19, 2024, in Berkeley, California.

15

16                                                RICHARD M. PEARL

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

*Attorneys for Plaintiff*

James A. Sonne, State Bar No. 250759
Zeba A. Huq, State Bar No. 261440
Stanford Law School Religious Liberty Clinic
559 Nathan Abbott Way
Stanford, CA 94305
Phone: (650) 723-1422; Fax: (650) 723-4426
Email: jsonne@law.stanford.edu

Wendy Musell, State Bar No. 203507
Law Offices of Wendy Musell
180 Grand Avenue, Suite 1300
Oakland, CA 94612
Phone: (510) 270-2252; Fax: (510) 228-1391
Email: wmusell@wendymuselllaw.com

Alan J. Reinach, State Bar No. 196899
Jonathon S. Cherne, State Bar No. 281548
Church State Council
2686 Townsgate Road
Westlake Village, CA 91359
Phone: (805) 413-7398; Fax: (805) 497-7099
Email: ajreinach@churchstate.org



FILED / ENDORSED

SEP 1 2 2022

By A. O'Donnell, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SACRAMENTO**

| | |
|---|---|
| TERESA BROWN, | ) Case No.: 34-2015-00176321 |
| | ) |
| Plaintiff, | ) **[Proposed] ORDER GRANTING** |
| | ) **PLAINTIFF'S MOTION FOR STATUTORY** |
| vs. | ) **ATTORNEY'S FEES AND COSTS** |
| | ) |
| CALIFORNIA DEPARTMENT OF | ) Trial Date: March 19, 2018 |
| CORRECTIONS AND | ) Department: 23 |
| REHABILITATION, | ) Judge: Kevin R. Culhane |
| | ) |
| Defendant. | ) Hearing on Plaintiff's Motion for Statutory |
| | ) Attorneys' Fees and Costs: August 12, 2022 |
| | ) Department: 27 |
| | ) Judge: Steven M. Gevercer |
| | ) |
| | ) |
| | ) |
| | ) |

**Plaintiff's Motion for Attorney's Fees and Costs**

On Friday, August 12, 2022, at 9:00 am the Court heard argument from counsel for the parties regarding Plaintiff's Motion for Statutory Attorneys' Fees and Costs. The matter was heard by Hon. Steven M. Gevercer, in Department 27. Counsel for all parties appeared for the hearing on that date and thereafter, on August 15, 2022, the Court served on the parties the Court's Ruling After Hearing on Motion for Attorney's Fees. A copy of that Ruling is hereby incorporated by reference and attached hereto as Exhibit A.

After considering the pleadings submitted by all parties, supporting declarations, including expert declarations, evidence, exhibits and objections thereto, as well as oral arguments presented at the hearing related thereto, Plaintiff's Motion for Statutory Attorneys' Fees and Costs is hereby GRANTED and Plaintiff is awarded fees and costs in the amount of $1,846,969.38, for the reasons stated in the attached Ruling After Hearing on Motion for Attorney's Fees.

IT IS SO ORDERED.

Dated: 9/17/2022

Honorable Steven M. Gevercer,
Judge of the Superior Court of California
County of Sacramento

# EXHIBIT A

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SACRAMENTO**

| DATE/TIME: | August 12, 2022    9:00 a.m. | | DEPT. NO.: | 27 |
|---|---|---|---|---|
| JUDGE: | HON. STEVEN M. GEVERCER | | CLERK: | A. O'DONNELL |
| Teresa Brown<br><br>    Plaintiff<br><br>v.<br><br>California Department of Corrections and Rehabilitation<br><br>    Defendant | | | Case No.: 34-2015-00176321 | |
| **Nature of Proceedings:** | | **Ruling after Hearing on Motion for Attorney's Fees** | | |

## I.  Ruling.

On Friday, August 12, 2022, at 9:00 a.m., the Court heard argument from counsel for the respective parties regarding the Court's tentative ruling.  After a consideration of the arguments presented, the Court rules as follows.

## II.  Procedural History.

This action arises out of Plaintiff Teresa Brown's application for employment as a Correctional Officer (CO) with Defendant CDCR in 2013.  CDCR rejected Plaintiff's application before completion of the entire application, concluding that she did not meet the minimum qualifications for the position because the position required willingness and ability to work 24/7 as needed, which Plaintiff declined to do based on her Sabbath observance.

Plaintiff filed the instant lawsuit against CDCR under the Fair Employment and Housing Act (Govt. Code § 12940) on March 11, 2015, claiming religious discrimination and failure to accommodate. The matter proceeded through discovery and litigation and on April 20, 2017, Department 53 granted summary adjudication of the first cause of action, concluding that Defendant had established Plaintiff was not qualified for the position, finding that her refusal to work nights and weekends demonstrated she was unable to discharge the essential functions of the position. Despite that finding, that court denied the summary adjudication motion as to the cause of action for failure to accommodate.

Page - 1 - of 9

The matter proceeded as a bench trial before the Hon. Kevin R. Culhane, which was presented by the parties between March 20, 2018 and April 2, 2018. Following full briefing and trial, issuance of a Tentative Statement of Decision, and receiving objections from the parties, the Court issued its Final Statement of Decision on February 8, 2019, finding that the "availability and willingness" requirements of the position were bona fide occupational qualifications that did not require accommodation, thereby providing a full defense as to Plaintiff's claim for failure to accommodate. Judgment was entered in favor of CDCR.

Plaintiff filed her Notice of Appeal on April 5, 2019.

On April 16, 2021, the Third District Court of Appeal reversed and remanded this matter to this Court on remittitur. Judge Culhane ordered briefing to address the degree of hardship, if any, CDCR would sustain if it were required to accommodate Plaintiff's religious observance based on the evidence already presented to the Court.

On September 17, 2021, following review of all briefing, Judge Culhane held a further hearing, ruling that CDCR had not sustained its burden to demonstrate it was unable to accommodate Plaintiff's religious observance without undue hardship and, thus, Plaintiff was the prevailing party in this case. Thereafter, on December 22, 2021, the Court issued judgment, holding: 1) Plaintiff was the prevailing party; 2) Plaintiff was entitled to recover as a judgment $251,277.00 in past economic damages and $50,000.00 in noneconomic damages; 3) Defendant was required to reinstate Plaintiff into the hiring process at the point she occupied in 2015 when Defendant rejected her employment application; 4) if Plaintiff passed all examinations and so elected, Defendant would place her back onto its applicant hiring list for no less than two years; and 5) as prevailing party, Plaintiff's counsel could separately move to recover their reasonable fees and costs by noticed motion.

On February 17, 2022, Defendant filed a notice of appeal regarding the judgment following remittitur.

On February 18, 2022, Plaintiff filed the instant motion to recover her attorneys' fees. Defendant requested additional time to oppose the motion, which was granted.

On March 15, 2022, Judge Culhane retired and the matter was transferred to this court for adjudication of the instant fee motion.

### III. Plaintiff's Fee Motion.

Plaintiff seeks an award of $2,072,071.25 based upon various lodestar hourly rates among the different counsel appearing in this case, plus a multiplier of 2.0 to compensate counsel for the risk of taking a cause which, in Plaintiff's counsel's

opinion, required great resources to prosecute, an inevitable delay in receiving payment, the preclusion of other work, the difficulty and complexity of the case, as a means of encouraging other attorneys to undertake similar future cases in the public interest. In total, Plaintiff requests compensation of attorney fees in the amount of $4,144,142.50. (See Pl. Ntc. of Mtn. at 1:10-11; MPA 7:8-15, 15:3-4.)

CDCR does not contest that Plaintiff is the prevailing party in this matter but opposes the motion on multiple grounds. First, CDCR argues the hourly rates requested are unreasonable. For this reason, CDCR asserts, the court should reduce the hourly rates to rates that more accurately reflect the scope and nature of the litigation, proposing hourly rates comparable to those billed by Sacramento-area attorneys, and eliminating fees attributable to law students who worked on the matter. Second, CDCR contends the fee motion seeks to recover for duplicative, inefficient, and over-billed work, vague and unsubstantiated work, as well as for non-recoverable clerical work. Third, CDCR argues there is no basis for application of a multiplier based on the undisputed facts and circumstances of this case. In sum, CDCR argues that Plaintiff should recover no more than $1,149,018.90 in fees with no multiplier.

## IV. Analysis.
### A. Fee Calculation.

A party seeking attorneys' fees "is not necessarily entitled to compensation for the value of attorney services according to its own notion or to the full extent claimed by [it]." (*Salton Bay Marina, Inc. v. Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 950; *Levy v. Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 813-814.) A party seeking fees has the "burden of showing the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.'" (*Levy*, 4 Cal.App.4th at 816.) As noted in *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, the trial court has broad authority to determine the amount of a reasonable fee in accordance with principles of equity. (*Id.* at p.1095.)

In evaluating a motion for attorney fees, the Court "ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. ... The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." (*PLCM Group, Inc., supra*, at 1095 [citing *Serrano v. Priest* (1977) 20 Cal.3d 25, 49].) "After the trial court has performed the calculations [of the lodestar], it shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the ... award so that it is a reasonable figure.' [¶] 'It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court .... The value of legal services performed in a case is a matter in which the trial court has its own expertise. The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. The trial

court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.'" (*Id.* at p. 1095-1096.) "There is no hard-and-fast rule limiting the factors that may justify an exercise of discretion to increase or decrease a lodestar calculation." (*Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 834.)

### B.  Reasonableness of the Hourly Rate.

A reasonable hourly rate "is the product of a multiplicity of factors," including the general market rate. (*See Margolin v. Regional Planning Com.* (1982) 134 Cal.App.3d 999, 1003–1004.) "The determination of the 'market rate' is generally based on the rates prevalent in the community where the court is located." (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 701; *see also PLCM Group,* 22 Cal.4th at 1094.)

Generally, the reasonable hourly rate is the rate to which attorneys of like skill in the court's jurisdiction would typically be entitled. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.) Though it may seem obvious, the Court reminds the parties that market rates in Sacramento are not the same as market rates in Southern California or the Bay Area, regardless where counsel may be located.  The declarations of Plaintiff's counsel address, almost exclusively, the reasonableness of the rates based on Southern California and Bay Area standards.  Indeed, Plaintiff's own billing expert, Mr. O'Connor, specifically states that "[t]he hourly rates sought by petitioning lawyers are well within the range of comparable fees in the legal market *in San Francisco and Los Angeles.*" (O'Connor Decl., ¶ 21 [emphasis added].) However, this matter was litigated and tried, from inception to judgment, in Sacramento and therefore Sacramento is the appropriate market to determine the hourly rate.

Here, Plaintiffs claim the following rates:

- Wendy Musell: $850/hour
- Maraka Willits: $775/hour
- Brittany Wightman: $300/hour
- Heidi Hayame: $200/ hour
- Ms. Musell's Law Clerk: $196/ hour
- Alan Reinach: $950/hour
- Jonathon Cherne: $575/hour
- James Sonne: $650/hour
- Stanford Law Students: $150/hour

The Court has considered the Parties' competing evidence and arguments regarding the hourly rates claimed by the attorneys and the law students,

including but not limited to evidence of each attorney's level of experience, evidence of community prevailing rates, rates awarded to them or similarly situated attorneys in other actions, the competing declarations of the fee experts, and the Court's own knowledge and experience with awarding fees in similar contexts.

The Court notes that the declarations submitted by counsel in support of their requested hourly rates do not establish that these are counsels' usual rates, that these same rates have been the basis for recent fee awards, or that any court has accepted them for any other purpose. Plaintiff also references the Laffey Matrix, which is a fee schedule used by many courts (primarily federal) for determining reasonable hourly rates in the District of Columbia. Plaintiffs essentially contend the rates can be adjusted to support the reasonableness of her attorneys' hourly rates. However, at best the rates are adjusted for other jurisdictions, again not the local Sacramento area at issue here. Precedent establishes that "the trial court is in the best position to value the services rendered by the attorneys" and "the trial court was neither required to follow the Laffey Matrix nor to adopt the rate [moving] counsel opined was the 'market rate' for services of this type." (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 702; see also *Prison Legal News v. Schwarzenegger* (9th Cir. 2010) 607 F.3d 446, 454 ["[J]ust because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away. It is questionable whether the matrix is a reliable measure of rates even in Alexandria, Virginia, just across the river from the nation's capital."].)

Based on the foregoing facts and precedent, the Court concludes that the hourly rates claimed by Plaintiff's counsel are excessive, and instead finds that appropriate base hourly rates are as follows:

- Wendy Musell: $700/hour
- Maraka Willits: $550/hour
- Heidi Hayame (paralegal): $150/hour
- Alan Reinach: $750/hour
- Jonathon Cherne: $550/hour
- James Sonne: $500/hour
- Stanford Law Students: $100/hour
- The Court disallows recovery for any of the fees billed by Ms. Wightman or by Ms. Musell's law clerk. Neither have submitted a declaration in support of the accuracy of the hours worked or to justify the claimed hourly rate. While Ms. Musell's declaration alludes to Ms. Wightman's experience, it is hearsay and the Court declines to rely on it to support an award of fees.

In reaching this conclusion, the Court recognizes it has the discretion to award higher out-of-town market rates under certain circumstances, but concludes that Plaintiff has not carried her burden to show that it is appropriate to do so in this

case. (See *Cordero-Sacks v. Housing Authority of City of Los Angeles* (2011) 200 Cal.App.4th 1267, 1286 [evidence of billing rates throughout the state is "of little, if any relevance, and in any case cannot supplant the trial court's expertise" concerning appropriate hourly rate where the litigation actually occurred]; see also *Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1243 [using rates from the local community where the litigation occurred is "an integral part of the initial lodestar equation" and is "one of the means of providing some objectivity to the process of determining reasonable attorney fees"].)

### C. Hours Reasonably Expended.

Absent circumstances rendering an award unjust, a fee award should "ordinarily include compensation for all the hours *reasonably spent*." (*Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 897 [emphasis added].) "Generally speaking, hours are reasonable if they were 'reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter.'" (Cal. Attorney Fee Awards (Cont. Ed. Bar 3d ed. 2016) § 9.4, pp. 9-10 [quoting *Hensley v. Eckerhart* (1983) 461 U.S. 424, 431].) "Hours that would not be billed to a fee-paying client because they are unreasonably duplicative or excessive for the task performed are not reasonable." (*Id.* [citing *Hensley, supra,* 461 U.S. at 434].)

The Court has considered the Parties' competing evidence and arguments regarding the reasonableness of the hours expended and claimed by Plaintiff's counsel in prosecuting the action. Specifically, the Court has carefully reviewed the billing records, all declarations of counsel, the declaration of the fee experts, the nature and complexity of the case, and the Court's own Register of Actions that chronicle the history and progression of this case. Further, the Court has considered CDCR's arguments regarding duplication of effort, excessive expenditure of time on certain projects, vague billing entries, the amount of hours attributable to the law students, clerical work, and time spent on matters that could be characterized as unnecessary or unreasonable in light of the facts of the case. The Court finds that certain of CDCR's concerns have merit.

The Court notes that Ms. Musell, Ms. Willits, and Messers. Reinach, and Cherne have all voluntarily reduced their hours by 5 percent, which the Court believes is appropriate and which the Court hereby incorporates into the overall fee calculation.

With regard to the reasonableness of hours expended, the Court concludes that Plaintiff considerably overstaffed this matter. In the Court's view, and based upon review of the Court's own case file, this was a relatively straightforward religious discrimination and accommodation dispute. In the Court's experience, this matter should not have required more than one lead counsel, one or two associates, and a paralegal. This conclusion is supported by Defendant's own staffing of the

matter, which included one Deputy Attorney General (DAG) until approximately 2017, at which point a second DAG and a paralegal assisted. A different DAG then assumed handling of the matter on appeal until it returned to this Court on remittitur. By contrast, Plaintiff had three attorneys, a law clerk, and a paralegal from Ms. Musell's office; two attorneys from the Church State Council; two attorneys from Stanford Religious Liberty Clinic (noting, however, that Plaintiff is not claiming fees for Ms. Huq's contribution; and a revolving cast of more than 30 law students. As explained below, this overstaffing has resulted in duplication of work, which the Court concludes is unreasonable.

The Court finds several other issues in its review of counsels' billing records, albeit to a lesser extent than the chronic overstaffing discussed above. First, the Court notes several instances in which billing entries are so vague that is impossible to discern whether the entry is at all related to this case; the Court declines to award fees for time spent on matters not properly identified or described. In addition, several billing entries pertain to work that is clearly clerical in nature and simply is not recoverable as attorney fees.

Further, the time spent in "conferencing," given the number of attorneys participating, is excessive and unreasonable; while the Court will not entirely eliminate recovery for conference hours, it is unreasonable to expect Defendant to fully compensate counsel for multiple attorneys repeatedly conferring regarding case status. For matters of overstaffed/duplicative conferencing, the Court awarded half of the claimed costs of same to each attorney claiming the fees.

As a separate issue, the Court finds that the time billed by the Stanford law students is excessive. Review of the students' billing records reflects substantial inefficiencies and overbilling with respect to research and drafting that would not have occurred if the matter were handled by a licensed attorney experienced in employment litigation. Moreover, the Court notes substantial duplication in effort and attendance, as well as time for repeated "review" of the case file when new students would replace those transferring out. While the Court supports legal training for law students in a real-world setting, it is unreasonable to expect taxpayers to fully compensate Plaintiff for what is essentially a training exercise by unlicensed students.

For the foregoing reasons, the Court finds the following adjusted hours to represent the reasonable time claimed and expended by Plaintiff's counsel, incorporating the voluntary five percent reduction noted above, together with the lodestar calculation:

Ms. Musell: 380.66 hours x $700/hour = $266,462.00
Ms. Willits: 36.51 hours x $550/hour = $20,080.50
Ms. Wightman: 0 hours (insufficient evidence to justify hours or hourly rate)
Ms. Musell's law clerk: $0 (insufficient evidence to justify hours or hourly rate)

Page - 7 - of 9

Ms. Hayame: 32.11 hours x $150/hour = $4,816.50
Mr. Reinach: 476.67 hours x $750/hour = $357,502.50
Mr. Cherne: 249.80 hours x $550/hour = $137,390.00
Mr. Sonne: 643.90 hours x $500/hour = $321,950.00
Stanford Law Students: 2,708 hours x $100/hour = $270,800.

Regarding the preparation of the Reply brief, Mr. Reinach's reply declaration states: "the task of drafting the reply brief was left to Mr. Cherne and myself." (Reply Dec., at p. 12.) He claims he expended 79.5 hours on the Reply brief, and Mr. Cherne expended 30.40 hours on the brief. The Court, in the exercise of its discretion, awards fees for Plaintiff's Reply brief in the amount of $28,750 (20 hours for Mr. Reinach; and 25 hours for Mr. Cherne).

In addition, Ms. Mussel prepared a comprehensive Reply Declaration and a supporting Request for Judicial Notice (both filed on June 10, 2022). She claims 66.8 hours at the rate of $850.00 per hour as reasonable compensation for this legal work. The Court, in the exercise of its discretion, awards Ms. Mussel an additional 32 hours at the rate of $700 per hour ($22,400.)

Based on the foregoing, the total base lodestar fee award is 1,430,151.50 ($1,379.001.50 + $28,750 + 22,400).

### D. Multiplier.

The Court also has considered the Parties' arguments regarding the propriety of a discretionary multiplier pursuant to the relevant factors. (See *Nichols v. City of Taft, supra,* 155 Cal.App.4th at 1241 [reviewing factors relevant to determining application of a multiplier in a fee award].) Case law requires that the trial court exercise discretion based on its own evaluation of the relevant criteria, but does not mandate the use of a multiplier at all, much less any particular multiplier. (*Ketchum, supra,* at 1138; *Nichols,* at 1241.) Here, the Court finds that a multiplier is appropriate given the risks and detriment of delayed compensation attendant to the seven-year contingent fee retention and the public interest advanced by the prosecution of this type of claim. But, despite the representations of Plaintiff's counsel to the contrary, the case was not complex or complicated in its claims, facts, or legal theories. And, a review of counsel's separate billing records provided in support of the motion leads to the conclusion that none were so engulfed in this dispute that they were reasonably unable to take on other work during the past seven years.

Accordingly, the Court applies a multiplier of 1.25, resulting in a final overall total fee award of $1,787,689.38 ($1,430,151.50 x 1.25).

### E.  Expert Fees.

Plaintiff also seeks to recover the costs of expert fees pertaining to their retained fees expert, John O'Connor, pursuant to Government Code section 12965(c)(6). On February 18, 2022, in support of Plaintiff's motion, Mr. O'Connor's filing indicated that he was capping his fees in this matter at $21,400.  (O'Connor Decl. in Support of Motion, ¶ 70.)  Now, Mr. O'Connor, after submitting a further declaration in support of Plaintiff's Reply, state that, due to additional work, including reviewing [the] "Schratz Declaration of over 1,000 pages in total, on which Mr. Schratz's firm worked 190 hours, my firm as logged charges of more than 70 hours for the undersigned at my $575 rate, and more than 30 for my associate at his $415 rate, for charges of $52,700 in addition to prior charges on the moving papers of $21,400, for a total of $74,100." (O'Connor Reply Decl., ¶ 242.)

First, the Court notes the inconsistency between the two statements, as well as the fact that the Court itself reviewed all the pleadings and evidence pertaining to this motion, and crafted this order, in far less time than Mr. O'Connor claims for his expert review.

Second, the Court observes that Mr. O'Connor has not submitted actual contemporaneously-kept records of billing on this matter to aid the Court in determining whether these expert fees are, in fact, reasonable. While acknowledging the stated goals of FEHA to award prevailing plaintiffs their reasonable fees and costs, there is no evidence that the Legislature ever intended recovery of fees and costs to be a windfall. As noted in *Ketchum v. Moses*, "to the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether." (*Ketchum*, supra, at p.1138.)

Accordingly, the Court reduces the expert fees claimed by Mr. O'Connor's firm by 20 percent, for an overall expert fee recovery of $59,280.00.

Plaintiff's objection to the Declaration of James Schratz is overruled.

Plaintiff's request for judicial notice is granted.

### F.  Conclusion.

Based on the foregoing analysis, the Court grants Plaintiff's Motion for Fees and Costs in the amount of $1,846,969.38 (1,787,689.38 + $59,280.00).  Plaintiff shall prepare a formal order consistent with the foregoing.

Plaintiff shall prepare a formal order consistent with the foregoing.

CERTIFICATE OF SERVICE BY MAILING
(C.C.P. Sec. 1013a(4))

I, the undersigned deputy clerk of the Superior Court of California, County of Sacramento, do declare under penalty of perjury that I did this date place a copy of the above entitled **RULING AFTER HEARING ON MOTION FOR ATTORNEY'S FEES** in envelopes addressed to each of the parties, or their counsel of record as stated below, with sufficient postage affixed thereto and deposited the same in the United States Post Office at Sacramento, California.

James Sonne
Stanford Law School Religious
Liberty Clinic
559 Nathan Abbott Way
Stanford CA 94305

Wendy Musell
Law Offices Wendy Musell
180 Grand Avenue Ste. 1300
Oakland CA 94612

Alan J. Reinach
Church State Council
2686 Townsgate Road
Westlake Village CA 91361

Lykisha D. Beasley
Attorney General Office
P O Box 944255
Sacramento CA 94244-2550

Dated: August 15, 2022

Superior Court of California,
County of Sacramento

By:  _A. O'Donnell, Deputy Clerk_

BOOK          :
PAGE          :
DATE          :
CASE NO.      :
CASE TITLE    :   IN RE:

Superior Court of California,
County of Sacramento

BY:  **A. O'DONNELL**
     **Deputy Clerk**

**Page 1 of 1**

## PROOF OF SERVICE

I am employed in the City of Oakland and County of Alameda, State of California in the office of a member of the bar of this Court whose direction the following service was made. I am over the age of 18 and not a party to this action. My business address is The Law Offices of Wendy Musell, 180 Grand Avenue, Suite 1300, Oakland, CA 94612. On the date set forth below, I served the following document(s) described as:

**[Proposed] ORDER GRANTING PLAINTIFF'S MOTION FOR STATUTORY ATTORNEY'S FEES AND COSTS**

On the parties in this action as follows:

Catherine E. Wise
Email: Catherine.Wise@doj.ca.gov

Lykisha Beasley
Email: Lykisha.Beasley@doj.ca.gov

[ X ] [BY ELECTRONIC SERVICE] By agreement of the parties, I caused each document to be sent via email in Adobe "PDF" format to the above email address(es), as set forth on this date. Each transmission was complete and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on *September 6, 2022* in Alameda County, California.

_____
Maraka Willits

PROOF OF SERVICE
BROWN v. CDCR; CASE NO.: 34-2015-00176321

Page - 1 -