1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   CALIFORNIA OPEN LANDS,                No. 2:20-cv-00123-DJC-DMC

11                  Plaintiff,
        v.
12                                          ORDER
     BUTTE COUNTY DEPARTMENT OF
13   PUBLIC WORKS, DENNIS SCHMIDT,
     and ERIC MILLER,
14
                    Defendants.
15

16

17        Pending before the Court is Plaintiff California Open Lands' Motion for

18   Attorneys' Fees and Costs.  (ECF No. 112.)  Having considered the Parties' briefings

19   and arguments, the Court hereby GRANTS the Motion in part.

20                      **PROCEDURAL BACKGROUND**

21        The factual background of this matter is summarized in the Court's prior order

22   granting in part Plaintiff's Motion for Partial Summary Judgment.  (Summ. J. Order

23   (ECF No. 104) at 1–6.)  To briefly summarize, Plaintiff brought this action on January

24   16, 2020, against Defendants Butte County Department of Public Works, Dennis

25   Schmidt, and Eric Miller alleging four causes of action for (1) Failure to Develop and

26   Implement an Adequate Storm Water Pollution Prevention Plan for the Neal Road

27   Recycling and Waste Facility ("Facility"), (2) Failure to Develop and Implement the Best

28   Available and Best Conventional Treatment Technologies at the Facility, (3) Failure to

1  Develop and Implement an Adequate Monitoring Implementation Plan for the Facility,

2  and (4) Discharges of Contaminated Storm Water from the Facility, all in violation of

3  the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and California's general National

4  Pollution Discharge Elimination System permit.  (*See* Compl. (ECF No. 1).)

5        Plaintiff brought a Motion for Partial Summary Judgment on January 18, 2024,

6  seeking judgment as to liability on their first, third, and fourth causes of action.  (*See*

7  ECF No. 91.)  The Court granted partial judgment in Plaintiff's favor on their first and

8  third causes of action but denied judgment as to their fourth cause of action.  (Summ.

9  J. Order at 28.)  The Parties settled this matter on April 30, 2024, pursuant to a

10  consent decree ("Consent Decree") resolving all issues except attorneys' fees and

11  costs.  (ECF No. 106; Consent Decree (ECF No. 109-2).)  The Court signed the

12  Consent Decree on July 17, 2024.  (ECF No. 111.)

13        Plaintiff filed the pending Motion for Attorneys' Fees and Costs on July 24,

14  2024, arguing they are entitled to attorneys' fees and costs under the Clean Water Act,

15  and asking the Court to award fees and costs totaling $1,049,280.03.  (Mot. Att'ys'

16  Fees (ECF No. 112); Reply Mot. Att'ys' Fees (ECF No. 115).)  The Court held a hearing

17  on October 3, 2024, with Brian Acree appearing for Plaintiff, and Glen Hansen

18  appearing for Defendants.  The Court took the matter under submission.

19  **DISCUSSION**

20  **I.  Plaintiff is Entitled to an Award of Attorneys' Fees and Costs**

21        Under the Clean Water Act, a court "may award costs of litigation (including

22  reasonable attorney and expert witness fees) to any prevailing or substantially

23  prevailing party, whenever the court determines such award is appropriate."  33 U.S.C.

24  § 1365(d).  Plaintiffs may be considered prevailing parties for attorney's fees purposes

25  if they succeed on any significant issue in litigation which achieves some of the benefit

26  the parties sought in bringing suit.  *Farrar v. Hobby*, 506 U.S. 103, 109 (1992).  "A

27  litigant qualifies as a prevailing party if it has obtained a 'court-ordered chang[e] [in]

28  the legal relationship between [the plaintiff] and the defendant.'"  *Saint John's Organic*

1  *Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1058 (9th Cir. 2009)

2  (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*,

3  532 U.S. 598, 604 (2001) (alterations in original)).  Fee awards are "appropriate" where

4  there are no "special circumstances" rendering a fee award unjust.  *Id.* at 1063–64.

5      Plaintiff argues they are the prevailing party because the Court granted

6  summary judgment in part and found Defendants liable on two of Plaintiff's four

7  claims.  (Mot. Att'ys' Fees at 11.)  Plaintiff argues the Consent Decree also reinforces

8  their status as the prevailing party because is a judicially enforceable document that

9  changes the Parties' legal relationship as it includes significant injunctive terms and

10  monetary payments.  (*Id.* at 11–12.)

11      Defendants do not contest that Plaintiff is the prevailing party.  Thus, based on

12  Plaintiff's partial success at the summary judgment stage, as well as the terms of the

13  Consent Decree, the Court finds Plaintiff is the prevailing party.  Where a court

14  determines that the party seeking litigation costs is a prevailing party, the court must

15  then determine whether an award is "appropriate."  *Saint John's*, 574 F.3d at 1058.  In

16  *Saint John's*, the Ninth Circuit adopted the "special circumstances" standard to

17  determine whether an award of litigation costs to a prevailing plaintiff is "appropriate"

18  under section 1365(d).  *Id.* at 1063.  Under that standard, a court's discretion to deny a

19  fee award to a prevailing plaintiff is narrow, as a denial of fees on the basis of "special

20  circumstances" is extremely rare.  *Id.* at 1063–64.  "When there is 'a complete absence

21  of any showing of special circumstances to render [the award of an attorney's fee]

22  unjust,' a district court must award a reasonable fee."  *Resurrection Bay Conservation*

23  *Alliance v. City of Seward, Alaska*, 640 F.3d 1087, 1094 (9th Cir. 2011) (quoting *Ackerly*

24  *Commc'ns, Inc. v. City of Salem*, 752 F.2d 1394, 1398 (9th Cir. 1985)).

25      Defendants do not allege any special circumstances here.  Thus, the Court finds

26  Plaintiff is entitled to a reasonable fee award.

27  ////

28  ////

3

## II.   Attorneys' Fees and Costs Award

Courts use the "lodestar" method to decide whether a requested fee award is reasonable, multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "By and large, the [district] court should defer to the winning lawyer's professional judgment as to how much time he [or she] was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The district court may reduce the amount of requested fees to reflect a party's limited degree of success, *Hensley*, 461 U.S. at 436-37, to account for block billing, *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007), or to deduct those hours the court deems excessive, *Moreno*, 534 F.3d at 1112. However, absent "specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut" of 10%. *Moreno*, 534 F.3d at 1112, 1116.

### A.   Reasonable Hourly Rates

The "district court must determine a reasonable hourly rate to use for attorneys and paralegals in computing the lodestar amount." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). When determining reasonableness, the Court considers the prevailing market rate in the relevant community for similar work performed by attorneys of comparable skill, experience, and reputation. *Roberts v. City & County of Honolulu*, 938 F.3d 1020, 1024–25 (9th Cir. 2019). Generally, the relevant community is the forum in which the district court sits for purposes of fee-shifting statutes. *Shirrod v. Dir., Off. of Workers' Comp. Programs*, 809 F.3d 1082, 1087 (9th Cir. 2015). However, where a party is unable to retain counsel in the community where the court is located, despite making a good faith effort to do so, the court may award higher out-of-forum rates that are consistent with where the party's counsel practices. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (rates from an outside forum may be used "if local counsel was unavailable, either because they were unwilling or

4

unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case").

"The burden is on the fee applicant 'to produce satisfactory evidence' of the prevailing market rates." *Sam K. ex rel. Diane C. v. Haw. Dep't of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). In addition to their own statements, attorneys are required to submit additional evidence that the rate charged is reasonable. *Seven Signatures Gen. P'ship v. Irongate Azrep BW LLC*, 871 F. Supp. 2d 1040, 1053 (D. Haw. 2012). "Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). When determining the reasonable hourly rate, "[d]istrict courts may also use their 'own knowledge of customary rates and their experience concerning reasonable and proper fees.'" *Sam K. ex rel. Diane C.*, 788 F.3d at 1041 (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

Plaintiff was represented in this action by the Law Offices of Andrew L. Packard, the Law Office of Brian Acree, and the Law Office of William Carlon. Plaintiff argues that, here, the relevant legal community is the San Francisco Bay Area because Plaintiff was unable to find qualified local counsel willing or able to take its case, and because the lawyers Plaintiff ultimately retained all have their offices in and practice in the Bay Area. (Mot. Att'ys' Fees at 17–22.) Plaintiff requests the following hourly rates:

| Attorney | Years of Experience | Requested Rate |
| --- | --- | --- |
| Andrew Packard | 30 | $1,015 |
| Brian Acree | 24 | $935 |
| William Carlon | 8 | $730 |

(*Id.* at 22.) Plaintiff argues that, in setting these hourly rates, Plaintiff's counsel reviewed hourly rates charged by other lawyers of comparable skill, experience, and

1  reputation in the San Francisco Bay Area, and also relied on their own experience and

2  knowledge of prevailing rates.  (*Id.*)  Plaintiff also retained the services of fee expert

3  Richard Pearl to opine on the reasonableness of Plaintiff's requested rates, and sought

4  review of their rates by Christopher Sproul, an experienced and well-respected

5  environmental litigator in the Bay Area.  (*Id.*)  Both Pearl and Sproul opine that that

6  requested rates are reasonable.  (*Id.* 23–26; Pearl Decl. (ECF No. 112-3) ¶¶ 12–29;

7  Sproul Decl. (ECF No. 112-4) ¶¶ 18–31.)  Plaintiff argues they have provided sufficient

8  information to demonstrate their rates are in line with those of lawyers with

9  comparable skills, experience, and reputation in the community.

10          Defendants argue the Court should apply Sacramento market rates, not San

11 Francisco Bay Area rates, because Plaintiff did not seek a Sacramento attorney in

12 good faith.  (Opp'n Mot. Att'ys' Fees (ECF No. 114) at 19–23.)  Specifically, Defendants

13 argue that Plaintiff focused their efforts on finding an attorney in Butte County, but

14 never contacted attorneys in the Sacramento area before retaining Mr. Packard in the

15 Bay Area.  (*Id.*)  Further, Defendants argue even if the Court awards San Francisco Bay

16 Area rates that the requested rates are excessive, as counsel previously sought lower

17 rates in this action in 2021 ($825 for Mr. Packard, $750 for Mr. Acree, and $400 for Mr.

18 Carlon) and 2024 rates should not apply to Plaintiff's billings from July 2019 through

19 December 2023 because a paying client would never agree to such billing practices.

20 (*Id.* at 25–26.)

21          The Court will award fees based on San Francisco Bay Area rates.  Plaintiff has

22 adequately documented their efforts to find local counsel in the Eastern District,[1]

23 which began with contacting local and regional environmental groups for assistance

24 with retaining local counsel.  (Nielsen Decl. (ECF No. 112-2) ¶¶ 11, 17.)  Plaintiff was

25 advised by these groups that finding local counsel would be difficult, especially on a

26

27 [1] Defendants fault Plaintiff for searching for counsel in Chico rather than Sacramento, but both cities are
located in the Eastern District of California.  Defendants do not explain why the forum should be
narrowly defined as Sacramento.  *See, e.g., Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir.

28 2008) (defining the forum as the Northern District of California).

6

1  contingent fee basis.  (*Id.* ¶ 11.)  Nevertheless, Plaintiff was referred to four attorneys in

2  Chico, where Plaintiff is located, and contacted them all; none of the attorneys were

3  able or willing to take Plaintiff's case.  (*Id.* ¶¶ 12–20.)  Plaintiff also contacted the Land

4  Trust Alliance, a national organization based in Washington, D.C., who advised

5  Plaintiff they were not aware of any counsel in Butte County or Sacramento who were

6  qualified and willing to take a case on a contingent fee basis.  (*Id.* ¶ 21.)  Following this

7  and based on the recommendation of the California Sportfishing Protection Alliance,

8  Plaintiff contacted Mr. Packard and retained his firm.  (*Id.* ¶ 22.)  Thus, it cannot be said

9  that Plaintiff did not conduct a good-faith search for local counsel before retaining

10  counsel outside the forum.  *See, e.g., S. Yuba River Citizens League & Friends of River*

11  *v. Nat'l Marine Fisheries Serv.*, No. CIV. S-06-2845 LKK, 2012 WL 1038131, at *6 (E.D.

12  Cal. Mar. 27, 2012) (applying San Francisco rather than Sacramento rates when

13  plaintiff sent seven letter to firms and the San Francisco firm was the only one willing

14  to take plaintiff's case on a fee-recovery basis).

15         The Court also finds that Plaintiff's requested rates are largely reasonable.

16  Defendants do not challenge the evidence presented by Plaintiff concerning the

17  reasonableness of the Bay Area rates, i.e., the Pearl and Sproul declarations, nor do

18  they present case analysis or survey data of their own regarding what reasonable rates

19  should be.  (*See* Opp'n Mot. Att'ys' Fees at 19–26.)  Because Defendants do not refute

20  Plaintiff's evidence, Plaintiff's rates are presumed to be reasonable for the Bay Area.

21  *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105–06 (9th Cir. 2015).

22  That said, the Court recognizes that another court in the Northern District of California

23  has previously reduced the requested Bay Area rates for Mr. Packard, Mr. Acree, and

24  Mr. Carlon in a very similar Clean Water Act case in recognition of the fact that the

25  "facts, parties, and counsel" were located in the northern part of the district where

26  prevailing rates were far lower.  *See Californians for Alternatives to Toxics v. Kernen*

27  *Constr. Co.*, No. 20-cv-01348-YGR, 2022 WL 22227777, at *2–3 (N.D. Cal. Mar. 21,

28  2022).  Specifically, the court found that the "relevant legal community is the Northern

District of California" but considered "the fact that the action and its lawyers are based entirely in the Humboldt and Sonoma counties," and ultimately applied "a twenty percent reduction to the requested rates on the grounds that this number is less than has been reduced in other cases for that area, accounts for the specialized nature of the practice, and will more appropriately reflect the rate of fee." *Id.* Similarly, here, while Plaintiff's attorneys are based in the Bay Area, Plaintiff and the facts of this case are largely based in the Eastern District of California where rates are cheaper. (*See* Pearl Decl. ¶ 31.) The Court will apply a 10% reduction to the requested rates in recognition of this fact.

Finally, Defendants argue that counsel should be awarded their historical, not current, rates for the work performed. However, where a plaintiff's entitlement to attorney's fees depends on their success, which may not happen for several years, "the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." *Missouri v. Jenkins*, 491 U.S. 274, 282 (1989). Plaintiff's attorneys have worked on this case for the past four years on a contingent fee basis. "In recognition of this delay factor, the Court finds that Plaintiff's counsel is not required to adjust its rates to reflect historic rates." *S.F. Baykeeper v. W. Bay Sanitary Dist.*, No. 09-cv-5676 EMC, 2011 WL 6012936, at *8 (N.D. Cal. Dec. 1, 2011).

Accordingly, the Court finds that Plaintiff's requested hourly rates are largely reasonable, and will award fees based on those rates with a 10% discount:

| Attorney | Years of Experience | Requested Rate | Rate less 10% |
|---|---|---|---|
| Andrew Packard | 30 | $1,015 | $913.50 |
| Brian Acree | 24 | $935 | $841.50 |
| William Carlon | 8 | $730 | $657 |

**B.    Reasonable Hours Expended**

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *$28,000.00 in U.S. Currency*, 802 F.3d at 1107 (quoting *Gates*, 987 F.2d at 1397).  The fee applicant must show that the fees and costs were reasonably necessary to achieve the result obtained.  *Esebag v. Whaley*, No. LA CV18-08446 JAK (RAO), 2023 WL 3476840, at *3 (C.D. Cal. May 2, 2023).  The party opposing the fee application "has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110–11 (9th Cir. 2014) (quoting *Camacho*, 523 F.3d at 980).

In addition, the Court has its own "independent duty to review the submitted itemized log of hours to determine the reasonableness of the hours requested in each case." *Irwin v. Astrue*, No. 3:10-CV-545-HZ, 2012 WL 707090, at *1 (D. Or. Mar. 5, 2012).  Courts have the "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Au v. Funding Grp., Inc.*, 933 F. Supp. 2d 1264, 1275 (D. Haw. 2013) (quoting *Soler v. G & U, Inc.*, 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992)).  Accordingly, courts must deny compensation for time expended on work deemed excessive, redundant, or otherwise unnecessary. *Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d 1066, 1083 (9th Cir. 2021).

Plaintiff presents evidence of hours billed in five categories: (1) 115.3 hours for investigation, case initiation, and management; (2) 382.7 hours for discovery; (3) 292.3 hours for settlement efforts with and without court assistance; (4) 198 hours for summary judgment and trial preparation; and (5) 107.3 hours for preparation of this Motion.[2]  (Reply Packard Decl. (ECF No. 117), Ex. 9 at 48.)  Plaintiff also requests an

---

[2] Plaintiff initially requested (1) 117.4 hours for investigation, case initiation, and management; (2) 382.9 hours for discovery; (3) 292.6 hours for settlement efforts with and without court assistance; (4) 198.3 hours for summary judgment and trial preparation; and (5) 107.3 hours for preparation of the Motion. (Packard Decl., Ex. 4 at 46.)  However, Plaintiff adjusted their request in response to Defendants'

1    additional 75.3 hours for crafting their Reply. (*Id.*; Reply Mot. Att'ys' Fees at 9.)

2    Plaintiff's counsel note they exercised significant billing discretion in arriving at the

3    number of hours requested, and when recording their time would make reductions

4    for time spent that was inefficient or duplicative. (Mot. Att'ys' Fees at 17.) Counsel

5    states that, after compiling the billing entries, they made further deductions of 75.2

6    hours of attorney time, 63.1 hours of paralegal time, and over $600 in costs from their

7    request. (*Id.*; Packard Decl. (ECF No. 112-1) ¶¶ 33–34, 64–69.) In sum, Plaintiff

8    requests 349.2 hours for Mr. Packard, 137.6 hours for Mr. Acree, and 684.1 hours for

9    Mr. Carlon. (Reply Packard Decl., Ex. 9 at 48.)

10       Defendants argue many of these hours were unreasonably incurred by

11   Plaintiff's attorneys and should not be compensated. (Opp'n Mot. Att'ys' Fees at 10.)

12   *First*, Defendants argue many of the hours billed have already been compensated in

13   Plaintiff's parallel action in Butte County Superior Court. (*Id.*) Defendants argue that,

14   when the billing spreadsheet here and in the state action are compared, it becomes

15   apparent that 35.4 hours of billing entries are exactly or virtually identical, and thus

16   have already been compensated in the state action. (*Id.* at 11–12; Hansen Decl. (ECF

17   No. 114-2) ¶¶ 2–5, Exs. C, D (highlighting in blue and yellow virtually identical or

18   similar time entries in the state and this action).) Defendants argue that Plaintiff is

19   seeking compensation for work that was performed exclusively for the state action, as

20   well as work that was completed for both the state action and the federal action and

21   has already been compensated in the state action. (*Id.* at 13.) Defendants argue the

22   crossover of work is so ubiquitous that is it not possible to calculate exactly how much

23   duplication exists. (*Id.*) Rather, Defendants suggest the Court should reduce the

24   hours sought across the board to account for Plaintiff's double billing and the fact that

25   less work was needed in this case because Plaintiff was also litigating the state case at

26   the same time. (*Id.* at 14.)

27   _____

28   Opposition. Thus, the hours stated above reflect Plaintiff's updated request in their Reply. Any further
     adjustment made below will be deducted from the hours requested in Plaintiff's Reply.

1    Plaintiff responds that there was no duplication of time sought in the state

2    action, as they have reviewed the time entries identified by Defendants and have

3    verified that any time entries pertaining to both actions were split between the two

4    matters, such that only half of those hours are being billed here. (Reply Mot. Att'ys'

5    Fees at 5–6.)  Plaintiff states that the vast majority of the time entries identified by

6    Defendants were spent on efforts to settle both actions together.  (*Id.* at 6.)  Plaintiff's

7    counsel also attests that "Plaintiff has not been compensated in the state court action

8    for any of the hours for which compensation is sought in this motion."  (Reply Packard

9    Decl. ¶¶ 3–8.)

10   The Court finds that Plaintiff has adequately addressed Defendants' specific

11   allegations of double-billing and will not deduct any hours on that basis.  As to

12   Defendants more general assertion that an incalculable amount of duplication must

13   exist between this action and the state action, the Court will apply a modest 10%

14   reduction to the lodestar fee award to account for any duplication that may not have

15   been readily identifiable in Plaintiff's billing records.

16   *Second*, Defendants argue that Plaintiff's billing of 82.2 hours of intra-office

17   conferences between their three attorneys is inappropriate as parties should not shift

18   the added costs of hiring multiple attorneys onto their opponents.  (Opp'n Mot. Att'ys'

19   Fees at 14–15; *see* Hansen Decl. ¶ 7, Ex. D (highlighting in orange entries involving

20   intra-office communications).)  Plaintiff replies that, far from creating extra costs, their

21   conferences increased efficiency and effectiveness by ensuring labor was divided

22   appropriately and without duplicated efforts.  (Reply Mot. Att'ys' Fees at 6.)

23   The Ninth Circuit has "recognized that 'the participation of more than one

24   attorney does not necessarily constitute an unnecessary duplication of effort.'"

25   *McGrath v. County of Nevada*, 67 F.3d 248, 256 (9th Cir. 1995) (quoting *Kim v.*

26   *Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)).  That said, while "[a] party is

27   certainly free to hire and pay as may lawyers as it wishes, [it] cannot expect to shift the

28   cost of any redundancies to its opponent."  *Nat'l Warranty Ins. Co. v. Greenfield*, No.

1  CV-97-1654-ST, 2001 WL 34045734, at *5 (D. Or. Feb. 8, 2001).  In determining

2  whether hours were inappropriately duplicative, courts should consider the

3  complexity of the case or the extent to which the attorneys handled distinct aspects of

4  the task billed.  *United States v. Montagne Dev., Inc.*, No. 3:11-cv-01191-PK, 2014 WL

5  2334209, at *5 (D. Or. Mar. 10, 2014).  "To correct for [] duplication by two attorneys,

6  the higher billing rate of the two attorneys should be allowed."  *Miranda-Olivares v.*

7  *Clackamas County*, No. 3:12-cv-02317-ST, 2015 WL 5093752, at *8 (D. Or. Aug. 28,

8  2015).

9        Here, the Court has reviewed the intra-office conferences highlighted by

10  Defendants and finds that several entries for the same conference are billed to more

11  than one attorney.[3]  Generally, when attorneys hold a telephone or personal

12  conference, good billing judgment mandates that only one attorney should bill that

13  conference, not both.  *Montagne Dev., Inc.*, 2014 WL 2334209, at *5 (reducing

14  duplicative hours for "multiple attorneys billing for the same mediation, the same

15  conference with opposing counsel, or the same intra-office conference").  The Court

16  will adjust the hours billed so that only the entry billed to the highest rate is counted in

17  the fee award.  In addition, Plaintiff notes in their Reply that entry 1147 for .6 hours was

18  a duplicate and has been removed from their request.  (Reply Mot. Att'ys' Fees at 7

19  n.1; Reply Packard Decl. at 39.)  As for the remaining entries, the Court has reviewed

20  the communications highlighted by Defendants and does not find them to be

21  obviously duplicative or excessive.  Most of the entries are under 0.3 hours, and the

22  descriptions state they were related to the preparation of litigation documents,

23  delegation of a task, or conferring regarding case or settlement strategy.  The Court

24  finds these intra-office communications to be appropriate, particularly in a complex

25

26

27  [3] Specifically, entries 1, 4, 13, 14, 223, 225, 281, 283, 318, 320, 325, 326, 627, 628, 672, 673, 678, 680,
737, 739, 747, 749, 942, 943, 999, 1000, 1036, 1038, 1040, 1043, 1055, 1059, 1127, 1128, 1136, 1138,

28  1145, 1146, 1148, 1283, and 1285.  (Hansen Decl., Ex. D.)

1  Clean Water Act case such as this.  Thus, the Court will deduct only 2.8 hours from Mr.

2  Acree and 5.6 hours from Mr. Carlon for billing of duplicative intra-office conferences.

3      *Third*, Defendants argue 8.8 hours were spent on frivolous discovery motions as

4  those motions were eventually withdrawn.  (Opp'n Mot. Att'ys' Fees at 16.)  Plaintiff

5  argues their withdrawal of the motions is not evidence the disputes were frivolous as

6  their meet and confer efforts prior to filing each motion resulted in amended

7  discovery responses and clarity on Defendants' position with respect to key issues to

8  the case.  (Reply. Mot. Att'ys' Fees at 7.)

9      Courts typically do not reduce the number of hours worked unless the time

10  claimed is obviously and convincingly excessive under the circumstances.  *Charlebois*

11  *v. Angels Baseball, LP*, 993 F. Supp. 2d 1109, 1123 (C.D. Cal. 2012).  The Court finds

12  that Plaintiff's time spent on these discovery disputes was not obviously and

13  convincingly excessive as these disputes appeared to be productive in producing

14  Plaintiff's requested discovery responses.  Thus, the Court will not deduct any hours

15  for time spent on discovery disputes.

16      *Fourth*, Defendants argue Plaintiff has billed at least 18.9 hours for

17  administrative work, which is not compensable in an attorneys' fee award.  (Opp'n

18  Mot. Att'ys' Fees at 17–18; Hansen Decl. ¶ 8, Ex. D (highlighting in purple entries

19  related to administrative duties).)  Plaintiff concedes that, of the 18.9 hours objected

20  to, 2.5 are clerical in nature, and has deducted those hours in their Reply.[4]  (Reply Mot.

21  Att'ys' Fees at 8; Reply Packard Decl. ¶ 16.)  Plaintiff argues the remainder of the

22  "administrative" hours involved substantive legal work and are therefore proper.

23  (Reply Mot. Att'ys' Fees at 8; Reply Packard Decl. ¶¶ 17–20.)

24      "[T]asks which are clerical in nature are not properly billed as attorney fees but

25  are overhead expenses absorbed by counsel."  *Precision Seed Cleaners v. Country*

26  *Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1251 (D. Or. 2013).  "Tasks considered clerical

27

28  [4] Specifically, entries 46, 372, and 395, as well as a portion of 206.  (Hansen Decl., Ex. D.)

13

1   include, but are not limited to, filing motions with the court, filling out and printing

2   documents, preparing affidavits and drafting certificates of service, organizing files,

3   calendaring dates, rescheduling depositions, and sending documents." *Sterling Sav.*

4   *Bank v. Sequoia Crossing, LLC*, No. 03:09-cv-00555-AC, 2010 WL 3210855, at *7 (D.

5   Or. Aug. 11, 2010).  Here, the Court finds Plaintiff's deduction of 2.5 hours is

6   reasonable, as those entries clearly related to clerical tasks.  As to the remainder of the

7   hours, those entries correspond to counsel's substantive document review as well as

8   preparation for this Motion and are thus not purely administrative in nature.  (Reply

9   Packard Decl. ¶¶ 17–20.)  Thus, the Court will not deduct any further hours for

10  administrative tasks.

11      *Fifth*, Defendants argue Plaintiff billed 15.8 hours of time entries that are so

12  vague the Court cannot determine the reasonableness of the time spent.  (Opp'n Mot.

13  Att'ys' Fees at 17–18; Hansen Decl. ¶ 8, Ex. D (highlighting in green vague entries).)

14  Plaintiff responds that counsel are not required to record in great detail how each

15  minute of their time is spent, and that they have provided adequate detail in each

16  entry.  (Reply Mot. Att'ys' Fees at 8; Reply Packard Decl. ¶¶ 9–13.)

17      An attorney "is not required to record in great detail how each minute of his

18  time was expended," but the attorney should identify "the general subject matter of

19  his time expenditures."  *Hensley*, 461 U.S. at 437 n.12.  Here, the Court has reviewed

20  the time entries flagged by Defendants and finds that entries 169 ("review and

21  organize photographs"), 334 ("review documents"), 416 ("review documents"), 731

22  ("review documents"), and 1048 ("review documents") are impermissibly vague, as the

23  descriptions for these entries do not sufficiently identify the subject matter of the time

24  expenditure.  (Hansen Decl., Ex. D.)  Accordingly, the Court will remove these entries

25  from the fee award.  However, the remaining entries are sufficiently identified, and will

26  not be discounted.  (*See id.*; Reply Packard Decl. ¶¶ 9–11.)  Accordingly, the Court will

27  deduct 10.3 hours from Mr. Carlon's total.

28  ////

1    *Sixth*, Defendants argue that the 107.3 hours spent in preparing the instant

2    Motion are excessive and unreasonable because, in a similar recent case, *Ecological*

3    *Rights Foundation v. Hot Line Construction, Inc.*, No. 5:20-cv-01108-AB-kk, 2024 WL

4    3507023 (C.D. Cal., July 19, 2024), the district court awarded only $67,124.61 for

5    preparing the fee motion, about 2/3 of what Plaintiff seeks here.  (Opp'n Mot. Att'ys'

6    Fees at 18–19.)  Plaintiff responds that the $67,124.61 Defendants refer to was

7    incurred entirely in responding to the defendant's opposition to the fee motion, not

8    from the preparation of the fee motion in the first place.  (Reply Mot. Attys' Fees at 9

9    (citing *Ecological Rights*, 2024 WL 3507023, at *1 n.1 ("This is the amount Plaintiffs

10   seek in the reply after reducing their initial request by $106,833.26 and $308, and

11   after adding $67,124.61 for work on the fee Motion")).)  In fact, Plaintiff argues the

12   motion for fees in *Ecological Rights* took approximately 155 hours to complete, at the

13   adjusted lodestar of approximately $137,614.45.  (*Id.*)  Thus, Plaintiff argues their

14   107.3 hours are well within the range that Defendants themselves contend is

15   reasonable.  Plaintiff also argues that they spent 75.3 hours crafting their Reply, work

16   that was necessitated by the sheer number of arguments raised by Defendants, and

17   that they should recover their fees for these hours as well.  (*Id.* at 9–10.)

18        In statutory fee cases such as this one, "federal courts . . . have uniformly held

19   that time spent in establishing the entitlement to an amount of the fee is

20   compensable."  *See Camacho*, 523 F.3d at 981 (quoting *In re Nucorp Energy, Inc.*, 764

21   F.2d 655, 659–660 (9th Cir. 1985)).  "This is so because it would be inconsistent to

22   dilute a fees award by refusing to compensate attorneys for the time they reasonably

23   spent in establishing their rightful claim to the fee."  *Id.*  Defendants generally argue

24   that Plaintiff's time spent preparing the instant Motion, and thus their request for fees,

25   is excessive.  However, Plaintiff is correct that Defendants only example of a

26   reasonable fee award in *Ecological Rights* pertained to plaintiff's preparation of their

27   reply, not their opening motion.  Defendants provide no other concrete argument as

28

1    to why the time spent by Plaintiff was excessive here.  Accordingly, the Court declines

2    to reduce the hours spent by Plaintiff on their preparation of the Motion.

3          The Court will also not reduce Plaintiff's time spent on their Reply.  Defendants

4    object to the additional hours submitted by Plaintiff as part of their Reply on the basis

5    that "Plaintiff gives no reason as to why he could not have properly created and edited

6    that table the first time when it was presented with the moving papers," and request

7    leave to file a sur-reply.  (Defs.' Objs. to New Evid. (ECF No. 120) at 4–5.)  However, as

8    Plaintiff correctly points out, they could not have included those hours in their moving

9    papers because they had not yet been worked, as the hours pertain to Plaintiff's time

10   spent preparing their Reply.  (Pl.'s Resp. to Defs.' Objs. to New Evid. (ECF No. 121) at

11   3.)  Defendants do not make any specific objections to Plaintiff's new time entries, or

12   otherwise justify a sur-reply.  Thus, the Court will grant Plaintiff's request for an

13   additional 75.3 hours spent in drafting their Reply.

14         In sum, the Court will award 349.2 hours to Mr. Packard, 134.8 hours to Mr.

15   Acree, and 668.2 hours to Mr. Carlon, but will apply a 10% reduction to the fee award.

16         **C.     Lodestar Adjustments Reflecting Plaintiff's Limited Success**

17         Defendants argue that Plaintiff's fee award should be adjusted downward to

18   reflect the fact that Plaintiff was only partially successful in this case.  (Opp'n Mot.

19   Att'ys' Fees at 8.)  Defendants argue that Plaintiff's fourth claim for relief, which alleges

20   Defendants discharged leachate-contaminated storm water from the Facility into

21   waters of the United States, was "wholly unnecessary" because the State Water

22   Resource Control Board ("State Board") conducted a parallel investigation into the

23   discharges at issue and the "County spent considerable resources complying with

24   every request of the State Board and the Regional Water Quality Control Board in

25   addressing those discharges," including implementing new Best Management

26   Practices.  (*Id.* at 7–8; Investigative Final Report (ECF No. 93-8) at vii ("Upon receiving

27   the laboratory results on COPCs, the County implemented BMPs to address the runoff

28   issue.").)  Further, Defendants argue the stream adjacent to the Facility is not

16

1   considered waters of the United States following the Supreme Court's decision in

2   *Sackett v. EPA*, 598 U.S. 651 (2023), meaning the Clean Water Act did not apply to the

3   alleged discharges.  (Opp'n Mot. Att'ys' Fees at 8.)  Thus, Defendants contend

4   Plaintiff's work spent on their fourth cause of action was unnecessary and

5   unreasonable as this work produced no benefits in the lawsuit and no remedies in the

6   Consent Decree.  (*Id.* at 9.)  Finally, Defendants argue this Court's summary judgment

7   order is proof Plaintiff pursued several other meritless claims, as the Court denied

8   summary judgment in part on Plaintiff's first and third causes of action.  (*Id.* at 9–10.)

9           In response, Plaintiff argues Defendants fail to explain how the State's

10   investigation makes Plaintiff's success only "partial" beyond implying that Plaintiff's

11   action was not necessary because the State was already addressing the discharges at

12   the Facility.  (Reply Mot. Att'ys' Fees at 4.)  However, while the Clean Water Act

13   disallows citizen suits where the "State has commenced and is diligently prosecuting a

14   civil or criminal action in a court of the United States," 33 U.S.C. § 1365(b)(1)(B), the

15   State never initiated any court action to address the discharges.  (Reply Mot. Att'ys'

16   Fees at 4.)  Thus, Plaintiff contends their fourth cause of action was not unnecessary

17   due to the State's actions.  In addition, Plaintiff argues that all their claims were

18   meritorious.  "That the Court declined to grant summary judgment does not mean that

19   there is no legal or factual basis for that claim, but rather that there is a dispute of

20   material fact as to that claim."  (*Id.* at 5.)

21           Once a lodestar amount is calculated, the Court may determine whether a

22   reduction of the amount is warranted in light of the plaintiff's success.  *Hensley*, 461

23   U.S. at 440.  "Where a plaintiff has obtained excellent results, his attorney should

24   recover a fully compensatory fee . . . [which] should not be reduced simply because

25   the plaintiff failed to prevail on every contention raised in the lawsuit."  *Id.* at 435.

26   However, when a plaintiff prevails on only some of his claims for relief or achieves

27   limited success, courts must consider: (1) the relationship between the claims on

28   which the plaintiff prevailed and those on which he did not; and (2) whether the

17

1   plaintiff's degree of success justifies an award for fees incurred in pursuing related,

2   but ultimately unsuccessful, claims.  *Id.* at 434; *Ibrahim v. United States Dep't of*

3   *Homeland Sec.*, 912 F.3d 1147, 1172 (9th Cir. 2019).  "A reduced fee award is

4   appropriate if the relief, however significant, is limited in comparison to the scope of

5   the litigation as a whole."  *Hensley*, 461 U.S. at 440.  "There is no precise rule or

6   formula for making these determinations."  *Id.* at 436.  Rather, the district court has

7   discretion to "attempt to identify specific hours that should be eliminated, or it may

8   simply reduce the award to account for the limited success."  *Id.* at 436–37.

9       The Court finds Defendants' arguments largely unpersuasive.  Plaintiff brought

10  claims against Defendants for discharges of contaminated storm water in violation of

11  the Clean Water Act, as well as their failure to implement adequate Storm Water

12  Pollution Prevention Plans, Monitoring Implementation Plans, and Best Available and

13  Best Conventional Treatment Technologies at the Facility.  (*See generally* Compl.)

14  There need not be "commonality of both facts and law to conclude that claims are

15  related . . . [rather,] the focus is to be on whether the unsuccessful and successful

16  claims arose out of the same course of conduct."  *Ibrahim*, 912 F.3d at 1174 (internal

17  quotation marks and citations omitted).  In this case, the challenged course of conduct

18  was the sufficiency of Defendants' water pollution prevention measures at the Facility,

19  which was common to all of Plaintiff's claims.

20      In addition, Plaintiff has largely demonstrated their success in this litigation.

21  Plaintiff filed for summary judgment on their first (Storm Water Pollution Prevention

22  Plans), third (Monitoring Implementation Plans), and fourth (Clean Water Act) claims,

23  and the Court granted judgment in Plaintiff's favor in part on their first and third

24  claims.  (Summ. J. Order at 28.)  While the Court denied summary judgment on

25  Plaintiff's fourth claim, the Court found that the claim presented a very close dispute of

26  fact, as Plaintiff's evidence supported a reasonable inference that contaminated storm

27  water had been discharged from the Facility.  (*Id.* at 8–11.)  Following summary

28  judgment, the Parties settled the action and entered into the Consent Decree which

1  required Defendants to implement a series of pollution-prevention measures,

2  including repairs and improvements to access roads, berms, conveyance trenches,

3  and slope surfaces at the Facility.  (Consent Decree at 5-7.)  In addition, the Consent

4  Decree required improved catchment basin maintenance, increased employee

5  training, and heightened sampling requirements.  (*Id.* at 8.)  Finally, as mitigation for

6  the harms caused, Defendants were required to pay $300,000 to fund grants to

7  acquire and manage land and conservation easements and to study and improve

8  water quality in Butte County.  (*Id.* at 11–12.)

9        Overall, the Court finds the results achieved by Plaintiff significant and directly

10  aimed at remedying the harms alleged in their Complaint, as the Consent Decree

11  requires updates to the Storm Water Pollution Prevention Plan and monitoring

12  procedures at the Facility, measures which are intended to prevent future Clean Water

13  Act violations, and also remedies past violations of the Clean Water Act.  The Court

14  will, however, award a 10% reduction to the fees in light of Defendants' argument that

15  some of Plaintiff's work was duplicative of the State Board's efforts.  Due to the State

16  Board's investigation, Defendants had already taken steps to remedy issues related to

17  the alleged leachate discharges before this matter was settled, limiting the relief

18  achieved by Plaintiff as a result of this litigation.

19        Thus, the Court will apply a further 10% reduction to fee award.

20      **D.**    **Costs**

21        Finally, Plaintiff requests $66,793.03 in litigation costs.  (Mot. Att'ys' Fees at 26;

22  Reply Mot. Att'ys' Fees at 16; Packard Decl. ¶¶ 62–63.)  Plaintiff states that 90% of

23  these costs are for expert consultants' services and depositions, and the remaining

24  costs are for court fees, process server fees, printing, postage, and travel costs.  (Mot.

25  Att'ys' Fees at 26–27.)  Plaintiff argues these costs were necessarily incurred and are

26  fully recoverable under the Clean Water Act.  *Sierra Club v. EPA*, 75 F. Supp. 3d 1125,

27  1153 (N.D. Cal. 2014); 33 U.S.C. § 1365(d).

28  ////

1    Defendants object to two categories of costs: (1) costs associated with the work

2    performed by Plaintiff's expert Pearl, and (2) costs associated with SWAPE, Plaintiff's

3    expert environmental consulting firm.  (Opp'n Mot. Att'ys' Fees at 27.)  Defendants

4    primarily object that no invoices for these costs were provided.  (*Id.*)  Defendants also

5    argue that Plaintiff has not explained their need to retain Pearl, and that the $8,193.82

6    he charged was block billed and appears to be inflated.  (*Id.*)

7    In reply, Plaintiff provides the missing invoices, and explains that Pearl's services

8    were necessary to support their requested billing rates.  (Reply Mot. Att'ys' Fees at 16;

9    Reply Packard Decl. ¶¶ 25–26, Exs. 5-6.)  Plaintiff also requests additional costs for

10   invoices received and paid after their Motion was filed, one for their expert Sproul,

11   and one from defense counsel for expert depositions.  (Reply Mot. Att'ys' Fees at 16;

12   Reply Packard Decl. ¶¶ 27–28, Exs. 7-8.)

13   The Court will grant Plaintiff's request for costs in part.  The Court finds that

14   Pearl's services were reasonably retained to supplement Plaintiff's request for

15   attorneys' fees.  However, the Court also finds that Pearl's invoice is block-billed and

16   includes virtually no description as to the tasks Pearl performed.  (*See* Reply Packard

17   Decl., Ex. 6.)  When the nature of the block-billing prevents a court from effectively

18   determining whether the time spent on tasks was reasonable, district courts in the

19   Ninth Circuit have the authority to apply a blanket discount to block-billed entries by

20   10–30%.  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *see also*

21   *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 968 (N.D. Cal. 2014) (reducing block-

22   billings by 20%).  Accordingly, the Court will apply a 20% discount to Pearl's invoiced

23   costs, $8,193.82, bringing those costs down to $6,555.  The Court will not apply any

24   discount to Plaintiff's remaining costs.

25   The Court will grant Plaintiff $65,154.21 in costs.

26   ////

27   ////

28   ////

**CONCLUSION**

In accordance with the above, the Court hereby GRANTS Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 112) in part.  The Court will award Plaintiff a total of $762,302.85:

| Attorney | Rate | Hours | Lodestar |
|---|---|---|---|
| Andrew Packard | $913.50 | 349.2 | $318,994.20 |
| Brian Acree | $841.50 | 134.8 | $113,434.20 |
| William Carlon | $657 | 668.2 | $439,007.40 |
| | | Subtotal | $871,435.80 |
| | | 20% Reduction | $871,435.80 x .8 |
| | | **Fees** | **$697,148.64** |
| | | **Costs** | **$65,154.21** |
| | | **TOTAL** | **$762,302.85** |

IT IS SO ORDERED.

Dated:   **November 15, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC4 – CalOpenLands20cv123.MotAttysFees